IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BANK OF AMERICA, N.A. (USA),<br><br>        Plaintiff,<br><br>v.<br><br>US AIRWAYS, INC., US AIRWAYS GROUP, INC., and AMERICA WEST AIRLINES, INC.,<br><br>        Defendants,<br><br>and<br><br>JUNIPER BANK,<br><br>        Intervenor. | C.A. No. _____ |

**NOTICE OF REMOVAL OF ACTION AND
CLAIMS PURSUANT TO 28 U.S.C. §§ 1452(a), 1334**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

Defendants US Airways, Inc., US Airways Group, Inc., and America West Airlines, Inc. ("America West") (collectively, "Defendants") hereby give notice of the removal of this action, and each claim therein alleged against them, to this Court, pursuant to 28 U.S.C. §§ 1452(a) and 1334(b). In support of the removal, Defendants state as follows:

**Introduction**

1. On October 12, 2005, Plaintiff Bank of America, N.A. (USA) ("Plaintiff" or "Bank of America") filed this action against Defendants in the Court of Chancery of the State of Delaware in and for New Castle County, Del. Ch. Case No. 1713-N. This matter is subject to removal under 28 U.S.C. §§ 1452(a) and 1334(b) because it "arises under" the Bankruptcy Code,

and also "arises in" and is "related to" the bankruptcy proceeding entitled *In re US Airways, Inc., et al.*, E.D. Va. No. 04-13819-SSM, which is pending in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, before the Honorable Stephen S. Mitchell ("*US Airways* bankruptcy"). As set forth more fully below, Plaintiff filed in the *US Airways* bankruptcy proceeding Administrative Claims on August 17, 2005 and November 9, 2005 asserting essentially the same claims it is asserting here, thus bringing this action squarely within the scope of the existing bankruptcy proceedings. Plaintiff's Administrative Claims demonstrate not only that this action "arises in," and is "related to," the bankruptcy, but also that this is a "core" proceeding that should be resolved by the Bankruptcy Court. Accordingly, removal is proper under 28 U.S.C. § 1452(a). Moreover, the August 8, 2005 amendment to the contract between Juniper and America West, which forms the basis for Plaintiff's contract and tort claims in the present action, was one of several primary sources of liquidity supporting the Plan of Reorganization approved by the Bankruptcy Court in the *US Airways* bankruptcy, and the relief that Plaintiff seeks here – including in effect a nullification of that contract – is inextricably intertwined with the Plan of Reorganization in such a way that it must fall to the Bankruptcy Court to resolve it.

## Factual Background

2.  In May 2003, Plaintiff and US Airways, Inc. entered into a "Co-Branded and Merchant Services Agreement" (the "BofA/US Airways Contract"), which authorized Plaintiff to issue co-branded credit cards that allowed consumers to earn US Airways frequent flier miles. That agreement specifically provides, *inter alia*, that "[i]n the event of a merger involving US Airways or any of its Affiliates and a third party that has a contract with a Card issuer other than [Plaintiff] to issue a Competing Card, the US Airways Surviving Entity may provide the

[Plaintiff] with one of the two written notices described below." One of those written notices is a "Two-Program Notice," under which the "US Airways Surviving Entity" may authorize *both* the Bank of America card *and* the "Competing Card." If US Airways does not provide a notice within the 90 day prescribed time frame, then the "Two-Program" structure is deemed to apply, subject to certain other contractual provisions.

3.  On September 12, 2004, US Airways, Inc., US Airways Group, Inc. (US Airways, Inc.'s parent company), and other affiliates (collectively "US Airways") filed a Chapter 11 petition initiating the above-mentioned bankruptcy proceeding in the Eastern District of Virginia. Early in the bankruptcy proceedings, the BofA/US Airways Contract was assumed. On May 19, 2005, US Airways Group, Inc. and one of its subsidiaries entered into a formal "Agreement and Plan of Merger" ("Merger Agreement") with America West Holdings Corporation, the parent of America West Airlines, Inc. (*See* Bankr. Ct. Docket # 2342 (Joint Plan of Reorganization, Exhibit M) (attached as <u>Exhibit A</u> hereto).)[1] The consummation of this merger ("Merger"), became the focal point of the plan of reorganization in the bankruptcy proceedings.

4.  America West had previously entered into a contract on January 25, 2005 with Juniper to issue co-branded credit cards starting on or about January 1, 2006. As a result of the proposed merger, and consistent with the above-mentioned merger provisions of the BofA/US Airways Contract, on August 8, 2005 America West and Juniper amended their existing contract and assigned the amended contract to US Airways Group, Inc., all effective upon the consummation of the merger (the "Amended Juniper Agreement"). The Amended Juniper Agreement provided approximately $455 million in liquidity to the combined companies after US Airways emerged from bankruptcy.

---

[1] All references to "Bankr. Ct. Docket #" refer to the docket entries in the *US Airways* bankruptcy proceedings in Case No. 04-13819 in the Eastern District of Virginia.

5. The $455 million liquidity infusion from the Amended Juniper Agreement represented a major component of the US Airways Joint Plan of Reorganization. The Merger was the centerpiece and the *sine qua non* of US Airways' Plan for Reorganization, and both the Merger and US Airways' emergence from bankruptcy were funded by several major sources of liquidity. The funds received under the Amended Juniper Agreement were one of those sources, and US Airways' reliance on this specific source was fully documented and disclosed in securities and court filings. In reliance upon the funds made available by from the Amended Juniper Agreement, and other sources, the Bankruptcy Court confirmed the Joint Plan of Reorganization on September 16, 2005. (*See* Bankr. Ct. Docket # 3193 (Exhibit B hereto) (hereinafter "Confirmation Order").)

6. On August 17, 2005, prior to the confirmation of the Plan, Plaintiff filed its first round of Administrative Claims (for the period ending July 31, 2005) seeking recovery for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating to either: (i) the Co-Branded and Merchant Services Agreement, dated as of May 20, 2003, as amended (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the 'Card Agreement') and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products." (Administrative Claims (Exhibit C hereto).) The contract referenced in the Administrative Claim is precisely the BofA/US Airways Agreement that is at issue in this action.

7. A month later, but still before Confirmation, Bank of America filed a limited objection to the Plan, arguing that certain language in the Plan could be interpreted as interfering with its Administrative Claim and the continued viability of the BofA/US Airways Agreement by potentially releasing any obligations that US Airways might have thereunder. (Limited

Objection of Bank of America, N.A. and Bank of America, N.A. (USA), Bankr. Ct. Docket # 3121 (<u>Exhibit G</u> hereto).) Plaintiff suggested changing language in the Plan to address the issues it raised. At no time did it inform the Bankruptcy Court or Defendants that it was seeking this language change so that it could bring suit to attack and enjoin the Amended Juniper Agreement and its immediate liquidity benefit to US Airways of $455 million. To the contrary, Plaintiff represented to the Bankruptcy Court that this change was minor, that it "is not central and essential to the Debtor's plan," and that "[i]t is simply inconceivable that the [requested change] is central to the Debtor's reorganization, let alone that the Plan 'hinges' upon such releases." (*Id.* ¶ 19). Relying upon these representations and omissions, US Airways agreed to what appeared to be the minor change Bank of America requested, and the Bankruptcy Court adopted Plaintiff's proposed changes verbatim. (Confirmation Order, at ¶ 45.)

8.  US Airways' Reorganization Plan went into effect on September 27, 2005, and the Merger was effective that same day. In its Confirmation Order, the Bankruptcy Court set up a process for filing and resolving Claims and retained jurisdiction over "all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law." (Confirmation Order, at p. 39.) The *US Airways* bankruptcy proceeding is still open and active to this day to resolve claims, including administrative claims of the kind submitted by Bank of America.

9.  On October 12, 2005, Plaintiff filed this action against Defendants in the Court of Chancery of the State of Delaware in and for New Castle County, Del. Ch. Case No. 1713-N. Plaintiff's Complaint alleges that US Airways, Inc. breached the BofA/US Airways Agreement when it (a) negotiated and later entered into a contract with Defendant/Intervenor Juniper that permitted Juniper to offer co-branded credit cards after the Merger; (b) permitted and licensed

Juniper to issue co-branded credit cards after the Merger; and (c) marketed Juniper co-branded credit cards. The Complaint further alleges that America West tortiously interfered with the BofA/US Airways Agreement and that both America West and US Airways Group tortiously interfered with Plaintiff's prospective economic advantage by causing US Airways, Inc. to breach the BofA/US Airways Agreement. Plaintiff seeks unspecified monetary damages and an order of specific performance of the BofA/US Airways Agreement that would allow it to market co-branded cards to the exclusion of Juniper. It also seeks to enjoin US Airways from performing the Amended Juniper Agreement by licensing or issuing credit cards pursuant to the contract's terms.

10. Defendants were served with the Complaint on October 17, 2005. This Notice of Removal is therefore timely filed.

11. After filing its lawsuit, Plaintiff filed another set of Administrative Claims in the Bankruptcy Court, which are substantially identical to what it filed on August 17, 2005, except that the new set of Administrative Claims covers the period August 1, 2005 through September 27, 2005 and has a purported reservation of rights attempting to limit the Bankruptcy Court's jurisdiction. (Exhibit D, hereto).

**The Court Has Jurisdiction Over The Action Pursuant To 28 U.S.C. § 1452 & 1334(b)**

12. Section 1452(a) of Title 28, United States Code, states that a party may remove any claim or cause of action to district court if the district court has jurisdiction under "section 1334 of this title." Section 1334(b) in turn states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). By enacting § 1334(b), including the "related to"

6

provision, Congress granted "comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citation and internal quotation marks omitted).

13. A civil action is "related to" a case under Title 11 within the meaning of Section 1334(b) if the outcome "*could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original, citations omitted). *See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) ("a key word in this test is 'conceivable' and that '[c]ertainty, or even likelihood, is not a requirement.' ") Put another way, an action is "related to" a bankruptcy proceeding "if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively)" and "in any way impacts upon the handling and administration of the bankrupt estate." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002 n.11 (quoting *Pacor*, 743 F.2d at 994). Cases "arising in" a bankruptcy action include those that "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of bankruptcy." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

14. Here, the claims asserted in the Complaint in the present action both "arise in" and "relate to" the *US Airways* bankruptcy within the meaning of Section 1334(b).

15. This claims in this action are "related to" and "arise in" the ongoing *US Airways* bankruptcy because Plaintiff and its affiliates within the Bank of America corporate structure filed Administrative Claims with the Bankruptcy Court, pursuant to the Claims procedure set forth in the Bankruptcy Code and the Plan of Reorganization, asserting the same essential claims that Plaintiff now has alleged in this action. Plaintiff's Administrative Claims, filed on August

7

17, 2005 and on November 9, 2005, seek recovery for "any and all claims, rights and interests of Bank of America, N.A.. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating to either: (i) the Co-Branded and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the 'Card Agreement') and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products." (Administrative Claims (Exhibits C and D, hereto).) The contract referenced in the Administrative Claim is precisely the BofA/US Airways Agreement that is at issue in this action.

16. The present action, which seeks both damages arising from an alleged breach of the BofA/US Airways Agreement, and injunctive relief against US Airways relating to US Airways' co-branded credit card agreement with Juniper Bank (the Amended Juniper Agreement, as defined above), raises the same issues as those encompassed by Plaintiff's Administrative Claims. The breach of contract claims in the present action, asserting that US Airways, Inc. breached the BofA/US Airways Agreement by entering into the Amended Juniper Contract and by doing business with Juniper, on their face purport to involve alleged "claims, rights and interests of Bank of America, N.A., (USA) and Bank of America, N.A. (and their affiliated entities) in [a] manner arising from or relating to" the BofA/US Airways Agreement, as described in the Administrative Claims. Likewise, Plaintiff's tort claims for interference and their prayer to enjoin Defendants' performance under the Amended Juniper Contract and to compel performance of the BofA/US Airways Agreement also involve both "claims, rights and interests" in that contract, and "other matters pertaining to credit cards" within the broader language set out in the Administrative Claims. (In pointing out that the instant claims by Bank of America are encompassed in Bank of America's Administrative Claims, Defendants do not

waive any argument that, by failing to articulate the nature of these claims more clearly prior to the confirmation of the Plan and by deliberately downplaying their importance, Bank of America has waived the right to assert, or is estopped from asserting, these issues post-confirmation.)

17.    Moreover, by submitting Administrative Claims encompassing the very state law claims they seek to assert here, Plaintiff and its affiliates confirmed that these claims are core bankruptcy proceedings and Plaintiff has thereby submitted to the jurisdiction of the Bankruptcy Court for resolution of those claims. *See In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (Bankr. E.D. Tenn.1998) ("where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding"); *In re G.I Industries, Inc.*, 204 F.3d 1276, 1279 (9th Cir. 2000) (the "filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of claims against the estate' " and thus is a core proceeding under 28 U.S.C. § 157(b)(2)) (citations omitted).

18.    Plaintiff's lawsuit is also "related to," and "aris[es] in," the bankruptcy proceedings because it is a disguised attack on the US Airways Reorganization Plan approved by the Bankruptcy Court. The funding provided through the Amended Juniper Agreement was a part of the liquidity necessary to fund the Merger and US Airways' emergence from bankruptcy according to the Joint Plan of Reorganization as approved by the Bankruptcy Court. Moreover, the additional funds raised by US Airways were received in reliance on US Airways' anticipated receipt of the $455 million from Juniper Bank. As the Disclosure Statement approved by the Bankruptcy Court explained:

> In addition to amounts to be received from the Plan Investors and pursuant to the proposed Stock Offering, the Debtors expect to receive ... $455 million in advances from its affinity credit card providers [*i.e.* Juniper] . . .. Pursuant to the terms of its agreement

9

> with the ATSB, Reorganized Group must have $1.25 billion in unrestricted cash upon emergence. The failure of the Debtors to consummate these liquidity transactions could result in the Plan not being confirmed and the Merger and related transactions not occurring.

US Airways Second Amended Disclosure Statement, August 7, 2005, at 109 (<u>Exhibit E</u> hereto; Docket # 2755). Indeed, a "significant assumption" behind the financial projections relied upon by the Bankruptcy Court in confirming the Joint Plan of Reorganization was that US Airways would receive the hundreds of millions of dollars called for by the Amended Juniper Agreement. (Appendix C to Disclosure Statement, at C-2 (<u>Exhibit F</u> hereto); Confirmation Order at p.13.) The relief Plaintiff seeks in this action – including an order enjoining US Airways, Inc. from proceeding with the Juniper Amended Agreement and requiring it to deal exclusively with Plaintiff – would create an obstacle to the consummation of the US Airways Plan as confirmed. Moreover, because Bank of America seeks to enjoin a contract that formed a significant part of the Plan as confirmed by the Bankruptcy Court, the true nature of the instant case is a challenge to that Plan. As such, it "arises in" and is "related to" the bankruptcy proceedings.

19. Further, because Plaintiff's claims "aris[e] in connection with the interpretation, implementation, or enforcement of [the] Plan and/or the Confirmation Order"; "aris[e] ... in connection with the ... Merger Agreement"; and "relat[e] to the transactions contemplated" by the Merger Agreement (*see* Joint Plan of Reorganization, art. XIII(k), (m) (describing the jurisdiction retained by the Bankruptcy Court pursuant to its power under 11 U.S.C. § 1142 to effectuate the consummation of the Plan)), those claims "aris[e] in" the bankruptcy proceedings within the meaning of § 1334(b). *See, e.g., In re U.S. Brass Corp.*, 301 F.3d 296, 305-06 (5th Cir. 2002) ("proceedings within the contemplation of § 1142(b) are more appropriately viewed as 'arising in' a case under title 11"). Further, Plaintiff's claims are so inconsistent with the foundations underlying the Plan of Reorganization and the order confirming that Plan that the

only way its causes of action could even conceivably be argued as surviving that Order is through the language Bank of America induced the Court to add to the Plan to the effect that the Plan would not release or impair Bank of America's rights under the BofA/US Airways Contract. Because the survival of Plaintiff's claims thus depends upon the interpretation and scope of, *inter alia*, the language Bank of America added to the Plan, its claims "arise in" the bankruptcy case.

20.  Pursuant to Fed. R. Bankr. P. 9027, Defendants state that the present action is a "core" proceeding within the meaning of 28 U.S.C. § 157(b). "[A] proceeding is core if it invokes a substantive right provided by title 11 or if it is a proceeding, that by its nature could arise only in the context of a bankruptcy case." *Halper v. Halper*, 164 F.3d 830, 836-37 (3d Cir. 1999) (internal quotations, brackets, and citations omitted). "Core proceedings are matters concerning the administration of the estate and rights created by Title 11." *Robertson v. Isomedix, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994) (internal citation and quotation omitted).

21.  In the present action, Plaintiff seeks an order enjoining performance of the Juniper Contract – relief that would undermine a critical component of the US Airways Joint Plan of Reorganization and thereby would have a significant adverse effect on the administration of the estate and the consummation of the Plan of Reorganization. *See* 28 U.S.C. § 157(b)(2)(A) (defining "matters concerning the administration of the estate" as an example of "core proceedings").

22.  For all of the foregoing reasons, this action is subject to removal to this Court. Because this action is most appropriately heard by the Bankruptcy Court presiding over the case to which this action is related, Defendants intend to file shortly a motion to transfer this action to the Bankruptcy Court for the Eastern District of Virginia.

23. Defendants have filed concurrently the documents that have been filed in the Delaware Chancery Action as of the time of this Notice of Removal.

Respectfully submitted,

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

*/s/ Christian Douglas Wright*
David C. McBride (#408)
Christian Douglas Wright (#3554)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for US Airways, Inc., US Airways Group, Inc. and America West Airlines, Inc.*

OF COUNSEL:

MUNGER, TOLLES & OLSON LLP
Mark H. Epstein
Kristin Linsley Myles
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
(213) 683-9100

DATED:  November 15, 2005

DB02:5101133.1                                                                                                                         064703.1001

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, hereby certify that copies of the foregoing document were caused to be served on November 15, 2005 upon the following counsel of record in the manner indicated:

**BY HAND DELIVERY**

Richard L. Horwitz, Esquire
Kevin R. Shannon, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
PO Box 951
Wilmington, DE 19899-0951

Kenneth J. Nachbar, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
PO Box 1347
Wilmington, DE 19899-1347

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Christian Douglas Wright (#3554)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for Defendants US Airways, Inc., US Airways Group, Inc. and America West Airlines, Inc.*