*EXHIBIT E*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Case No. 04-13819 Jointly Administered |
| US AIRWAYS, INC., et al., | ) ) ) | Chapter 11 Hon. Stephen S. Mitchell |
| Debtors-in-Possession. | ) ) | |

### SECOND AMENDED DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF REORGANIZATION OF US AIRWAYS, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

Brian P. Leitch, Esq.
Daniel M. Lewis, Esq.
Michael J. Canning, Esq.
Neil M. Goodman, Esq.
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-1370
(303) 863-1000

- and -

555 Twelfth Street, NW
Washington, DC 20004-1206
(202) 942-5000

- and –

399 Park Avenue
New York, New York 10022
(212) 715-1000

Thomas Wardell, Esq.
McKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, NE
Atlanta, Georgia 30308
(404) 527-4000

Lawrence E. Rifken, Esq. (VSB No. 29037)
Douglas M. Foley, Esq. (VSB No. 34364)
David I. Swan, Esq.
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
(703) 712-5000

Attorneys for Debtors and Debtors-in-Possession
Dated:   August 7, 2005

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED THIS DISCLOSURE STATEMENT.**

DC_1430080_11.DOC

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS SECOND AMENDED DISCLOSURE STATEMENT AND THE APPENDICES HERETO RELATES TO THE DEBTORS' JOINT PLAN OF REORGANIZATION. THE INFORMATION IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, AND OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT AND APPENDICES HERETO WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NONBANKRUPTCY PROCEEDING NOR WILL IT BE CONSTRUED TO BE LEGAL ADVICE ON THE TAX, SECURITIES OR OTHER EFFECTS OF THE REORGANIZATION AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, US AIRWAYS GROUP, INC. OR ITS AFFILIATES.

## SUMMARY OF PLAN

The following introduction and summary is a general overview only, which is qualified in its entirety by, and should be read in conjunction with, the more detailed discussions, information and financial statements and notes thereto appearing elsewhere in this Disclosure Statement and the Joint Plan of Reorganization of US Airways, Inc. and Its Affiliated Debtors and Debtors-in-Possession (the "Plan"). All capitalized terms not defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Appendix A.

### A.  The Plan

The Plan provides for a reorganization of each of the five Debtors. In accordance with the Plan, the Debtors will effectuate a merger transaction with America West Holdings Corporation ("America West"), the holding company for America West Airlines, Inc., pursuant to which a new subsidiary of Group will merge with and into America West, and America West will become a wholly-owned subsidiary of Group and the existing shareholders of America West will receive approximately 37% of the New Common Stock of Reorganized Group. In addition, the Plan contemplates that certain new equity investors (the "Plan Investors") will invest not less than $565 million in New Common Stock of Reorganized Group representing, in the aggregate, approximately 52% of Reorganized Group. New Common Stock representing approximately 12% of Reorganized Group will be distributed to unsecured creditors of the Debtors. In each case, these percentages reflect the assumed stock ownership outstanding immediately following the effective date of the Plan and Merger and are subject to dilution as a result of any additional equity issuances, including as a result of the proposed stock offering discussed below, and are subject to certain assumptions concerning the likely exchange of certain convertible debt for New Common Stock shortly after the Merger. For more detail, see the table on page 27 detailing the pro forma security ownership of Reorganized Group upon the Effective Date of the Plan.

In connection with the transactions contemplated by the Plan, Reorganized Group may conduct a stock offering of up to $150 million in shares of New Common Stock, a portion of which may be made available to certain creditors of the Debtors and to existing common stockholders of America West (the "Stock Offering"). In the event that the Stock Offering were to be consummated, the percentage ownership of Reorganized Group by the stakeholders described above would be diluted. Completion of the Merger and effectiveness of the Plan are not conditioned on completion of the Stock Offering.

The Plan permits the Debtors to continue their businesses as a going concern, under a new hybrid point-to-point/hub-and-spoke low cost carrier business model. The Debtors believe that through the Plan and Merger they will be able to compete more effectively in the current competitive environment, thereby maximizing the going concern value of their assets for the benefit of their stakeholders.

General Unsecured Claimholder recoveries under the Plan will depend on resolution of Disputed Claims, as well as the value of shares of New Common Stock in the marketplace. The Debtors project, however, that Class 9 General Unsecured Claimholder recoveries are likely to range between 3.1% and 17.4% of the amount of their Allowed General Unsecured Claims.[1]

### B.  Competitive Strengths of Reorganized Group Resulting from the Merger

America West and Group will have a number of competitive strengths as a combined company, including:

---

[1] The estimated percentage recovery is based on the valuation of the shares issued under the Plan, as reflected in the valuation analysis attached as Appendix D. If the weighted average price paid for such shares by the Plan Investors were used rather than that valuation, the estimated percentage recovery would be approximately 2.7% to 8.2%.

*Largest U.S. Low-Cost Carrier with Nationwide Route Network.* Reorganized Group will be the first national full-service low-cost carrier and the largest low-cost carrier by revenue passenger miles ("RPMs") (including international service), the fifth largest airline operating in the United States as measured by domestic RPMs and by available seat miles ("ASMs"), with a national hub-and-spoke route network that will provide customers with nationwide reach. Reorganized Group is expected to capture approximately 10% of all domestic RPMs. Reorganized Group plans to continue as a member of the Star Alliance, the world's largest airline alliance group.

With a simplified pricing structure and international scope, Reorganized Group will offer competitive fare service to approximately 229 cities in the United States, Canada, the Caribbean, Latin America and Europe, making it the only low-cost carrier with a significant international route presence. Starting in 2006, Reorganized Group expects to expand its route network to include Hawaii, and will be the only low-cost carrier with an established East Coast route network, including the US Airways Shuttle service, with substantial presence at capacity-constrained airports such as New York's LaGuardia International Airport and Washington, D.C.'s Ronald Reagan Washington National Airport.

*Offer Services Not Typical of Low-Cost Carriers.* By delivering high-quality service, with greater frequency of flight departures and offering customers premium amenities not available on other low-cost carriers, Reorganized Group will provide the best value in its markets and create increased demand for its air travel services. Reorganized Group is expected to be the only national low-cost carrier offering a global frequent flyer program, assigned seating, a First Class cabin, the US Airways Shuttle, same-carrier service to approximately 44 international destinations, convenient access to over 700 global destinations through its membership in the Star Alliance, and the convenience of airport clubs. These amenities will differentiate Reorganized Group's service from other low-cost carriers and will allow it to strengthen customer loyalty and attract new air travelers.

*Competitive Low-Cost Structure.* The cost saving initiatives of America West and the Debtors discussed in Section III.F.1, coupled with the significant cost synergies from the Merger, will allow Reorganized Group to have one of the most competitive cost structures in the airline industry. On a pro forma basis, once the anticipated Merger synergies are realized, the unit costs of Reorganized Group will be approximately the same as those of America West today.

*Improved Balance Sheet with Substantial New Liquidity.* Reorganized Group is expected to be one of the industry's most financially stable airlines. Reorganized Group is expected to realize approximately $10 billion in annual revenues and have as of the completion of the Merger a strong balance sheet. The combined balance sheets will benefit from new liquidity of approximately $1.5 billion, which will include equity investments aggregating $565 million, the proceeds raised through the proposed Stock Offering of approximately $150 million, cash infusions from commercial partners and other initiatives.

*Experienced Management Team.* Reorganized Group will benefit from an experienced, highly motivated combined management team. Reorganized Group's team will be led by W. Douglas Parker, who has been the chief executive officer of America West since 2001 and prior to that, served as America West's chief operating officer from 2000 to 2001 and chief financial officer from 1995 to 2000. As chief executive officer, Mr. Parker led America West's transformation into a low-cost carrier.

FOR A DESCRIPTION OF THE PLAN AND VARIOUS RISK AND OTHER FACTORS PERTAINING TO THE PLAN AS IT RELATES TO HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, PLEASE SEE ARTICLE VIII – SUMMARY OF THE REORGANIZATION PLAN AND ARTICLE IX – CERTAIN RISK FACTORS TO BE CONSIDERED.

C.    **Treatment of Claims and Interests Under the Plan**

The following chart contains a brief, general summary of the treatment of each Class of Claims and Interests under the Plan other than Allowed Administrative Claims, the holders of which, except with respect to the Eastshore Administrative Claim, shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim or such other treatment as to which the Debtors (or the Reorganized

Debtors) and such Claimholder shall have agreed upon in writing. It is not a complete statement of the treatment of any Class of Claims or Interests. The Plan constitutes a plan of reorganization for each of the five Debtors. Unless otherwise indicated, this Chart summarizes the treatment of Classes of Claims and Interests against each of the Debtors. For a more detailed discussion of the treatment of Claims and Interests against each of the Debtors, see Section VIII.B below and Article V of the Plan.

| **Class Description** | **Treatment Under Plan** |
| --- | --- |
| Class-1 (Miscellaneous Secured Claims) | At the Debtors' option, each holder of an Allowed Miscellaneous Secured Claim will receive one of the following: (i) Reinstatement of Claimholder's rights; (ii) Cash equal to the value of the Miscellaneous Secured Claimholder's interest in the property of the Estate that secures such Allowed Miscellaneous Secured Claim; (iii) the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim; (iv) a note secured by such Claimholder's collateral (or, if approved by the Bankruptcy Court, a portion of such collateral and/or substitute collateral), which note shall satisfy the requirements set forth in Section 1129(b)(2)(A)(i) of the Bankruptcy Code; (v) such other treatment determined by the Debtors and held by the Bankruptcy Court as constituting the indubitable equivalent of the Claim, in accordance with Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; or (vi) such other treatment as may be agreed to in writing by the Debtors and Claimholder.<br><br>**Estimated Percentage Recovery:** 100% |
| Class-2A (GECC Claims) | GECC shall receive such treatment as described in the GE Master MOU discussed in greater detail in Section VII.D.6 below. |
| Class-2B (GEAE Claims) | GEAE shall receive such treatment as described in the GE Master MOU discussed in greater detail in Section VII.D.6 below. |
| Class-3 (ATSB Loan Claims) | ATSB Lenders shall receive such treatment as described in the ATSB Term Sheet discussed in greater detail in Section V.C.1. below.<br><br>**Estimated Amount of Claims:**[2] $708,000,000<br>**Estimated Percentage Recovery:** 100% |
| Class-4 (Airbus Claim) | Airbus shall receive the treatment described in <u>Exhibit A</u> to the Plan. |

---

[2] The "Estimated Amount of Claims" includes the aggregate amount of all Claims in each Class against all of the Debtors.

| Class Description | Treatment Under Plan |
|---|---|
| Class-5 (Other Priority Claims)[3] | Each holder of an Allowed Class-5 Other Priority Claim shall receive: (i) Cash equal to the amount of such Allowed Class-5 Other Priority Claim; or (ii) such other treatment as to which the Debtors (or Reorganized Debtors) and such Claimholder shall have agreed to in writing.<br><br>**Estimated Amount of Claims:** $500,000 - $1,500,000<br>**Estimated Percentage Recovery:** 100% |
| Class-6 (Aircraft Secured Claims) | For each Allowed Class-6 Aircraft Secured Claim, either: (i) the Allowed Class-6 Aircraft Secured Claim shall be Reinstated; or (ii) the Claimholder shall receive such other treatment as may be agreed to in writing by the Debtors and the Claimholder.<br><br>**Estimated Amount of Claims:** $1,750,000,000 - $2,000,000,000<br>**Estimated Percentage Recovery:** 100% |
| Class-7 (PBGC Claims) | PBGC shall receive: (i) Cash in the amount of $13,500,000; (ii) an unsecured promissory note in the principal amount of $10,000,000 issued by Reorganized USAI and guaranteed by Reorganized Group, bearing interest at a rate of 6.00% per annum payable annually in arrears, such promissory note to payable in a single installment on the seventh anniversary of the Effective Date; and (iii) seventy percent (70%) of the Unsecured Creditors Stock, or such other treatment as may be agreed to by the parties or ordered by the Bankruptcy Court. |
| Class-8 (General Unsecured Convenience Claims)[4] | Each holder of an Allowed General Unsecured Convenience Claim shall receive Cash equal to: (i) ten percent (10 %) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $50,000; or (ii) $5,000 if the amount of such Allowed Claim is greater than $50,000.<br><br>Any Claimholder receiving General Unsecured Convenience Class treatment in any Debtor's Chapter 11 Case waives any right such Claimholder might otherwise have to receive a distribution on account of any other General Unsecured Claim or General Unsecured Convenience Claim.<br><br>**Estimated Amount of Claims:** $22,250,000 - $61,500,000<br>**Estimated Percentage Recovery:** 10% - 6.8% |

---

[3] "Other Priority Claims" refers to priority claims other than Priority Tax Claims under Bankruptcy Code §502(a)(8). Priority Tax Claims are not classified, but pursuant to Section 2.2 of the Plan the holders of such Claims will receive payment over six years from the date of assessment or other treatment as may be agreed by the Debtors and the Claimholder.

[4] Estimated claims amounts represent the sum of docketed claims and scheduled liabilities. The estimated claim range is based on individual claims and scheduled liabilities below $50,000 at a 10% recovery and "opt-ins" up to $300,000. The low claims estimate assumes there are no "opt-ins" and the high estimate assumes 100% "opt-ins."

| **Class Description** | **Treatment Under Plan** |
|---|---|
| Class-9 (General Unsecured Claims) | Each holder of an Allowed General Unsecured Claim shall receive such Claimholder's Pro Rata share of thirty percent (30%) of the Unsecured Creditors Stock. If more than one of the Debtors is obligated for a General Unsecured Claim, the holder of such Claim shall be deemed to have a single Claim against all of the Debtors.<br><br>**Estimated Amount of Claims:** $408,500,000 – $1,241,500,000<br>**Estimated Percentage Recovery[5]:** 17.4% - 3.1% |
| Class-10 (Interests in the Debtors) | Holders of Interests in Group shall receive no distribution and their Interests shall be cancelled as of the Effective Date. Interests in the Debtors other than Group shall be Reinstated, in exchange for consideration provided by Group.<br><br>**Estimated Percentage Recovery:** 0% |

D.  **Claims Estimates**

On September 15, 2004, the Bankruptcy Court entered the Bar Date Order (Docket No. 128) approving the form and manner of the bar date notice, which was attached as Exhibit 1 to the Bar Date Order (the "Bar Date Notice"). Pursuant to the Bar Date Order and the Bar Date Notice, the general Bar Date for filing proofs of claim in these bankruptcy cases was February 3, 2005 and the Bar Date for governmental units was March 11, 2005. In addition to serving copies of the Bar Date Notice on all scheduled creditors, employees and other potential creditors, the Debtors published the Bar Date Notice in The New York Times (Docket No. 1188), The Wall Street Journal (Global) (Docket Nos. 1189) and USA Today (Domestic and International editions) (Docket No. 1190).

The Debtors' Claims Agent received approximately 5,000 timely filed proofs of claim as of the Bar Date totaling approximately $39.4 billion. The Debtors believe that many of these proofs of claim are invalid, duplicative or otherwise substantially overstated in amount. The Debtors are in the process of evaluating the proofs of claim and anticipate that they will file objections to many of them. Pursuant to the Bar Date Notice and the Bar Date Order, and consistent with Section 502(b)(9) of the Bankruptcy Code, any proofs of claim filed after the Bar Date are disallowed as untimely unless and until such proofs of claim are deemed timely filed by the Bankruptcy Court after notice and hearing.

The Debtors currently estimate that at the conclusion of the claims resolution process the aggregate amount of estimated and allowed General Unsecured Claims (inclusive of General Unsecured Convenience Claims) against the Debtors will be between $430,750,000 and $1,303,000,000. This is in addition to the PBGC Claims, Secured Claims, such as the ATSB Loan Claims, Aircraft Secured Claims, and Miscellaneous Secured Claims. The Debtors believe that certain claims that have been asserted are without merit and intend to object to such claims. There can be no assurance, however, that the Debtors will be successful in contesting any such claims, or that total Allowed General Unsecured Claims will be within this range.

There can be no assurance that these estimates are accurate. Moreover, Claims may be filed or identified during the Claims resolution process that may materially affect the foregoing Claims estimates.

---

[5] The estimated percentage recovery is based on the valuation of the shares issued under the Plan, as reflected in the valuation analysis attached as Appendix D. If the weighted average price paid for such shares by the Plan Investors were used rather than that valuation, the estimated percentage recovery would be approximately 2.7% to 8.2%.

E.  **Recommendation**

The Debtors believe that the Plan, including the Merger, provides the best recoveries possible for the Debtors' Claimholders and strongly recommend that, if you are entitled to vote, you vote to accept the Plan. The Debtors believe any alternative to confirmation of the Plan, such as liquidation, partial sale of assets, or attempts by another party-in-interest to file a plan, would result in lower recoveries for stakeholders, as well as significant delays, litigation and costs, and the loss of jobs by employees.

THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR THE HOLDERS OF CLAIMS AGAINST EACH OF THE DEBTORS AND THUS RECOMMEND THAT YOU VOTE TO <u>ACCEPT</u> THE PLAN.

**TABLE OF CONTENTS**

                                                                                                              **PAGE**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE BANKRUPTCY PLAN VOTING INSTRUCTIONS AND PROCEDURES | 1 |
| | A. Definitions | 1 |
| | B. Notice to Holders of Claims | 2 |
| | C. Solicitation Package | 2 |
| | D. General Voting Procedures, Ballots, and Voting Deadline | 3 |
| | E. Confirmation Hearing and Deadline for Objections to Confirmation | 4 |
| III. | THE US AIRWAYS – AMERICA WEST MERGER | 6 |
| | A. Overview of the Merger Agreement. | 6 |
| | B. America West and Its Business | 6 |
| | C. Structure and Terms of the Merger Agreement. | 8 |
| | D. Equity Investments from the Plan Investors | 20 |
| | E. The Proposed Stock Offering | 28 |
| | F. Combined Company Following the Merger | 29 |
| IV. | DESCRIPTION OF THE DEBTORS | 31 |
| | A. Overview of Business Operations | 31 |
| | B. Airline Industry and the Debtors' Position in the Marketplace | 33 |
| | C. Marketing Agreements with Other Airlines | 34 |
| | D. Industry Regulation and Airport Access | 34 |
| | E. Employees | 36 |
| | F. Aviation Fuel | 37 |
| | G. Airline Ticket Distribution | 37 |
| | H. Frequent Traveler Program | 38 |
| | I. Insurance | 38 |
| | J. Properties | 39 |
| | K. Financial Statements and Recent Financial Results | 41 |
| V. | PREPETITION CAPITAL STRUCTURE OF THE DEBTORS | 41 |
| | A. Group's Stock | 42 |
| | B. Group's Warrants | 42 |
| | C. Debt | 43 |
| VI. | CORPORATE STRUCTURE OF THE DEBTORS | 45 |
| | A. Current Corporate Structure | 45 |
| | B. Management of the Debtors | 46 |
| | C. Current Debtors Other Than Group and USAI | 47 |
| VII. | THE CHAPTER 11 CASES | 48 |
| | A. Events Leading Up to the Chapter 11 Cases | 48 |
| | B. Failure of Reorganization after Prior Bankruptcy | 49 |
| | C. Efforts to Implement the Transformation Plan | 50 |
| | D. Significant Events During the Bankruptcy Cases | 51 |
| VIII. | SUMMARY OF THE REORGANIZATION PLAN | 68 |
| | A. Overall Structure of the Plan | 68 |
| | B. Classification and Treatment of Claims and Interests | 69 |
| | C. Means of Plan Implementation | 83 |
| | D. Distributions | 90 |

|  |  | E. | Executory Contracts | 94 |
|  |  | F. | Miscellaneous Matters | 103 |
| IX. | CERTAIN RISK FACTORS TO BE CONSIDERED | | | 107 |
| X. | RESALE OF SECURITIES RECEIVED UNDER THE PLAN | | | 116 |
|  | A. | Issuance of New Equity | | 116 |
|  | B. | Subsequent Transfers of New Equity | | 117 |
| XI. | CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | | 118 |
|  | A. | United States Federal Income Tax Consequences to the Debtors | | 118 |
|  | B. | United States Federal Income Tax Consequences to Claimholders of the Debtors and Interestholders of Group | | 120 |
|  | C. | Importance of Obtaining Professional Tax Assistance | | 125 |
| XII. | FEASIBILITY OF THE PLAN, ACCEPTANCE OF THE PLAN AND THE BEST INTERESTS TEST | | | 125 |
|  | A. | Feasibility of the Plan | | 125 |
|  | B. | Acceptance of the Plan | | 126 |
|  | C. | Best Interests Test | | 126 |
|  | D. | Estimated Valuation of the Reorganized Debtors | | 127 |
|  | E. | Application of the Best Interests Test to the Liquidation Analysis and the Valuation of the Reorganized Debtors | | 127 |
|  | F. | Confirmation Without Acceptance of All Impaired Classes: The 'Cramdown' Alternative | | 128 |
|  | G. | Conditions to Confirmation and/or Consummation of the Plan | | 128 |
|  | H. | Waiver of Conditions to Confirmation and/or Consummation of the Plan | | 129 |
|  | I. | Retention of Jurisdiction | | 129 |
| XIII. | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN | | | 131 |
|  | A. | Continuation of the Bankruptcy Case | | 131 |
|  | B. | Alternative Plans of Reorganization | | 131 |
|  | C. | Liquidation Under Chapter 7 or Chapter 11 | | 132 |
| XIV. | VOTING REQUIREMENTS | | | 132 |
|  | A. | Parties in Interest Entitled to Vote | | 133 |
|  | B. | Classes Impaired Under the Plan | | 133 |
| XV. | CONCLUSION | | | 134 |
|  | A. | Hearing on and Objections to Confirmation | | 134 |
|  | B. | Recommendation | | 134 |

APPENDICES

| Appendix A | Joint Plan of Reorganization of US Airways, Inc. and Its Affiliated Debtors and Debtors-in-Possession |
| Appendix B | Liquidation Analysis |
| Appendix C | Reorganized Group Financial Projections |
| Appendix D | Reorganization Valuation Analysis |
| Appendix E | Group's Form 10-K for the fiscal year ended December 31, 2004 |
| Appendix F | Group's Form 10-Q for the quarterly period ended June 30, 2005 |
| Appendix G | America West's Form 10-K for the fiscal year ended June 30, 2005 |
| Appendix H | America West's Form 10-Q for the quarterly period ended June 30, 2005 |
| Appendix I | Merger Proxy Statement |
| Appendix J | Unaudited Pro Forma Condensed Combined Financial Statements of Reorganized Group |

**DISCLOSURE STATEMENT WITH RESPECT TO
JOINT PLAN OF REORGANIZATION OF
US AIRWAYS, INC. AND ITS AFFILIATED
DEBTORS AND DEBTORS-IN-POSSESSION**

**I.   INTRODUCTION**

US Airways, Inc., US Airways Group, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., and Material Services Company, Inc. submit this disclosure statement (the "Disclosure Statement") pursuant to Section 1125 of the United States Bankruptcy Code (the "Bankruptcy Code"), for use in the solicitation of votes on the Joint Plan of Reorganization of US Airways, Inc. and Its Affiliated Debtors and Debtors-in-Possession (the "Plan") dated August __, 2005, which was filed with the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria Division) (the "Court" and/or the "Bankruptcy Court"), a copy of which is attached as <u>Appendix A</u> hereto.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition history, significant events that have occurred during the Chapter 11 Cases and the anticipated organization, operations and financing of the Reorganized Debtors upon emergence of the Debtors from the Chapter 11 Cases. This Disclosure Statement also includes a description of America West's business, the Merger, and the synergies that the Debtors believe will result from the Merger. This Disclosure Statement also describes the terms and provisions of the Plan, including certain alternatives to the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the results and operations of the Debtors following emergence from bankruptcy and with the securities to be issued under the Plan and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims must follow for their votes to be counted.

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN DOCUMENTS RELATED TO THE PLAN, CERTAIN EVENTS IN THE CHAPTER 11 CASES AND CERTAIN FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT SUCH SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTORS DO NOT WARRANT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF THE STRUCTURE OF, CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS IN, AND IMPLEMENTATION OF THE PLAN. IT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO OR REFERRED TO THEREIN.

**II.    THE BANKRUPTCY PLAN VOTING INSTRUCTIONS AND PROCEDURES**

**A.     Definitions**

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan. In addition, all references in this Disclosure Statement to monetary figures refer to United States currency, unless otherwise expressly provided.

B.  **Notice to Holders of Claims**

This Disclosure Statement is being transmitted to certain Claimholders for the purpose of soliciting votes on the Plan and to others for informational purposes. The purpose of this Disclosure Statement is to provide adequate information to enable the holder of a Claim against the Debtors to make a reasonably informed decision with respect to the Plan prior to exercising the right to vote to accept or reject the Plan.

By order entered on _____, 2005, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind and in sufficient and adequate detail to enable Claimholders that are entitled to vote on the Plan to make an informed judgment with respect to acceptance or rejection of the Plan. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

ALL CLAIMHOLDERS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS APPENDICES CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR TO REJECT THE PLAN. This Disclosure Statement contains important information about the Plan, considerations pertinent to acceptance or rejection of the Plan, and developments concerning the Chapter 11 Cases.

THIS DISCLOSURE STATEMENT AND THE OTHER MATERIALS INCLUDED IN THE SOLICITATION PACKAGE ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. No solicitation of votes may be made except after distribution of this Disclosure Statement, and no person has been authorized to distribute any information concerning the Debtors or the Plan other than the information contained herein.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD-LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS. This Disclosure Statement contains projections of future performance as set forth in Appendix C attached hereto (the "Projections"). Other events may occur subsequent to the date hereof that may have a material impact on the information contained in this Disclosure Statement. Neither the Debtors nor the Reorganized Debtors intend to update the Projections for the purposes hereof. Thus, the Projections will not reflect the impact of any subsequent events not already accounted for in the assumptions underlying the Projections. Further, the Debtors do not anticipate that any amendments or supplements to this Disclosure Statement will be distributed to reflect such occurrences. Accordingly, the delivery of this Disclosure Statement does not imply that the information herein is correct or complete as of any time subsequent to the date hereof.

EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

C.  **Solicitation Package**

Accompanying this Disclosure Statement are, among other things, copies of (1) the Plan (Appendix A hereto); (2) the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the hearing to consider the confirmation of the Plan and related matters, and the time for filing objections to the confirmation of the Plan (the "Confirmation Hearing Notice"); and (3) if you are entitled to vote, one or more Ballots (and return envelopes) to be used by you in voting to accept or to reject the Plan.

D.  **General Voting Procedures, Ballots, and Voting Deadline**

On _____, 2005, the Bankruptcy Court issued an order (the "Solicitation Procedures Order"), among other things, approving this Disclosure Statement, setting voting procedures and scheduling the hearing on confirmation of the Plan. A copy of the Confirmation Hearing Notice is enclosed with this Disclosure Statement. The Confirmation Hearing Notice sets forth in detail, among other things, the voting deadlines and objection deadlines with respect to the Plan. The Confirmation Hearing Notice and the instructions attached to the Ballot should be read in connection with this Section of this Disclosure Statement.

If you are entitled to vote, after carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot(s), please indicate your acceptance or rejection of the Plan by checking the appropriate box on the enclosed Ballot(s). Please complete and sign your original Ballot(s) (copies will not be accepted) and return it in the envelope provided. You must provide all of the information requested by the appropriate Ballot(s). Failure to do so may result in the disqualification of your vote on such Ballot(s).

Each Ballot has been coded to reflect the Class of Claims it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

If you have any questions about (i) the procedure for voting your Claim or with respect to the packet of materials that you have received, (ii) the amount of your Claim, or (iii) if you wish to obtain, at your own expense, unless otherwise specifically required by Federal Rule of Bankruptcy Procedure 3017(d), an additional copy of the Plan, this Disclosure Statement or any appendices or exhibits to such documents, please contact:

Donlin, Recano & Company, Inc.
(Attn.: Voting and Distributions Dept.)
419 Park Avenue South, Suite 1206
New York, New York  10016
(212) 481-1411

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND ACTUALLY <u>RECEIVED</u> NO LATER THAN ___, 2005 AT ___ P.M. (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE") BY DONLIN, RECANO & COMPANY, INC. (US AIRWAYS BALLOT DEPARTMENT), AS FOLLOWS:

**If by regular mail:**

**Donlin, Recano & Company, Inc.
Re: US Airways, Inc., *et al*.
P.O. Box 2034, Murray Hill Station
New York, NY  10156-0701
Attn.: Voting Department**

**If by hand delivery or overnight courier:**

Donlin, Recano & Company, Inc.
Re: US Airways, Inc., *et al.*
419 Park Avenue South, Suite 1206
New York, NY 10016
Attn.: Voting Department

BALLOTS RECEIVED AFTER SUCH TIME WILL NOT BE COUNTED. BALLOTS SHOULD NOT BE DELIVERED DIRECTLY TO THE DEBTORS, THE COURT, THE CREDITORS' COMMITTEE OR COUNSEL TO THE DEBTORS OR THE CREDITORS' COMMITTEE.

FOR INFORMATION ABOUT WHICH CLASSES OF CLAIMHOLDERS AND INTERESTHOLDERS ARE IMPAIRED AND UNIMPAIRED UNDER THE PLAN, AND WHICH CLASSES ARE ENTITLED TO VOTE ON THE PLAN, PLEASE SEE SECTION XIV OF THIS DISCLOSURE STATEMENT.

E.    Confirmation Hearing and Deadline for Objections to Confirmation

Pursuant to Section 1128 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3017(c), the Court has scheduled the Confirmation Hearing for _____, 2005, at ____ a.m. (prevailing Eastern time) before the Honorable Stephen S. Mitchell, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of Virginia (Alexandria Division), 200 South Washington Street, Courtroom I, Alexandria, Virginia 22314. The hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the hearing or at any subsequently adjourned hearing. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed with the Clerk of the Bankruptcy Court and served so that they are RECEIVED on or before _____, 2005, at _:__ p.m. (prevailing Eastern time) by:

*Counsel for the Debtors*

Brian P. Leitch, Esq.
Daniel M. Lewis, Esq.
Michael J. Canning, Esq.
Neil M. Goodman, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004

and

Lawrence E. Rifken, Esq.
Douglas M. Foley, Esq.
David I. Swan, Esq.
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
McLean, Virginia 22102-4215

*United States Trustee*

    Dennis J. Early, Esq.
    The Office of the United States Trustee
    115 South Union Street
    Alexandria, Virginia 22314

*Counsel for the Creditors' Committee*

    Scott L. Hazan, Esq.
    Brett H. Miller, Esq.
    Otterbourg, Steindler, Houston & Rosen, P.C.
    230 Park Avenue
    New York, New York 10169

        and

    Malcolm M. Mitchell Jr., Esq.
    Melissa M. Nichols, Esq.
    Vorys, Sater, Seymour and Pease LLP
    277 South Washington Street, Suite 310
    Alexandria, Virginia 22314-3674

*Counsel for America West*

    Timothy R. Pohl, Esq.
    Chris L. Dickerson, Esq.
    Skadden, Arps, Slate, Meagher & Flom LLP
    333 West Wacker Drive
    Suite 2100
    Chicago, Illinois 60606

*Counsel for the ATSB*

    Brendan Collins, Esq.
    Andrea Horowitz Handel, Esq.
    U.S. Department of Justice
    Commercial Litigation Branch
    Civil Division
    P.O. Box 875
    Ben Franklin Station
    Washington, D.C. 20044

    - and –

    Steven J. Reisman, Esq.
    Andrew M. Thau, Esq.
    Curtis, Mallet-Prevost, Colt & Mosle LLP
    101 Park Avenue
    New York, NY 10178-0061.