*EXHIBIT G*

Bryan Krakauer
Guy S. Neal (VSB No. 36007)
Robert D. Keeling
Eric J. Pearson
SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL  60603
(312) 853-7000
         - and -
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel to Bank of America, N.A.
and Bank of America, N.A. (USA)*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: | Case Nos. 04-13819 |
|  | (Jointly Administered) |
|  | Chapter 11 |
| US AIRWAYS, INC., et al.,[1] | Hon. Stephen S. Mitchell |

**LIMITED OBJECTION OF BANK OF AMERICA, N.A. AND BANK OF AMERICA, N.A. (USA) TO CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF US AIRWAYS, INC. AND ITS AFFILIATED DEBTORS-IN-POSSESSION**

Bank of America, N.A. and Bank of America, N.A. (USA) (individually and collectively, "Bank of America" or the "Bank"), hereby submit this limited objection (the "Objection") to confirmation of the Joint Plan of Reorganization of US Airways, Inc. and Its Affiliated Debtors-In-Possession dated as of August 9, 2005 (the "Plan").[2] Bank of America is presently an administrative and secured creditor of Debtor US Airways, Inc. ("US Airways")

---

[1] The Debtors are the following entities: US Airways, Inc., US Airways Group, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc. and Material Services Company, Inc. (collectively, the "Debtors").
[2] Capitalized terms used but not defined in the Objection shall have the meanings ascribed to them in the Plan.

pursuant to an assumed contract whereby Bank of America, among other things, issues credit cards which provide card holders with miles in US Airways' Dividend Miles program and also processes charges by US Airways customers who purchase air travel tickets through Visa and MasterCard card products. Bank of America also, independent of its relationship with US Airways, issues credit cards which provide bonus miles to holders of America West Airlines, Inc. ("America West") co-branded cards. Bank of America submits this Objection in its capacities as card issuer and processor, and objects to the Plan only in so far as the Plan modifies Bank of America's legal rights in connection with its assumed card agreement with US Airways or in connection with Bank of America's independent contract with America West. In support thereof, Bank of America states as follows:

## BACKGROUND

1.  Bank of America and US Airways are parties to a Co-Branded Card and Merchant Services Agreement dated May 20, 2003, as amended (the "Bank of America Card Agreement") which contains two primary components: (1) a co-branded or affinity card agreement through which cardholders of credit cards issued by Bank of America earn miles under US Airways' Dividend Miles program when they purchase products and services using the co-branded credit card; and (2) a credit card processing agreement through which Bank of America and its affiliates provide processing and merchant services for credit card and debit card transactions for Visa and MasterCard cards issued under the authority of certain entities.

2.  These card services are critical to US Airways' successful operations. For example, last year US Airways represented to this Court that the "co-branded card provisions of the [Bank of America Card] Agreement are essential to maintaining the Debtors' goodwill and customer loyalty." Motion to Assume the Bank of America Card Agreement (Docket No. 557,

October 21, 2004) (the "Assumption Motion"), at ¶ 21. In US Airways' own words: "as the largest source of the Debtors' revenues, credit card sales are an absolutely essential component of the Debtors' business. It will be impossible for the Debtors to continue in operation and to reorganize if the revenues that it regularly receives from Bank of America as a result of Visa and MasterCard sales for tickets and other services are not available." Id.

    3.  At the outset of this chapter 11 case, US Airways sought to continue, post-petition, Bank of America's services as its card merchant processor and issuer of co-branded credit cards. This was not without risk to the Bank. Continuance of the merchant processing services, in particular, exposes the Bank to potential charge backs by US Airways customers seeking credit card refunds for unused tickets if this reorganization is not successful and US Airways were to cease flying. Similarly, continuance of the co-branded card, while important to the Bank, potentially exposes Bank of America to likely intense customer dissatisfaction if US Airways were to cease flying and customers were thereby unable to use their earned Dividend Miles. But, as the Debtors have explained to the Court, these services were necessary to their operations.[3]

    4.  To respond to the Debtors' needs, early in this chapter 11 case Bank of America agreed to provide US Airways, as a debtor-in-possession, with merchant processing and to continue purchasing Dividend Miles on substantially the same economic terms as existed prior to US Airways' chapter 11 filing. By the Debtors' motion, and with Bank of America's consent, US Airways assumed the Bank of America Card Agreement pursuant to a Court order entered on

---

[3] Public reports have recently stated that Delta Airlines may be forced to terminate its operations because of Delta's difficulty in reaching an acceptable agreement with its credit card processor. See Delta to Sell a Unit to Raise Cash – Airline's $425 Million Deal Won't Be Enough to Secure Credit-Card Processing Pact, Wall St. J., Aug. 16, 2005, at A3 (stating that Delta's agreement allowing it to accept credit cards from Visa International Inc. and MasterCard International Inc. expires shortly and that "Delta would be all but crippled if passengers were unable to buy tickets using those credit cards").

3

November 22, 2004 [Docket No. 855] (the "Assumption Order"). Since the Bank of America Card Agreement was assumed and the Assumption Order entered, Bank of America has processed the Debtors' domestic Visa and MasterCard credit card transactions and has purchased Dividend Miles to issue to the Bank's customers.[4] These services and revenues critically benefited the Debtors in continuing their business operations and ultimately in being able to propose their current Plan.

5. Bank of America's post-petition relationship with US Airways has been grounded in the firm understanding, based upon the Assumption Order and applicable law, that any and all claims of Bank of America arising under or related to the Bank of America Card Agreement would be accorded administrative and secured status and *would not be subject to discharge or modification in this bankruptcy case*. See, e.g. Assumption Order, at ¶ 4-6 (providing that Bank of America's rights and interests under the agreement are enforceable and afforded administrative expense priority and stating that the "Bank is authorized and entitled to exercise any and all rights and remedies it may have arising under the Amended Agreement"); see also 11 U.S.C 1129(a)(9) (a plan may only be confirmed where administrative creditors are to be paid in full, unless they agree to a different treatment of their claims).

6. The term of the Bank of America Card Agreement, as assumed, presently continues for a period subsequent to the proposed effective date of the Debtors' Plan. Pursuant to the schedules recently filed by the Debtor in connection with its Plan, US Airways has confirmed, as it must, that the Bank of America Card Agreement is intended to continue in effect post-confirmation as an assumed agreement. See Exhibit U-3 to Plan, Contract Id Nos. 646 and

---

[4] The economic and other specific terms of the Bank of America Card Agreement, while obviously know to US Airways and the Bank, are confidential in respect of other persons. Similar confidentiality exists with respect to the America West Card Agreement between the Bank and America West.

648 (Docket No. 2961, August 29, 2005) (listing assumed contracts with Bank of America regarding "Dividend Miles" and "Domestic Visa MasterCard Processing").

7.   On May 19, 2005, America West Holdings Corporation ("America West Holdings"), US Airways Group, Inc. ("US Airways Group") and Barbell Acquisition Corp., a wholly owned subsidiary of US Airways Group, entered into an Agreement and Plan of Merger (the "Merger Agreement") which provides that, upon the terms and subject to the conditions set forth in the Merger Agreement, Barbell Acquisition Corp. will merge with and into America West Holdings, with America West Holdings continuing as a wholly owned subsidiary of US Airways Group. See Plan, at Exhibit M.

8.   Separate of its relationship with US Airways, Bank of America and its affiliates also happen to be parties to a co-branded credit card agreement with America West (as amended, the "America West Card Agreement"). The America West Card Agreement itself is not before this Court but it is pertinent to this Objection. The broad exculpation and associated release and injunction provisions currently contained in Article 11 of the Plan seek to provide independent protection to America West. Therefore, the Plan could be read to modify the Bank's rights in connection with the separate America West Card Agreement.

**OBJECTION**

9.   Bank of America respectfully submits that it is entitled to preserve and retain all of its rights, claims and interests under and related to the assumed Bank of America Card Agreement and its independent agreement with America West. The Bank objects to the confirmation of the Plan to the extent that the Plan's broadly drafted exculpation and injunction provisions alter Bank of America's rights arising from or related to the Bank of America Card

Agreement and/or the America West Card Agreement. There is no legal or factual justification for the Plan to remove, modify or impair Bank of America's rights in connection with these agreements.

<u>The Third Party Exculpation and Release Provisions</u>

10. Bank of America objects, in particular, to the Exculpation and Limitation of Liability provision of Article 11.8 of the Plan, which contains a third party exculpation, to the extent it could be read to alter Bank of America's rights. Article 11.8 of the Plan provides, in relevant part:

> **Exculpation and Limitation of Liability.** Except as otherwise specifically provided in this Plan, including Section 11.5, the Debtors, the Reorganized Debtors, the Creditors' Committee, the members of the Creditors' Committee in their capacities as such, the Retiree Committee, the members of the Retiree Committee in their capacities as such, America West, the Plan Investors, the ATSB Lenders (solely in such capacities), GECC and GEAE, any of such parties' respective present or former affiliates, members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, **shall not have or incur, and are hereby released from**, any claim, obligation, Cause of Action, or liability to one another or to any Claimholder or Interestholder, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Cases, negotiation and filing of the Plan, filing the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, recklessness or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Plan at § 11.8, p. 70-71 (emphasis supplied) (the "<u>Third Party Exculpation</u>").

11. The Third Party Exculpation provisions, as they pertain to Bank of America, are problematic in a number of respects. First, they purport to "release", without Bank of America's consent, rights and claims that Bank of America holds or may hold. This "release"

would become effective even though Bank of America, in its credit card capacity, is not voting on the Plan. This can be compared to other portions of the Plan which provide that the third party "release" shall only be binding on creditors who vote in favor of the Plan.[5] Second, these provisions purport to grant the Debtors and the Reorganized Debtors relief from the legal standard otherwise applicable to them. Despite Bank of America's position as a counterparty to an assumed contract with administrative priority and post-petition secured claims, these provisions improperly modify existing legal duties owed to Bank of America pursuant to the Assumption Order and applicable law in connection with the assumed Bank of America Card Agreement. Third, these provisions could potentially modify the legal obligations that non-Debtor third parties, such as America West[6], have to Bank of America.[7] For example, non-Debtor third parties may assert that the Bank's claims in connection with both the Bank of America Card Agreement and the America West Card Agreement are released under the Plan to the extent such claims involve actions that are somehow related to matters such as the "confirmation", "consummation", or "administration" of the Plan set forth in, and purportedly released by, the Plan's Third Party Exculpation clause.

---

[5] Article 11.5 of the Plan contains a release provision (the "Third Party Release") which releases certain non-Debtors contained in the definition of "Released Party." However, the releases contained in the Third Party Release are solely provided by "each Person that votes to accept the Plan." Plan at § 11.8, p. 70. Bank of America does request confirmation that a vote on the Plan by Bank of America (or any of its related affiliates) in another capacity would not act to alter or release any of Bank of America's rights in its capacity as a credit card issuer and processor in connection with the Bank of America Card Agreement or the America West Card Agreement. Otherwise, Bank of America hereby withdraws any such vote.

[6] America West is defined in the Plan as "America West Holdings Corporation," but references to affiliates, as contained in the Third Party Exculpation and the definition of Released Party, would also bring other entities (such as America West Airlines, Inc. or any other America West entities) within the Third Party Exculpation or the Third Party Release.

[7] Bank of America, however, does not object to the exculpation protection provided to the Official Creditors Committee and the Official Retiree Committee and their professionals and members in such capacities.

### The Third Party Exculpation is Effectively a Third Party Release and is Not Permissible Under Applicable Authority

12. Applicable law does not permit the Debtors to alter Bank of America's rights in connection with the Bank of America Card Agreement and the America West Card Agreement through the Third Party Exculpation.[8] Any such modification is flatly contrary to the Bank's rights as an administrative creditor pursuant to the Assumption Order, flatly contrary to the Bank's independent contract with America West, and not in any respect supported by applicable law.

13. There is no statutory basis for the extraordinary relief of releasing claims against non-debtor entities. Bankruptcy courts have typically declined to provide third party releases under their general equitable powers. In particular, the cases are uniform in stating that third party releases are not appropriate absent consent or "extraordinary circumstances," neither of which are applicable to the potential release of Bank of America's claims. See In re Metromedia Fiber Network, Inc., 416 F.3d 136, 142 (2d Cir. 2005) ("No case has tolerated nondebtor releases absent a finding of circumstances that may be characterized as unique.").[9]

14. The principles precluding third party releases equally apply to prohibit exculpation provisions which act as third party releases or which modify the legal standard applicable to the debtor and third parties, such as the Third Party Exculpation contained in the Plan. See In re Genesis Health Ventures, Inc., 266 B.R. 591, 607-08 (Bankr. D. Del. 2001) (rejecting a plan provision exculpating prepetition lenders that acted to release the claims of third parties, after citing the Fourth Circuit's decision in A.H. Robins and finding that the success of

---

[8] Article 11.10 of the Plan is also improper to the extent that it seeks to create an injunction against Bank of America (in its capacity as credit card issuer and processor) with respect to the Third Party Exculpation.

[9] Several courts addressing the third party release issue have refused to provide third party releases under any circumstances. The Ninth and Tenth Circuits have held that third party releases are prohibited by the Bankruptcy Code, except in the asbestos context. See Resorts Int'l, Inc. v. Lowenschuss, 67 F.3d 1394, 1401-02, 1402 n. 6 (9th Cir. 1995); Landsing Diversified Props. II v. First Nat'l Bank and Trust Co. of Tulsa, 922 F.2d 592, 600-02 (10th Cir. 1990).

the debtor's reorganization did not hinge on the exculpation provision and that the provision was not fair to third parties).[10] Moreover, the Third Party Exculpation provisions contained in Article 11.8 of the present Plan appear even more onerous and overbroad than the exculpation provisions that were rejected in Genesis Health (see id. at 605), as the Third Party Exculpation provisions in the present Plan provide directly that certain third parties "are hereby released." Plan at § 11.8, p. 70. The language in the present Plan thus directly implicates the case law which disfavors third-party releases. Under such case law, the rights of the Bank which relate to the Bank of America Card Agreement or the America West Card Agreement may not be released.

The Circumstances of the Debtors' Case Do Not Justify the Release of
Bank of America's Credit Card Related Claims through the Third Party Exculpation

15.     Bank of America has discovered no case where a Court, when confronted with an objection, has allowed the release of administrative claims, such as the administrative claims that Bank of America obtained upon the assumption of the Bank of America Card Agreement. Given this complete lack of legal support, and given the clear dictates of the Assumption Order and applicable law providing that an administrative creditor's rights must be retained, and be enforceable in full under a plan of reorganization, the Bank's Objection must be upheld on this basis alone. See In re Digital Impact Inc., 223 B.R. 1, 6-7 (Bankr. N.D. Okla. 1998) (denying confirmation of a plan which sought to impair the rights of administrative

---

[10] Courts have approved exculpation provisions that do "not affect the liability of third parties" but which rather simply set forth the appropriate standard of liability for certain official committees created pursuant to the Bankruptcy Code. In re PWS Holding Corp., 228 F.3d 224, 247 (3d Cir. 2000). However, this exception does not apply where "[r]ather than address a standard of liability for releasees in the context of performing services to further a Chapter 11 debtor's reorganization efforts, the [exculpation provision] appears to offer [non-debtors] a release of liability for causes that might be asserted by third party creditors or equity security holders against them in connection with their role as creditors in the case." In re Genesis Health, 266 B.R. at 607. As noted above, the Bank does not object to an exculpation provision for the benefit of the official committees in these cases.

9

creditors and noting that administrative claimants may only waive that protection by individually and affirmatively agreeing to any such lesser treatment).

16.  Even if one did not consider the Bank's particular administrative status pursuant to the Assumption Order, applicable law makes clear that the Bank's rights may not be modified by the Plan. The Fourth Circuit, in <u>Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)</u>, 880 F.2d 694 (4th Cir. 1989) ("<u>A.H. Robins</u>"), addressed the propriety of third party plan releases, in the mass tort framework, and is an example of the extraordinary and limited circumstances required to permit such releases. See <u>In re Dow Corning Corp.</u>, 280 F.3d 648, 658 (6th Cir. 2002) (citing <u>A.H. Robins</u> as an example of the "unusual circumstances" required to approve an injunction against non-consenting creditors). The <u>A.H. Robins</u> Court approved a plan containing provisions which released the claims of objecting third parties, in the unique context of a global settlement of massive tort litigation, only after finding that the plan had provided a chance for all objecting parties to recover in full through a separate settlement fund and that the entire reorganization hinged on the establishment of such releases. 880 F.2d at 702.

17.  The Debtors' circumstances are readily distinguishable from the factors found in <u>A.H. Robins</u> which justified the release of non-debtor entities.[11] First, the Debtors' Plan does not contemplate the global settlement of major tort litigation as was central to the resolution of <u>A.H. Robins</u>. See <u>In re Continental Airlines</u>, 203 F.3d at 212-13 (explaining that the central focus of <u>A.H. Robins</u>, and other cases that have allowed third party releases, was the "global settlement of massive liabilities against ... debtors and co-liable parties"); <u>In re Genesis Health</u>, 266 B.R. at 603 (noting that the <u>A.H. Robins</u> injunction was issued in the context of a mass

---

[11] Courts have often cited to the same factors that were present in <u>A.H. Robins</u> in considering the appropriateness of a non-debtor release. See <u>In re Continental Airlines</u>, 203 F.3d 203, 217 n.17 (3d Cir. 2000) (stating that the key considerations include "whether the injunction is essential to reorganization ... and whether the plan pays all or substantially all of the affected parties' claims").

litigation case). The A.H. Robins holding must be viewed in the limited context of a mass tort situation and is not applicable to the Debtors' general commercial case which does not contain the same concern of massive potential litigation that may result in continuing claims against the Debtors.

18. Also, unlike the objectors in A.H. Robins, Bank of America has not elected to opt-out of or forgo an opportunity to have its claims fully satisfied. The Debtors' proposed Plan instead impairs Bank of America's claims in connection with the Bank of America Card Agreement and the America West Card Agreement, and thus, by definition, leaves the Bank less than whole. The non-debtor injunction was only permitted in A.H. Robins where the enjoined claims were to have been "'channeled' to a settlement fund rather than extinguished." See In re Metromedia Fiber Network, Inc., 416 F.3d at 141. This is not true in the present Plan where Bank of America's claims against the third parties are not channeled to another source; they are instead to be irrevocably extinguished and released by the Third Party Exculpation.

19. Additionally, modification of Bank of America's rights with respect to the Bank of America Card Agreement and the America West Card Agreement is not central and essential to the Debtors' Plan. See A.H. Robins, 880 F.2d at 702 (finding the third party release appropriate only after concluding that the entire reorganization hinged on the debtor being free from the claims that were being released); In re Metromedia Fiber Network, Inc., 416 F.3d at 143. The Debtors have previously conceded that the benefits provided by Bank of America under the Bank of America Card Agreement are essential, rather than an obstacle, to their reorganization, and have already represented to the Court in the Assumption Motion that the they are prepared and able to abide by the terms of the agreement. It is simply inconceivable that the

release of Bank of America's rights against third parties relating to the Bank of America Card Agreement or the America West Card Agreement is central to the Debtors' reorganization, let alone that the Plan "hinges" upon such releases.[12] See also In re Dow Corning, 280 F.3d at 658 (holding that the "unusual circumstances" test was not met where the bankruptcy court's findings did not discuss facts "related specifically to the various released parties, but merely made sweeping statements as to all released parties collectively"); In re Transit Group, 286 B.R. 811, 820 (Bankr. M.D. Fla. 2002) (rejecting a release for a debtor's non-debtor affiliate and noting that the affiliate was attempting "to receive the benefit of [the debtor's] plan of reorganization without encountering all the related scrutiny and efforts a Chapter 11 case requires. Rarely, if ever, can one envision a case where a related affiliate of the debtor is entitled to a non-debtor release.").

20.    Finally, the application of the Third Party Exculpation to Bank of America's credit card claims is also inconsistent with the general principle that the hallmark of any third party release is fairness. See A.H Robins, 880 F.2d at 701 (noting that the third party injunction would only impact creditors that opted out of a previous settlement); see also In re Continental Airlines, 203 F.3d at 214 (noting that the hallmarks of third party releases are "fairness, necessity to the reorganization, and specific factual findings to support these conclusions"). Far from being fair, the Third Party Exculpation is directly contrary to the Assumption Order which was specifically bargained for by Bank of America as well as the Bank's rights as an administrative and secured creditor. In this case, there is nothing "fair" about depriving Bank of America of claims that it may have in the event that the Debtor or third parties

---

[12] No provisions of the Merger Agreement itself, for example, specifically require the release of Bank of America's claims or potential claims against America West as a condition to the merger.

have acted, post-petition, to violate the Bank's rights under the assumed Bank of America Card Agreement or the America West Card Agreement.

21.     The Second Circuit's decision in In re Metromedia Fiber Network, Inc. is the most recent ruling on third party releases and thoroughly summarizes the present case law respecting such releases. The Court reiterated the point that non-debtor releases are strongly disfavored in bankruptcy. See In re Metromedia Fiber Network, Inc., 416 F.3d at 141. The Second Circuit also noted that the only statutory authorization for non-debtor releases is contained in section 524(g) of the Bankruptcy Code, which is specifically limited to asbestos cases, and that a third party release is a device that, if not avoided, lends itself to abuse. Id. at 142. Finally, the Second Circuit pointed out that the consideration of third party releases is not a matter of attempting to balance "factors and prongs", but rather must be viewed in the context that "[n]o case has tolerated nondebtor releases absent a finding of circumstances that may be characterized as unique." Id. The Debtors can put forth no rationale for applying the Third Party Exculpation to Bank of America, and the rare and unique circumstances to warrant such release are clearly not present in this case.

**PROPOSED SOLUTION**

22.     As noted at the outset of this pleading, Bank of America's concerns with respect to the Plan are limited to the issue of the preservation of the Bank's rights in connection with the Bank of America Card Agreement and the America West Card Agreement. Bank of America has no interest in stopping or suspending the Debtors' Plan process provided these concerns are appropriately addressed. Therefore, the Bank requests that the Court resolve this Objection by including in any order confirming the Plan the following provision to clarify that

the Third Party Exculpation and related provisions do not apply to Bank of America, in its capacity as credit issuer and processor:

> Nothing in the Plan, including Section 11.8 thereof, or this Confirmation Order, is intended to, or shall, release, modify, impair or enjoin any rights or claims held by or owed to Bank of America, N.A. (USA) or Bank of America, N.A. (or any of their affiliated entities) in any manner arising from or related to: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, assumed pursuant to the Court order entered on November 22, 2004 [Docket No. 855] or (ii) the Co-Branded Credit Card Agreement, dated January 1, 2001, between Bank of America, N.A. (USA) and America West Airlines, Inc (as amended).

23.     This provision may be inserted in the Confirmation Order without the need for re-solicitation or further hearing.  Even if such a provision in the Confirmation Order were deemed to be a modification of the Plan, the Debtor has reserved the right, subject to the consent of America West, to make such modifications prior to the Confirmation Hearing.  Plan at § 14.2, p. 76.  Further, re-solicitation of the Plan is not required due to the fact that these provisions do not adversely affect other parties in interest who have voted on the Plan.  See 11 U.S.C. § 1127.

WHEREFORE, Bank of America, hereby respectfully requests that the Court require that any order confirming the Plan provide that the exculpation and release provisions contained in the Plan do not release, modify, impair or enjoin any rights or claims of Bank of America related to the Bank of America Card Agreement or the America West Card Agreement and grant such other relief as the Court may deem proper.

Dated: September 10, 2005

**SIDLEY AUSTIN BROWN & WOOD LLP**

/s/ Bryan Krakauer
Bryan Krakauer
Eric J. Pearson
Bank One Plaza
10 South Dearborn Street
Chicago, IL  60603
(312) 853-7000

- and -

/s/ Guy S. Neal
Guy S. Neal (VSB No. 36007)
Robert D. Keeling
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel to Bank of America, N.A.
and Bank of America, N.A. (USA)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the LIMITED OBJECTION OF BANK OF AMERICA, N.A. AND BANK OF AMERICA, N.A. (USA) TO CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF US AIRWAYS, INC. AND ITS AFFILIATED DEBTORS-IN-POSSSESSION was served via e-mail and regular first class mail on the 10th day of September, 2005 on the following parties:

McGUIREWOODS, LLP
Lawrence E. Rifken, Esq. (VSB No. 29037)
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215

McGUIREWOODS LLP
Douglas M. Foley, Esq. (VSB No. 34364)
101 West Main Street, Stuie 9000
Norfolk, Virginia 23510-1655

ARNOLD & PORTER LLP
Brian Leitch, Esq.
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202

ARNOLD & PORTER LLP
Neil M. Goodman, Esq.
Daniel M. Lewis, Esq.
555 Twelfth Street
Washington, DC 20004

Office of the United States Trustee
Dennis J. Early, Esq.
115 South Union Street
Alexandria, Virginia 22314

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Scott L. Hazan, Esq.
Brett H. Miller, Esq.
230 Park Avenue
New York, New York 10169

VORYS SATER SEYMOUR
& PEASE LLP
Malcolm M. Mitchell, Jr., Esq.
277 South Washington Street
Suite 310
Alexandria, Virginia 22314-3674

CURTIS MALLET –PREVOST
COLT & MOSLE LLP
Steven J. Reisman, Esq.
101 Park Avenue
New York, New York 10178-0061

I further certify that a true and correct copy of the above and foregoing document was served via Federal Express on the 10th day of September, 2005 on the following parties:

America West Holding Corporation
Attn: General Counsel
111 West Rio Salado Parkway
Tempe, Arizona 85281

Eastshore Aviation, LLC
Christine Deister
W6390 Challenger Drive, Suite 203
Appleton, Wisconsin 54924

SKADDEN ARPS SLATE
MEAGHER & FLOM LLP
Timothy R. Pohl, Esq.
Chris L. Dickerson, Esq.
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

ACE Aviation Holdings, Inc.
Attn: Chief Legal Officer
5100 de Maisonneuve Boulevard West
Montreal, Quebec H4A 3T2
Canada

WACHTELL LIPTON ROSEN & KATZ
Mark Gordon, Esq.
51 West 52nd Street
New York, New York 10019

Par Investment Partners, L.P.
Edward L. Shapiro
One Inernational Place, Suite 2401
Boston, Massachusetts 02110

GOODWIN PROCTER LLP
Jeffrey C. Hadden, Esq.
Exchange Place
Boston, Massachusetts 02109

Peninsula Capital Advisors, LLC
Ted Weschler
404B East Main Street
Charlottesville, Virginia 22902

REINHART BOERNER
VAN DUEREN S.C.
Peter C. Blain, Esq.
1000 North Water Street, Suite 1900
Milwaukee, Wisconsin 53202

Wellington Management Company
Attn.: Legal Services Department
75 State Street
Boston, Massachusetts 02109

Tudor Investment Corp.
Steven N. Waldman
1275 King Street
Greenwich, Connecticut 06831

BOIES SCHILLER &
FLEXNER, LLP
George Y. Liu, Esq.
570 Lexington Avenue, 16th Floor
New York, New York 10022

Air Transportation Stabilization Board
Attn.: Mark R. Dayton,
Executive Director
1120 Vermont Avenue, N.W.
Suite 970
Washington, D.C. 20005

U.S. Department of Justice
Attn.: Brendan Collins, Esq.
Andrea Horowitz, Esq.
Commercial Litigation Branch
Civil Division
P. O. Box 875
Ben Franklin Station
Washington, D.C. 20044


　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　Sangeeta Joshi