IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BANK OF AMERICA, N.A. (USA),<br><br>                  Plaintiff,<br><br>v.<br><br>US AIRWAYS, INC., US AIRWAYS GROUP, INC.,<br>and AMERICA WEST AIRLINES, INC.,<br><br>                  Defendants,<br><br>and<br><br>JUNIPER BANK,<br><br>                  Intervenor. | C.A. No. 05-793 |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS US AIRWAYS, INC.,
US AIRWAYS GROUP, INC. AND AMERICA WEST AIRLINES, INC.'S
<u>MOTION TO TRANSFER TO THE EASTERN DISTRICT OF VIRGINIA</u>**

OF COUNSEL:

Mark H. Epstein
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100

DATED: November 16, 2005

David C. McBride (#408)
Martin S. Lessner (#3109)
Christian Douglas Wright (#3554)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for Defendants US Airways, Inc.,
US Airways Group, Inc. and America West
Airlines, Inc.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND .........................................2

III. ARGUMENT .........................................................................................................6

    A.    There is a Strong Presumption That Matters Relating to or Arising In an Ongoing Bankruptcy Case Should Be Transferred to the Bankruptcy Court Presiding Over That Case..................................................7

    B.    The Bankruptcy Court in the Eastern District of Virginia is in the Best Position to Resolve the Numerous Bankruptcy-Related Matters Raised by the Claims Asserted in this Action ..............................................9

    C.    Delaware Has No Interest In, and No Connection To, The Claims Asserted in this Action..........................................................................13

IV. CONCLUSION ...................................................................................................14

## TABLE OF AUTHORITIES

Page

**CASES**

*Butcher v. Lawyers Title Ins. Corp.*,
   46 B.R. 109 (Bankr. N.D. Ga. 1985) .................................................................... 9

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995) ............................................................................................. 7

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*,
   550 F.2d 47 (2d Cir. 1976) ................................................................................... 7

*In re 1606 New Hampshire Ave. Assoc.*,
   85 B.R. 298 (Bankr. E.D. Pa. 1982) ..................................................................... 8

*In re Best Reception Sys., Inc.*,
   220 B.R. 932 (Bankr. E.D. Tenn. 1998) ............................................................. 10

*In re G.I Industries, Inc.*,
   204 F.3d 1276 (9th Cir. 2000) ............................................................................ 10

*In re N. Parent, Inc. v. Cotter & Co.*,
   221 B.R. 609 (Bankr. D. Mass. 1998) .................................................................. 8

*In re U.S. Brass Corp.*,
   301 F.3d 296 (5th Cir. 2002) .............................................................................. 12

*In re Wedlo, Inc.*,
   212 B.R. 678 (Bankr. M.D. Ala. 1996) ................................................................ 8

*Kinney Systems, Inc. v. Intermet Realty Partnership*,
   75 B.R. 346 (Bankr. E.D. Pa. 1987) ..................................................................... 8

*Kotlicky v. Belford*,
   64 B.R. 679 (N.D. Ill. 1986) ......................................................................... 7, 8, 9

*Maritime Elec Co., Inc. v. United Jersey Bank*,
   959 F.2d 1194 (3d Cir. 1991) ............................................................................... 9

*Stamm v. Rapco Foam, Inc.*,
   21 B.R. 715 (Bankr. W.D. Pa. 1982) ................................................................ 7, 8

## **STATUTES**

11 U.S.C. § 1142 .......................................................................................................................... 11

28 U.S.C. § 1334 ......................................................................................................... 1, 6, 7, 9, 11

28 U.S.C. §1404(a) ........................................................................................................................ 8

28 U.S.C. § 1412 ........................................................................................................................... 8

28 U.S.C. §§ 1452(a) ................................................................................................................. 1, 6

## I. INTRODUCTION

Defendants US Airways, Inc., US Airways Group, Inc., and America West Airlines ("Defendants") submit this opening brief in support of their motion to transfer venue of this action to the United States District Court for the Eastern District of Virginia, Alexandria Division, where Bankruptcy Court proceedings concerning the reorganization of US Airways, Inc. are pending before the Honorable Stephen S. Mitchell. *See In re US Airways, Inc., et al.*, E.D. Va. No. 04-13819-SSM ("*US Airways* bankruptcy").

Plaintiff Bank of America, N.A. (USA) ("Plaintiff" or "Bank of America") filed this action in the Delaware Court of Chancery, seeking to enjoin the performance of a contract that formed an important part of the Plan of Reorganization approved by Judge Mitchell as part of the *US Airways* bankruptcy. The approval of that Plan of Reorganization was the culmination of a year of proceedings in which Judge Mitchell presided over an extraordinarily large and complex bankruptcy. Bank of America's claims filed in the Court of Chancery are functionally identical to, and are subsumed by, Administrative Claims filed by Bank of America and its affiliates in the *US Airways* bankruptcy – claims that Defendants fully intend to contest in the Bankruptcy Court – and the injunction it seeks here is inextricably intertwined with the issues and proceedings giving rise to Judge Mitchell's Order Confirming the Plan of Reorganization.

By contrast, this action has no connection with the State of Delaware, other than the fact that Defendants are incorporated in this State and intervenor Juniper Bank has an office there. Because this action should be heard by the Bankruptcy Court that is presiding over the *US Airways* bankruptcy, Defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1452(a) and 1334(b), and now seek a transfer of this action to the Eastern District of Virginia,

where it can be heard and resolved by the judge who is most familiar with the events leading up to and giving rise to the issues and claims in this litigation.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In May 2003, Bank of America and US Airways, Inc. entered into a "Co-Branded Card and Merchant Services Agreement" (the "BofA/US Airways Agreement" or the "Agreement"), under which Bank of America was authorized to issue co-branded credit cards that allowed consumers to earn US Airways frequent flier miles. Although the Agreement grants certain exclusivity rights to Bank of America with respect to the co-branded card program generally, the Agreement specifically provides that "[i]n the event of a merger involving US Airways or any of its Affiliates and a third party that has a contract with a Card issuer other than [Plaintiff] to issue a Competing Card, the US Airways Surviving Entity may provide the [Plaintiff] with one of the two written notices described below." One of those notices is a "Two-Program Notice," under which the "US Airways Surviving Entity" may authorize *both* the Bank of America card *and* the "Competing Card." If US Airways does not provide a notice within the 90-day prescribed time frame, then the "Two-Program" structure is deemed to apply.

On September 12, 2004, US Airways, Inc., US Airways Group, Inc (US Airways, Inc.'s parent company), and other affiliates (collectively "US Airways") filed a Chapter 11 petition initiating the *US Airways* bankruptcy in the Eastern District of Virginia. The bankruptcy case was assigned to the Honorable Stephen S. Mitchell, who has presided over the proceeding from its inception. Early in the bankruptcy proceedings, US Airways assumed the BofA/US Airways Contract. On May 19, 2005, US Airways Group, Inc. and one of its subsidiaries entered into a formal "Agreement and Plan of Merger" (the "Merger") with America West Holdings Corporation, the parent of America West Airlines, Inc. *See* Declaration of Christian Douglas

2

Wright ("Wright Decl.") ¶ 3 & Exhibit A.[1] The consummation of the Merger became the focal point of the Plan of Reorganization in the bankruptcy proceedings.

America West Airlines, Inc. ("America West") previously had entered into a contract, dated January 25, 2005, with Juniper Bank ("Juniper") to issue co-branded credit cards beginning on or about January 1, 2006.[2] As a result of the proposed Merger, and consistent with the above-quoted merger provisions of the BofA/US Airways Contract, America West and Juniper amended their existing contract and assigned the amended contract to US Airways Group, Inc., all effective upon the consummation of the Merger (the "Amended Juniper Agreement"). The Amended Juniper Agreement provided approximately $455 million in liquidity to the combined companies after US Airways emerged from bankruptcy. The $455 million cash infusion from the Amended Juniper Agreement represented a major component of the US Airways Joint Plan of Reorganization. The Merger was the centerpiece of the Plan of Reorganization, and the amount received under the Amended Juniper Agreement was one of the critical sources of liquidity by which both the Merger and US Airways' emergence from bankruptcy were funded. US Airways' reliance on this specific source of liquidity was documented fully and disclosed in securities and court filings. Wright Decl. ¶ 7 & Exhibit E at 30. In reliance on the funds made available by the Amended Juniper Agreement, the Bankruptcy Court confirmed the Joint Plan of Reorganization on September 16, 2005. *See* Wright Decl., ¶ 4 & Exhibit B.

---

[1] All references to "Bankr. Ct. Docket #" refer to the docket entries in the *US Airways* bankruptcy proceedings in Case No. 04-13819 in the Eastern District of Virginia. References to Exhibits are to the Exhibits to the Notice of Removal, filed on November 15, 2005, to which the cited paragraphs in the Wright Declaration refer.

[2] America West had been operating under a co-branding agreement with Bank of America to issue cards. That agreement expires by its terms on December 31, 2005. Accordingly, the contract with Juniper allowed Juniper to issue cards commencing January 1, 2006.

3

On August 17, 2005, prior to the confirmation of the Plan, Bank of America and its affiliates filed Administrative Claims (for the period ending July 31, 2005) seeking recovery for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating to either: (i) the Co-Branded and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the 'Card Agreement') and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products." Wright Decl., ¶ 5 & Exhibit C. The contract referenced in these Administrative Claims is the same BofA/US Airways Agreement that forms the basis for Plaintiff's claims in this action.

A month later, again before Confirmation, Bank of America filed a "Limited Objection" to the Plan, arguing that certain release language in the Plan potentially interfered with its Administrative Claim and the continued viability of the BofA/US Airways Agreement, to the extent that the language might be construed as releasing obligations that US Airways might have thereunder. *See* Wright Decl., ¶ 9 & Exhibit G. Bank of America suggested changing the language in the Plan to address the concerns it had raised. At no time did Bank of America inform the Bankruptcy Court that it was seeking this language change in order to facilitate a separate action outside the bankruptcy process to attack and enjoin the $455 million-plus Amended Juniper Agreement. To the contrary, Plaintiff represented to the Bankruptcy Court that the proposed change was minor, that it "is not central and essential to the Debtor's plan," and that "[i]t is simply inconceivable that the [requested change] is central to the Debtor's reorganization, let alone that the Plan 'hinges' upon such releases." *Id.* ¶ 9 & Exhibit G. Relying upon these representations and omissions, US Airways agreed to the minor changes

Bank of America requested, and the Bankruptcy Court adopted those changes verbatim. *Id.* ¶ 4 & Exhibit B.

US Airways Reorganization Plan went into effect on September 27, 2005, and the Merger was effective that same day. In its Confirmation Order, the Bankruptcy Court set specific procedures for the filing and resolution of Claims, and retained jurisdiction over "all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law." Wright Decl., ¶ 4 & Exhibit B at 39. The *US Airways* bankruptcy proceeding remains open and active, and the claims resolution process currently is underway in the Bankruptcy Court.

On October 12, 2005, Plaintiff filed this action against Defendants in the Court of Chancery for the State of Delaware in and for New Castle County, Del. Ch. C.A. No. 1713-N. The Complaint alleges that US Airways, Inc. breached the BofA/US Airways Agreement when it (a) negotiated and later entered into a contract with Defendant/Intervenor Juniper that permitted Juniper to offer co-branded credit cards after the Merger; (b) permitted and licensed Juniper to issue co-branded credit cards after the Merger; and (c) marketed Juniper co-branded credit cards. The Complaint further alleges that America West tortiously interfered with the BofA/US Airways Agreement and that both America West and US Airways Group tortiously interfered with Plaintiff's prospective economic advantage by causing US Airways, Inc. to breach the BofA/US Airways Agreement. Plaintiff seeks unspecified monetary damages and an order of specific performance of the BofA/US Airways Agreement that would allow it to market co-branded cards to the exclusion of Juniper. It also seeks to enjoin US Airways from performing the Amended Juniper Agreement by licensing or issuing credit cards pursuant to the contract's terms. On November 15, 2005, Defendants removed the action to this Court because the action

is "related to" and "arises in" the *US Airways* bankruptcy within the meaning of 28 U.S.C. §§ 1334(b) and 1452(a).

After filing this action, Plaintiff filed another set of Administrative Claims in the Bankruptcy Court, which claims are substantially identical to what it filed on August 17, 2005, except that they cover the period between August 1, 2005 and September 27, 2005, and they contain a reservation of rights purporting to limit the Bankruptcy Court's jurisdiction over the breach of contract claims. Wright Decl., ¶ 6 & Exhibit D. On November 16, 2005, US Airways timely filed an Objection to both sets of Administrative Claims. *Id.*, ¶ 9 & Exhibit H. Among other things, US Airways contested Bank of America's underlying theory that US Airways' arrangements with America West and Juniper constituted a breach of the BofA/US Airways Agreement, and raised specific defenses – including the defense that Bank of America waived its claims when it permitted the Plan of Reorganization to go into effect without including in its objections to the Plan any objection based upon the breach of contract and related theories asserted in the Administrative Claims (and also asserted in this action). US Airways has requested a hearing before the Bankruptcy Court on Bank of America's Administrative Claims and US Airways' Objection thereto.

### III. ARGUMENT

This action should be transferred to the Eastern District of Virginia, the district that has presided over and continues to preside over the *US Airways* bankruptcy. Judge Mitchell, who has handled the bankruptcy case from its inception to date, is intimately familiar with the prior proceedings that led to the Plan of Reorganization and the current Claims process, including the role in those proceedings of the Merger and the Amended Juniper Agreement that form the centerpiece of Bank of America's Complaint. Among other things, Judge Mitchell will be

responsible for resolving the Administrative Claims filed by Bank of America based on the same theories asserted in this action, as well as US Airways' Objection to those Administrative Claims. By contrast, the State of Delaware has no material connection with this action.

A.   **There is a Strong Presumption That Matters Relating to or Arising In an Ongoing Bankruptcy Case Should Be Transferred to the Bankruptcy Court Presiding Over That Case**

Through the statutory scheme that creates federal bankruptcy jurisdiction, Congress granted "comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citation and internal quotation omitted). Accordingly, Congress created broad jurisdiction in the bankruptcy courts to administer and resolve all matters concerning an ongoing bankruptcy, including all matters "under Title 11" and "arising in or related to" a case under Title 11. *See* 28 U.S.C. §§ 1334(a) & (b).

Courts repeatedly have recognized that the "need to centralize bankruptcy-related proceedings" is "an interest of paramount importance in the bankruptcy laws." *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 721 (Bankr. W.D. Pa. 1982) (citations omitted); *see also Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55, 57 (2d Cir. 1976). For this reason, a "presumption has developed that civil proceedings should be tried in the 'home' court, namely the court where the bankruptcy case itself is pending." *Bank of America, NT & SA v. Nickele*, 1998 U.S. Dist. LEXIS 5359, *15 (E.D. Pa. No. 98-1501, Apr. 16, 1998); *see also* 1 COLLIER ON BANKRUPTCY, ¶ 4.04[1] ("a presumption has developed that civil proceedings should be tried in the 'home' court").

This "strong presumption" in favor of centralization in the bankruptcy court means that actions that relate to a bankruptcy matter but that, for some reason, were filed in another court should be transferred to the presiding Bankruptcy Court. *Kotlicky v. Belford*, 64 B.R. 679, 681-

82 (N.D. Ill. 1986) (citing authorities). As the district court explained in *Kotlicky*, "[t]h[e] interest [in the economic and efficient administration of the estate] is best promoted by consolidating all of the proceedings arising under or related to a single bankruptcy case in one forum." *Id.* at 682. *See also Nickele*, 1998 U.S. Dist. LEXIS 5359 at *15 ("[w]e are most reluctant to allow pieces to be severed from a case requiring litigation in several jurisdictions, rather than the desired goal of 'centering' administration of an entire case in one jurisdiction") (citations omitted); *In re 1606 New Hampshire Ave. Assoc.*, 85 B.R. 298, 305 (Bankr. E.D. Pa. 1982) (same).

The procedural mechanism for transfer of a bankruptcy-related matter to the bankruptcy court is found in 28 U.S.C. § 1412, under which a district court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice of for the convenience of the parties."[3] *See also* Bankruptcy Rule 7087 ( "[o]n motion and after a hearing, the court may transfer an adversary proceeding or any part thereof to another district pursuant to 28 U.S.C. § 1412"). Although a decision to transfer under Section 1412 is "discretionary," the intent of the provision "was to fix the home court as the proper venue for bringing the initial proceeding." *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 723-24 (Bankr. W.D. Pa. 1982). Absent such a practice, "bankruptcy courts in one district would interfere with the orderly administration of a case filed in another district." *Id.* at 724.

---

[3] Although "[a] few courts have held that 'related to' proceedings should be transferred pursuant to 28 U.S.C. § 1404(a)" rather than 28 U.S.C. § 1412, "[t]hese cases represent the minority view and are generally disfavored." *In re N. Parent, Inc. v. Cotter & Co.*, 221 B.R. 609, 630 n.19 (Bankr. D. Mass. 1998); *see also In re Wedlo, Inc.*, 212 B.R. 678, 679 (Bankr. M.D. Ala. 1996)("[w]e perceive nothing contained in either 28 U.S.C. § 1412, any other code provision, or logic which would bar a transfer of venue of a 'related proceeding'") (quoting *Kinney Systems, Inc. v. Intermet Realty Partnership*, 75 B.R. 346, 347 (Bankr. E.D. Pa. 1987); 1 COLLIER ON BANKRUPTCY, ¶ 4.04[5][b] ("A few courts treat removed claims and causes of action somewhat differently for change-of-venue purposes, a conclusion not to be recommended."). In any event, the instant action is not only a "related to" action but also arises in and/or under Title 11 as well.

Transfer under Section 1412 is procedurally proper if, as here, the action "arises in" or is "related to" the bankruptcy proceeding within the meaning of 28 U.S.C. § 1334(b), or where the transfer otherwise serves the interests of justice. *Maritime Elec Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1212 (3d Cir. 1991); *see also* 1 COLLIER ON BANKRUPTCY ¶ 4.04[1] (15th ed. rev. 1998) ("Section 1412 of title 28 applies to changes of venue both of (a) cases under title 11 and (b) civil proceedings arising under title 11, or arising in or related to cases under title 11"). Under Section 1412, the "most important factor" in determining whether to transfer the proceeding is "whether the transfer of the proceeding would promote the economic and efficient administration of the estate." *Kotlicky*, 64 B.R. at 682; *accord Butcher v. Lawyers Title Ins. Corp.*, 46 B.R. 109, 112 (Bankr. N.D. Ga. 1985) (citing authorities).

B.  **The Bankruptcy Court in the Eastern District of Virginia is in the Best Position to Resolve the Numerous Bankruptcy-Related Matters Raised by the Claims Asserted in this Action**

For several reasons, transferring this action to the Eastern District of Virginia would serve the interests of justice, including the "economic and efficient administration of the estate," *Kotlicky*, 64 B.R. at 682, by ensuring that all matters that could affect the reorganization proceedings be considered by the court that is in the best position to resolve, and to reconcile with the ongoing *US Airways* bankruptcy, the numerous bankruptcy-related issues presented by Bank of America's Complaint.

First, the claims asserted in the Complaint clearly "arise in" and "relate to" the *US Airways* bankruptcy, such that the "strong presumption" in favor of transfer to the Bankruptcy Court controls. *Kotlicky*, 64 B.R. at 681-82. As set out above, Bank of America and its affiliates filed Administrative Claims with the Bankruptcy Court, pursuant to the Claims procedure set forth in the Bankruptcy Code and the Plan of Reorganization, asserting "any and all claims" that "in any manner aris[e] from or relat[e] to" the BofA/US Airways Contract that

9

form the basis for the present action, as well as "any and all other matters pertaining to credit cards, debit cards, or similar products." (Administrative Claims, Wright Decl. ¶¶ 5-6 & Exhibits C and D.) As Plaintiff acknowledged by filing its present grievance in the form of Administrative Claims in the Bankruptcy Court, that grievance is part of the Claims process to be resolved through the procedures set out in the Order confirming US Airway's Plan of Reorganization. *See In re Best Reception Sys., Inc.*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998) ("where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding"); *In re G.I Industries, Inc.*, 204 F.3d 1276, 1279-80 (9th Cir. 2000) ("The filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of claims against the estate,' [and thus is] a core proceeding under 28 U.S.C. § 157(b)(2).") (citations omitted). At a minimum, if the proper characterization of Plaintiff's present claims is in dispute, Judge Mitchell is in the best position to resolve that dispute.

Second, Plaintiffs' action amounts to a disguised attack on the US Airways Reorganization Plan approved by the Bankruptcy Court, and therefore should be evaluated by that Court. As the documents submitted with Defendants' Notice of Removal make clear, the funding provided through the Amended Juniper Agreement was a critical part of the liquidity necessary to fund the Merger and US Airways' emergence from bankruptcy according to the Joint Plan of Reorganization as approved by the Bankruptcy Court. Moreover, the additional funds raised by US Airways were received in reliance on US Airways' anticipated receipt of the $455 million from Juniper Bank. As the Disclosure Statement approved by the Bankruptcy Court explained:

10

>In addition to amounts to be received from the Plan Investors and pursuant to the proposed Stock Offering, the Debtors expect to receive ... $455 million in advances from its affinity credit card providers [*i.e.* Juniper] . . .. Pursuant to the terms of its agreement with the ATSB, Reorganized Group must have $1.25 billion in unrestricted cash upon emergence. The failure of the Debtors to consummate these liquidity transactions could result in the Plan not being confirmed and the Merger and related transactions not occurring.

Wright Decl., ¶ 7 & Exhibit E. Indeed, a "significant assumption" behind the financial projections relied upon by the Bankruptcy Court in confirming the Joint Plan of Reorganization was that US Airways would receive the hundreds of millions of dollars called for by the Amended Juniper Agreement. *Id.* ¶ 8 & Exhibit F at C-2; *id.* ¶ 4 & Exhibit B at 13. The relief Plaintiff seeks in this action – including an order enjoining US Airways, Inc. from proceeding with the Juniper Amended Agreement and requiring it to deal exclusively with Plaintiff – would create an obstacle to the consummation of the US Airways Plan as confirmed. Moreover, because Bank of America seeks to enjoin a contract that formed a significant part of the Plan as confirmed by the Bankruptcy Court, this action amounts to a challenge to the Plan. Once again, to the extent that there is any dispute concerning the proper characterization of Plaintiff's claims and their relation to the Plan, Judge Mitchell clearly is in the best position to resolve that dispute.

Third, Plaintiff's claims also fall squarely with the Bankruptcy Court's jurisdiction as expressly reserved in the Plan of Reorganization and the Order approving the Plan, because they "aris[e] in connection with the interpretation, implementation, or enforcement of [the] Plan and/or the Confirmation Order"; "aris[e] ... in connection with the ... Merger Agreement"; and "relat[e] to the transactions contemplated" by the Merger Agreement (*see* Wright Decl., ¶ 3 & Exhibit A, art. XIII(k), (m) (describing the jurisdiction retained by the Bankruptcy Court pursuant to its power under 11 U.S.C. § 1142 to effectuate the consummation of the Plan)), those claims "aris[e] in" the bankruptcy proceedings within the meaning of § 1334(b). *See, e.g., In re*

11

*U.S. Brass Corp.*, 301 F.3d 296, 305-06 (5th Cir. 2002) ("proceedings within the contemplation of § 1142(b) are more appropriately viewed as 'arising in' a case under title 11"). Because these matters fall within the jurisdiction reserved to the Bankruptcy Court, that is the best court to entertain them.

Fourth, the Bankruptcy Court is in the best position to determine whether Plaintiff's claims are barred by the Plan of Reorganization and the confirming Order. In light of the broad releases granted through the Plan, the only way Plaintiff's claims could conceivably survive outside the Claims process is through the language Bank of America induced the Court to add to the Plan, stating that the Plan would not release or impair Bank of America's rights under the BofA/US Airways Contract. The survival of Plaintiff's claims thus depends upon the interpretation and scope of, *inter alia*, the language Bank of America added to the Plan, and the Bankruptcy Court clearly is in the best position to interpret and apply its own Order approving that Plan.

Finally, the Bankruptcy Court is in the best position to decide any procedural or jurisdictional motions that may arise in this action, including any motion to remand this action to the Court of Chancery, or any motion for abstention. Any such motion necessarily would raise the question whether this action is "related to" or "arises in" the underlying bankruptcy, and/or whether this action is a "core proceeding" in that bankruptcy – questions that clearly are better presented to the court that is intimately familiar with the bankruptcy itself.

### C. Delaware Has No Interest In, and No Connection To, The Claims Asserted in this Action

By contrast, the State of Delaware has no interest in, or expertise with respect to, the claims asserted by Bank of America in this action. US Airways, Inc., which is a party to the BofA/US Airways contract, at relevant times had its principal place of business in Virginia. Complaint, ¶ 3. US Airways Group and America West Holdings, which were the parties to the Merger, had their principal places of business in Virginia and Arizona, respectively. *Id.* ¶¶ 4-6. The BofA/US Airways Agreement states that it is "governed by the laws of the United States and the Commonwealth of Virginia," and does not mention, or call for the application of, Delaware law. There is no allegation in the Complaint that any relevant activities, including any acts contributing to any alleged breach of contract or duty, took place in Delaware, nor is there a forum selection clause calling for suit in Delaware. Nor is there any indication that relevant witnesses, documents, or other evidence would be located in Delaware. In fact, the *only* connection between this action and the State of Delaware is the fact that Defendants – specifically US Airways, Inc., US Airways Group, and America West Airlines, Inc. – are incorporated here, Complaint ¶¶ 2-4, and a non-party, Juniper Bank, has an office here, but those facts are of little importance in a breach of contract and tort action that involves no issue of the "internal affairs" of any Delaware corporation. Accordingly, there is no reason why this action should remain in this Court or in the Court of Chancery.

## IV. CONCLUSION

For all of the above reasons, this Court should transfer this action to the United States District Court for the Eastern District of Virginia.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Christian Douglas Wright*
David C. McBride (#408)
Martin S. Lessner (#3109)
Christian Douglas Wright (#3554)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
cwright@ycst.com

OF COUNSEL:

Mark H. Epstein
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100

DATED: November 16, 2005

*Attorneys for Defendants US Airways, Inc., US Airways Group, Inc. and America West Airlines, Inc.*

# CERTIFICATE OF SERVICE

I, Christian Douglas Wright, Esquire, hereby certify that on November 16, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Kevin R. Shannon, Esquire
> Potter Anderson & Corroon LLP
> 1313 North Market Street
> PO Box 951
> Wilmington, DE 19899-0951
>
> Kenneth J. Nachbar, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on November 16, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> /s/ Christian Douglas Wright
> Christian Douglas Wright (#3554)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
> (302) 571-6600
> cwright@ycst.com
>
> *Attorneys for Defendants US Airways, Inc., US Airways Group, Inc. and America West Airlines, Inc.*