# EXHIBIT H

Mark H. Epstein
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
        -and-
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000

Brian P. Leitch, Esq.
Michael J. Canning, Esq.
Michael Bernstein, Esq.
Mara V.J. Senn, Esq. (VSB No. 43190)
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
(303) 863-1000
      - and -
555 Twelfth Street, NW
Washington, DC 20004-1206
(202) 942-5000
        -and-
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Counsel to the Debtors and Reorganized Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 04-13819 |
| US AIRWAYS, INC., et al.,[1] ) | Jointly Administered |
| ) | Chapter 11 |
| Debtors. ) | Hon. Stephen S. Mitchell |
| _____) | |

**OBJECTIONS TO BANK OF AMERICA'S ADMINISTRATIVE CLAIMS**

Debtors and Reorganized Debtors, US Airways, Inc., US Airways Group, Inc., (collectively "US Airways"), and PSA Airlines, Inc., Piedmont Airlines, Inc., and Material Services Company, Inc. hereby object to the following administrative claims filed by Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) ("Bank of America"):

---

[1] The Debtors and Reorganized Debtors are the following entities: US Airways, Inc., US Airways Group, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc. and Material Services Company, Inc.

1

1. Administrative claim filed on November 9, 2005, against US Airways, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

2. Administrative claim filed on November 9, 2005, against US Airways Group, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

3. Administrative claim filed on November 9, 2005, against PSA Airlines, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

4. Administrative claim filed on November 9, 2005, against Piedmont Airlines, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

5. Administrative claim filed on November 9, 2005, against Material Services Company, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

6. Administrative claim filed on August 17, 2005, against US Airways, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

7. Administrative claim filed on August 17, 2005, against US Airways Group, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

8. Administrative claim filed on August 17, 2005, against PSA Airlines, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

9. Administrative claim filed on August 17, 2005, against Piedmont Airlines, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

10. Administrative claim filed on August 17, 2005, against Material Services Company, Inc., for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or related to either: (i) the Co-Branded Card and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the "Card Agreement") and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products."

**BASIS FOR DEBTORS' AND REORGANIZED DEBTORS' OBJECTIONS TO BANK OF AMERICA'S ADMINISTRATIVE CLAIMS:**

1. Bank of America's Administrative Claims are premised upon an alleged breach of contract that did not occur. Specifically, Bank of America's Administrative Claims appear to rest upon an asserted breach of the Card Agreement by virtue of US Airways' decision to allow Juniper Bank to issue co-branded credit cards, commencing on January 1, 2006, pursuant to an amendment to an agreement involving US Airways and Juniper Bank (the "Amended Juniper Agreement"). Bank of America's Administrative Claims appear to rest on an exclusivity

provision of the Card Agreement. This theory fails, however, because the Card Agreement specifically permits the arrangement provided for in the Amended Juniper Agreement, among other things providing: "In the event of a Merger involving US Airways or any of its Affiliates and a third party that has a contract with a Card issuer other than Bank [of America] to issue a Competing Card" US Airways may either elect to have Bank of America remain the exclusive card provider or elect to provide a "Two-Program" notice, in which case both cards would be utilized." (This provisions hereinafter is referred to as The "Merger Provision.") As set forth below, the Amended Juniper Agreement and the actions of the Debtors and Reorganized Debtors in connection therewith were fully consistent with the terms of the Card Agreement.

    2. It is undisputed here that (1) there was a merger involving US Airways and America West; and (2) that America West had a contract (entered into on January 25, 2005) with another Card Issuer (Juniper Bank) to issue a competing card. Therefore, the requirements under the Merger Provision were met, and US Airways had the option of providing a Two-Program notice. (The time to elect whether to issue a Two-Program notice has not yet expired. If US Airways does not make an election, the Card Agreement provides that it is "deemed" to have selected the Two-Program notice.) Accordingly, US Airways is authorized to proceed with both the Bank of America card *and* the Juniper Bank card. Because the Card Agreement expressly permits US Airways to take the actions it intends to take, there has been no breach.

    3. Bank of America's Administrative Claims concerning the Juniper contract also have been waived. Bank of America deliberately entered into negotiations with US Airways in an attempt to cause US Airways to choose it as the exclusive card issuer, notwithstanding the Merger Provision or any other provision of the Card Agreement. Throughout those negotiations, Bank of America elected not to bring its breach of contract theory to the attention of US Airways or the Bankruptcy Court. Moreover, by August 2005, Bank of America had been informed that America West and Juniper had amended their prior contract and assigned the rights thereunder to US Airways pursuant to the Amended Juniper Agreement. By electing to participate in

4

negotiations rather than assert their claimed contractual right, and by permitting the other entities involved to commit themselves contractually in the absence of such an assertion of rights, Bank of America knowingly waived its claims that US Airways' negotiation and consummation of the Amended Juniper Agreement constituted a breach of the Card Agreement.

    4. Bank of America's Administrative Claims are waived for the additional reason that the Amended Juniper Agreement was an important part of US Airways' Plan of Reorganization – among other reasons because the $455 million Juniper paid US Airways pursuant to the Amended Juniper Agreement helped provide the liquidity necessary to allow US Airways to emerge from bankruptcy – and Bank of America was aware of the role the Amended Juniper Agreement played in the reorganization because that role was disclosed in filings provided to Bank of America in this bankruptcy proceeding. Nonetheless, Bank of America elected not to assert what it now claims is a contractual right to challenge the Amended Juniper Agreement. Specifically, papers filed by Bank of America during the Confirmation process did not question the validity of the Amended Juniper Agreement, and Bank of America did not object to the Plan of Reorganization on this basis. By electing not to object, by obtaining the benefits of having US Airways emerge from bankruptcy, and by permitting the Plan of Reorganization and related transactions to be effected in the absence of such an objection, Bank of America waived the Administrative Claims here at issue.

    5. Bank of America also is estopped from asserting its Administrative Claims. The Reorganization Plan proposed by US Airways relied heavily on the Juniper contract and the resulting $455 million in liquidity it provided. Bank of America was aware not only that the $455 million was a large part of the Reorganization Plan, but that the rest of the liquidity raised by US Airways came from investors relying in part on the $455 million US Airways expected from Juniper. If Bank of America believed that the Amended Juniper Agreement was improper or should be enjoined, or that by entering into that contract US Airways had breached the Card Agreement, it was incumbent upon Bank of America to object to the Reorganization Plan before

5

it was declared feasible and confirmed by this court. US Airways (and many others) changed their position in reliance on Bank of America's decision not to assert that the Amended Juniper Agreement should be enjoined or was improper. Accordingly, Bank of America is estopped from asserting its Administrative Claims. Relatedly, by participating in the negotiations during the spring and summer of 2005, Bank of America is estopped from now asserting that those negotiations were wrongful or in aid of a breach of contract.

      6. To the extent Bank of America is seeking to enjoin the Amended Juniper Agreement or is seeking any equitable relief, its claims are barred by the doctrine of laches. Laches applies to bar a claim in equity when a party has unreasonably delayed asserting its claim to the detriment of another. Bank of America knew of its potential claim in May of 2005 when negotiations with Juniper were ongoing. At a minimum, Bank of America was aware of the Amended Juniper Agreement in August 2005, when it was publicly announced and Bank of America was given personal notice. Had Bank of America asserted its claims at that time, and had its claims been well founded, the Reorganization Plan could have been amended and revised and a new Plan could have been proposed. Instead, Bank of America waited until the Plan was confirmed (and substantially consummated), until Juniper paid $455 million to US Airways, and until US Airways had made certain commitments to Juniper, before seeking, post-Confirmation, to enjoin the Amended Juniper Agreement (or to seek specific performance of the Card Agreement) and before providing anyone with any notice that their Administrative Claims were in fact intended to be so broad and far-reaching. As a result of Bank of America's unreasonable delay in asserting its rights, US Airways (and others) have changed their position to their prejudice (to the extent that Bank of America's claims have merit). Accordingly, Bank of America's Administrative Claims are barred by the doctrine of laches.

      7. Debtors and Reorganized Debtors reserve their rights to assert any and all additional defenses to the Administrative Claims asserted by Bank of America.

8. Accordingly, Bank of America's Administrative claims, and each of them, should be disallowed and rejected in their entirety.

Dated:  Washington, D.C.  
        November 16, 2005

Respectfully Submitted,

Mark H. Epstein  
Kristin Linsley Myles  
MUNGER, TOLLES & OLSON LLP  
355 South Grand Avenue, 35th Floor  
Los Angeles, CA 90071-1560  
(213) 683-9100  
    -and-  
560 Mission Street, 27th Floor  
San Francisco, CA 94105  
(415) 512-4000

/s/ Mara V.J. Senn  
Brian P. Leitch, Esq.  
Michael J. Canning, Esq.  
Michael Bernstein, Esq.  
Mara V.J. Senn, Esq. (VSB No. 43190)  
ARNOLD & PORTER LLP  
370 Seventeenth Street, Suite 4500  
Denver, Colorado 80202  
(303) 863-1000  
    - and -  
555 Twelfth Street, NW  
Washington, DC 20004-1206  
(202) 942-5000  
    -and-  
399 Park Avenue  
New York, New York 10022  
(212) 715-1000

*Counsel to the Debtors and Reorganized Debtors*

Response Deadline: December 16, 2005 at 4:00 p.m.

Mark H. Epstein
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
(213) 683-9100
         -and-
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000

Brian P. Leitch, Esq.
Michael J. Canning, Esq.
Michael Bernstein, Esq.
Mara V.J. Senn, Esq. (VSB No. 43190)
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
(303) 863-1000
         - and -
555 Twelfth Street, NW
Washington, DC 20004-1206
(202) 942-5000
         -and-
399 Park Avenue
New York, New York 10022
(212) 715-1000

*Counsel to the Debtors and Reorganized Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 04-13819 |
| US AIRWAYS, INC., <u>et al.</u>,[1] ) | Jointly Administered |
| ) | Chapter 11 |
| Debtors. ) | Hon. Stephen S. Mitchell |

NOTICE OF DEBTORS' OBJECTIONS TO
BANK OF AMERICA'S ADMINISTRATIVE CLAIMS

---

[1] The Debtors are the following entities: US Airways, Inc., US Airways Group, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc. and Material Services Company, Inc.

1

**PLEASE TAKE NOTICE** that on November 16, 2005, the above captioned Debtors and Reorganized Debtors filed their Objections to Bank of America's Administrative Claims (Docket No. 3457) (the "Claims Objection").

## NOTICE OF OPPORTUNITY TO REQUEST A HEARING PURSUANT TO LOCAL BANKRUPTCY RULE 3007-1

UNDER LOCAL BANKRUPTCY RULE 3007-1, UNLESS A WRITTEN RESPONSE AND A REQUEST FOR HEARING ON THIS CLAIMS OBJECTION IS FILED WITH THE CLERK OF THE COURT AND SERVED ON THE OBJECTING PARTY AND THOSE PARTIES AS REQUIRED BY THE ORDER ESTABLISHING OMNIBUS HEARING DATES AND AUTHORIZING CERTAIN ELECTRONIC NOTICE, CASE MANAGEMENT AND ADMINISTRATIVE PROCEDURES (ENTERED ON SEPTEMBER 15, 2004 AT DOCKET NO. 121) (THE "CASE MANAGEMENT ORDER") WITHIN 30 DAYS OF SERVICE OF THIS OBJECTION, BY <u>4:00 P.M. ON DECEMBER 16, 2005</u>, THE COURT MAY DEEM ANY OPPOSITION WAIVED, TREAT THE CLAIMS OBJECTION AS CONCEDED, AND ENTER AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT A HEARING.

If you do not want the Court to grant the relief requested in the Claims Objection, and you wish to exercise your right to request a hearing on the Claims Objection, then you or your attorney must:

[X]  File with the Court, no later than **4:00 p.m. on December 16, 2005,** at the address shown below, a written response and request for hearing pursuant to Local Bankruptcy Rule 3007-1. If you mail your response to the Court for filing, you must mail it early enough so that the Court will <u>receive</u> it on or before the date stated above.

> Clerk of Court
> United States Bankruptcy Court
> P.O. Box 19247
> Alexandria, Virginia 22320

[X]  Pursuant to the Case Management Order, you must also serve a copy of any written response by the foregoing date <u>via electronic mail</u> on the following: (i) Brian P. Leitch, Esq., Daniel M. Lewis, Esq., Michael J..Canning, Esq. and Joel M. Gross, Esq. at usairwaysservice@aporter.com; (ii) Lawrence E. Rifken, Esq., Douglas M. Foley, Esq. and David I. Swan, Esq. at usairwaysservice@mcguirewoods.com; (iii) Office of the United States Trustee at USTPRegion04.AX.ECF@usdoj.gov; (iv) Scott L. Hazan, Esq. at shazan@oshr.com; (v) Malcolm M. Mitchell, Esq. at mmmitchell@vssp.com; and (vi) those additional parties on the 2002 Service List (as defined in the Case Management Order), which can be found at www.donlinrecano.com.

[X]  Attend a status hearing on your response to the Claims Objection that will be scheduled at a later date, unless otherwise advised by

2

counsel for the Reorganized Debtors. You will receive a separate notice pursuant to Local Bankruptcy Rule 3007-1 providing you with the date, time and place of any hearing with respect to your response and request for hearing on the Claim Objection.

    If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Claims Objection and may enter an order granting the relief requested.

Dated: Washington, D.C.  
November 16, 2005

Respectfully Submitted,

Mark H. Epstein  
Kristin Linsley Myles  
MUNGER, TOLLES & OLSON LLP  
355 South Grand Avenue, 35th Floor  
Los Angeles, CA 90071-1560  
(213) 683-9100  
   -and-  
560 Mission Street, 27th Floor  
San Francisco, CA 94105  
(415) 512-4000


/s/ Mara V.J. Senn  
Brian P. Leitch, Esq.  
Michael J. Canning, Esq.  
Michael Bernstein, Esq.  
Mara V.J. Senn, Esq. (VSB No. 43190)  
ARNOLD & PORTER LLP  
370 Seventeenth Street, Suite 4500  
Denver, Colorado 80202  
(303) 863-1000  
   - and -  
555 Twelfth Street, NW  
Washington, DC 20004-1206  
(202) 942-5000  
   -and-  
399 Park Avenue  
New York, New York 10022  
(212) 715-1000

*Counsel to the Debtors  
and Reorganized Debtors*

3