# EXHIBIT A

Not Reported in B.R. Page 1
Not Reported in B.R., 2003 WL 1565945 (Bkrtcy.D.Del.), 41 Bankr.Ct.Dec. 8
(Cite as: Not Reported in B.R.)
H

United States Bankruptcy Court,D. Delaware.
In re: TRICORD SYSTEMS, INC., Debtor.
RGC INTERNATIONAL INVESTORS, LDC, Plaintiff,
v.
TRICORD SYSTEMS, INC., Joan Wrabetz, Keith Thorndyke, Louis C. Cole, Yuval Almog, Tom R. Dillon, Donald L. Lucas, Fred G. Moore and John Mitcham, Defendants.
No. 02-82361, ADV. 02-4943(MFW).

March 24, 2003.

MEMORANDUM OPINION 1

FN1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

WALRATH, Bankruptcy J.
*1 Before the Court are two Motions. The first, filed by Tricord Systems, Inc. ("Tricord"), and the individually named directors and officers ("the Director Defendants") seeks to transfer venue to the United States Bankruptcy Court for the District of Minnesota ("the Transfer Motion"). The second, filed by RGC International Investors, LDC ("RGC") seeks to remand this adversary proceeding to the Court of Chancery of the State of Delaware ("the Remand Motion"). For the reasons set forth below, the Remand Motion will be granted and the Transfer Motion will be denied as moot.

I. BACKGROUND

Tricord, a technology company incorporated in Delaware and headquartered in Plymouth, Minnesota, sought investors to provide a much-needed infusion of capital in late 2000 and early 2001. In February 2001, RGC, an investment group, made an equity investment of $25 million in Tricord pursuant to a Stock Purchase Agreement containing specified contractual remedies designed to protect RGC in the event Tricord became insolvent or was unable to maintain a listing on a national securities market. By February 2002, Tricord's financial performance and prospects for continued viability were sufficiently bleak that RGC concluded in a letter to Tricord that "the only proper course of action to preserve value for Tricord's shareholders is to commence an orderly sale of the company's technology and other assets to the highest bidders and to preserve the company's liquid and other assets for distribution to shareholders." Tricord declined to do so.

As a result, RGC commenced an action in the Delaware Chancery Court on April 5, 2002, and filed an Amended Complaint in that Court on May 15, 2002. The Amended Complaint contained claims based solely on Delaware law for breach of contract, common law fraud, breach of fiduciary duty, corporate waste, injunctive relief, and the appointment of a receiver. On April 19, 2002, RGC filed a motion for expedited proceedings, which was denied. However, a December 2002 trial date was set. On July 16, Tricord's continuing losses coupled with the threat of an immediate delisting of its stock, prompted RGC to renew its motion for expedited proceedings. That was granted on July 30, 2002 and trial was set for October 7, 2002.

On August 2, 2002, Tricord file a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Minnesota. On the same day, the Chancery Court action was removed to this Court pursuant to the Notice of Removal filed by Tricord. On August 8, 2002, Tricord and the Director Defendants filed the Transfer Motion. Since August 16, 2002, this action has been tolled by a series of stipulations between the parties which were approved by this Court.

While this action was tolled, RGC and Tricord reached a settlement which was approved by the Bankruptcy Court in Minnesota on September 18, 2002. As a result, Tricord withdrew as a co-proponent of the Transfer Motion on January 9, 2003, and RGC dismissed its claims against Tricord on January 10, 2003.

II. DISCUSSION

*2 We begin our consideration of the Motions before us with the Remand Motion. *Lone Star Indus., Inc. v. Liberty Mutual Ins. Co.*, 131 B.R. 269, 273 (D.Del.1991) (logical and practical principles "dictate that the remand motion be determined before the venue motion"). Jurisdiction is premised on section 1334(b) of title 28, which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in B.R.     Page 2
(Cite as: Not Reported in B.R.)

provides that the "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

As this action was initially commenced in Delaware Chancery Court prior to the filing of the Chapter 11 petition, this action cannot be said to arise under title 11. Similarly, it cannot be said to have arisen in a title 11 case. For this Court to have jurisdiction, then, this action must be related to a case under title 11.

A proceeding is related to a case under title 11 if it " 'could conceivably have any effect on the estate being administered in bankruptcy' such that 'it is possible that [the] proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling or administration of the bankrupt estate." ' *Copelin v. Spirco, Inc.*, 182 F.3d 174, 179 (3d Cir.1999) (internal citations omitted). The Third Circuit has held that "the key word is 'conceivable.' " *Id.*

As noted above, Tricord is no longer a party to this action. Additionally, RGC has agreed to limit its recovery in this case to available insurance proceeds. This not only eliminates any claim RGC may have but also eliminates any indemnification claims against the bankruptcy estate by the Director Defendants for any difference between the amount of any judgments and the policy limits. Thus, this action can have no impact on the administration of Tricord's bankruptcy estate. Further, the action raises no bankruptcy issues but only issues related to Delaware state law. Therefore, we conclude that this action is not one related to a case under title 11. As such, this Court lacks jurisdiction to hear the action and it must be remanded.

### III. CONCLUSION

For the foregoing reasons, RGC's Motion to Remand will be granted. That determination renders the Motion to Transfer Venue moot.

An appropriate Order is attached.

Bkrtcy.D.Del.,2003.
In re Tricord Systems, Inc.
Not Reported in B.R., 2003 WL 1565945 (Bkrtcy.D.Del.), 41 Bankr.Ct.Dec. 8

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



131 B.R. 269 Page 1
131 B.R. 269
(Cite as: 131 B.R. 269)
H

United States District Court, D. Delaware.
LONE STAR INDUSTRIES, INC., Debtor,
v.
LIBERTY MUTUAL INSURANCE, et al.,
Appellants.
Civ. A. No. 91-449 LON.

Aug. 26, 1991.

Defendants in Chapter 11 debtor's breach of contract action requested remand of case to state court. On recommendation of the United States Bankruptcy Court for the District of Delaware, Helen S. Balick, J., the District Court, Longobardi, Chief Judge, held that debtor's prepetition action against insurers to determine coverage would be remanded to state court.

Case remanded.

West Headnotes

[1] Federal Courts 170B 29.1

170B Federal Courts
   170BI Jurisdiction and Powers in General
      170BI(A) In General
         170Bk29 Objections to Jurisdiction, Determination and Waiver
           170Bk29.1 k. In General. Most Cited Cases
     (Formerly 170Bk29)
Court's jurisdiction over matter must be established before nonjurisdictional issues can be addressed.

[2] Bankruptcy 51 2089

51 Bankruptcy
   51I In General
      51I(D) Venue; Personal Jurisdiction
         51k2086 Transfer or Removal of Proceedings
           51k2089 k. Proceedings for Removal or Transfer; Time. Most Cited Cases
In federal district where all bankruptcy proceedings were automatically referred to United States Bankruptcy Court, applications to remove matter involving debtor from state court to federal court could properly be filed in bankruptcy court. 28 U.S.C.A. § 1452(a).

[3] Bankruptcy 51 2091

51 Bankruptcy
   51I In General
      51I(D) Venue; Personal Jurisdiction
         51k2086 Transfer or Removal of Proceedings
           51k2091 k. Remand to State Court. Most Cited Cases
Equitable factors bankruptcy court should consider in considering whether to remand case to state court include court's duty to decide matters properly before it, plaintiff's choice of forum, nature of claim, prejudice to involuntarily removed parties, comity considerations, economical and/or duplicative use or judicial resources, and effect that remand would have on efficient and economic administration of estate. 28 U.S.C.A. § 1452(b).

[4] Bankruptcy 51 2091

51 Bankruptcy
   51I In General
      51I(D) Venue; Personal Jurisdiction
         51k2086 Transfer or Removal of Proceedings
           51k2091 k. Remand to State Court. Most Cited Cases
Chapter 11 debtor's prepetition action against insurers to determine coverage would be remanded to state court; only state-law contract action was involved, involuntarily removed defendants would be prejudiced if matter was transferred to out-of-state venue where debtor's bankruptcy case was pending, state court had already invested significant amount of time and effort in resolving dispute, remand would not impair administration of debtor's bankruptcy estate, and defendants had requested state jury trial. 28 U.S.C.A. § 1452(b).

*270 Somers S. Price, Jr., Potter Anderson & Corroon, Wilmington, Del., David I. Goldblatt, Bruce E. Loren, Proskauer Rose Goetz & Mendelsohn, New York City, for plaintiff.
Lawrence S. Drexler, Elzufon, Austin & Drexler, P.A., Wilmington, Del., for Liberty Mut. Ins. Co. and Joint Defense Coordinator.
Robert C. O'Hara, Peter J. Walsh, Wilmington, Del., for Republic Ins. Co.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



131 B.R. 269  
(Cite as: 131 B.R. 269)

Page 2

ORDER

LONGOBARDI, Chief Judge.
WHEREAS on July 9, 1991 the Bankruptcy Court issued a Report and Recommendation in an Adversary Proceeding entitled *Lone Star Industries, Inc. v. Liberty Mutual Insurance Company, et al.,* Adversary No. 91-23, and said Report and Recommendation recommended that said Adversary Proceeding be remanded to the Superior Court of the State of Delaware in and for New Castle County; and

WHEREAS no party has filed exceptions to the aforesaid Report and Recommendation; and

WHEREAS the Court has reviewed the July 9, 1991 Report and Recommendation.

NOW THEREFORE it is HEREBY ORDERED that the above-captioned action is hereby REMANDED to the Superior Court of the State of Delaware in and for New Castle County.

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

In the Matter of Lone Star Industries, Inc., a Delaware Corporation, Plaintiff,

v.

Liberty Mutual Insurance Company, The Aetna Casualty and Surety Company, Agricultural Excess and Surplus Insurance Company, American Excess Insurance Association, the American Insurance Company, Cigna Insurance Company, the Continental Insurance Company, Employers Insurance of Wausau, Federal Insurance Company, First Insurance Company, Gibraltar Casualty Company, Government Employees Insurance Company, Granite State Insurance Company, Harbor Insurance Company, Hartford Accident and Indemnity Company, Highlands Insurance Company, International Insurance Company, Lexington Insurance Company, Meadows Syndicate, Inc., National Casualty Company, National Union Fire Insurance Company, of Pittsburgh, Pa., New England Insurance Company, Republic Insurance Company, Transco Syndicate # 1, Ltd., Twin City Fire Insurance Company, Western Employers Insurance Company, Zurich International Ltd.,

Defendants.

REPORT AND RECOMMENDATION

HELEN S. BALICK, Bankruptcy Judge.
There is presently in this court an adversary proceeding, Lone Star Industries, Inc. versus Liberty Mutual Insurance Company et al. (No. A91-23). This proceeding was removed by Lone Star to this court from Superior Court for the State of Delaware *271 on February 19, 1991 pursuant to 28 U.S.C. § 1452. The plaintiff Lone Star now moves this court to transfer venue of this proceeding to the Southern District of New York where Lone Star's chapter 11 bankruptcy is being administered. The defendants move to remand the proceeding, or to abstain from hearing the proceeding, and for a determination whether plaintiff's change of venue motion is a core or a non-core matter.

Among the many disputes between the parties is whether the court's rulings on these matters will be a final order or only a report and recommendation to the District Court. To the extent that the court rules on the issues the parties raise, the rulings take the form of a Report and Recommendation. Bankr.R. 9027(e). If objections are filed to the Report and Recommendation, a review by the District Court is governed by Rule 9033.

I. *Background to the removal of the Superior Court action*

The following background history is undisputed. Lone Star manufactures concrete ties for railroads. On July 10, 1989, several railroad companies filed separate products liability actions against Lone Star in the United States District Court for the District of Maryland. Each action alleged Lone Star's ties installed in railroad tracks were defective and sought in the aggregate over $150,000,000 in actual damages, plus an unspecified amount in consequential damages. On September 25, 1989, Lone Star filed a complaint for breach of contract and declaratory relief ("the contract action") against Liberty Mutual Insurance Company and 26 excess insurers in Superior Court for the State of Delaware in and for New Castle County (Wilmington, Delaware). Potter Anderson and Corroon, a Wilmington-based firm, and a New York law firm signed the complaint. The contract action alleged that, pursuant to liability insurance policies they

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



issued, the defendant insurers were obligated to defend Lone Star and indemnify Lone Star for any judgment against it in the products liability actions.

On October 27, 1989, Richard E. Poole, Esq. of Potter Anderson and Corroon, wrote to then-President Judge Albert J. Stiftel of Superior Court requesting that the contract action be specially assigned. Mr. Poole's letter observed that the action involved "numerous defendants and the application of millions of dollars of insurance during a period of many years," and that "numerous issues may arise that could be resolved more efficiently if they were all heard by the same judge, who would be more familiar with the case." The request was granted on December 11, 1989 and the case was assigned to the Honorable Vincent A. Bifferato.

After moving for a more definite statement, the defendants finally answered Lone Star's complaint in early January 1990. In addition to denying liability, seventeen of the defendants requested a jury trial. Discovery requests began soon thereafter, but the defendants moved for a protective order. On February 20, 1990, Judge Bifferato issued a confidentiality order concerning documents produced as part of the litigation. On August 28, 1990, he granted in part and denied in part Lone Star's motion for partial summary judgment for several of the defendant insurers to pay certain legal fees. On September 7, 1990, he issued a 14 page case management order that, among other things, directed a litigation schedule, designated defense coordinators, discovery and motions procedures, and established a special filing system at the Superior Court Prothonotary's Office. On November 13, 1990, he granted Cigna Insurance Company's motion for summary judgment. The central issue raised by Cigna's motion was whether the Superior Court could consider the intent of the parties in interpreting an unambiguous "claims made" policy.

Lone Star filed its Chapter 11 petition in the Southern District of New York on December 10, 1990. An equity security holders committee and an unsecured creditors committee have been appointed. The plaintiffs in the products liability actions obtained limited relief from stay on March 20, 1991, for the purpose of moving for summary judgment.

*272 II. *The motions before this court*

Lone Star wishes to have the contract action heard in the Southern District of New York. Lone Star removed the contract action to this court only as a jurisdictional prerequisite to changing venue. Towards that end, concurrent with its removal of the Superior Court contract action to this court, Lone Star moved for a change of venue pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 7087. Lone Star concedes the contract action is non-core. On March 14, 1991, defendants moved this court to determine the nature of the change of venue motion, as well as to abstain from hearing pursuant to 28 U.S.C. § 1334(c)(2) (mandatory abstention) or 28 U.S.C. § 1334(c)(1) (discretionary abstention), or to remand the adversary proceeding to Superior Court pursuant to 28 U.S.C. § 1452(b). In a footnote in a memorandum of law in support of its motion, defendants raised for the first time the suggestion that Lone Star's application to remove was improper and should be stricken. While the court does not approve of this method of presenting a motion to strike, *cf.* Bankr.R. 7010 & 7012, Lone Star has responded to the motion, and this court considers the motion to strike also before it.

[1] The parties disagree as to the order in which these motions should be decided. The court's jurisdiction over a matter must be established before non-jurisdictional issues can be addressed. *E.g., Shendock v. Director, Office of Worker's Compensation Programs,* 893 F.2d 1458, 1466-67 (3d Cir.) (*en banc*), *cert. den.,* 498 U.S. 826, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990). This principle dictates that the court first determine, as a preliminary matter, whether the Superior Court case was properly removed.

III. *Discussion*

A. Lone Star's application to remove was properly filed.

[2] Section 1452(a) of Title 28, United States Code provides in relevant part: "A party may remove any ... cause of action ... to the district court for the district where such civil action is pending...." Defendants argue that because the contract action was removed to the United States Bankruptcy Court for the District of Delaware, and not the United States District Court for the District of Delaware,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



131 B.R. 269  
(Cite as: 131 B.R. 269)

Page 4

the removal was improper. While there may be support for this argument in other jurisdictions, *e.g.*, *BancOhio National Bank v. Long (In re Long)*, 43 B.R. 692 (Bankr.N.D.Ohio 1984), in this jurisdiction all Title 11 proceedings are automatically referred to the United States Bankruptcy Court, *In Re Referral of Title 11 Proceedings To The United States Bankruptcy Judge For This District*, (D.Del. July 23, 1984) (order), and removal applications are properly filed in the bankruptcy court. *Gorse v. Long Neck, Ltd.*, 107 B.R. 479 (D.Del.1989); *In re Convent Guardian Corp.*, 75 B.R. 346 (Bankr.E.D.Pa.1987) (order).

B. The order of resolution of the remaining motions.

As among the other motions before this court, defendants argue that mandatory abstention is also jurisdictional and should therefore be addressed before the other motions. *See In re Engra*, 86 B.R. 890, 893 (S.D.Tex.1988). Lone Star counters that mandatory abstention is not applicable in a removal context. *See e.g.*, *In re 666 Assocs.*, 57 B.R. 8, 12 (Bankr.S.D.N.Y.1985). Lone Star also argues that mandatory abstention is not warranted because defendants have not shown that the requisite elements of § 1334(c)(2) are satisfied.

The court need not decide these issues. Assuming without deciding that Lone Star is correct that mandatory abstention is not applicable here, the court would still have to consider defendants' remand motion. *Cf. Engra*, 86 B.R. at 895. If granted, the remand would have the same effect as abstention of reviving the contract action in Superior Court. Therefore, the court will consider the remand motion, which proves to be dispositive of the parties' motions.

C. The adversary should be remanded to Superior Court.

Initially, Lone Star argues that this court defer to the "home" court of the Southern *273 District of New York on the remand issue. *E.g.*, *In re Convent Guardian Corp.*, 75 B.R. 346 (Bankr.E.D.Pa.1987) (order). This deferral procedure, however, assumes that venue of the adversary proceeding should be transferred to the Southern District of New York, and thus merely begs one of the substantive questions the parties want this court to resolve. Likewise, this deferral procedure vitiates the requirements of the venue transfer statute.

Moreover, as a logical and practical matter, the court should determine *whether any* bankruptcy court should hear a proceeding before it determines *which* bankruptcy court should hear it. *Engra*, 86 B.R. at 893; *cf. Shendock v. Director, Office of Worker's Compensation Programs*, 893 F.2d 1458, 1467 (3d Cir.) (*en banc*), *cert. den.*, 498 U.S. 826, 111 S.Ct. 81, 112 L.Ed.2d 53 (1990). These principles dictate that the remand motion be determined before the venue motion.

[3] Section § 1452(b) of Title 28, United States Code states: "The court to which [a cause of action] is removed may remand such ... cause of action on any equitable ground." The parties agree that equitable factors the court should consider in considering whether to remand include:
1. the court's duty to decide matters properly before it;
2. plaintiff's choice of forum as between state and federal courts;
3. the nature of the claim or claims, that is, whether purely state law matters which could be better addressed by the state court are involved;
4. prejudice to involuntarily removed parties;
5. comity considerations;
6. economical and/or duplicative use of judicial resources; and
7. effect a remand decision would have on the efficient and economic administration of the estate.

*Gorse v. Long Neck, Ltd.*, 107 B.R. 479, 482 (D.Del.1989). As previously discussed, this removed matter is properly before this court. *Supra*, Section III.A.

[4] Lone Star originally chose the state court forum. It argues that it now chooses to proceed in the Southern District of New York federal forum where its Chapter 11 case is being administered. This argument incorrectly assumes however, that the adversary will necessarily be transferred. Lone Star does not wish to proceed in the District of Delaware federal forum. Moreover, except for the bankruptcy filing, all of the circumstances that Lone Star now argues support its decision to change forums were present when it originally chose the Delaware forum. *See Allied Mech. & Plumbing Corp. v. Dynamic Hostels*, 62 B.R. 873, 878 (Bankr.S.D.N.Y.1986) (debtor-plaintiff should not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



131 B.R. 269  
(Cite as: 131 B.R. 269)

Page 5

be able to change its original choice of state forum with respect to the resolution of a purely state law dispute absent a compelling reason). The second *Gorse* factor favors remand. FN1

FN1. Defendants suggest that Lone Star is forum-shopping-that it is dissatisfied with several adverse rulings by Judge Bifferato and seeks to litigate the contract action before a different judge. It would be entirely inappropriate to make such a finding on the paper record before this court. *DuToit v. Strategic Minerals Corp.*, 136 F.R.D. 82, 86 (D.Del.1991).

The parties agree the adversary proceeding is a state-law contract action. Lone Star suggests that a bankruptcy court can resolve these state law issues just as easily as a state court. The parties, however, have not discussed what state law applies. The third *Gorse* factor is thus not particularly helpful in considering whether to remand.

The 26 involuntarily removed defendants are not prejudiced if the action remains in the District of Delaware. If the matter is heard in the Southern District of New York, however, the defendants would have to retain New York counsel. Lone Star argues that this would not prejudice defendants, because a few of the defendants have retained New York counsel to appear in one or two previous bankruptcy proceedings in the Southern District of New York. This argument is without merit. Merely because defendants have protected their interests by selectively appearing in previous New York proceedings does not indicate a preference for litigating, or a lack of *274 prejudice in appearing in that court. Litigating the contract action in New York would be more expensive, and would waste the knowledge of the case acquired by present counsel during the past state proceedings of over one year. In particular, the legal coordinator for the defendants practices in Delaware and does not have a New York office. The fourth factor favors remand.

The fifth and sixth factors will be considered together. The state court action has been proceeding for over a year. Lone Star originally characterized this action as involving "numerous defendants and the application of millions of dollars of insurance during a period of many years." Considering Lone Star's own characterization of the size and complex nature of this action, there is no indication that the action is moving inordinately slow, or that it would move any faster in the Southern District of New York. Any delay in the proceedings have been caused not by the court, but by the vigorous litigation of the defendants. *See Gorse*, 107 B.R. at 483. Judge Bifferato has expended significant resources resolving matters and developing familiarity with the case. FN2 A case management order is in place. In short, the benefits of a special assignment that Lone Star anticipated and requested in its letter of October 27, 1989 have been realized. Ironically, now Lone Star argues that the action could proceed just as efficiently before a new judge in another court. There is no basis for this assertion. *See In re Manville Forest Products Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990) (transfer requiring duplication of the learning curve obtained by a judge in pre-trial proceedings militates against transfer). Remand to the Superior Court for the State of Delaware would most economically utilize judicial resources. As a matter of comity, remand would display a proper respect for a state court's role in deciding a purely state law case, and in particular, Judge Bifferato's prior investment of time and efforts in managing the case.

FN2. Lone Star erroneously discounts Judge Bifferato's time expended on discovery matters as not helpful in developing expertise with the issues underlying the contract action. To properly rule on discovery issues, a judge must have a firm grasp of the underlying factual and legal issues.

Finally, remanding this proceeding to state court will have a substantial beneficial effect on the efficient and economic administration of the estate. Lone Star has not shown this action would proceed more efficiently in New York. The contract action is a non-core matter, dealing solely with state law. No efficiency would be gained by having a bankruptcy court hear the action. To the contrary, a remand would eliminate the *de novo* District Court review required if the matter remained in bankruptcy court. Also, several legal issues that the defendants have raised in their briefing will cease to have legal consequence and thus not have to be litigated and resolved.

Lone Star contends that a remand would visit unneeded expense on the estate because of the attendance in Wilmington, Delaware of Lone Star

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

131 B.R. 269                                                                    Page 6
(Cite as: 131 B.R. 269)

executives, and counsel for the appointed committees in the chapter 11 case, and the extra expense of local counsel. However, Lone Star has not explained why there would be a substantial number of state court proceedings that its executives would need to attend. For instance, Lone Star states, without factual or legal support, that these executives will need to attend state court proceedings to testify to their contractual intent in connection with the insurance policies. The court also observes that Lone Star has not explained why it chose the Delaware forum in September 1989 if Lone Star deemed the burden of executives traveling to Wilmington to be so significant (as it now asserts).

With regard to committee counsel, Lone Star has not shown how they would have standing to participate in a state proceeding, or why their attendance in Wilmington would be necessary. Similarly, Lone Star has not explained why New York counsel would need to attend Delaware proceedings at all, where Lone Star already had Delaware counsel representing it in the contract action before the bankruptcy filing and Lone Star has applied to the Bankruptcy Court for the Southern District of New *275 York to specially retain these counsel. And the expense of Delaware counsel for Lone Star must be considered in light of the expense and inequity of requiring all 26 defendants to retain new New York counsel, as discussed previously in connection with the fourth factor.

The court also observes that *any* equitable ground suffices to remand a cause of action and that the *Gorse* factors are merely illustrative. That 17 of the defendants have requested a state jury trial is an equitable ground which in and of itself argues heavily in favor of remand. *Gorse v. Long Neck, Ltd.*, No. 89-33 JRR, slip. op. at 4-6 (D.Del. Nov. 20, 1989) (citing *Zweygardt v. Colorado National Bank of Denver*, 52 B.R. 229, 234-35 (Bankr.D.Colo.1985)).

In summary, consideration of appropriate factors under 28 U.S.C. § 1452(b) overwhelmingly support a decision to remand the adversary proceeding to state court. This remand also eliminates the need to decide whether mandatory or permissive abstention is available, the nature of a transfer motion, and whether the proceeding should be transferred. For these reasons, I recommend that the civil action be remanded to the Superior Court of the state of Delaware in and for New Castle County.

D.Del.,1991.
Lone Star Industries, Inc. v. Liberty Mut. Ins.
131 B.R. 269

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

