# EXHIBIT A

Not Reported in B.R.  Page 1
Not Reported in B.R., 2003 WL 1565945 (Bankr.D.Del.), 41 Bankr.Ct.Dec. 8
(Cite as: 2003 WL 1565945 (Bankr.D.Del.))
H

United States Bankruptcy Court,
D. Delaware.
In re: TRICORD SYSTEMS, INC., Debtor.
RGC INTERNATIONAL INVESTORS, LDC,
Plaintiff,
v.
TRICORD SYSTEMS, INC., Joan Wrabetz, Keith Thorndyke, Louis C. Cole, Yuval Almog, Tom R. Dillon, Donald L. Lucas, Fred G. Moore and John Mitcham,
Defendants.
No. 02-82361, ADV. 02-4943(MFW).

March 24, 2003.

MEMORANDUM OPINION [FN1]

FN1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

WALRATH, Bankruptcy J.

*1 Before the Court are two Motions. The first, filed by Tricord Systems, Inc. ("Tricord"), and the individually named directors and officers ("the Director Defendants") seeks to transfer venue to the United States Bankruptcy Court for the District of Minnesota ("the Transfer Motion"). The second, filed by RGC International Investors, LDC ("RGC") seeks to remand this adversary proceeding to the Court of Chancery of the State of Delaware ("the Remand Motion"). For the reasons set forth below, the Remand Motion will be granted and the Transfer Motion will be denied as moot.

I. BACKGROUND

Tricord, a technology company incorporated in Delaware and headquartered in Plymouth, Minnesota, sought investors to provide a much-needed infusion of capital in late 2000 and early 2001. In February 2001, RGC, an investment group, made an equity investment of $25 million in Tricord pursuant to a Stock Purchase Agreement containing specified contractual remedies designed to protect RGC in the event Tricord became insolvent or was unable to maintain a listing on a national securities market. By February 2002, Tricord's financial performance and prospects for continued viability were sufficiently bleak that RGC concluded in a letter to Tricord that "the only proper course of action to preserve value for Tricord's shareholders is to commence an orderly sale of the company's technology and other assets to the highest bidders and to preserve the company's liquid and other assets for distribution to shareholders." Tricord declined to do so.

As a result, RGC commenced an action in the Delaware Chancery Court on April 5, 2002, and filed an Amended Complaint in that Court on May 15, 2002. The Amended Complaint contained claims based solely on Delaware law for breach of contract, common law fraud, breach of fiduciary duty, corporate waste, injunctive relief, and the appointment of a receiver. On April 19, 2002, RGC filed a motion for expedited proceedings, which was denied. However, a December 2002 trial date was set. On July 16, Tricord's continuing losses coupled with the threat of an immediate delisting of its stock, prompted RGC to renew its motion for expedited proceedings. That was granted on July 30, 2002 and trial was set for October 7, 2002.

On August 2, 2002, Tricord file a voluntary Chapter 11 petition in the United States Bankruptcy Court for the District of Minnesota. On the same day, the Chancery Court action was removed to this Court pursuant to the Notice of Removal filed by Tricord. On August 8, 2002, Tricord and the Director Defendants filed the Transfer Motion. Since August 16, 2002, this action has been tolled by a series of stipulations between the parties which were approved by this Court.

While this action was tolled, RGC and Tricord reached a settlement which was approved by the Bankruptcy Court in Minnesota on September 18, 2002. As a result, Tricord withdrew as a co-proponent of the Transfer Motion on January 9, 2003, and RGC dismissed its claims against Tricord on January 10, 2003.

II. DISCUSSION

*2 We begin our consideration of the Motions before us with the Remand Motion. *Lone Star Indus., Inc. v. Liberty Mutual Ins. Co.*, 131 B.R. 269, 273 (D.Del.1991) (logical and practical



Not Reported in B.R.                                    Page 2
(Cite as: 2003 WL 1565945, *2 (Bankr.D.Del.))

principles "dictate that the remand motion be determined before the venue motion"). Jurisdiction is premised on section 1334(b) of title 28, which provides that the "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

As this action was initially commenced in Delaware Chancery Court prior to the filing of the Chapter 11 petition, this action cannot be said to arise under title 11. Similarly, it cannot be said to have arisen in a title 11 case. For this Court to have jurisdiction, then, this action must be related to a case under title 11.

A proceeding is related to a case under title 11 if it " 'could conceivably have any effect on the estate being administered in bankruptcy' such that 'it is possible that [the] proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling or administration of the bankrupt estate." ' *Copelin v. Spirco, Inc.*, 182 F.3d 174, 179 (3d Cir.1999) (internal citations omitted). The Third Circuit has held that "the key word is 'conceivable." ' *Id.*

As noted above, Tricord is no longer a party to this action. Additionally, RGC has agreed to limit its recovery in this case to available insurance proceeds. This not only eliminates any claim RGC may have but also eliminates any indemnification claims against the bankruptcy estate by the Director Defendants for any difference between the amount of any judgments and the policy limits. Thus, this action can have no impact on the administration of Tricord's bankruptcy estate. Further, the action raises no bankruptcy issues but only issues related to Delaware state law. Therefore, we conclude that this action is not one related to a case under title 11. As such, this Court lacks jurisdiction to hear the action and it must be remanded.

III. *CONCLUSION*

For the foregoing reasons, RGC's Motion to Remand will be granted. That determination renders the Motion to Transfer Venue moot.

An appropriate Order is attached.

Not Reported in B.R., 2003 WL 1565945 (Bankr.D.Del.), 41 Bankr.Ct.Dec. 8

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**EXHIBIT B**

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22595288 (S.D.N.Y.)  
**(Cite as: 2003 WL 22595288 (S.D.N.Y.))**

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,  
S.D. New York.  
Stanley STAHL and Al Fugazy, Plaintiffs,  
v.  
Michael STAHL, Elaine Shulman, Mist Realty Co.,  
a New York Partnership, Stahl  
Bros. a/k/a Stahl Brothers Realty, a New York  
Partnership, Elaine Realty Co., a  
New York Partnership, Stahl-Velez Realty Co., a  
New York Partnership, and  
Blanca Realty Co., a New York Partnership,  
Defendants.  
No. 03 Civ.0405 VM.

Nov. 7, 2003.

Business partners of Chapter 11 debtor brought prepetition state-court action for an accounting against debtor, alleging that debtor had breached his fiduciary duties. After debtor filed bankruptcy petition and removed action, partners moved to remand and debtor moved to transfer action to district in which his bankruptcy case was pending. The District Court, Marrero, J., held that remand to state court was warranted.

Motion to remand granted.

West Headnotes

Bankruptcy ⚖ 2091  
51k2091 Most Cited Cases  
Remand of business partners' removed prepetition state-court action for breach of fiduciary duties against Chapter 11 debtor was warranted under bankruptcy remand statute, inasmuch action involved exclusively matters of state law, case was one of several related actions over which single state-court judge had been presiding for many years, state had strong interest in enforcing its laws, and there were no persuasive reasons not to allow state to do so. 28 U.S.C.A. § 1452(b).

*DECISION AND ORDER*

MARRERO, J.

*I. INTRODUCTION*
*1 This case is one of several actions filed over the past ten years in the Supreme Court of the State of New York by Stanley Stahl against his brother and business partner Michael Stahl. Michael Stahl has filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey. Michael Stahl removed this action to this Court and now seeks an order transferring venue to the District of New Jersey. Stanley Stahl and co-plaintiff Al Fugazy filed a motion to remand this case to the State court. Because the equities support remanding the case, the Court grants the remand motion and denies the cross-motion to transfer venue.

*II. FACTS*
Stanley Stahl ("S.Stahl") and Al Fugazy (collectively, the "Plaintiffs") brought this action for an accounting in 1992 in the Supreme Court for the State of New York, County of New York (the "State court"), against Michael Stahl ("M.Stahl"), Elaine Shulman ("Shulman"), Mist Realty Co., Stahl Brothers a/k/a/ Stahl Brothers Realty, Elaine Realty Co., Stahl-Velez Realty Co., and Blanca Realty Co. (collectively, the "Defendants".) The Stahls were partners in each of the five named partnerships, which own residential and commercial buildings in Manhattan, Brooklyn, the Bronx, and Mount Vernon, New York. [FN1] From 1985 until at least 1992, M. Stahl served as managing partner of the five partnerships.

> FN1. Fugazy was a partner with the Stahls in Blanca Realty Co. Shulman was a partner with the Stahls in Elaine Realty Co. Plaintiffs do not seek relief against Shulman.

In their Verified Complaint, Plaintiffs accused M. Stahl of breaching his fiduciary duties to his partners in numerous ways. Plaintiffs separately filed a motion in the State court for the appointment of a temporary receiver to manage the properties, which that court granted in 1993. M. Stahl has apparently refused to turn over to the receiver operating cash, security deposits, and books and records of the partnerships named as defendants in this action despite orders from the state court to do so.

The parties refer to the case at bar as the "Mist" action to distinguish it from three other lawsuits

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
(Cite as: 2003 WL 22595288, *1 (S.D.N.Y.))

Page 2

between the Stahls filed in the State court and an arbitration before the American Arbitration Association. S. Stahl is a plaintiff and M. Stahl is a defendant in each of the other three actions, all of which involve allegations that M. Stahl breached his fiduciary duties to his partners and shareholders in the course of managing several partnerships and corporations. [FN2] In the arbitration action, a limited partner of M. Stahl brought a proceeding against him for breach of fiduciary duties involving M. Stahl's management of several other real estate partnerships.

> FN2. The other three litigations in the State court are captioned *Stanley Stahl and Fred Stahl v. Gilbert Realty Co., Michael Stahl, Stahl Associates Ltd., and Milton Herman*, No. 00-118041 (the "Gilbert Action"); *Stanley Stahl, Fred Stahl and the Estate of Al Fuqazy v. Mauray Realty Co., Raymark Realty Co., Michael Stahl and Stahl Associates, Ltd.*, No. 97-102246 (the "Mauray Action"); and *Fred Stahl and Stanley Stahl v. Michael Stahl and Wick Holding Corp.*, No. 95-128196 (the "Wick Action").

The Mauray Action proceeded to trial in State court before Justice Charles Ramos. In a Decision dated October 17, 2002, that court held that M. Stahl had violated his fiduciary duty to his partners. A judgment against M. Stahl for $5,794,921 was to be entered at a proceeding before Justice Ramos that was scheduled for November 28, 2002.

On November 27, 2002, however, M. Stahl filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey. [FN3] The judgment against M. Stahl in the Mauray Action was entered in the State court in March 2003 after the Bankruptcy Court in New Jersey lifted an automatic stay of that action.

> FN3. M. Stahl is a resident of New Jersey.

*2 The Wick Action proceeded to trial before Justice Ramos in the State court in 1999, and also resulted in a ruling in favor of the plaintiffs. The current status of that case is unclear, but Plaintiffs in the present action indicate that further proceedings are needed to collect a portion of the judgment in that case from M. Stahl. The receiver had also not yet entered a final report in that action as of May 2003.

M. Stahl filed a petition to remove the Gilbert Action in July 2003 from the State court to this District. The current status of that case is unclear.

In January 2003, M. Stahl removed the present action from the State court to this Court pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr.P. 9027. [FN4]

> FN4. 28 U.S.C. § 1452(a) provides in relevant part: "(a)(1) A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."
> Fed. R. Bankr.P. 9027(a)(2) governs the timing for the removal of a civil action pending in a state court that is related to a case subsequently filed under the Bankruptcy Code. It provides in relevant part: "If the claim or cause of action in a civil action is pending when a case under the [Bankruptcy] Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief."

Plaintiffs have moved to remand the present action to the State court pursuant to 28 U.S.C. § 1452(b). [FN5] M. Stahl opposes remand and filed a Cross-Motion for an Order Transferring Venue to the District of New Jersey pursuant to 28 U.S.C. § 1412. [FN6]

> FN5. 28 U.S.C. § 1452(b) provides: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title."

> FN6. 28 U.S.C. § 1412 provides: "A district court may transfer a case or proceeding under title 11 to a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 22595288, *2 (S.D.N.Y.))

Page 3

district court for another district, in the interest of justice or for the convenience of the parties."

### III. DISCUSSION

When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand. [FN7]

> FN7. *See Renaissance Cosmetics, Inc. v. Development Specialists Ing.*, 277 B.R. 5, 11 (S.D.N.Y.2002).

The bankruptcy remand provision of the United States Code, 28 U.S.C. § 1452(b), enables a federal district court to which a claim related to a bankruptcy case has been removed to remand that claim "on any equitable ground." The Second Circuit has interpreted this provision to allow for remand on any ground that is "fair and reasonable." [FN8]

> FN8. *In re Catherdral of the Incarnation of the Diocese of Long Island*, 99 F.3d 66, 69 (2d Cir.1996).

Courts have developed seven factors to consider in deciding whether to remand a case under 28 U.S.C. § 1452(b). In *Drexel Burnham Lambert Group v. Vigilant Insurance Co.*, No. 90 Civ. 6595, 130 B.R. 405, 407 (S.D.N.Y.1991), the court examined:
(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

Plaintiffs argue that all applicable factors favor remanding this case to the State court. M. Stahl counters that all applicable factors weigh against remand.

M. Stahl argues that "[t]he efficient administration of [his] bankruptcy estate would only be enhanced by denial of the remand motion and the transfer of the Mist Action to the United States Bankruptcy Court for the District of New Jersey." (Defendant Michael Stahl's Objection to Motion to Remand and Cross-Motion for an Order Transferring Venue to the District of New Jersey ("Objection") at 12.) But M. Stahl fails to demonstrate how the efficient administration of his bankruptcy estate would be promoted if this Court were to deny his cross-motion to transfer venue and also deny Plaintiffs' motion to remand. In other words, M. Stahl does not argue that the presence of this case in this District enhances the efficient administration of his bankruptcy estate. Moreover, as Plaintiffs note, a single judge of the State court has overseen all four litigations in that court, appointed or supervised temporary receivers in those actions, and has issued numerous rulings affecting the parties' interests that conceivable may have implications for the matters at issue in the case now before this Court. In the Mist Action, Justice Ramos has already found M. Stahl in contempt for failing to provide the receiver with documents the receiver needs to successfully operate the partnerships.

*3 Applying the remand factors to claims for breach of fiduciary duty and fraud, another court determined that the first criterion supported remand because those claims "do not require any 'special expertise' of the Bankruptcy Court," and noted that, on the contrary, the greater expertise of state court judges as to issues of state law "would certainly effect a more efficient estate administration." [FN9] Remanding this case to the State court and the judge who, prior to the removal, presided over it for over eight years, and who has also supervised litigation of the several related cases, would promote efficiency far more than retaining it in this District.

> FN9. *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 696 (Bankr.E.D.N.Y.1997).

The second remand factor weighs strongly in favor of remand. As Plaintiffs argue, issues of New York State law "permeate" this case. (Memorandum of Law in Support of Motion for Remand ("Remand Motion") at 30.) This case raises no federal questions, and M. Stahl concedes that his complaint is based on state law. M. Stahl cites *Neuman v. Goldberg*, 159 B.R. 681 (S.D.N.Y.1993), in which the court denied a motion to remand, in support of his argument that this factor tilts against remand. The court there stated that "[t]he fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 22595288, *3 (S.D.N.Y.))

Page 4

particularly where the state law claims are not novel or complex." *Id.* at 688. But though the predominance of state law issues in a case does not alone require remand, it does not mean that that consideration, in combination with others, could not usually tilt in favor of remand. Indeed, the plain language of the second remand criterion encourages courts to examine "the extent to which issues of state law predominate." [FN10]

   FN10. *Drexel Burnham,* 130 B.R. at 407.

The third factor calls for an inquiry into the difficulty or unsettled nature of the applicable state law. The claims at issue here do not appear to be particularly complex. Plaintiffs are alleging breaches of fiduciary duty, and they are seeking an accounting and a declaration that certain partnerships have been dissolved. What is unique here, and bears particular consideration, is the interrelation of the instant case with the other actions still in State court involving these parties and their other interests, and the extent to which the resolution of those matters could affect an adjudication here.

The fourth factor, comity, " 'focuses on the state's interest in developing its law and applying its law to its citizens." ' [FN11] M. Stahl argues that he "has no intention of using the removal provisions as a substitute for the appellate process." (Objection at 13.) But he makes no argument as to why comity weighs against remand. New York State has a strong interest in having its own courts enforce its laws, particularly given M. Stahl's interest in transfering venue of this action to federal court in New Jersey if the action is not remanded.

   FN11. *Renaissance Cosmetics,* 277 B.R. at 16 (quoting *Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.,* No. 99 Civ. 11248, 2000 WL 890191, at *3 (S.D.N.Y. July 5, 2000).)

M. Stahl argues that the fifth factor, the degree of relatedness or remoteness of the action to the main bankruptcy case, supports denying the motion to remand because "the outcome of the Mist Action will significantly affect the administration of [his] Chapter 11 estate." (Objection at 14.) M. Stahl notes that the court in *Renaissance Cosmetics,* 277 B.R. at 16-17, determined that this factor weighed against remand. The claim subject to a motion to remand in that case was an allegation by the debtor in a Chapter 11 proceeding that the defendants had caused the debtor to delay filing for bankruptcy and had depleted the debtor's assets before the filing. The court determined that "the outcome of the Action will significantly effect both the size and administration of [the debtor's] estate." [FN12] Obviously, the resolution of the Mist Action has the potential to affect the size of M. Stahl's estate. But that argument can be made for most claims removed to federal court under 28 U.S.C. § 1452(a), which only applies to the removal of claims related to bankruptcy cases. Something more than a mere effect on the size and administration of the bankruptcy estate must be involved for the fifth remand factor to weigh against remand.

   FN12. *Id.*

*4 Both parties agree that the sixth factor, the right to a jury trial, is not an issue in this case.

The final factor focuses on prejudice to involuntarily removed defendants. M. Stahl removed this case to federal court. The remaining individual defendant, Shulman, informed the Court that she has no objection to the case remaining in federal court. The other defendants are partnerships that the Plaintiffs are partners to and are seeking to dissolve. There is no indication that the federal forum would prejudice those defendants, nor is there an indication that a remand would cause prejudice.

Ultimately, those factors that are most applicable here all support the remand of this action to the State court and weigh more heavily in favor of remand than the factors that do not or are at best neutral. This action involves exclusively matters of state law, and is one of several related actions over which a single State court judge has been presiding for many years. The State of New York has a strong interest in enforcing its laws, and there are no persuasive reasons not to allow it to do so.

Based on this resolution of the Remand Motion, there is no need to address M. Stahl's cross-motion for a transfer of venue. [FN13]

   FN13. *See Renaissance Cosmetics,* 277 B.R. at 11.

IV. *ORDER*

For the reasons discussed above, it is hereby

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
(Cite as: 2003 WL 22595288, *4 (S.D.N.Y.))

Page 5

ORDERED that the motion of plaintiffs Stanley Stahl and Al Fugazy to remand this action to the Supreme Court of the State of New York, New York County, is granted and the cross-motion of defendant Michael Stahl to transfer venue is denied.

Because there are no remaining issues in this matter before this Court, the Clerk of Court is directed to close this case.

Not Reported in F.Supp.2d, 2003 WL 22595288 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

. 1:03cv00405 (Docket) (Jan. 17, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**EXHIBIT C**

LEXSEE 2002 US DIST LEXIS 5653

STRATOS LIGHTWAVE, INC., Plaintiff/Counterclaim Defendant, v. E2O COMMUNICATIONS, INC., Defendant/Counterclaim Plaintiff.

Civil Action No. 01-309-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 5653

March 26, 2002, Decided
March 26, 2002, Filed

**DISPOSITION:** [*1] Motion to transfer venue to Central District Of California denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent owner filed an action against defendant alleged patent infringer claiming infringement of several United States patents. The alleged infringer moved to transfer venue.

**OVERVIEW:** After a consideration of the relevant private interests, the court concluded that the balance of the factors did not weigh strongly in favor of transfer. The alleged infringer incorporated in Delaware and that was a rational and legitimate reason for choosing to sue the alleged infringer in Delaware. Therefore, the patent owner's forum preference, as well as the alleged infringer's Delaware incorporation, weighed in favor of maintaining the action in Delaware. None of the public interests weighed in favor of transfer. Patent rights are not local or state matters, and therefore, cannot give rise to a local controversy, or implicate local public policy. Similarly, the familiarity of the trial judge with the application of state law was not applicable because it was a patent infringement action.

**OUTCOME:** The alleged infringer's motion to transfer venue was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] Transfer of a civil action is governed by 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3] When reviewing a motion to transfer under 28 U.S.C.S. § 1404(a) district courts must consider, among other things, private and public interests. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. The burden is upon the movant to establish that the balance of the interests strongly weigh in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4] The private interests considered in a 28 U.S.C.S. § 1404 motion are: (1) a plaintiff's choice of forum; (2) a defendant's preferred forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties due to their relative physical and financial conditions; (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum; and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5] The public interests considered in a 28 U.S.C.S. § 1404 motion are: (1) the enforceability of the judgment; (2) practical considerations regarding the ease, speed, or expense of trial; (3) the administrative difficulty due to court congestion; (4) the local interest in deciding local

Case 1:05-cv-00793-JJF   Document 18-2   Filed 11/30/2005   Page 12 of 14

Page 2
2002 U.S. Dist. LEXIS 5653, *

controversies in the home forum; (5) the public policies of the two fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN6] The transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred. However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum.

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*

[HN7] Patent rights are not local or state matters, and therefore, cannot give rise to a local controversy, or implicate local public policy.

**COUNSEL:** Attorneys for the plaintiff, Stratos Lightwave, Inc.: Joseph N. Hosteny, III, Arthur A. Gasey, Paul C. Gibbons, Niro, Scavone, Haller & Niro, Chicago, Illinois. Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Attorneys for the defendant, E2O Communications, Inc.: David P. Enziminger, Brett J. Williamson, David E. Lederman, O'Melveny & Meyers LLP, Los Angeles, California. William J. Wade, Richards, Layton & Finger, Wilmington, Delaware.

**JUDGES:** Joseph J. Farnan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Joseph J. Farnan

**OPINION:**

### MEMORANDUM ORDER

Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I. 11) filed by Defendant E2O Communications, Inc. ("E2O"). For the reasons discussed, the motion will be denied.

### BACKGROUND

Stratos Lightwave, Inc. ("Stratos") and E2O both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1). Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E2O is also incorporated [*2] in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E2O's accused products is conducted in California, where the majority of E2O's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E2O alleging infringement of U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173, Re. 36,820, 6,201,704B1, and 6,320,878B1. (D.I. 1). E2O subsequently filed the instant motion to transfer.

### DISCUSSION

By its motion, E2O contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E2O contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E2O further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E2O contends that the Central District of [*3] California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E2O contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). n1

---

n1 E2O continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

---

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E2O in Delaware because E2O is incorporated in this state. (D.I. 17 at 5). Stratos further contends that E2O, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E2O's failure to identify non-party witnesses [*4] beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D.I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I. 15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

[HN1] Transfer of a civil action is governed by *28 U.S.C. § 1404*(a) which provides, [HN2] "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been

brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964) (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in § 1404(a) and by the United States Court of Appeals for the Third [*5] Circuit, warrant a transfer.

The Third Circuit has instructed that [HN3] when reviewing a motion to transfer under *28 U.S.C. § 1404*(a) district courts must consider, among other things, private n2 and public n3 interests. See *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995). When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id. at 883;* see also *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1920). The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co.*, 61 F. Supp. 2d 128, 131 (D. Del. 1999).

> n2 [HN4] The private interests are:
>
>> (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.
>
> *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

[*6]

> n3 [HN5] The public interests are:
>
>> (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.
>
> Id.

I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte*, 431 F.2d at 25. In the instant case, stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. See *Continental*, 61 F. Supp. 2d at 131 (stating that [HN6] "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen [*7] its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. See *Joint Stock Society v. Heublein, Inc.*, 936 F.Supp 177, 187 (D. Del. 1996). And the fact that E2O has incorporated in Delaware is a rational and legitimate reason for choosing to sue E2O in Delaware. In fact, E2O, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993). Therefore, Stratos' forum preference, as well as E2O's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, [*8] the pri-

vate interests weigh in favor of maintaining this action in Delaware.

## II. Public Interests

In the Court's view, none of the public interests weigh in favor of transfer. [HN7] Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E2O to litigate this action in. Accordingly, the motion to transfer will be denied. n4

n4 The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar*, 205 F.R.D. 552 (N.D.Ca. 2001) (the "Methode Case"), and its resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

[*9]

NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E2O's Motion To Transfer Venue To The Central District Of California (D.I. 11) is **DENIED**.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE