## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BANK OF AMERICA, N.A. (USA), | |
| Plaintiff, | |
| vs. | C. A. No. 05-793 |
| US AIRWAYS, INC., US AIRWAYS GROUP, INC. and AMERICA WEST AIRLINES, INC., | |
| Defendants, | **PUBLIC VERSION** |
| and | |
| JUNIPER BANK, | |
| Intervenor. | |

## MEMORANDUM OF PLAINTIFF BANK OF AMERICA IN SUPPORT OF ITS MOTION FOR EXPEDITED REMAND TO VICE CHANCELLOR STRINE OF THE DELAWARE CHANCERY COURT

Of Counsel:

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

POTTER ANDERSON & CORROON LLP
Richard L. Horwitz (#2246)
Kevin R. Shannon (#3137)
Brian C. Ralston (#3770)
Hercules Plaza
1313 North Market St.
Wilmington, DE 19899

*Attorneys for Plaintiff*

Dated:  November 22, 2005

Public Version Dated:  December 2, 2005

# TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................................ii

Preliminary Statement ................................................................................................1

Statement of Facts.......................................................................................................3

Argument ..................................................................................................................10

I.    THIS CASE SHOULD BE REMANDED BECAUSE THIS COURT
      LACKS SUBJECT MATTER JURISDICTION...................................................10

      A.    The Case Does Not "Arise Under" Title 11 of the United States Code. ...11

      B.    The Case Does Not "Arise In" a Case under Title 11. .............................12

      C.    The Case Is Not "Related to" Cases under Title 11...................................18

II.   IN ANY EVENT, THE COURT MUST ABSTAIN FROM HEARING
      THE CASE PURSUANT TO 28 U.S.C. § 1334(C)(2). .......................................21

III.  EVEN IF THE COURT HAD JURISDICTION AND WERE NOT
      REQUIRED TO ABSTAIN, IT SHOULD EXERCISE ITS DISCRETION
      NOT TO HEAR THE CASE UNDER 28 U.S.C. §§ 1334(C)(1) AND
      1452. .................................................................................................................23

IV.   THE COURT SHOULD DECIDE THIS MOTION AND REMAND THE
      CASE ON AN EXPEDITED BASIS TO AVOID UNDUE HARM TO
      BANK OF AMERICA AND SERVE THE INTERESTS OF ALL
      PARTIES. ...........................................................................................................26

V.    IF AND ONLY IF THE COURT DECIDES NOT TO REMAND THIS
      CASE TO THE CHANCERY COURT, THIS COURT SHOULD
      COMPEL ARBITRATION PURSUANT TO THE AGREEMENT OF
      THE PARTIES. ...................................................................................................26

Conclusion................................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*,
266 F.3d 388 (5th Cir. 2001) .............................................................................17, 18

*Barge v. W. S. Life Ins. Co.*,
307 B.R. 541 (S.D. W. Va. 2004) ......................................................................22, 25

*Beck v. Reliance Steel Prods. Co.*, 860 F.2d 576 (3d Cir. 1988) ....................................27

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*,
372 F.3d 154 (3d Cir. 2004).............................................................................17, 18

*Bowers v. McGladrey & Pullen (In re Fla. Hotel Props. L.P.)*,
163 B.R. 757 (W.D.N.C. 1994) .......................................................................13, 14

*Cent. States Se. and Sw. Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.)*,
10 B.R. 203 (Bankr. N.D. Ohio 1981) ..............................................................19, 20

*Eastland Partners L.P. v. Brown (In re Eastland Partners L.P.)*,
199 B.R. 917 (Bankr. E.D. Mich. 1996) ............................................................12, 13

*Goodman v. Phillip R. Curtis Enter., Inc.*,
809 F.2d 228 (4th Cir. 1987) ..........................................................................18, 19

*Grimes v. Graue (In re Haws)*,
158 B.R. 965 (Bankr. D. Tex. 1993).........................................................................11

*H&L Developers, Inc. v. Arvida/JMB Partners*,
178 B.R. 71 (Bankr. E.D. Pa. 1994) .......................................................................20

*Haga v. Moskowitz*,
No. 1:05CV00033, 2005 WL 946516 (W.D. Va. Apr. 22 2005)..........................24, 25

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
885 F.2d 1149 (3d Cir. 1989)..................................................................................27

*Henneghan v. Columbia Gas of Va., Inc. (In re Henneghan)*,
No. 03-11853-SSM, 2005 WL 2267185 (Bankr. E.D. Va. June 22, 2005) .............................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

*Hylland v. Nw. Corp. (In re Nw. Corp.)*,
　319 B.R. 68 (D. Del. 2005) .........................................................................14

*In re A.H. Robins Co. Inc.*,
　182 B.R. 128 (Bankr. E.D. Va. 1995) .........................................................18

*In re Best Reception Sys., Inc.*,
　220 B.R. 932 (Bankr. E.D. Tenn. 1998) ......................................................14

*In re Earned Capital Corp.*,
　331 B.R. 208 (W.D. Pa. 2005)................................................................24, 25

*In re Mobile Tool Int'l*,
　320 B.R. 552 (Bankr. D. Del. 2005) ...........................................................21

*In re RBGSC Inv. Corp.*,
　253 B.R. 369 (E.D. Pa. 2000) .....................................................................22

*In re Valley Media, Inc.*,
　289 B.R. 27 (Bankr. D. Del. 2003) ..............................................................24

*Lomas & Nettleton Co. v. Warren (In re Warren)*,
　125 B.R. 128 (E.D. Pa. 1991) .....................................................................25

*Lone Star Indus., Inc. v. Liberty Mut. Ins.*,
　131 B.R. 269 (D. Del. 1991).........................................................................25

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*
　*(In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111 (Bankr. D.N.J.
　2003) ............................................................................................................14

*Pacor, Inc. v. Higgins*,
　743 F.2d 984 (3d Cir. 1984)..........................................................................19

*Pettibone Corp. v. Easley*,
　935 F.2d 120 (7th Cir. 1991) ........................................................................19

*Ratliff v. Tolliver*,
　No. 102CV00019, 2002 WL 989524 (W.D. Va. May 14, 2002)...................21

*Shubert v. Roche Holding AG*,
　157 F. Supp. 2d 542 (E.D. Pa. 2001) ...........................................................24

iii

# TABLE OF AUTHORITIES

Page(s)

*Steel Valley Auth. v. Union Switch & Signal Div.*,
  809 F.2d 1006 (3d Cir. 1987) ...................................................................................10

*Torkelsen v. Maggio (In re Guild & Gallery Plus)*,
  72 F.3d 1171 (3d Cir. 1996) ..........................................................................12, 22, 23

*Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*,
  278 B.R. 42 (Bankr. D. Del. 2002) ...............................................................13, 21, 23

*Wheeling-Pittsburgh Corp. v. Am. Ins. Co.*,
  267 B.R. 535 (N.D. W. Va. 2001) ................................................................................22

*Wood v. Wood (In re Wood)*,
  825 F.2d 90 (5th Cir. 1987) ..........................................................................11, 12, 13

*Zoren v. Genesis Energy, L.P.*,
  195 F. Supp. 2d 598 (D. Del. 2002) ...........................................................................10

**Statues and Rules**

9 U.S.C. § 4 ............................................................................................................................27

11 U.S.C. § 503 .....................................................................................................................14

11 U.S.C. § 548 .....................................................................................................................11

28 U.S.C. § 1334 .............................................................................................................passim

28 U.S.C. § 1412 .....................................................................................................................8

28 U.S.C. § 1447 ................................................................................................................1, 10

28 U.S.C. § 1452 .............................................................................................................passim

Plaintiff Bank of America, N.A. (USA) ("Bank of America") respectfully submits this memorandum in support of its motion, pursuant to 28 U.S.C. §§ 1447(c), 1334(b), 1334(c) and 1452 for expedited remand of this action to the Delaware Chancery Court, Vice Chancellor Strine, where it was commenced against US Airways, Inc., US Airways Group, Inc., and America West Airlines, Inc. (collectively, "US Airways"), and where Juniper Bank ("Juniper") was allowed to intervene, or, alternatively, to compel arbitration of this action.

## PRELIMINARY STATEMENT

Bank of America brought the present action in the Delaware Chancery Court to enforce its rights under its co-branded card agreement with US Airways, Inc. (the "Agreement"). US Airways breached the Agreement by, among other things, agreeing to permit Juniper to issue a competing card. As soon as possible under the Chancery Court Rules after filing suit, Bank of America filed a motion for partial summary judgment on the issue of whether US Airways breached the Agreement. Since Juniper plans to begin issuing its card on January 1, 2006, Vice Chancellor Strine set a schedule for briefing and argument prior to the end of the year.

Before Vice Chancellor Strine could consider the motion (and with virtually no advance indication to Bank of America), US Airways removed the case to this Court, seeking to transfer it to the United States District Court for the Eastern District of Virginia for referral to the bankruptcy court that handled US Airways' bankruptcy (the "Bankruptcy Court"). Juniper joined in the removal. US Airways and Juniper (collectively, the "Removing Parties") contend in their removal papers that this case should be heard in the Bankruptcy Court. There is, however, no basis for the bankruptcy court to hear the case, which was plainly removed for the purpose of delaying the

resolution of Bank of America's summary judgment motion before year end to the irreparable disadvantage of Bank of America.

        As is discussed below, there is no federal subject matter jurisdiction over the case.  (*See* Section I below.)  In any event, the federal courts are required to abstain from hearing this case under the mandatory abstention statute, which precludes this Court (as a matter of law) from hearing it.  (*See* Section II below.)  Even if the Court were not required to abstain from hearing the case, it should exercise its discretion not to hear the case, because it raises only state law claims—which relate to a contract that was entered into prior to the commencement of the bankruptcy proceeding—that arose after confirmation by the Bankruptcy Court of US Airways' plan of reorganization.  The very Administrative Expense Claim Requests that US Airways claims give rise to bankruptcy jurisdiction make clear that this case cannot properly be resolved in the Bankruptcy Court.  (*See* Section III below.)  Indeed, the Bankruptcy Court expressly stated in its confirmation order that Bank of America's rights under and related to the Agreement would in no manner be impaired or modified by US Airways' bankruptcy plan process. The Court should grant this motion and remand the case, on an expedited basis, to allow Vice Chancellor Strine to resolve Bank of America's summary judgment motion before it suffers irreparable injury.  (*See* Section IV below.)

        For the reasons stated above, this case is not susceptible to the exercise of federal subject matter jurisdiction and the Court must (and, at a minimum, should) abstain from hearing it.  If and only if this Court decides not to remand this case to the Chancery Court, it should compel arbitration pursuant to the arbitration provision in the Agreement.  The Agreement provides that either party to the Agreement may require

arbitration of any dispute, whether in contract or tort, arising out of or relating to the Agreement. If Bank of America is not afforded the right to select the forum in which to litigate its state law claims against US Airways (*i.e.*, Delaware Chancery Court), then it should at least be permitted to arbitrate them where and as the parties agreed. (*See* Section V below.)

## STATEMENT OF FACTS[1]

### A.    The Co-Branded Card Agreement

1.    Bank of America and US Airways executed the Agreement as of May 20, 2003. (Agreement at 1 (Ex. 1).) The term of the Agreement, which is governed by Virginia law (*id.* § 8.9.8), ends on December 3, 2008, unless renewed. (*Id.* at 1.)

2.    The Agreement restates, amends and extends a prior agreement entered into by Bank of America and US Airways in 2000 ("2000 Agreement"), establishing and maintaining a co-branded credit card program for the benefit of US Airways' frequent flyers and customers. (*Id.*; 2000 Agreement (Ex. 2).)

3.    Under the Agreement, Bank of America issues a US Airways co-branded credit card (the "Card") to consumers who reside in the United States. (Agreement §§ 2, 5.2.1 (Ex. 1).) Holders of the Card earn miles in US Airways' frequent flyer program, Dividend Miles. (*Id.* § 2.1.1 and Exs. A, A1 annexed thereto.)

4.    Bank of America entered into a similar co-branded credit card agreement with America West Airlines ("America West"), dated January 1, 2001

---

[1] Exhibits referenced herein are cited as "Ex. __" and submitted with the Affidavit of Brian C. Ralston in support of Plaintiff's Motion for Expedited Remand to Vice Chancellor Strine of the Delaware Chancery Court. References to Defendants' Notice of Removal shall be cited as "Notice Rem. __").

3

("America West Agreement" (Ex. 3).)  Under the America West Agreement, Bank of

America is the sole issuer of America West cards from January 1, 2001 to December 31,

2005.  (*Id.* §§ 6, 9.)

>    **B.    The Agreement's Exclusivity and Marketing Provisions**

>    5.    The Agreement requires US Airways to give Bank of America

exclusivity during the term of the Agreement.  The relevant provision (the "Exclusivity

Provision") states:

>    SECTION 5:  **<u>EXCLUSIVITY</u>**
>
>    * * *
>
>    5.2.1 Bank Sole Card Issuer for *US Airways*
>
>    (a) Generally
>
>    During the term of this Agreement, Bank [of America] shall be the only
>    Person that US Airways permits or licenses, directly or indirectly, to issue
>    a US Airways Card to consumers who reside in the United States of
>    America.  US Airways shall not issue or market a Competing Card.  In
>    addition, US Airways shall not enter into, solicit, offer, negotiate or
>    otherwise attempt to enter into any agreement with a third party that would
>    permit such third party to issue or market a Competing Card.

(Agreement § 5.2.1 (Ex. 1).)

>    6.    Under Section 2.4 of the Agreement, US Airways, Inc. also has a

continuing obligation during the term of the Agreement to "market the [co-branded card]

Program to Members, the Bank's customers and the general public as set forth in this

Section 2.4".  (*Id.* § 2.4.)

>    **C.    Breaches and Inducement of Breaches of Agreement**

>    7.    Despite the Exclusivity Provision, US Airways' parent,

US Airways Group, Inc. ("US Airways Group") negotiated and/or entered into an

agreement authorizing Juniper to offer and market a co-branded card program for the New US Airways Group (the "Juniper Agreement"). (Juniper Agreement (Ex. 4).) In so doing, US Airways Group, Inc. acted with and on behalf of US Airways, Inc., whose consent, performance and participation were required by the Juniper Agreement. (*Id.* §§ 2(p), (v); Agreement § 8.8.1(vii) (Ex. 1).) US Airways Group acted as US Airways' agent in entering into the Juniper Agreement; US Airways authorized, ratified and knowingly benefited from the Juniper Agreement. (US Airways Group, Inc., and US Airways, Inc., Current Report (Form 8-K) ("Form 8-K"), at Item 1.01 (Aug. 12, 2005) (Ex. 5).)

8.      The Juniper Agreement purports to amend the Juniper/America West Agreement, and assigns that agreement to US Airways Group. (Juniper Agreement at § 3 (Ex. 4) (providing that "Juniper hereby consents, on a one-time basis to the assignment of the Original Agreement as amended hereby to US Airways Group").) The Juniper Agreement became effective on September 27, 2005. (*Id.* at 3; Press Release, US Airways Group, Inc., Reorganized US Airways Group, Inc. Completes Merger With America West Airlines (Sept. 27, 2005) (Ex. 6).)

9.      Pursuant to the Juniper Agreement, Juniper is permitted or licensed (during the term of the Agreement) to issue a US Airways card. (Juniper/America West Agreement § 3.1 (Ex. 7); Juniper Agreement § 3 (Ex. 4).) The Juniper Agreement expressly grants Juniper a license to use US Airways' marks to promote a co-branded card in competition with the Card. (Juniper Agreement § 2(p) (Ex. 4); Juniper/America West Agreement § 8.2 (Ex. 7).) Unless US Airways is required to abide by the Exclusivity Provision, Juniper will issue a Juniper/US Airways card to compete with the

Bank of America/US Airways card beginning on January 1, 2006. (US Airways website materials (Ex. 8).)

10.     US Airways has marketed (and is marketing) the Juniper/US Airways card. For example, on its website, US Airways states that: "the new US Airways has signed an agreement with Barclays Bank to be the provider of the new US Airways Dividend Miles credit card"; the Bank of America/US Airways card will be "phased out over the next two years"; and "the new Barclays Bank US Airways Dividend Miles credit card will be the card going forward". (*Id.*)

11.     America West intentionally induced and/or caused US Airways Group, Inc. and US Airways, Inc. to breach the Agreement.

**D.     The Commencement of This Action**

12.     On October 12, 2005, within three weeks of the effective date of the Juniper Agreement, Bank of America commenced this action in Delaware Chancery Court. The case was assigned to Vice Chancellor Strine. (Complaint ("Compl.") (Ex. 9).)

13.     In its Complaint, Bank of America asserted only state law causes of action, for breach of a pre-petition contract and for tortious interference. (Compl. ¶¶ 37-60 (Ex. 9).)

14.     Bank of America asserted claims against US Airways for breach of contract based on US Airways: (1) permitting or licensing a person or entity other than Bank of America to issue a US Airways card to consumers who reside in the United States; (2) issuing or marketing a competing card; and/or (3) entering into, soliciting,

6

offering, negotiating, or otherwise attempting to enter into any agreement with a third party that would permit such third party to issue or market a competing card, for breach of the exclusivity provision; and (4) failing to fulfill its marketing obligations as required by the Agreement.  (Compl. ¶¶ 37-48 (Ex. 9).)

15.    Bank of America also asserted claims against America West for tortious interference with contract based on America West inducing and/or causing US Airways to breach the Agreement, and against US Airways Group and America West for tortious interference with prospective economic advantage.  (Compl. ¶¶ 49-60 (Ex. 9).)

16.    In relation to each of these claims, Bank of America sought specific performance of the Agreement, injunctive relief restraining current and future breaches of the Agreement, and an award of damages.  (Compl. at 12 ("Prayer for Relief") (Ex. 9).)

17.    As soon as possible under Chancery Court Rule 56(c), on November 3, 2005, Bank of America filed a motion for partial summary judgment on the central issue in the case: whether US Airways breached the Agreement by allowing Juniper to issue a US Airways card to compete with the Card.  (Plaintiff's Mot. for Partial Summ. J. (Ex. 10).)

18.    On November 14, 2005, Vice Chancellor Strine entered a Scheduling Order requiring US Airways to file its opposition papers to Bank of America's motion for partial summary judgment on or before December 2, 2005, and requiring Bank of America to file its reply papers on or before December 9, 2005.  Vice Chancellor Strine scheduled oral argument for December 22, 2005 at 1:30 pm.  (11/14/2005 Scheduling Order (Ex. 11).)

19.     Bank of America's claims need not be resolved in order for US Airways to carry out its Joint Plan of Reorganization ("Plan").  Nor does this case involve any bankruptcy law issues.  (Compl. (Ex. 9).)  In fact, the Bankruptcy Court expressly stated in its confirmation order that Bank of America's rights under and related to the Agreement would in no manner be impaired or modified by US Airways' bankruptcy plan process.  (Confirmation Order ¶ 45 (Ex. 13).)

**E.     US Airways' Notice of Removal and Motion to Transfer**

20.     More than a month after this action was commenced, and in an obvious effort to derail the prompt resolution of Bank of America's motion for partial summary judgment, US Airways filed a Notice of Removal with this Court on November 15, 2005 ("Notice Rem.").

21.     US Airways asserted that this Court has jurisdiction to hear the case pursuant to 28 U.S.C. §§ 1334 and 1452.  (Notice Rem. ¶ 12.)

22.     On November 16, 2005, US Airways filed a motion pursuant to 28 U.S.C. § 1412 to transfer this case to the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").  (11/15/2005 Motion to Transfer (Ex. 12).)

23.     US Airways contends that Bank of America's case should be addressed by the Bankruptcy Court because it "arises under" the Bankruptcy Code, and because it both "arises in" and "relates to" US Airway's Bankruptcy, despite the language of the Confirmation Order stating that the rights in suit were not to be impaired by the bankruptcy process.  (Notice Rem. ¶ 1.)

8

F.     **This Case Does Not Raise Any Bankruptcy Issues**

24.     On September 16, 2005, the Bankruptcy Court approved US Airways' Plan, including the merger of America West Holdings, Inc. and US Airways Group (the "Merger").  (Confirmation Order ¶ 11, p. 21 (Ex. 13).)

25.     The only mention of the Agreement in US Airways' Plan, Disclosure Statement, or Plan Confirmation Order derives from Bank of America's request that US Airways make clear, and the Bankruptcy Court order, that Bank of America's rights under and related to the Agreement would in no manner be impaired or modified by US Airways' bankruptcy plan process.  (*Id.* ¶ 45.)

26.     That section of the Plan Confirmation Order provides: "Nothing in the Plan, including Section 11.8 thereof, or this Confirmation Order, is intended to, or shall, release, modify, impair or enjoin any rights or claims held by or owed to Bank of America, N.A. (USA) or Bank of America, N.A. (or any of their affiliated entities) in any manner arising from or related to: (i) the Co-Branded Card and Merchant Services Agreement, dated May 20, 2003, as amended [*i.e.*, the Agreement], assumed pursuant to the Court order entered on November 22, 2004 (Docket No. 855), or (ii) the Co-Branded Credit Card Agreement, dated January 1, 2001, between Bank of America, N.A. (USA) and America West Airlines, Inc. (as amended)."  (*Id.* ¶ 45.)

27.     The merger of US Airways Group and America West Holdings became effective on September 27, 2005.  (9/27/2005 US Airways Group Press Release (Ex. 6).)  As a result of the Merger, America West Holdings Corporation became a subsidiary of US Airways Group.

28.    The merged entity operates under the US Airways brand name. (*Id.*)  America West's management is in control of the former debtor's operations.  (US Airways Group, Inc. and US Airways, Inc. Form 8-K (Oct. 3, 2005) at 6 ("Item 5.01- Changes in Control of the Registrant") (Ex. 16).)

29.    No Plan administration or implementation matters are implicated by the present litigation.  As US Airways has now emerged from bankruptcy and merged with America West, its Plan has now been implemented and substantially consummated, and cannot be undone by any determination as to Bank of America's contractual rights in the present litigation.

## ARGUMENT

## I.    THIS CASE SHOULD BE REMANDED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION.

The Removing Parties removed this case, and seek to transfer it to the Bankruptcy Court, on the grounds that it "arises under" the Bankruptcy Code, and that it "arises in" and is "related to" US Airways' Bankruptcy.[2]  The Removing Parties bear the burden of establishing the existence of federal jurisdiction.  *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 602 (D. Del. 2002).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Because the Removing Parties have not established—and cannot establish—a basis for federal subject matter jurisdiction, this case must be remanded.

---

[2] Under Section 1334(b) of Title 28, United States Code, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11".

### A.    The Case Does Not "Arise Under" Title 11 of the United States Code.

The district courts have "arising under" jurisdiction over only those proceedings that "involve a cause of action created or determined by a statutory provision of title 11". *Wood v. Wood (In re Wood),* 825 F.2d 90, 96 (5th Cir. 1987). "Arising under" jurisdiction applies only to proceedings that derive directly from the Bankruptcy Code—such as, for example, actions to recover fraudulent conveyances under 11 U.S.C. § 548, avoidance actions under Section 544, or actions to recover post-petition transfers under Section 549. *See*, *e.g.*, *Grimes v. Graue (In re Haws)*, 158 B.R. 965, 969 (Bankr. D. Tex. 1993) ("[f]or a proceeding to 'arise under' title 11, a party must be claiming a right or remedy created by one of the specific sections of Title 11").

The Removing Parties baldly assert that this case "'arises under' the Bankruptcy Code", yet they make no attempt to identify any section of title 11 that might conceivably have created the ostensibly removable causes of action. (Notice Rem. ¶¶ 1-2.) No such identification is possible, as this action comprises only state contract and tort claims, and no federal claims of any kind. (Compl. ¶¶ 37-60 (Ex. 9).) The Removing Parties also attempt to imply that "arising under" jurisdiction exists by asserting that "the present action is a 'core' proceeding" and that "[a] proceeding is core if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature could arise only in the context of a bankruptcy case". (Notice Rem. ¶ 20.) Yet, again, the Removing Parties fail to indicate just what this title 11 "substantive right" is supposed to be in this case, or why it is that a state law breach of contract action could only arise in the context of a bankruptcy case. (*Id.*) Obviously, they can make no such showing with respect to Bank of America's exclusively state law claims. Because this

11

case does not derive directly from the Bankruptcy Code, it is not subject to "arising

under" jurisdiction.

### B.    The Case Does Not "Arise In" a Case under Title 11.

Proceedings "arising in" a bankruptcy case are those that "are not based on

any right expressly created by [the Bankruptcy Code], but nevertheless, would have no

existence outside of the bankruptcy". *Henneghan v. Columbia Gas of Va., Inc. (In re*

*Henneghan)*, No. 03-11853-SSM, 2005 WL 2267185, at *4 (Bankr. E.D. Va. June 22,

2005) (internal quotation omitted); *see also In re Wood*, 825 F.2d at 97; *Eastland*

*Partners L.P. v. Brown (In re Eastland Partners L.P.)*, 199 B.R. 917, 919 (Bankr. E.D.

Mich. 1996) (describing "arising in" as a "residual category of civil proceedings which

includes administrative matters, motions to turn over property of the estate, and

determinations of the validity, extent, and priority of liens" (citing 1 Collier on

Bankruptcy P3.01[1]c[iii],[v],  at 3-26, 3-32 (Lawrence P. King, 15th ed. 1996))).

Here, Bank of America's claims exist independent of the Bankruptcy.

They arise under state law and are based on US Airways' and America West's post-

confirmation misconduct relating to Bank of America's pre-petition Agreement.  Indeed,

the claims are fundamentally based on post-confirmation events.  US Airways and

America West could have breached the Agreement and otherwise injured Bank of

America, and Bank of America could have asserted the claims at issue, irrespective of the

Bankruptcy:  this is a dispute involving the breach of a pre-petition contract; both the

contract and the conduct that breached it could have arisen whether or not the bankruptcy

had ever occurred.

Thus, Bank of America's claims do not "arise in" the Bankruptcy.  *See*

*Torkelsen v. Maggio (In re Guild & Gallery Plus)*, 72 F.3d 1171, 1178 (3d Cir. 1996)

(finding appellant's various state law claims "certainly could exist outside of bankruptcy; they could all be filed in a state court" and therefore do not "arise only in the context of a bankruptcy case"); *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42, 49 (Bankr. D. Del. 2002) (adversary proceeding did not arise in the context of a bankruptcy case where decision depended on interpretation of state law, rather than Bankruptcy Code); *In re Wood*, 825 F.2d at 97 (holding that the proceeding before the court did not meet the "arising in" standard and, accordingly, was a non-core proceeding: "The plaintiff's suit . . . is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court."); *In re Eastland Partners*, 199 B.R. at 919 (post-confirmation state law claims, such as those at issue here, do not "arise in" a bankruptcy case, even when the conduct underlying the state law claims is alleged to interfere with the reorganized debtor's ability to fulfill its obligations under the plan).

The Removing Parties raise three arguments as to why this case "arises in" the Bankruptcy, none of which bears scrutiny.

First, the Removing Parties point to Bank of America's filing of Administrative Expense Claim Requests with the Bankruptcy Court. These Requests are alleged to encompass the claims asserted here. (Notice Rem. ¶ 17.) As a general matter, however, the submission of such requests is insufficient to establish "arising in" jurisdiction. *See Bowers v. McGladrey & Pullen (In re Fla. Hotel Props. L.P.)*, 163 B.R. 757, 758-59 (W.D.N.C. 1994) (holding that "by submitting claims for post-petition administrative services rendered to the estate", the party "did not submit to the equity jurisdiction of the Bankruptcy Court at all"). An Administrative Expense Claim Request is nothing more than a request for a payment of an administrative expense. *See* 11 U.S.C.

§ 503 (providing that a claim made under that section is "a request for payment of an administrative expense [which includes] . . . the actual, necessary costs and expenses of preserving the estate").[3]

Moreover, the two sets of Administrative Expense Claim Requests filed by Bank of America in the Bankruptcy do not address the claims in suit. The first set concerns the period from September 12, 2004 to July 31, 2005—before defendants engaged in the conduct of which Bank of America complains. While defendants' misconduct began during the period covered by the second set of Administrative Expense Claim Requests—August 1, 2005 to September 27, 2005—Bank of America's claims are focused on the period that follows. The gravamen of this case is that, unless ordered not

---

[3] The Removing Parties cite several cases for the proposition that, where a party has filed a *proof of claim* in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the *proof of claim* is a core proceeding, and thus subject to jurisdiction under 28 U.S.C. § 1334(b). An Administrative Expense Claim Request, however, is not the same as a proof of claim, *see In re Fla. Hotel Props.*, 163 B.R. at 759—rather, it is merely a form that tells the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (*i.e.*, the amount of the creditor's claim). Moreover, even if Bank of America had filed proofs of claim, instead of Administrative Expense Claim Requests, the filing of a proof of claim does not necessarily subject a case to bankruptcy jurisdiction. *See Hylland v. Nw. Corp. (In re Nw. Corp.)*, 319 B.R. 68, 75 (D. Del. 2005) (the "[c]ourt declines to take judicial notice of these filings, because the filing of a proof of claim in the circumstances of this case is not dispositive of whether the claim is core or non-core"); *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC)*, 304 B.R. 111, 124 (Bankr. D.N.J. 2003) (holding that "the filing of the proof of claim with its reservation of rights does not transform [a party's] pre-petition state law claims into a core proceeding nor constitute an acceptance of [the Bankruptcy Court's] equitable jurisdiction").

Only those claims that are specifically addressed in a proof of claim can be converted to core claims, as the Removing Parties' own cases provide. (*See*, *e.g.*, Notice Rem. ¶ 17 (*citing In re Best Reception Sys., Inc.*, 220 B.R. 932, 947 n.20 (Bankr. E.D. Tenn. 1998) ("if a party who filed a proof of claim in the Debtor's case asserts a state law action against the Debtor, then that action is a core proceeding . . . so long as the action seeks recovery on the same grounds as those serving as the basis for the proof of claim.")).) As discussed below, the issues covered by the Administrative Expense Claim Requests filed by Bank of America are different from those raised in this case.

to, US Airways intends to allow Juniper to issue a card that competes with the Bank of America card beginning on January 1, 2006. That anticipated conduct arises under an agreement that did not become effective until September 27, 2005. Moreover, the second set of Administrative Expense Claim Requests were on their face directed to expenses incurred during the period before and ending on the effective date of the Juniper Agreement.

Furthermore, even if the Administrative Expense Claim Requests and Bank of America's claims were not focused on different periods, the second set of Administrative Expense Claim Requests (the only ones that touch upon the period of Defendants' misconduct) expressly state: "Nothing herein is intended to submit the matters in the pending lawsuit brought by Bank of America, N.A. (USA) against US Airways, Inc., US Airways Group, Inc., and America West Airlines, Inc. (Civ. Action No. 1713-N) in the Court of Chancery of the State of Delaware In and For New Castle County, to the jurisdiction of the Bankruptcy Court." (09/28/2005 Administrative Expense Claim Request at 2 (Ex. 14).)

Second, the Removing Parties contend that this case "is a disguised attack on the US Airways Reorganization Plan approved by the Bankruptcy Court". (Notice Rem. ¶ 18.) That is flatly wrong. Bank of America has no interest in undermining the Plan. Just the opposite is true. The primary relief requested by Bank of America in this case is specific performance of the Agreement. That relief would be unavailable if this suit frustrated the Plan or endangered the viability of US Airways. Bank of America seeks to obtain the benefit of its contractual bargain—to be the exclusive co-branded card provider for US Airways, not an insolvent entity.

Notably, the only mention of the Agreement in the Plan, or in US Airways' disclosure statement or plan confirmation order, derives from Bank of America's request that US Airways make clear, and the Bankruptcy Court order, that Bank of America's rights under and related to the Agreement would in no manner be impaired or modified by US Airways' bankruptcy plan process. (Confirmation Order ¶ 45 (Ex. 13).) Similarly, while the Juniper Agreement appears to have resulted in some of the funding for the Merger, neither the Juniper Agreement nor the funds advanced under it were essential for the Merger (and thus the Plan) as the Removing Parties suggest. (Notice Rem. ¶¶ 4-5.) The Merger agreement (Ex. 17) was executed, and announced by US Airways (Ex. 18) on May 19, 2005—months before the Juniper Agreement was signed on August 8, 2005 (Ex. 4 at 1) and months before it became effective on September 27, 2005 (*see* Juniper Agreement at 1 (Ex. 4) (providing that agreement would be effective "upon consummation of the Merger"); Ex. 6 (US Airways press release announcing completion of the Merger)). Neither the Merger Agreement nor the Juniper Agreement indicated that the Juniper Agreement was essential to either the Merger or the Plan. (*See* Ex. 4; Ex. 17.)

The mere fact that the Juniper Agreement resulted in some liquidity for the Merger does not convert this case into a "disguised attack" on the Plan. (Notice Rem. ¶ 18.) The Removing Parties at no point in their papers claim that the Reorganized Group would have fallen short of the $1.25 billion in unrestricted cash required by the terms of the ATSB loan referred to in the Second Amended Disclosure Statement without the hundreds of millions of dollars in advances from the affinity credit card deal with Juniper. (*See id.*; US Airways Second Amended Disclosure Statement ("Disclosure

Statement"), August 7, 2005, at 109 (Ex. 15).)  Any such inference would be unwarranted.  Bank of America's assertion of its rights under the Agreement simply does not endanger the Merger or the solvency of the new US Airways, nor does it affect the implementation or administration of the Plan.  Indeed, US Airways' procedural efforts to derail Bank of America's effort to obtain a timely determination of its state law claims looks much more like an undisguised attack on Bank of America's legitimate contractual rights.

As US Airways has now emerged from bankruptcy and merged with America West, the Plan has already been implemented and substantially consummated, and it cannot legally be undone by any determination as to Bank of America's contractual rights in the present litigation.  US Airways is capable of "sailing forth in the . . . world with no longer the protective wraps of the federal Bankruptcy Court"; therefore, no federal subject matter jurisdiction exists over this case, and it should be remanded to the Delaware Chancery Court.  *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390-91 (5th Cir. 2001).

Third, the Removing Parties argue that the Plan retains jurisdiction in the Bankruptcy Court with respect to certain matters.  A bankruptcy court, however, "cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order".  *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004).

In any event, again, the Confirmation Order makes clear that Bank of America's present claims are not affected by it.  The Confirmation Order states, in relevant part:

> Nothing in the Plan, including Section 11.8 thereof, or this Confirmation Order, is intended to, or shall, release, modify, impair or enjoin any rights or claims held by or owed to Bank of America, N.A. (USA) or Bank of America, N.A. (or any of their affiliated entities) in any manner arising from or related to: (i) the Co-Branded Card and Merchant Services Agreement, dated May 20, 2003, as amended [*i.e.*, the Agreement], assumed pursuant to the Court order entered on November 22, 2004 (Docket No. 855), or (ii) the Co-Branded Credit Card Agreement, dated January 1, 2001, between Bank of America, N.A. (USA) and America West Airlines, Inc. (as amended).

(Confirmation Order ¶ 45 (Ex. 13).)  The Removing Parties' suggestion that Bank of America somehow duped the Court into putting this language in the Confirmation Order is false.  So too is the Removing Parties' remarkable assertion that this language somehow gives rise to a basis for bankruptcy jurisdiction.  Just as a bankruptcy court cannot enlarge its jurisdiction through a plan of reorganization, it cannot acquire jurisdiction over a matter by means of a confirmation order that omits the matter from its reach.  *See In re Resorts Int'l*, 372 F.3d at 161.

### C.    The Case Is Not "Related to" Cases under Title 11.

The majority of courts, including those in the Fourth Circuit, where the US Airways' bankruptcy court sits, extend post-confirmation "related to" jurisdiction under section 1142 only to "matters concerning the implementation or execution of a confirmed plan".  *Goodman v. Phillip R. Curtis Enter., Inc.*, 809 F.2d 228, 232 (4th Cir. 1987); *see also In re Craig's Stores*, 266 F.3d at 390-91.  As a result, the post-confirmation jurisdiction of the bankruptcy court is limited to matters which have a direct bearing on the implementation or effectuation of the debtor's plan; disputes that do not arise in connection with the administration or implementation of the plan are left to be heard in the appropriate state or non-bankruptcy federal court.  *See*, *e.g.*, *In re A.H. Robins Co. Inc.*, 182 B.R. 128, 133 (Bankr. E.D. Va. 1995) (finding that jurisdiction

extends only to "interpretation or implementation of a plan or any related documents under which the plan is managed"); *Cent. States Se. and Sw. Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.)*, 10 B.R. 203, 204 (Bankr. N.D. Ohio 1981) (finding bankruptcy court lacked post-confirmation jurisdiction, and finding that, when collective bargaining agreement was "affirmed" in the plan, the agreement's interpretation was not a matter which concerned the plan itself). As Judge Easterbrook stated in *Pettibone Corp. v. Easley*, "[o]nce the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens." 935 F.2d 120, 122 (7th Cir. 1991) (citing, *inter alia*, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *Goodman*, 809 F.2d at 232-33).

This matter does not implicate matters relating to the "implementation or execution" of the Plan. *See id.* at 232. Indeed, as stated, the Plan itself makes no mention of the Juniper Agreement, nor does the Plan take any position as to the preferred *source* of the expected liquidity from the Debtors' and America West's "affinity credit card providers". (Disclosure Statement at 109 (Ex. 15).) While the financial projections in Appendix C to the Disclosure Statement (*id.* at C-2) upon which the Bankruptcy Court relied in its Confirmation Order (Confirmation Order § Z, p. 13 (Ex. 13)) identify many agreements and investors by name (*e.g.*, Eastshore Aviation, LLC, Par Investment Partners, L.P., etc., (*see* Disclosure Statement at C-2 (Ex. 15)), as to their credit card provider, the Debtors and America West state only that the projections are based upon, *inter alia*, "[(f)] pending long-term agreement with the *affinity credit card provider*

providing $304 million [not $455 million, as provided for in the Juniper Agreement] of net cash proceeds upon the consummation of a merger with America West . . .". (*Id.* (emphasis added).)

Even if the Removing Parties could show that the breach of the Bank of America Agreement and the pending case would affect the distributions available to US Airways' creditors, "the same could be said of any other post-confirmation contractual relations" in which US Airways is involved. *Gerken Trucking*, 10 B.R. at 204. In a case with facts similar to those here, *H&L Developers, Inc. v. Arvida/JMB Partners*, 178 B.R. 71 (Bankr. E.D. Pa. 1994), the bankruptcy court found that it lacked jurisdiction over a debtor's post-confirmation state law claims for, *inter alia*, breach of contract, tortious interference with contractual relations, and tortious interference with prospective business advantage—*even though* the complained-of conduct had interfered with and could interfere further with the debtor's ability to carry out its obligations under the plan of reorganization:

> In support of this Court's jurisdiction, Debtor states that Movant's alleged interference with the operation of Debtor's business subsequent to confirmation "constitute[s] interference with the execution of the plan" because the revenues from the business . . . are the source of the plan funding. Accepting this argument would lead to the retention of jurisdiction over any dispute in which the plaintiff is a reorganized debtor in the midst of performing a reorganization plan which provides for the payment of creditors over time from post-confirmation income. We do not think that is what Congress intended when it allowed this court to retain jurisdiction over post-confirmation disputes that could conceivably affect the implementation of the plan.

*Id.* at 76. Similarly, Bank of America's post-confirmation state law claims do not affect the execution or implementation of the Plan. Put another way, if the determination of Bank of America's rights—and the corresponding determination of US Airways' objections—under the Agreement formed a proper basis to pull this state law dispute

back into the bankruptcy court, then the circumscribed definition of bankruptcy

jurisdiction would effectively swallow virtually all post-confirmation disputes involving

the debtor's business activities. This is not the law. Thus, this Court lacks federal

subject matter jurisdiction and should remand this action to Delaware Chancery Court.

## II.    IN ANY EVENT, THE COURT MUST ABSTAIN FROM HEARING THE CASE PURSUANT TO 28 U.S.C. § 1334(C)(2).

Even if "related to" jurisdiction were found to exist, the Court nonetheless

must abstain from taking jurisdiction of the case under 28 U.S.C. § 1334(c)(2).

Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

A federal district court deciding a motion under Section 1334(c)(2) "must

abstain when six factors are met: (1) [t]he party must have filed a motion to abstain;

(2) [t]he proceeding must be based on a state law claim; (3) [t]he proceeding must be

non-core; (4) [n]o basis for federal court jurisdiction can exist other than § 1334, (5) [a]n

action must be commenced in state court; and (6) [t]he state court action can be timely

adjudicated." *Ratliff v. Tolliver*, No. 102CV00019, 2002 WL 989524, at *1 (W.D. Va.

May 14, 2002); *see also In re Mobile Tool Int'l*, 320 B.R. 552, 556 (Bankr. D. Del.

2005); *In re Trans World Airlines, Inc.*, 278 B.R. at 50.

In the present case, all of the requirements for mandatory abstention are

met. Bank of America filed this motion promptly upon receipt of US Airways' notice of

removal. Bank of America has already commenced an action in Delaware Chancery

Court. The complaint asserts state law claims for breach of contract and tortious interference. (Compl. ¶¶ 23-31 (Ex. 9).) Vice Chancellor Strine, the judge presiding over the state court action, has set a briefing and argument schedule that provides for the briefing and oral argument of Bank of America's pending motion for summary judgment to be completed expeditiously, by December 21, 2005. (11/14/05 Scheduling Order (Ex. 11).) There is no independent basis for federal jurisdiction that would have permitted the state court action to be commenced in federal court absent bankruptcy. Finally, this action, which concerns state law claims and is focused on Juniper's plan to enter the market on January 1, 2006, is a non-core proceeding.

The only element of mandatory abstention that the Removing Parties dispute in their removal papers is whether this case is a non-core proceeding. As noted above, the Removing Parties contend that Bank of America's claims are core proceedings because Bank of America filed Administrative Expense Claim Requests with the Bankruptcy Court. (Notice Rem. ¶ 17.) That is wrong. A proceeding is "core" if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barge v. W. S. Life Ins. Co.*, 307 B.R. 541, 544 (S.D. W. Va. 2004) (internal quotation omitted); *see also In re Guild & Gallery Plus,* 72 F.3d at 1178 (3d Cir. 1996); *In re RBGSC Inv. Corp.*, 253 B.R. 369, 381 (E.D. Pa. 2000). A proceeding is "non-core" if it is merely "related to" a core proceeding. *See Wheeling-Pittsburgh Corp. v. Am. Ins. Co.*, 267 B.R. 535, 539 (N.D. W. Va. 2001).

This case is not a core proceeding because, as discussed above (*supra* at 8-19), it does not invoke a substantive right provided by title 11, and it is not a proceeding

22

that by its nature could arise only in the context of a bankruptcy case. This is a contract dispute governed by state law. It neither involves substantive rights provided by the federal bankruptcy law nor could it arise only in a bankruptcy case. *See In re Guild & Gallery Plus, Inc.*, 72 F.3d at 1178 (appellant's various state law claims "need not arise only in bankruptcy" and therefore "this case is not a core proceeding because [appellants] claims neither invoke[] a substantive right provided by title 11," nor could this action "arise only in the context of a bankruptcy case.") (internal citations omitted); *In re Trans World Airlines, Inc.*, 278 B.R. at 48-50 (granting mandatory abstention and holding that state law actions which do not depend upon the bankruptcy laws for their existence and that could proceed in another court are not core proceedings). In fact, as is also discussed above (*supra* at 16-18), this case is not even "related to" the bankruptcy within the meaning of 28 U.S.C. § 1334(b). Bank of America has therefore met all of the conditions required for mandatory abstention under 28 U.S.C. § 1334(c)(2), and this Court should abstain from hearing the case and remand it to the Delaware Chancery Court.

## III.    EVEN IF THE COURT HAD JURISDICTION AND WERE NOT REQUIRED TO ABSTAIN, IT SHOULD EXERCISE ITS DISCRETION NOT TO HEAR THE CASE UNDER 28 U.S.C. §§ 1334(C)(1) AND 1452.

Even if (contrary to fact and law) this Court had jurisdiction and were not required to abstain, it should exercise its discretion not to hear the case under 28 U.S.C. §§ 1334(c)(1) and 1452, which provide that a court may elect not to hear a case "in the interest of justice, or in the interest of comity with State courts or respect for State law" or "on any equitable ground". Section 1334(c)(1) of title 28 provides: "Nothing in . . . [Section 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under

title 11." 28 U.S.C. § 1334(c)(1). Likewise, Section 1452 provides: "The court to which

such claim or cause of action is removed may remand such claim or cause of action on

any equitable ground."

       In determining whether discretionary abstention and equitable remand are

appropriate, courts typically consider one or more, but not necessarily all, of the

following factors: (1) the effect or lack thereof on the efficient administration of the

estate; (2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a

related proceeding commenced in state court or other non-bankruptcy court; (5) the

jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness of

the proceeding to the main bankruptcy case; (7) the substance rather than the form of an

asserted "core" proceeding; (8) the feasibility of severing state law claims from core

bankruptcy matters to allow judgments to be entered in state court, with the enforcement

left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that

the commencement of the proceeding in bankruptcy court involves forum shopping by

one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the

proceeding of nondebtor parties. *See, e.g.*, *In re Valley Media, Inc.*, 289 B.R. 27,

30 (Bankr. D. Del. 2003) (discussing § 1334(c)(1)); *Haga v. Moskowitz,* No.

1:05CV00033, 2005 WL 946516, at *1 (W.D. Va. Apr. 22, 2005); *Shubert v. Roche*

*Holding AG*, 157 F. Supp. 2d 542, 545 (E.D. Pa. 2001) (discussing § 1452).

       In this case, these factors—which must be applied flexibly, *see In re*

*Earned Capital Corp.*, 331 B.R. 208, 221 (W.D. Pa. 2005)—weigh heavily in favor of

abstention and equitable remand. As stated, Bank of America commenced this case in

state court; the complaint asserts only state law claims for breach of contract and tortious interference; and Vice Chancellor Strine has set a schedule under which Bank of America's summary judgment motion will be briefed and argued before January 1, 2006, when Juniper plans to enter the market unless US Airways is enjoined from licensing a Juniper card. The Removing Parties removed the case, and seek to transfer it to Bankruptcy Court, in an obvious effort to frustrate expeditious resolution of Bank of America's motion for summary judgment by Vice Chancellor Strine. This case could have no effect on the efficient administration of the former estate of US Airways, which has emerged from bankruptcy and is controlled by the management of America West Airlines. The case does not even raise questions susceptible to federal subject matter jurisdiction, let alone any bankruptcy issues. The issues presented involve the application of state law only and are thus best resolved by a state court. The Removing Parties cannot credibly contend that the resolution of this post-confirmation dispute, which concerns a pre-petition contract and involves nondebtor parties, relates to the administration and implementation of the Plan. Courts have abstained from hearing cases in similar circumstances. *See*, *e.g.*, *Lomas & Nettleton Co. v. Warren (In re Warren)*, 125 B.R. 128, 132 (E.D. Pa. 1991) (finding that permissive abstention was appropriate where a matter was based solely on state law); *In re Earned Capital,* 331 B.R. at 648 (exercising permissive abstention); *Lone Star Indus., Inc. v. Liberty Mut. Ins.*, 131 B.R. 269, 274 (D. Del. 1991) (granting remand under 28 U.S.C. § 1452(b)); *Barge*, 307 B.R. at 547, 548 (exercising permissive abstention and granting equitable removal); *Haga*, 2005 WL 946516, at *1 (exercising permissive abstention).

**IV.    THE COURT SHOULD DECIDE THIS MOTION AND REMAND THE CASE ON AN EXPEDITED BASIS TO AVOID UNDUE HARM TO BANK OF AMERICA AND SERVE THE INTERESTS OF ALL PARTIES.**

Recognizing the need for expeditious resolution of Bank of America's summary judgment motion, Vice Chancellor Strine set a schedule under which the motion can be briefed and argued before the end of the year.  If this motion is not decided on an expedited basis, then Bank of America's summary judgment motion may not be decided by year end.  In that event, Juniper will enter the market on January 1, 2006, and Bank of America will thereby suffer irreparable harm.  Thus, Bank of America respectfully requests that the Court resolve this motion to remand on an expedited basis.

**V.    IF AND ONLY IF THE COURT DECIDES NOT TO REMAND THIS CASE TO THE CHANCERY COURT, THIS COURT SHOULD COMPEL ARBITRATION PURSUANT TO THE AGREEMENT OF THE PARTIES.**

For all of the reasons stated above, we do not believe that this case is susceptible to the exercise of federal subject matter jurisdiction, and the Court must and, at a minimum, should abstain from hearing it.  If and only if this Court decides not to remand this case to the Chancery Court, this Court should compel arbitration pursuant to the arbitration provision in the Agreement.

Section 8.6.1 of the Agreement provides that either party to the Agreement may require arbitration of any dispute, whether in contract or tort, arising out of or relating to the Agreement: "At the request of US Airways or the Bank, any Claim shall be resolved by arbitration in accordance with the Federal Arbitration Act (Title 9, U.S. Code) . . .".  (Agreement § 8.6.1 (Ex. 1).)  The relief requested in Bank of America's

complaint herein is no less available to it by way of arbitration than in Delaware Chancery Court.[4]

In the event the Court decides not to remand this case to the Chancery Court, Bank of America requests (effective as of any determination against it on the remand issue) that its claims be resolved by expedited arbitration. Assuming US Airways is unwilling to consent to arbitration in these circumstances, the Court should compel arbitration. Under 9 U.S.C. § 4, a court should compel arbitration without ruling on the merits of the case once it determines that there is an agreement to arbitrate, and that the issue in dispute falls within the scope of that agreement. *See* 9 U.S.C. § 4; *Beck v. Reliance Steel Prods. Co.*, 860 F.2d 576, 579 (3d Cir. 1988). Indeed, the Third Circuit has held that the Bankruptcy Code does not conflict with the Arbitration Act so as to permit a district court to deny enforcement of an arbitration clause in a non-core adversary proceeding such as this (*see supra* at 8-19) brought in or removed to federal district court. *See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1150 (3d Cir. 1989).

If Bank of America is not afforded the right to select the forum in which to litigate its state law claims against US Airways (*i.e.*, Delaware Chancery Court), then it should at least be permitted to arbitrate them where and as the parties agreed.

---

[4] Section 8.6.1 expressly provides that "[a]ny dispute concerning this arbitration provision or whether a claim is arbitrable should be determined by the arbitrator(s)". *(Id.)* Since any dispute concerning the arbitration provision or whether a claim is arbitrable is to be determined by the arbitrators, US Airways has no basis for challenging arbitration in the event Bank of America's request becomes effective. No motion to compel should be required.

## <u>CONCLUSION</u>

For the foregoing reasons, Bank of America respectfully requests that this Court grant its motion to remand this action on an expedited basis to Vice Chancellor Strine in the Delaware Chancery Court or, alternatively, to compel arbitration of this action.

POTTER ANDERSON & CORROON LLP

Of Counsel:

By /s/ Brian C. Ralston

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
David R. Marriott
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

  Richard L. Horwitz (#2246)
  Kevin R. Shannon (#3137)
  Brian C. Ralston (#3770)
  Hercules Plaza
  1313 North Market St.
  Wilmington, DE 19899

Dated:  November 22, 2005

*Attorneys for Plaintiff*

Public Version Dated:  December 2, 2005

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Brian C. Ralston, hereby certify that on December 2, 2005, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY**

Kenneth J. Nachbar, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19801

**BY HAND DELIVERY**

David C. McBride, Esquire
Martin S. Lessner, Esquire
Christian Douglas Wright, Esquire
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
Wilmington, DE  19899

By: /s/ Brian C. Ralston
    Richard L. Horwitz (#2246)
    Kevin R. Shannon (#3137)
    Brian C. Ralston (#3770)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, Delaware  19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    kshannon@potteranderson.com
    bralston@potteranderson.com