# EXHIBIT 5

Westlaw.

Filing 051020976

## US AIRWAYS GROUP INC
8-K
Aug 12 2005

TABLE OF CONTENTS

COVER-PAGE

FINANCIAL-STATEMENTS-EXHIBITS

SIGNATURES

### COMPANY INFORMATION

Company Name: US AIRWAYS GROUP INC

Company URL: http://www.usairways.com

Address:2345 CRYSTAL DRIVE

© 2004 Thomson. No Claim to Orig US Govt Works.

Filing 051020976

City: ARLINGTON

State/Province: VIRGINIA

Zip Code: 22227

Entity Phone Fax Number: 7038727000

State Incorporation Name: DELAWARE

Country Incorporation Name: UNITED STATES

Cusip: 0009119051

Fiscal Year End Date: 12/31

IRS ID: 541194634

Primary SIC: 4512

Secondary SIC(s): 4513

Accession Number: 0000701345-05-000058

© 2004 Thomson. No Claim to Orig US Govt Works.

Filing 051020976                                                                   Page 3

Address/County Region: PR

Amendment:

Base Page Count: 5

Base Plus Exhibit Page Count: 5

CIK: 0000701345

Document Control Number: 051020976

Entity Current Legal Filed By Name:

Period end date: Aug 8 2005 12:00AM

Received Date: Aug 12 2005 12:00AM

Registration Type:

SEC Act: 34

SEC File Number: 00108444

© 2004 Thomson. No Claim to Orig US Govt Works.

Filing 051020976

Trading Symbol: UAIRQ

Exchange Name: OTHER

Non-US Exchange Name:

Non-US Secondary Exchange Name:

US Secondary Exchange Name:

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

FORM 8-K

CURRENT REPORT
Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report
(Date of earliest event reported)

August 8, 2005

US Airways Group, Inc.
(Debtor-in-Possession)
(Commission file number: 1-8444)

and

US Airways, Inc.
(Debtor-in-Possession)
(Commission file number 1-8442)

(Exact Names of Registrants as specified in their charters)

Delaware US Airways Group, Inc. 54-1194634
(State of Incorporation US Airways, Inc 53-0218143
of both registrants) (I.R.S. Employer Identification Nos.)

2345 Crystal Drive, Arlington, VA 22227
(Address of principal executive offices)
(703) 872-7000
(Registrants
' telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of
the

© 2004 Thomson. No Claim to Orig US Govt Works.

following provisions (see General Instruction A.2. below):

=560; Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

=553; Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

=553; Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

=553; Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Item 1.01 Entry into a Material Definitive Agreement

America West Airlines, Inc., ('America West Airlines'), US Airways Group, Inc. ('US Airways Group') and Juniper Bank, a subsidiary of Barclays PLC ('Juniper') entered into an agreement on August 8, 2005 (the 'Amended Credit Card Agreement'), amending America West Airlines' co-branded credit card agreement with Juniper, dated January 25, 2005 (the 'Original Credit Card Agreement') and assigning the Original Credit Card Agreement to US Airways Group. Pursuant to the Amended Credit Card Agreement, Juniper will offer and market an airline mileage award credit card program to the general public to participate in US Airways Group's Dividend Miles program through the use of a co-branded credit card. The Amended Credit Card Agreement was entered into in connection with the merger (the 'Merger') contemplated in the Agreement and Plan of Merger (the 'Merger Agreement'), entered into on May 19, 2005 between America West Holdings Corporation (
'America West Holdings'), US Airways Group,
and Barbell Acquisition Corp., a wholly owned subsidiary of US Airways Group. The Merger Agreement provides that, upon the terms and subject to the conditions set forth in the Merger Agreement, Barbell Acquisition Corp. will merge with and into America West Holdings, with America West Holdings continuing as a wholly owned subsidiary of US Airways Group.

US Airways Group's credit card program is currently administered by Bank of America, N.A. (USA) ('Bank of America') and will terminate approximately two years and three months after the effective date of the Merger. During that period both Juniper and Bank of America will run credit card programs for US Airways Group after the Merger.

The Amended Credit Card Agreement will take effect at the effective time of the Merger and the credit card services provided by Juniper under the Amended Credit Card Agreement are expected to commence on January 1, 2006, or, if later, the date on which Juniper commences marketing to the general public, and continue until the expiration date, which is the later of December 31, 2012 or seven years from the date on which Juniper commences marketing to the general public.

Under the Amended Credit Card Agreement, Juniper will pay to US Airways

© 2004 Thomson. No Claim to Orig US Govt Works.

Group fees for each mile awarded to each credit card account administered by
Juniper, subject to certain exceptions. Juniper will also pay to US Airways
Group a one-time bonus payment of $130 million, upon effectiveness of the
Merger, subject to certain conditions including:

- funding of $500 million in new equity investments in US Airways Group;

- completion of $250 million of exit financing from Airbus Industrie G.I.E.
of which approximately $153 million will be funded at the effective time of the
Merger;

- commencement of the unwinding of US Airways Group
's tax trust in the
amount of approximately $170 million;

- completion of the Merger;

- Juniper's having the sole right to issue credit cards branded with US
Airways Group logos for the term of the agreement, except during an initial
period during which Bank of America will have the right to market co-branded
credit cards bearing US Airways Group logos;

- US Airways Group's having at least $1.1 billion in unrestricted cash,
cash equivalents and short term investments, inclusive of the funds to be
realized pursuant to the Airbus exit financing and the unwinding of the US
Airways Group tax trust described above but exclusive of any payments by
Juniper under the Amended Credit Card Agreement; and

- the absence of a material adverse change in the business, financial or
other condition of America West Airlines or US Airways Group, or their
respective consolidated subsidiaries, taken as a whole.

Juniper will pay an annual bonus of $5 million to US Airways Group,
subject to certain exceptions, for each year after Juniper becomes the
exclusive issuer of the co-branded credit card.

In addition, at the effective time of the Merger, Juniper will
pre-purchase miles from US Airways Group for an aggregate of $325 million,
subject to the same conditions as apply to the $130 million bonus payment
described above. To the extent that these miles are not used by Juniper in
connection with the co-branded credit card program, US Airways Group will
repurchase these miles in 12 equal quarterly installments beginning on the
fifth year prior to the expiration date until paid in full. US Airways Group
will make monthly interest payments at LIBOR plus 4.75% to Juniper, beginning
on the first day of the month following the effective date of the Merger, based
on the amount of pre-purchased miles that have not been used by Juniper in
connection with the co-branded credit card program and have not been
repurchased by US Airways Group. US Airways Group will be required to
repurchase pre-purchased miles under certain reductions in the collateral held
under the credit card processing agreement with JPMorgan Chase Bank, N.A.

Juniper may, at its option, terminate the Amended Credit Card Agreement,

© 2004 Thomson. No Claim to Orig US Govt Works.

Filing 051020976

make payments to US Airways Group under the Amended Credit Card Agreement in the form of pre-purchased miles rather than cash, or commence the repurchase of the pre-purchased miles before the fifth year prior to the expiration date in the event that US Airways Group breaches its obligations under the Amended Credit Card Agreement, or upon the occurrence of certain events.

FORWARD-LOOKING STATEMENTS

Certain of the statements contained herein should be considered

'forward-looking statements' within the meaning of the Private Securities Litigation Reform Act of 1995, which reflect the current views of US Airways Group with respect to current events and financial performance. You can identify these statements by forward-looking words such as 'may,' 'will,' 'expect,' 'intend,' 'anticipate,' 'believe,' 'estimate,' 'plan,' 'could,' 'should,' and 'continue' or similar words. These forward-looking statements may also use different phrases. Such forward-looking statements are and will be, as the case may be, subject to many risks, uncertainties and factors relating to the Company's operations and business environment which may cause the actual results of the Company to be materially different from any future results, express or implied, by such forward-looking statements. Factors that could cause actual results to differ materially from these forward-looking statements include, but are not limited to, the following: the ability of the Company to continue as a going concern; the ability of the Company to obtain and maintain any necessary financing for operations and other purposes, whether debtor-in-possession financing or other financing; the ability of the Company to maintain adequate liquidity; the ability of the Company to absorb escalating fuel costs; the Company
's ability to obtain court approval with respect to
motions in the Chapter 11 proceedings prosecuted by it from time to time; the ability of the Company to develop, prosecute, confirm and consummate one or more plans of reorganization with respect to the Chapter 11 proceedings and to consummate all of the transactions contemplated by one or more such plans of reorganization or upon which consummation of such plans may be conditioned; risks associated with third parties seeking and obtaining court approval to terminate or shorten the exclusivity period for the Company to propose and confirm one or more plans of reorganization, to appoint a Chapter 11 trustee or to convert the cases to Chapter 7 cases; the ability of the Company to obtain and maintain normal terms with vendors and service providers; the Company's ability to maintain contracts that are critical to its operations; the potential adverse impact of the Chapter 11 proceedings on the Company's liquidity or results of operations; the ability of the Company to operate pursuant to the terms of its financing facilities (particularly the financial covenants); the ability of the Company to fund and execute its business plan during the Chapter 11 proceedings and in the context of a plan of reorganization and thereafter; the ability of the Company to attract, motivate and/or retain key executives and associates; the ability of the Company to attract and retain customers; the ability of the Company to maintain satisfactory labor relations; demand for transportation in the markets in which the Company operates; economic conditions; labor costs; financing availability and costs; security-related and insurance costs; competitive pressures on pricing (particularly from lower-cost competitors) and on demand (particularly

© 2004 Thomson. No Claim to Orig US Govt Works.

Filing 051020976                                                              Page 8

from low-cost carriers and multi-carrier alliances); weather conditions;
government legislation and regulation; impact of the continued military
activities in Iraq; other acts of war or terrorism; and other risks and
uncertainties listed from time to time in the Company
's reports to the SEC.
There may be other factors not identified above of which the Company is not
currently aware that may affect matters discussed in the forward-looking
statements, and may also cause actual results to differ materially from those
discussed. The Company assumes no obligation to update such estimates to
reflect actual results, changes in assumptions or changes in other factors
affecting such estimates other than as required by law. Similarly, these and
other factors, including the terms of any plan of reorganization ultimately
confirmed, can affect the value of the Company's various prepetition
liabilities, common stock and/or other equity securities. Accordingly, the
Company urges that the appropriate caution be exercised with respect to
existing and future investments in any of these liabilities and/or securities.

ADDITIONAL INFORMATION AND WHERE TO FIND IT
In connection with the proposed merger transaction, US Airways Group has filed
a Registration Statement on Form S-4 (Registration No. 333-126162), including a
proxy statement of America West Holdings, and other documents with the
Securities and Exchange Commission regarding the proposed transaction. The
proxy statement/prospectus will be mailed to stockholders of America West
Holdings after the registration statement is declared effective by the SEC. WE
URGE INVESTORS TO READ THE REGISTRATION STATEMENT AND PROXY STATEMENT AND
OTHER
RELATED MATERIALS CAREFULLY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL
CONTAIN IMPORTANT INFORMATION ABOUT THE PROPOSED TRANSACTION. Investors may
obtain free copies of the registration statement and proxy statement as well as
other filed documents containing information about US Airways Group and America
West Holdings at http://www.sec.gov, the SEC
's website. Free copies of America
West Holdings' SEC filings are also available on America West Holdings' website
at http://www.shareholder.com/americawest/edgar.cfm, or by request to Investor
Relations, America West Holdings Corporation, 111 West Rio Salado Pkwy, Tempe,
Arizona 85281. Free copies of US Airways Group's SEC filings are also available
on US Airways Group's website at http://investor.usairways.com/edgar.cfm or by
request to Investor Relations, US Airways Group, Inc., 2345 Crystal Drive,
Arlington, VA 22227.

This communication shall not constitute an offer to sell or the solicitation of
an offer to buy any securities, nor shall there by any sale of securities in
any jurisdiction in which such offer, solicitation or sale would be unlawful
prior to registration or qualification under the securities laws of any such
jurisdiction. No offering of securities shall be made except by means of a
prospectus meeting the requirements of Section 10 of the Securities Act of
1933, as amended.

PARTICIPANTS IN THE SOLICITATION
America West Holdings, US Airways Group and their respective executive officers
and directors may be deemed, under SEC rules, to be participants in the
solicitation of proxies from America West Holdings

© 2004 Thomson. No Claim to Orig US Govt Works.

' stockholders with respect
to the proposed transaction. Information regarding the officers and directors
of America West Holdings is included in its definitive proxy statement for its
2005 Annual Meeting filed with the SEC on April 15, 2005. Information regarding
the officers and directors of US Airways Group is included in its 2004 Annual
Report filed with the SEC on Form 10-K on March 1, 2005. More detailed
information regarding the identity of potential participants, and their
interests in the solicitation, is set forth in the registration statement and
proxy statement and other materials filed with the SEC in connection with the
proposed transaction.

Item 9.01 Financial Statements and Exhibits

(c) Exhibits

Exhibit Number

Description

10.1 Assignment and First Amendment to America West Co-Branded Card

Agreement, dated as of August 8, 2005, between America West

Airlines, Inc., US Airways Group and Juniper Bank (incorporated

by reference to Exhibit 10.110 to Amendment No. 2 to US Airways

Group's Registration Statement on Form S-4 filed on August 11,

2005 (File No. 333-126162)) (portions of this exhibit have been

omitted pursuant to a request for confidential treatment and

filed separately with the SEC).

10.2 First Amendment to Merchant Services Bankcard Agreement, dated

as of August 8, 2005, among America West Airlines, Inc.,

JPMorgan Chase Bank, N.A., and Chase Merchant Services, L.L.C.

(incorporated by reference to Exhibit 10.111 to Amendment No. 2

to US Airways Group

's Registration Statement on Form S-4 filed

on August 11, 2005 (File No. 333-126162)) (portions of this

exhibit have been omitted pursuant to a request for confidential

© 2004 Thomson. No Claim to Orig US Govt Works.

treatment and filed separately with the SEC).

SIGNATURES

--------------------

Pursuant to the requirements of the Securities Exchange Act of 1934, the

registrants have duly caused this report to be signed on their behalf by the

undersigned hereunto duly authorized.

US Airways Group,

Inc. (REGISTRANT)

Date: August 12, 2005 By: /s/ Anita P. Beier

Anita P. Beier

Senior Vice

President-Finance and Controller

(Chief Accounting

Officer)

US Airways, Inc.

(REGISTRANT)

Date: August 12, 2005 By: /s/ Anita P. Beier

Anita P. Beier

Senior Vice

President-Finance and Controller

(Chief Accounting

Officer)

END OF DOCUMENT

© 2004 Thomson. No Claim to Orig US Govt Works.

# EXHIBIT 6

Reorganized US Airways Group, Inc. Completes Merger With America West Airlines    Page 1 of 3

Reorganized US Airways Group, Inc. Completes Merger With America West Airlines

 US Airways logo. (PRNewsFoto)

[AG TK]
PHOENIX, AZ USA

 

* Merger Creates Nation's Fifth Largest Domestic Airline
* Customer Benefits Include Domestic and International Routes, Low Fares, Full Service
* Company Begins Trading on the New York Stock Exchange Under the LCC Symbol

    PHOENIX, Sept. 27 /PRNewswire-FirstCall/ -- US Airways Group, Inc., (NYSE: LCC), effective today, has finalized its transaction enabling America West and US Airways to begin operating as one carrier -- US Airways. Customers should continue to book directly with US Airways or America West as they did before the merger.  The airlines' Web sites, http://www.americawest.com and http://www.usairways.com, will operate separately in the short term, as will the two airlines' reservations systems.
    (Logo:  http://www.newscom.com/cgi-bin/prnh/20050223/LAW097LOGO )
    The new US Airways, which begins trading today on the New York Stock Exchange under the LCC symbol, represents the nation's largest full-service, low-cost, low-fare airline.  Company officials and representatives from the airline's labor groups join US Airways Chairman, President and CEO Doug Parker at today's opening bell ceremony at the New York Stock Exchange.
    "Today we start a new chapter in aviation history," said Parker.  "The new US Airways combines our airlines' proud heritage with our employees' passionate commitment to provide our customers with friendly service and low fares. This is a great day for the employees of America West and US Airways as well as for the people in the hundreds of communities we serve."

    Benefits of the America West/US Airways merger include:

* Single-branded product offering everyday, simple low fares and a network of choices for travel to more than 225 destinations worldwide, including Europe, the Caribbean, Mexico, Canada, and, in the near future, Hawaii.  US Airways will continue to operate hubs in Charlotte, N.C., Phoenix and Philadelphia, with secondary hub/focus cities in Las Vegas, Pittsburgh, Boston, New York (LaGuardia) and Washington (Ronald Reagan National Airport).  In addition, two wholly owned subsidiaries operating as US Airways Express will continue to provide additional service to an expansive network.

* Extensive Dividend Miles frequent flyer program with the ability to earn and redeem miles for travel in destinations throughout the globe. Reciprocal frequent flyer benefits will begin on Oct. 5, 2005.

* First class cabins on both domestic and international flights, with advance seating assignments and in-flight amenities that include audio

and video entertainment selections.

* Hourly US Airways Shuttle service between Boston, New York and Washington.

* Participation in the Star Alliance, the first truly global airline alliance comprising 16 of the world's most prominent airlines. Overall, the Star member carriers offer more than 15,000 daily flights to 795 destinations in 139 countries. Star Alliance benefits will be phased in over the next six months.

* 17 US Airways Clubs, providing a quiet and comfortable place to work or relax with personal travel assistance from professional Club representatives.

* Financial strength with more than $2.5 billion in restricted and unrestricted cash.

* Nearly 38,000 employees dedicated to service excellence.

"We are confident that the enthusiasm and professionalism of our employees, combined with the experienced leadership team we have selected to run the new airline will give us greater financial stability and competitive strength in the marketplace," continued Parker. "Our business model will enable us to compete aggressively with any airline, legacy or low-cost, in terms of reliability, amenities and affordability."

While the merged airline will operate under the US Airways name, America West and US Airways will maintain separate operating certificates for approximately two to three years. Once FAA (Federal Aviation Administration) approvals have been granted, the two airlines' operating certificates will be combined onto one.

America West Airlines initiated service in 1983 with three aircraft and 280 employees. America West grew rapidly, and by 1990, was the first airline formed since industry deregulation to achieve major-airline status. America West served 94 destinations across the U.S., Mexico, Canada and Costa Rica with more than 900 daily departures.

US Airways began operations in 1939 as All American Aviation, bringing the first airmail service to many small communities in Western Pennsylvania and the Ohio Valley. Its history includes mergers with North Carolina's Piedmont Airlines, California's PSA Airlines, and now Arizona's America West Airlines. Prior to the merger, US Airways operated approximately 3,300 daily flights to 183 communities in the U.S., Europe, Canada, Mexico and the Caribbean.

US Airways and America West have joined together to create the fifth largest domestic airline employing nearly 38,000 aviation professionals. US Airways, US Airways Shuttle and the US Airways Express operate approximately 4,000 flights per day and serve more than 225 communities in the U.S., Canada, Europe, the Caribbean and Latin America. This press release and additional information on US Airways can be found at http://www.usairways.com or http://www.americawest.com. (AWAG)

US Airways is a member of the Star Alliance, which was established in 1997 as the first truly global airline alliance to offer customers global reach and a smooth travel experience. The other members are Air Canada, Air New Zealand, ANA, Asiana Airlines, Austrian, bmi, LOT Polish Airlines, Lufthansa, Scandinavian Airlines, Singapore Airlines, Spanair, TAP Portugal, Thai Airways International, United and VARIG Brazilian Airlines. South African Airways and

SWISS will be integrated during the course of the next 12 months. Overall, the member carriers offer more than 15,000 daily flights to 795 destinations in 139 countries.

-LCC-

FORWARD-LOOKING STATEMENTS

All statements other than statements of historical fact may be considered forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. We urge you to read cautionary language regarding forward-looking statements, including factors that may cause actual results and/or outcomes to differ from the forward-looking statements, located in our filings with the Securities and Exchange Commission which can be found on our website at http://www.usairways.com.

*SOURCE US Airways Group, Inc.*
*Web Site: http://www.americawest.com http://www.usairways.com*
*Photo Notes:*
*http://www.newscom.com/cgi-bin/prnh/20050223/LAW097LOGO*

Issuers of news releases and not PR Newswire are solely responsible for the accuracy of the content.
Terms and conditions, including restrictions on redistribution, apply.
Copyright © 1996- 2005 PR Newswire Association LLC  All Rights Reserved
A United Business Media company.

# EXHIBIT 7

Exhibit 10.112

REDACTED COPY

AMERICA WEST CO-BRANDED CARD AGREEMENT

THIS CO-BRANDED CARD AGREEMENT (the "AGREEMENT") is dated January 25, 2005, by and between AMERICA WEST AIRLINES, INC., with offices at 4000 East Sky Harbor Boulevard, Phoenix, Arizona 85034 ("AMERICA WEST") and JUNIPER BANK, with offices at 100 S. West Street, Wilmington, Delaware 19801 ("JUNIPER BANK").

RECITALS

WHEREAS, Juniper Bank, a member of Visa U.S.A. Inc. or MasterCard, issues credit cards to qualified individuals and entities bearing the Visa or MasterCard trademarks;

WHEREAS, America West is an airline offering a loyalty recognition program featuring airline mileage or awards to members of its FlightFund Program;

WHEREAS, Juniper Bank desires to participate in the America West FlightFund Program on the terms and conditions set forth herein;

WHEREAS, America West desires that Juniper Bank participate in its FlightFund Program on the terms and conditions set forth herein; and

WHEREAS, America West and Juniper Bank understand that the effectiveness of this Agreement and the fulfillment of the respective rights and obligations contained herein will be contingent upon the termination of America West's existing agreement with Bank of America (the "BANK OF AMERICA AGREEMENT").

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

1.    DEFINITIONS

As used in this Agreement, the following terms where written with an initial capital letter shall have the following respective meanings (such terms to be equally applicable to both the singular and plural forms of the terms defined):

"ACCOUNT" shall mean each account opened by Juniper Bank through which a FF Participant is issued an Affinity Card and which results from a response to any solicitation marketing activity or acquired by Juniper Bank through a third party pursuant to this Agreement and on which America West grants Base Miles or Bonus Miles as described in Section 2.2 and for which either (i) an annual fee is paid; or (ii) in the case of a no annual fee product, is used for a purchase, balance transfer or cash advance.

"ACTIVE FREQUENT FLYER" as defined in Section 4.6.2.

"ADJUSTMENT MILES" shall mean Base Miles or Bonus Miles which Affinity Cardholders receive as an adjustment for Base Miles or Bonus Miles accrued but not initially posted as a

REDACTED COPY

result of an error or such other Bonus Miles that Juniper Bank may give to Affinity Cardholders for retention or customer service purposes.

"AFFINITY CARD" shall mean, as the context may require, [REDACTED] card(s) co-branded with Juniper Bank's and America West's names, trademarks and logos issued to Affinity Cardholder(s).

"AFFINITY CARDHOLDER" shall mean, as the context may require, any person to whom an Affinity Card is issued or the persons for whom the Affinity Card accounts are opened.

"AFFINITY CARDHOLDER ACCOUNT AGREEMENT" shall mean the agreement between Juniper Bank and each Affinity Cardholder governing the Affinity Cardholder's Affinity Card Account.

"AMERICA WEST CHANNELS" as defined in Section 4.4.1.

"AMERICA WEST CONFIDENTIAL INFORMATION" as defined in Section 10.1.

"ANNIVERSARY MILES" as defined in Section A(2)(e) of Exhibit A.

"APPLICATION" as defined in Section 7.6.

"BASE MILE FEES" as defined in Section 4.2.2.

"BASE MILES" shall mean miles credited to a FF Participant's account based on FF Participant's Net New Purchase Transactions on an Affinity Card Account.

"BONUS MILE FEES" as defined in Section 4.2.2.

"BONUS MILES" shall mean miles, other than Base Miles, credited to a FF Participant's account and shall include enrollment bonuses, anniversary bonuses, America West ticket or America West Vacations purchase bonuses, and such other bonuses agreed to by the parties, in writing.

"BONUS PAYMENT" as defined in Section 4.1.

"CARD" means a Visa, MasterCard, credit, stored value or Smart card.

"COMMENCEMENT DATE" as defined in Section 5.1.

"CONFIDENTIAL INFORMATION" as defined in Section 10.1.

"CUMULATIVE UN-RECOUPED GUARANTEE" as defined in Section 4.6.3.2.

"CUSTOMER" means, as the context may require, any person who purchases goods or services from either Juniper Bank or America West.

2

REDACTED COPY

"CUSTOMER INFORMATION" as defined in Section 10.3.

"DIRECT MARKETING STRATEGY" as defined in Section 7.3.

"EARNED FEES" as defined in Section 4.6.3.

"EXISTING PORTFOLIO" means the Bank of America FlightFund Visa portfolio, excluding any debit card accounts.

"EXPIRATION DATE" as defined in Section 5.1.

"FF LIST" as defined in Section 7.4.

"FF PARTICIPANT" means, as the context may require, an America West Customer or America West Customers enrolled in the FF Program.

"FF PROGRAM" means the FlightFund loyalty recognition program, as established and maintained by America West as of the date of this Agreement, and from time to time thereafter, whereby America West Customers who become FF Participants receive travel benefits based upon air travel mileage accumulated on America West or other designated air carriers or through the use or purchase of the goods or services of another designated vendor.

"GUARANTEE PAYMENT" as defined in Section 4.6.1.

"INCENTIVE AGREEMENT" as defined in Section 4.3.

"JUNIPER BANK CONFIDENTIAL INFORMATION" as defined in Section 10.1.

"LIBOR" as defined in Section 4.1.

"LOSSES" as defined in Section 11.4.

"MARKETING PREMIUMS" as defined in Section 4.2.1(c).

"MILEAGE ACCUMULATION PROGRAM" means the program created by this Agreement whereby Affinity Cardholders earn Base Miles and Bonus Miles in the FF Program.

"NET NEW PURCHASE TRANSACTIONS" as defined in Section 2.2.2.

"NEW ACCOUNT FEE" as defined in Section 4.4.

"NEW ACCOUNT PREMIUMS" as defined Section 4.2.1(a).

"NEW SERVICES" as defined in Section 2.1.

"NO-SHOP PERIOD" as defined in Section 4.10.

3

REDACTED COPY

"PASSENGER ENPLANEMENTS" as defined in Section 4.6.2.

"PRE-EXPIRATION PERIOD" as defined in Section 5.2.

"PRODUCTION COSTS" as defined in Section 4.4.2.

"PROGRAM" means the co-branded Card program between Juniper Bank and America West conducted pursuant to this Agreement.

"QUALIFYING BALANCE TRANSFER" means a single balance transfer of up to $5,000, or such other amount as the parties may agree in writing, for which the parties agree Bonus Miles will be awarded

"RENEWAL PREMIUMS" as defined in Section 4.2.1(b).

"SUSPENSION EVENT" as defined in Section 4.6.2.

"TERM" as defined in Section 5.1.

"TOTAL MANAGED EXPENSE" as used herein shall mean actual cost of funds, net credit and fraud losses [REDACTED] including, [REDACTED] New Account Fee and Base Miles, Adjustment Miles, Bonus Miles. Renewed Account Fee expense [REDACTED].

"TOTAL MANAGED REVENUE" as used herein shall mean [REDACTED].

"TRANSPORTATION TAX" as defined in Section 4.8.

"VOLUME INCENTIVE" as defined in Section 4.3.

2. PROGRAM DESCRIPTION AND MILEAGE CREDIT

2.1 Program Description. The Program is a Card program designed for FF Participants and prospective FF Participants. Under the Program, America West shall (subject to America West's privacy restrictions) provide Juniper Bank with (i) access to a list of FF Participants ("FF LIST") as permitted by law and America West's rules and regulations, and (ii) limited use of America West's trademarks, each for use by Juniper Bank in marketing the Program to America West's Customers, Juniper Bank's Customers, and the general public. Each Program Card will contain America West's and Juniper Bank's names and logos as well as other information required by Visa, MasterCard, Juniper Bank or America West. Juniper Bank shall use commercially reasonable efforts to research, create and develop other credit card affinity programs for FF Participants and students (the "NEW SERVICES"). Upon development completion and acceptance by the parties of any New Services and prior to issuance or initiation of any New Services pursuant to this Section 2.1. Juniper Bank and America West shall amend this Agreement to include such New Services and their terms and conditions. Notwithstanding anything to the contrary stated herein, Juniper Bank acknowledges and agrees that America

4

REDACTED COPY

West, in its sole and absolute discretion, may at any time, with or without notice, (i) change the frequency or type of FF Participant communications, advertising, and other program visibility; and (ii) amend, suspend, modify, cancel or terminate any or all rules, regulations, travel programs or offers of the FF Program.

2.2 Mileage Awards.

2.2.1 Affinity Cards. Subject to the terms and conditions set forth herein, America West shall grant Base Miles and Bonus Miles (in an amount agreed to from time to time by the parties, and initially, in the amount set forth in Exhibit A and Exhibit B) to any FF Participant who is an Affinity Cardholder at any time during the Term, provided such Affinity Cardholder's Account is not in default of the Affinity Cardholder Account Agreement.

2.2.2 Net New Purchase Transactions. For purposes of this Agreement, "NET NEW PURCHASE TRANSACTIONS" means the aggregate amount of purchases of goods and services posted to Accounts less all credits to Accounts for returned merchandise, or disputed billing items. In no event shall Net New Purchases include (i) purchases or balance transfers that are posted to an Account that has been reported lost or stolen (unless such purchases or balance transfers represent bona fide purchases or a Qualifying Balance Transfers posted to a lost or stolen Account, on which fees have not yet been paid by Juniper Bank); (ii) balance transfers cash advance transactions and/or cash advance transaction fees; and (iii) annual fees, finance charges, and any other bank fee or charge posted to the Account (such fees include, but are not limited to, late fees, return check fees, over-limit fees, credit insurance premiums, collection costs and administrative fees). The amount so spent shall be rounded to the nearest dollar ($ 50 will be rounded up) for purposes of determining the Base Miles to be credited to the FF Participant's Account.

3.    CARD REQUIREMENTS

3.1 Affinity Card. Juniper Bank will offer America West Customers and FF Participants an Affinity Card with terms and conditions initially set forth on Exhibit A and Exhibit B, attached hereto. Juniper Bank will determine, in its sole discretion, the annual percentage rate ("APR"), annual fee and grace period and any other fee, term or charge related to an Affinity Card Account. Juniper Bank will have the right to change or eliminate any one of them at any time or to add new fees or charges that it deems commercially reasonable. The Affinity Card terms and conditions offered by Juniper Bank shall be competitive with other mileage accumulation program, co-branded, and loyalty credit cards issued for airlines. Except when rendered impractical, imprudent or disadvantageous by legal or regulatory requirements, market conditions, or unusual circumstances, Juniper Bank will provide America West with at least thirty (30) days prior written notice, or sooner if possible, of any change to the fee and the APR formula to allow America West an opportunity to review and comment regarding both competitive impact and compensation structure; provided, however, that in no event shall Juniper Bank be obligated to amend, modify, cancel, terminate or otherwise manage the Affinity Card terms based on America West's comments. [REDACTED] Notwithstanding any other limitations contained in this Agreement, Juniper Bank shall, with notice to America West, have the right to amend the Affinity Cardholder Account Agreement at any time based on an

5

REDACTED COPY

individual Affinity Cardholder's behavior such as changing the basic pricing on individual Accounts at anytime in the event of late payments, non-payments, delinquency, payment by checks which fail to clear, default, bankruptcy, or other consistent or substantial failure to perform by any Affinity Cardholder pursuant to the terms of the Affinity Cardholder Account Agreement.

3.2 Reporting. Juniper Bank, on a daily basis as the Accounts cycle (or such other frequency as the parties may agree), shall transmit to America West by FTP electronic transfer, FF Program enrollment data and all pertinent data necessary to enable America West to credit FF Program mileage. Juniper Bank shall provide such data in a form compatible with America West's computer system as more particularly set forth in Exhibit C attached hereto. FF Participant data to be provided shall include FF Participant name and identification number. mileage amount to be credited and adjustment code(s).

3.3 Bank Services. Juniper Bank shall have sole responsibility for servicing each Affinity Card Account including, without limitation: (i) billing-statement preparation, (ii) receipt and crediting of payments, (iii) communications with Affinity Cardholders regarding their respective Accounts, (iv) customer service, (v) data storage and record keeping, and (vi) collections. Juniper Bank may subcontract any of the foregoing services to a third party. America West has no duty. liability. obligation or responsibility whatsoever to Juniper Bank or any other individual or entity, including, but not limited to, any FF Participant, with respect to the payment, non-payment, refund, credit or any other aspect of the billing or collection for use of an Affinity Card.

3 4 Customer Service. Juniper Bank, at its sole cost and expense. shall provide such dedicated toll-free telephone lines and trained personnel, as necessary, to take applications for Affinity Card(s), to answer questions and resolve disputes regarding awards of miles for the use of the Affinity Card or New Services. If any questions, complaints, disputes or other difficulties are brought to America West's attention with respect to an Affinity Card or New Services, America West shall refer the FF Participant to Juniper Bank's Customer Service Toll-Free Line or, as necessary. advise a Juniper Bank designee of the matter. Juniper Bank shall use commercially reasonable efforts to resolve such matters and similar matters brought directly to Juniper Bank's attention. consistent with Juniper Bank's standard practices for resolving Customer questions, complaints or other difficulties. Juniper Bank shall provide personnel dedicated to assisting with customer service requests and working directly with America West customer service liaisons. [REDACTED] Juniper Bank customer service personnel shall also receive customer retention training from Juniper Bank and provide assistance in implementing customer retention programs consistent with Section 7.8. [REDACTED].

If any questions, complaints or other difficulties are brought to Juniper Bank's attention with respect to any aspect of the FF Program, Juniper Bank shall promptly refer the FF Participant to America West's Frequent Flier Service Center Toll-Free Line or, as necessary, advise an America West designee of the matter. America West shall use commercially reasonable efforts to resolve such matters and similar matters brought directly to America West's attention, consistent with America West's standard practices for resolving Customer questions, complaints or other difficulties.

6

REDACTED COPY

4.    PAYMENTS

    4.1 Bonus Payment. Juniper Bank will pay, by wire transfer, America West a one-time payment [REDACTED] ("BONUS PAYMENT") within three (3) business days of execution of this Agreement. In the event that marketing of the Program to consumers does not occur on or before [REDACTED] then America West will return the Bonus Payment together with interest at the highest 3-month London Interbank Offered Rate ("LIBOR") published in the Wall Street Journal on [REDACTED] or if not printed that day on the most recent day the 3-month LIBOR is published prior to [REDACTED].

    4.2 Juniper Bank Payment.

        4.2.1 Premiums. During the Term of this Agreement, Juniper Bank shall pay to America West fees for the acquisition, retention and use of Accounts, as follows:

            (a) New Account Premiums: For Accounts opened hereunder during the Term, other than Accounts for which the Marketing Premium is paid, a New Account Premium [REDACTED] for each Account opened hereunder.

            (b) Annual Renewal Premiums: For each Account renewed annually, Juniper Bank will either (i) purchase Bonus Miles from America West, which will at a minimum provide revenue to America West in an amount equal to [REDACTED] (or waived) for said Account, or (ii) pay America West, at a minimum, an amount equal to [REDACTED] (or waived) for said Account. For example, based on the annual fee at the Commencement Date, the minimum Annual Renewal Premiums would be [REDACTED].

            (c) Marketing Premiums: For each Account generated during the Term of this Agreement from America West Channels as more fully described in Section 4.4, a New Account Fee of [REDACTED].

            (d) Notwithstanding the foregoing, Juniper Bank shall not be obligated to pay to America West any (i) Marketing Premiums for a Standard No Fee Card until such card is used for a purchase, balance transfer, or cash advance; or (ii) New Account Premiums or Marketing Premiums in the event that the Accounts on which such fees are calculated represent replacement Accounts for lost or stolen Affinity Cards.

        4.2.2 Bonus Mile Fees and Base Mile Fees. During the Term of this Agreement, Juniper Bank shall pay a Base Mile Fee to America West equal to [REDACTED] for each Base Mile and [REDACTED] for each Bonus Mile awarded to an Account:

            (a) America West shall award Base Miles as set forth in Exhibit A and Exhibit B attached hereto.

            (b) America West will from time to time award Bonus Miles to Accounts. Bonus Miles will be awarded as agreed from time to time by the parties for, by way of example only and not limitation, rewards to Customers when they open Accounts, rewards to Affinity Cardholders for engaging in certain categories of transactions as the parties may agree,

7

REDACTED COPY

including, but not limited to. the use of an Account to purchase America West tickets. The Bonus Mile Fee shall be in addition to. and not in lieu of. the Base Mile Fee that is due for a transaction. For example:

> For America West ticket purchases on the [REDACTED] for which double miles are awarded for using the credit card, the first mile awarded by America West will be compensated by the Base Mile Fee, and the second (bonus) mile will be compensated by the Bonus Mile Fee.

4.2.3 Juniper Bank shall provide America West with a reconciliation report within fifteen (15) calendar days following the end of the month, setting forth the amount of fees earned by America West under this Section 4 during such month. Juniper Bank shall pay all fees to America West within fifteen (15) calendar days following the transmittal of the reconciliation report; provided that Juniper Bank shall offset fees paid pursuant to this Agreement against the then un-recouped Minimum Monthly Guarantee Payment and transmit to America West the net balance, if any.

4.2.4 The parties agree to create reasonable procedures to prevent Affinity Cardholders from circumventing limitations on mileage awards, including but not limited to, the qualifying balance transfer limits.

Juniper Bank shall make all payments due under this Agreement to America West by electronic wire transfer in United States Dollars to the wiring address set forth below:

> Bank One, Arizona, N.A.
> Phoenix, Arizona
> [REDACTED];

or to such other bank or address as America West, may from time to time direct in writing.

4.3 Visa/MasterCard Incentives. [REDACTED].

4.4 Fees and Costs.

4.4.1 New Account Fee. Juniper Bank shall pay America West a New Account Fee based on the number of Affinity Card Accounts generated through America West Channels times the fee set forth in Section 4.2.1(c). Affinity Card Accounts shall be deemed generated through "AMERICA WEST CHANNELS" if generated in any of the following manners: [REDACTED]. Juniper Bank, within fifteen (15) business days after each calendar month during the Term of the Agreement, shall submit a New Account Fee report to America West and pay America West the New Account Fee for Affinity Card accounts opened during such prior calendar month as a result of America West Channels. Payment of the New Account Fee shall be made in the manner provided for payments in Section 4.2.

4.4.2. Production Costs. Juniper Bank and America West [REDACTED] for the marketing channels more fully described in [REDACTED]. For purposes of this Agreement, "PRODUCTION COSTS" shall mean the printing, shipping and handling costs of printed materials

8

REDACTED COPY

incurred by Juniper Bank from these channels. Juniper Bank agrees that the Production Costs will not be marked up and will be passed through to America West at Juniper Bank's true cost. As to other America West Channels, [REDACTED]. Such Production Costs will be deducted from the monthly New Account Fee due to America West described in Section 4.4.1 above. Juniper Bank shall submit to America West a Production Costs report itemizing such costs in detail and shall be delivered to America West with the New Account Fee report pursuant to Section 4.4.1.

4.5. Employee Incentive Program. Juniper Bank and America West shall use commercially reasonable efforts to create and develop an employee incentive program whereby America West's employees, who may include [REDACTED] can generate new Affinity Card Accounts, although not necessarily incorporated in their work responsibilities. New Affinity Card Accounts generated by America West employees [REDACTED] as mutually agreed to by Juniper Bank and America West.

4.6. Guarantee Payment.

4.6.1 Subject to the conditions set forth in Sections 4.6.2 and 4.6.3, Juniper Bank guarantees America West minimum earnings [REDACTED] (the "GUARANTEE PAYMENT"). The Guarantee Payment shall be disbursed as follows:

(a) if the Existing Portfolio is acquired by Juniper Bank:

[REDACTED] for the Term to be paid as follows:

| Months after the Commencement Date | Minimum Monthly Guarantee Payment |
|---|---|
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |

(b) If the Existing Portfolio is not acquired by Juniper Bank:

[REDACTED] for the Term to be paid as follows:

| Months after the Commencement Date | Minimum Monthly Guarantee Payment |
|---|---|
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |
| [REDACTED] | [REDACTED] |

REDACTED COPY

[REDACTED]          [REDACTED]
[REDACTED]          [REDACTED]
[REDACTED]          [REDACTED]

Payments shall commence with the first day of the month after the Commencement Date provided that if the Commencement Date is the first of the month, the payment shall commence on that date. The Minimum Monthly Guarantee Payment (as described in the tables above) shall be paid in the manner set forth in Section 4.2 and is only due to the extent that fees earned in a particular month are less than the Minimum Monthly Guarantee Payment.

    4.6.2 If one or more of the following (each a "SUSPENSION EVENT") occurs:

    (a) The average Passenger Enplanements for the [REDACTED] period ending on the last day of the prior month declines more than [REDACTED] from the Passenger Enplanements in the comparable [REDACTED] in 2004 [REDACTED];

    (b) The average number of Active Frequent Flyers for the [REDACTED] period ending on the last day of the prior month, America West declines more than [REDACTED] the number of Active Frequent Flyers in the comparable [REDACTED] in 2004 [REDACTED]; or

    (c) America West makes material changes to its FF Program that causes it to be uncompetitive in the marketplace, provided that Juniper Bank provides notice of such failure to maintain the competitiveness of the FF Program which will commence a forty-five (45) day period during which America West may cure such deficiency;

    (d) America West becomes insolvent and for which Juniper Bank does not terminate pursuant to Section 12 below;

then Juniper Bank shall be relieved of the obligation to pay the Minimum Monthly Guarantee Payment for such affected month, if any. If a Suspension Event under (a) or (b) continues during the ensuing month(s) of the Term, Juniper Bank shall be relieved of its obligation to pay the Minimum Monthly Guarantee Payment for such months(s) and the Guarantee Payment shall be reduced by the amount due for such month(s). Fees earned during such quarter shall be paid to America West to the extent not offset against the un-recouped Guarantee Payment pursuant to Section 4.2 above. For purposes of this Section 4.6.2, (i) "PASSENGER ENPLANEMENTS" means the aggregate of ticketed passengers flown on America West-branded aircraft as reported by America West for each month on or before the 10th day of the following month (for avoidance of doubt, as of the date of this Agreement, Passenger Enplanements includes passengers flown on Mesa Airlines or any other carrier operated as America West Express but does not include passengers flown on Hawaiian Airlines, except, for example, a passenger flown on an Albuquerque-Phoenix-Honolulu flight, the Albuquerque-Phoenix segment of such flight would be included as a Passenger Enplanement), and (ii) "ACTIVE FREQUENT FLYER" means an America West FF Participant who has had flight activity, mileage redemption, or mileage accrual other than through the Affinity Card in a calendar year.

10

REDACTED COPY

4.6.3 Funds due to America West earned pursuant to Sections 4.2 (New Account Premium, Renewal Premium, Marketing Premium, Bonus Mile Fee and Base Mile Fee), 4.3 (Volume Incentive) and 4.4.1 (New Account Fee) (together, the "EARNED FEES") shall be netted against the Minimum Monthly Guarantee Payment for the particular month as follows:

4.6.3.1 Juniper Bank shall each month provide America West with a report showing the cumulative Minimum Monthly Guarantee Payments to date and the cumulative Earned Fees and the difference between the two cumulative totals.

4.6.3.2 To the extent that the Earned Fees in a particular month exceed that month's Minimum Monthly Guarantee Payment the overage shall be applied against the Cumulative Un-recouped Guarantee, if any. In the absence of a Cumulative Un-recouped Guarantee, Juniper Bank shall pay to America West the amount above the Minimum Monthly Guarantee Payment as set forth in Section 4.2.3. For purposes of this Agreement, "CUMULATIVE UN-RECOUPED GUARANTEE" shall mean the amount that the cumulative Minimum Monthly Guarantee Payments exceeds the cumulative Earned Fees.

4.6.4 [REDACTED].

4.7. Revenue Sharing.

4.7.1 Juniper Bank will pay America West an amount equal to [REDACTED] calculated pre-tax return on assets on the Program on an annual (Term calendar year) basis using Program [REDACTED] revenue, expenses and average receivables, calculated as follows:

$$(X-Y)/Z$$

X = Total Managed Revenue
Y = Total Managed Expense
Z = average total accounts receivable

4.7.2 All amounts shall be determined in accordance with GAAP. Within thirty (30) days from the end of each calendar year of the Term. Juniper Bank will calculate the Program return by dividing the net (if any) of revenue and expense determined as described above, by the average Program-related assets.

4.7.3 Juniper Bank will provide America West with a written report of the calculation made pursuant to this Section 4.7 within thirty (30) days after the end of each calendar year of the Term, whether or not any payment is due to America West. If any payment is due to America West, it shall be made concurrently with delivery of the calculation.

4.7.4 Juniper Bank will purge inactive accounts in the Program pursuant to Juniper Bank's then current practices for other programs.

4.8 Taxes [REDACTED].

11

REDACTED COPY

4.9 Merger of America West. In the event of a merger in which America West either acquires or is acquired by another air carrier that has an existing credit card program associated with its frequent flyer program, not issued by Juniper Bank, America West agrees that to the extent it is the acquiring entity, America West will use commercially reasonable efforts to have Juniper Bank issue the credit card associated with new entity's frequent flyer program; and Juniper Bank agrees to use commercially reasonable efforts to purchase the credit card portfolio associated with the merger partner's frequent flyer program or, in the event that America West is not the acquirer and Juniper Bank is not the issuer for the new entity, the new entity will agree. in addition to any other remedy. to reimburse Juniper Bank for the Bonus Payment as set forth in the following schedule as of the effective date of the merger which is defined as the date at which America West is completely merged onto the operating certificate of the acquiring carrier:

| Date of Termination* | [REDACTED] Guarantee | [REDACTED] Guarantee |
| --- | --- | --- |
| Before 1/1/07 | [REDACTED] | [REDACTED] |
| On or after 1/1/07 and before 1/1/08 | [REDACTED] | [REDACTED] |
| On or after 1/1/08 and before 1/1/09 | [REDACTED] | [REDACTED] |
| On or after 1/1/09 and before 1/1/10 | [REDACTED] | [REDACTED] |
| On or after 1/1/10 and before 1/1/11 | [REDACTED] | [REDACTED] |
| On or after 1/1/11 and before 1/1/12 | [REDACTED] | [REDACTED] |
| On or after 1/1/12 and before 1/1/12 | [REDACTED] | [REDACTED] |

*[REDACTED]
**[REDACTED]

4.10 No Shop Provision. For the period thirty-six (36) months after the execution of this Agreement (the "NO-SHOP PERIOD"), America West shall not, and shall cause its officers, directors, employees and agents not to, engage, directly or indirectly, in any negotiations in respect of, solicit offers for. enter into any agreement for, or provide any non-public information in furtherance of evaluating a co-branded credit card relationship tied or in conjunction with participation in FlightFund or a successor or similar FF Program Nothing herein shall prevent America West from engaging in conversations with its current issuer regarding the day to day aspects of its current card program so long as such conversations are not used as a pretext to avoid the No-Shop Period.

5.    TERM

5.1 Term. This Agreement shall be effective as of the date hereof and shall continue for an initial term as set forth below from the Commencement Date provided that on or before the Commencement Date, America West shall provide Juniper Bank with written notice of the termination of the Bank of America Agreement  Absent early termination of the Bank of America Agreement, the "TERM" of this Agreement shall commence January 1, 2006, provided

REDACTED COPY

written notice of termination of the Bank of America Agreement has been provided to Juniper Bank (the "COMMENCEMENT DATE") and shall continue in full force and effect until the Expiration Date (as defined below) unless earlier terminated by either party pursuant to Section 12 of this Agreement. The parties agree that the Term may commence prior to such Commencement Date if Juniper Bank reaches an agreement with Bank of America to transfer the Existing Portfolio prior to such Commencement Date. In the event that the Commencement Date is a date other than the first day of the month, the Term shall commence on the first day of the next month following the Commencement Date. [REDACTED]. [REDACTED] As of the date of expiration or termination of the Agreement, FF Program mileage will no longer be granted for a FF Participant's use of an Affinity Card. The termination of this Agreement shall not affect any rights or obligations which shall have accrued prior to the date of termination, including, but not limited to, payments due America West hereunder for FF Program mileage earned by FF Participants prior to said date. including adjustments posted following termination of this Agreement. The Term may begin prior to the Commencement Date if Juniper Bank reaches an agreement with Bank of America to transfer the Existing Portfolio prior to such date.

5.2 Transition. Upon termination or expiration of this Agreement, in order to preserve the goodwill of FF Participants who have Affinity Cards or New Services, if any, the parties shall cooperate to ensure a smooth and orderly termination of the arrangements described therein. [REDACTED] America West may market to and solicit FF Participants to apply for, request or accept another co-branded credit card with America West's new issuer provided such credit cards are not issued prior to the termination or expiration of this Agreement. Upon the expiration or termination of this Agreement, America West and any successor bank or financial institution with whom America West contracts for the purpose of issuing an America West Affinity Card may continue to market to and solicit FF Participants who are Affinity Cardholders to apply for, request or accept another credit card that is co-branded with America West.

5.3 Rights and Obligations. The rights and obligations of the parties under this Agreement are expressly contingent upon the prior termination or expiration of the Bank of America Agreement. [REDACTED].

6.    AUDIT AND INSPECTION

During the Term and for a period of two (2) years following the expiration or earlier termination, each party (or such auditors as the auditing party shall select), after at least five (5) days' prior written notice, shall have the right during regular business hours to conduct audits of the other party's books, records and data maintained for the purpose of this Agreement. including but not limited to, information submitted by one party to the other pursuant to this Agreement to determine compliance with this Agreement. Each party shall retain such books, records and data for a period of two (2) years following the expiration or earlier termination of this Agreement. The audit shall be conducted at times and in a manner to minimize, to the extent reasonable, disruption of the normal business activity of the party to be audited. Any and all posted mileage credits and payments are subject to adjustment based on subsequently discovered errors, including errors discovered as a result of any such audit.

13

REDACTED COPY

7.    MARKETING

7.1 America West Support. Subject to the restrictions set forth in this Agreement. America West will provide access to, and where commercially reasonable. work with Juniper Bank to promote the Affinity Card through the following channels:

7.1.1 [REDACTED];

7.1.2 [REDACTED];

7.1.3 [REDACTED];

7.1.4 [REDACTED];

7.1.5 [REDACTED];

7.1.6 [REDACTED];

7.1.7 [REDACTED];

7.1.8 prominently feature the Affinity Cards on the America West website with a link on the home page to Juniper Bank's website for online Affinity Card applications;

7.1.9 [REDACTED];

7.1.10 provide placement of Applications (as defined in Section 7.6) at America West ticket counters, gates and America West Clubs (as permitted by airport regulations and other contractual agreements); and

7.1.11 [REDACTED].

Except as otherwise provided in this Agreement, all costs of production of the foregoing marketing items shall be paid by Juniper Bank, provided that it shall be at Juniper Bank's sole discretion as to whether it uses such support.

7.2 Juniper Bank Support. Except as otherwise provided in this Agreement, Juniper Bank shall determine, in its sole discretion, how it will market the Program. The following are examples of the types of marketing programs that may or shall be pursued (as provided below) by Juniper Bank at its sole cost and expense:

7.2.1 shall provide space to America West for a marketing message in each Card monthly billing statement or newsletter (subject to any legal or regulatory requirement that preempts the space allocated for marketing messages);

7.2.2 if in the commercially reasonable judgment of Juniper Bank and America West such activities are appropriate and beneficial, Juniper Bank shall provide and adequately staff event marketing support (e.g., application booths) at America West's airports. America West shall assist Juniper Bank in obtaining airport approval for such event marketing. Juniper Bank shall cover all costs associated with such event marketing. America West shall have

14

REDACTED COPY

authority to require Juniper Bank to alter its airport marketing procedures or train or eliminate staff members which may not be performing their duties in a manner deemed appropriate by America West;

7.2.3 Juniper Bank shall feature and support dedicated webpages to the Affinity Card Program on the Juniper Bank website and provide links to the America West website;

7.2.4 [REDACTED];

7.2.5 [REDACTED];

7.2.6 should it develop or acquire banking centers (e.g., bank branches), Juniper Bank shall conduct banking center promotions and cross-selling of the Affinity Card; and

7.2.7 Juniper Bank shall produce and supply to America West all electronic communication text, banner advertisements and related marketing materials for use at www.americawest.com and successor web sites.

7.3 Direct Mail. Juniper Bank, based on its credit analysis of FF Participants and commercially reasonable marketing strategies and models developed by Juniper Bank for the marketing of, and optimizing the benefits to be derived from, the Mileage Accumulation Program (the "DIRECT MARKETING STRATEGY"), shall, at its sole cost and expense, manage the direct marketing, acquisitions and retention efforts for the Mileage Accumulation Program; provided however, Juniper Bank shall obtain America West's prior written approval prior to implementing such Direct Marketing Strategy, said approval not to be unreasonably withheld or delayed [REDACTED].

7.4 Contact Lists. Subject to its internal privacy policies or as otherwise restricted by law, America West, upon written request provided not more frequently than [REDACTED], shall provide Juniper Bank with a list of FF Participant names, [REDACTED] (the "FF LIST"). America West shall use its commercially reasonable efforts to provide as complete a FF List as possible. The initial FF List shall consist of [REDACTED] mailable America West Customers. Juniper Bank agrees to provide America West with any updated information that Juniper Bank obtains from any FF List cleansing processes, including, but not limited to, [REDACTED]. The FF List shall not contain personal information of FF Participants not in good standing and FF Participants who have requested that their personal information not be disclosed. Juniper Bank, at its sole cost and expense, will use the FF List solely to conduct specific direct mail and/or telemarketing campaign(s) to promote the Mileage Accumulation Program upon America West approval. The FF List, and any permissible copies of the same, shall remain the sole property of America West and, subject to regulatory retention requirements, shall be returned by Juniper Bank to America West within thirty (30) days of Juniper Bank's completion of the campaign or upon demand. However, Juniper Bank may maintain separately all information that it obtains as a result of an Account relationship with any America West Customer or an application submitted by an America West Customer for an Account relationship with Juniper Bank. This information becomes a part of Juniper Bank's own files that shall not be subject to this Agreement and will not imply or suggest any endorsement by America West.

15

REDACTED COPY

Both Juniper Bank and America West shall maintain a "no solicitation list" of FF Participants, Affinity Cardholders and Customers who have indicated they do not want to receive promotional mailings, e-mails or telephone calls, if applicable.

7.5 Newsletter. America West, at a minimum, shall provide Juniper Bank with the opportunity to submit [REDACTED] FF Program newsletters, should America West produce such newsletters, for Juniper Bank to feature Juniper Bank's participation in the Mileage Accumulation Program and/or other joint America West/Juniper Bank activities.

7.6 Applications. [REDACTED] ("APPLICATION"). [REDACTED] produce a sufficient number of Applications for placement at locations required by this Agreement. Juniper Bank shall use commercially reasonable efforts to provide America West with Applications within ten (10) business days after request for additional Applications. America West shall use commercially reasonable efforts to display the Application at airport counters (subject to applicable regulations and other agreements existing as of the Commencement Date), America West Clubs and city ticket offices. Juniper Bank shall use commercially reasonable efforts to display the Application at sponsored events and bank branch offices, if any.

7.7 In-Flight Magazine. At Juniper Bank's sole discretion, Juniper Bank may prepare and provide to America West advertisements and tip-in applications for placement in America West's In-Flight magazine.

7.8 Retention Plan. Juniper Bank shall design and implement a customized retention plan to retain Affinity Card Accounts. [REDACTED].

7.9 Card Design. The design of all Cards shall prominently feature America West's trademark, logo and brand identity. Prior to production, Juniper Bank will provide America West the necessary Visa or MasterCard design specifications for custom graphics of the Cards. Subject to satisfaction of such Visa or MasterCard specifications and Juniper Bank's requirements, America West will have the right to approve the design of all the Cards. which said approval will not be unreasonably withheld or delayed.

7.10 Approvals. All promotional materials using trademarks prepared by either party shall be prepared in accordance with this Agreement and must be approved in advance in writing by the other party, which approval shall not be unreasonably withheld or delayed.

8.    TRADEMARKS AND TRADE NAMES, APPROVAL OF MATERIALS

8.1 Juniper Bank. America West acknowledges Juniper Bank's ownership and proprietary right to all Juniper Bank's logos, trademarks, trade names and service marks. Juniper Bank hereby grants America West a limited license to use said logos, trademarks, trade names and service marks to promote the FF Program and Mileage Accumulation Program, provided that America West obtains Juniper Bank's written approval prior to any such use. America West recognizes and acknowledges that it acquires no right in these logos, trademarks, trade names or service marks by such use.

REDACTED COPY

8.2 America West. Juniper Bank acknowledges America West's ownership and proprietary right to all America West logos, trademarks, trade names and service marks. America West hereby grants Juniper Bank a limited license to use said logos, trademarks, trade names and service marks to promote the FF Program and Mileage Accumulation Program, provided that Juniper Bank obtains America West's written approval prior to any such use. Juniper Bank recognizes and acknowledges that it acquires no right in these logos. trademarks, trade names or service marks by such use. Any other advertising or marketing medium with respect to the Program shall contain the disclaimer set forth in Exhibit D attached hereto

8.3 Approvals. All promotional materials using trademarks prepared by either party shall be prepared in accordance with this Agreement and must be approved in advance in writing by the other party, which approval shall not be unreasonably withheld or delayed.

9.    EXCLUSIVITY.

9.1 America West Commitments. During the Term of this Agreement America West will not enter into any agreement, which has an effective date prior to the termination of this Agreement for participation in the FF Program pursuant to which a FF Participant may accumulate miles in the FF Program through use of a credit card pursuant to this Agreement.

9.2 Exceptions. Notwithstanding the provisions set forth in Section 9.1 above, America West may [REDACTED].

9.3 Juniper Bank Commitment. During the Term of this Agreement, Juniper Bank shall advise America West, in writing, of Juniper Bank's participation in any other airline frequent flyer program as soon as reasonably practical after the commencement date of the agreement pertaining to such participation.

10.    CONFIDENTIALITY

10.1 All information and documents about Juniper Bank. its products, marketing plans, strategies, customers, processes and procedures ("JUNIPER BANK CONFIDENTIAL INFORMATION") are confidential and valuable proprietary assets of Juniper Bank. All information and documents about America West, its customers, products, marketing plans, strategies, processes, procedures, FF Participants, and FF List ("AMERICA WEST CONFIDENTIAL INFORMATION") are confidential and valuable proprietary assets of America West. In this Agreement, Juniper Bank Confidential Information and America West Confidential Information are sometimes collectively referred to as "CONFIDENTIAL INFORMATION". For purposes of this Agreement, the terms of this Agreement will be the mutual Confidential Information of both parties. Each party and its respective employees and agents will treat as confidential all Confidential Information and third-party proprietary products which the other party provides in connection with the Program. Neither party will disclose or duplicate those items of Confidential Information or third-party products to anyone not having a need to know in connection with the performance or enforcement of this Agreement (except as required by law or pursuant to order of a court of competent jurisdiction) and will not use them except in connection with the performance or enforcement of this Agreement. Each party will take all steps needed to ensure that its agents and employees preserve this confidentiality.

17

REDACTED COPY

10.2 The parties agree not to use any Confidential Information except in connection with the performance or enforcement of this Agreement and as follows:

10.2.1 America West. America West will not use any of Juniper Bank's Confidential Information that comes into its possession through any manner including, but not limited to marketing reports, transaction reports, monthly marketing meetings except in connection with its obligations under this Agreement. America West's FF List obtained pursuant to the solicitations shall not be considered Juniper Bank's Confidential Information, provided that lists of those individuals who become Affinity Cardholders shall also be deemed Juniper Bank Confidential Information.

10.2.2 Juniper Bank. Juniper Bank shall use America West Confidential Information only for purposes of the solicitations and in connection with the opening and administration of Affinity Card and New Services Accounts and issuance of Cards as a result of the solicitations, and will not sell, rent, or otherwise make available America West Confidential Information to any third party.

10.3 America West and Juniper Bank acknowledge that each has a responsibility to its customers to keep information about its customers and their accounts ("CUSTOMER INFORMATION") strictly confidential. In addition to the other requirements set forth in Section 10 regarding Confidential Information, Customer Information shall also be subject to the additional restrictions set forth in this Section 10.3. Neither Juniper Bank nor America West shall disclose or use any Customer Information other than on a "need to know" basis to carry out the purposes of this Agreement and then only to: (i) affiliates of Juniper Bank or America West; (ii) America West's and Juniper Bank's employees or officers; (iii) to carefully selected subcontractors provided that such subcontractors shall have entered into a confidentiality agreement no less restrictive than the terms hereof; (iv) to independent contractors, agents, and consultants designated by Juniper Bank or America West, as applicable. provided that such independent contractors, agents, or consultants shall have entered into a confidentiality agreement no less restrictive than the terms hereof; or (v) pursuant to the exceptions set forth in 15 USC 6802(e) or accompanying regulations which disclosures are made in the ordinary course of business. The restrictions set forth herein shall apply during the Term and after the termination of this Agreement.

10.4 The recipient of such Confidential Information (the "RECIPIENT") agrees that, without the prior written consent of the supplier of such Confidential Information (the "SUPPLIER"), the Recipient shall not use, copy or divulge to third parties or otherwise use except in accordance with the terms of this Agreement, any information or materials obtained from Supplier or through Supplier in connection with this Agreement, unless (i) the information or materials is known to the Recipient prior to obtaining same from the Supplier; (ii) the information or materials is, at the time of disclosure to the Recipient, then in the public domain; (iii) the information or materials is obtained by the Recipient from a third party who did not receive the same, directly or indirectly, from the Supplier; or (iv) the Recipient becomes legally compelled to disclose Confidential Information or materials by a governmental body or court. In the event of (iv) above, the Recipient will provide the Supplier with prompt notice so that the Supplier may seek a protective order or other appropriate remedy and/or waive compliance (in

18

REDACTED COPY

writing) with the provisions hereof. In the event that such protective order or other remedy is not obtained, or the Supplier waives. in writing, compliance with the provisions hereof. the Recipient will furnish only that portion of such Confidential Information or materials which its legal counsel advises it that it is legally required and will exercise its reasonable efforts to obtain appropriate assurance that confidential treatment will be accorded such Confidential Information or materials.

10.5 The confidentiality and non-disclosure requirements of this Section 10 shall also apply to information provided before the Commencement Date of this Agreement and will survive this Agreement's expiration or termination.

10.6 All Confidential Information will, subject to regulatory retention requirements. either be returned to the Supplier or destroyed at Supplier's request upon termination of this Agreement.

11.    INDEMNIFICATION

11.1 America West. Juniper Bank shall indemnify, defend (by counsel reasonably acceptable to America West) and hold America West, its parent and affiliate companies and their respective officers, directors, employees and permitted assigns, harmless for, from and against any Losses, as defined below, arising out of, relating to or attributable to: (i) any act or omission of Juniper Bank, its officers, employees or agents in the performance of their obligations hereunder; (ii) any failure by Juniper Bank to comply with the terms and conditions of this Agreement; (iii) Juniper Bank's underwriting, issuing, servicing, maintaining and collecting Affinity Card Accounts and all disputes arising in connection therewith; (iv) Juniper Bank's refusal to permit a FF Participant to obtain an Affinity Card; (iv) Juniper Bank's failure to comply with applicable laws and regulations in connection with underwriting, issuing, servicing, maintaining or collecting Affinity Card Accounts; (v) the manner in which Juniper Bank bills or collects or attempts to collect any Affinity Card Account; (vi) Juniper Bank's promotion. advertising or marketing of the Program prior to the expiration or termination of the Bank of America Agreement; or (vii) publicity and/or advertising proposed, developed and/or conducted by Juniper Bank including, but not limited to, any claims or determination that the publicity or advertising is illegal or misleading provided that this shall not extend to any changes to such publicity or advertising requested by America West. in writing, and made by Juniper Bank or such publicity or advertising approved by America West relating to terms other than the credit card.

11.2 Juniper Bank. America West shall indemnify, defend (by counsel reasonably acceptable to Juniper Bank) and hold Juniper Bank, its parent and affiliate companies, and their respective officers, directors, employees and permitted assigns, harmless for, from and against any Losses, as defined below, arising out of, relating to or attributable to: (i) any act or omission of America West, its officers, employees or agents in the performance of their obligations hereunder; (ii) any failure by America West to comply with the terms and conditions of this Agreement; (iii) America West's failure or refusal to give FF Program mileage credit to a FF Participant provided that Juniper Bank correctly notifies America West as provided herein or America West's failure or refusal to otherwise provide FF Program benefits to FF Participants (except as permitted by the FF Program), which failure or refusal is unrelated to any act,

19

REDACTED COPY

omission, failure or refusal on the part of Juniper Bank for which America West is indemnified hereunder; (iv) any failure to comply with laws and regulations applicable to the airline industry or frequent flyer programs; and (iv) publicity and/or advertising proposed, developed and/or conducted by America West including, but not limited to, any claims or determination that the publicity or advertising is illegal or misleading provided that this shall not extend to any changes to such publicity or advertising requested by Juniper Bank, in writing, and made by America West or such publicity or advertising approved by Juniper Bank relating to the credit card.

11.3 Defense. Each party shall promptly notify the other party of any suit or threat of suit of which that party becomes aware (except with respect to a threat of suit one party might institute against another party) which may give rise to a right of indemnification pursuant to this Agreement. The indemnifying party will be entitled to participate in the settlement or defense thereof and, if the indemnifying party elects, to take over and control the settlement or defense thereof with counsel satisfactory to the indemnified party. The indemnifying party and the indemnified party shall cooperate (at no cost to the indemnified party) in the settlement or defense of any such claim, demand, suit or proceeding.

11.4 Losses. The term "LOSSES" shall mean any losses, damages, costs, fines, claims, liabilities, fines, penalties and expenses (including without limitation, any reasonable attorneys' fees and court costs) incurred by Juniper Bank or America West, as the case may be.

11.5 Survival. The terms of this Section 11 shall survive the termination of this Agreement and remain in effect with respect to any occurrence or claim arising out of or in connection with this Agreement.

12.   DEFAULT; TERMINATION

12.1 If there is a material default by either party in the performance of the terms and conditions of this Agreement, and such default shall continue for a period of ten (10) days (for undisputed monetary defaults) or thirty (30) days (for non-monetary defaults), as applicable, after receipt by the defaulting party of written notice thereof from the non-defaulting party (setting forth in detail the nature of such default), then this Agreement shall upon the written election of the non-defaulting party terminate on the 30th day for undisputed monetary defaults or 60th day for non-monetary defaults, as applicable, following the delivery of the written notice. If, however, despite the ongoing commercially reasonable efforts by the defaulting party to cure the default set forth in the notice, the default cannot be remedied within such ten (10) day or thirty (30) day period, as applicable, such time period shall be extended for an additional period of not more than ten (10) days for undisputed monetary defaults and thirty (30) days for non-monetary defaults, as applicable, so long as the defaulting party has notified the non-defaulting party in writing and in detail of its plans to initiate substantive steps to remedy the default and diligently thereafter pursues the same to completion within such additional ten (10) or thirty (30) day period, as applicable. In no event may either party pursue a claim for indirect, consequential, special, incidental or punitive damages resulting from a default under this Agreement. In the event that any material change in any federal, state or local law, statute, operating rule or regulation, or any material change in any operating rule or regulation of the Card issuer makes the continued performance of this Agreement under the then current terms and conditions unduly burdensome, then either party shall have the right to terminate this Agreement upon ninety (90)

20

REDACTED COPY

days advance written notice. Such written notice shall include a detailed explanation and evidence of the burden imposed as a result of such change.

12.2 If either party becomes the subject of an event where (a) the party becomes insolvent, (b) a party engages in willful misconduct or gross negligence to the material detriment of the other party, (c) voluntary or involuntary proceedings by or against such party are instituted in bankruptcy or under any insolvency law, or a receiver or custodian is appointed for such party, or proceedings are instituted by or against such party for the dissolution of such party (other than an administrative dissolution for which the party is taking corrective action), which proceedings, if involuntary. are not dismissed within sixty (60) days after the date of filing, or (d) such party makes an assignment for the benefit of its creditors, or (e) substantially all of the assets of such party are seized or attached and not released within sixty (60) days thereafter, the other party may, by giving written notice to the affected party, terminate this Agreement.

13.   MISCELLANEOUS

13.1 Assignment. Neither party may assign or otherwise transfer any of its rights or obligations under this Agreement to any third party without the prior written consent of the other party, except that either party may assign this Agreement to its parent or its wholly-owned subsidiary without the prior written consent of the other party; provided, that the assigning party shall provide fourteen (14) days' advance written notice of such assignment to the other party and the new party agrees to be bound by the terms and conditions of this Agreement. Notwithstanding the foregoing, the engagement of an advertising agent or fulfillment house to prepare or distribute any mailings, advertising, or promotional materials or perform operational tasks will not be deemed to be an assignment.

13.2 Independent Contractors. It is mutually understood and agreed that nothing in this Agreement is intended or may be construed to create or establish any agency, partnership, or joint venture relationship between the parties hereto, and that the relationship of the parties hereto shall at all times be that of independent contractors.

13.3 Waiver. The failure of either party to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof or a party's right thereafter to enforce each and every provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

13.4 Governing Law. This Agreement and any dispute arising under or in connection with this Agreement. including any action in tort. will be governed by the internal laws of the State of Delaware, without regard to the conflicts of laws principles thereof.

13.5 Notices. All notices to the respective Parties hereunder shall be sent by overnight delivery, or certified or registered U.S. mail, return receipt requested, to the addresses as set forth below:

```
AMERICA WEST AIRLINES              JUNIPER BANK
---------------------              ------------
America West Airlines              Juniper Bank
```

21

REDACTED COPY

| | |
|---|---|
| 4000 E. Sky Harbor Blvd. (CH-MKI)<br>Phoenix, AZ 85034<br>Attn: Vice President, Marketing | 100 S. West St.<br>Wilmington, DE 19801<br>Attn: Ben Brake |
| COPY SENT TO:<br>America West Airlines<br>4000 E. Sky Harbor Blvd<br>Phoenix, AZ 85034<br>Attn: Manager, Partner Marketing | COPY SENT TO:<br>Juniper Bank<br>100 S. West St<br>Wilmington, DE 19801<br>Attn: Kevin Kleinschmidt |
| COPY SENT TO:<br>America West Airlines<br>4000 E. Sky Harbor Blvd. (CH-LAW)<br>Phoenix, AZ 85034<br>Attn: General Counsel | COPY SENT TO:<br>Juniper Bank<br>100 S. West St<br>Wilmington, DE 18091<br>Attn: General Counsel |

The addresses for the purpose of notice may be changed at any time by providing notice as set forth herein.

13.6 Amendment. This Agreement shall not be modified, amended or supplemented except by written instrument signed by each of the parties hereto. This Agreement is deemed to have been jointly drafted by the parties, and any uncertainty or ambiguity shall not be construed for or against either party as an attribution by either party.

13.7 Captions. The captions appearing in this Agreement have been inserted as a matter of convenience and in no way define, limit, or enlarge the scope of this Agreement or any of its provisions.

13.8 Entire Agreement. This Agreement, including its exhibits, constitutes the entire agreement and understanding of the Parties on the subject matter hereof, and, as of the date set forth in the first sentence of this Agreement, supersedes all prior agreements, whether written or oral, between the Parties hereto concerning the subject matter hereof. There are no other or further representations or inducements, whether written or oral, that have been given or made in connection with this Agreement.

13.9 Cost. In the event of any litigation, arbitration, or other proceedings under this Agreement, the prevailing party shall be entitled to recover from the other party all costs, reasonable attorneys' fees, and other expenses incurred.

13.10 Force Majeure. Except for any undisputed payments due hereunder, neither party shall be liable for delays or failure in performance thereunder caused by acts of God, war, strike, labor dispute, work stoppage, fire, act of government, terrorism, or any other cause, whether similar or dissimilar, beyond reasonable control of that party.

REDACTED COPY

13.11 Severability. In the event any section of this Agreement or part thereof shall be declared invalid for any reason by a court of competent jurisdiction such decision shall not affect the validity of any other sections. which other sections shall remain in force and effect as if this Agreement had been executed with the invalid section(s) or part(s) thereof eliminated, and it is hereby declared the intention of the parties that they would have executed the other sections of this Agreement without including herein any section(s) or part(s) thereof which may for any reason be hereafter declared invalid.

13.12 Survivability of Rights and Remedies. Any rights or remedies either party may have with respect to the other party arising out of such other party's performance of services during the term of this Agreement shall survive the expiration or termination of this Agreement.

13.13 Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which when taken together shall constitute one and the same instrument.

13.14 Debarment Clause. Each party hereby certifies to the other that neither it nor, to its knowledge, any of its principals is presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from participation in this transaction by any agency or department of the United States Federal Government. Where either party is unable to certify to any of the statements in this Section 13.14, such party shall attach an explanation to this Agreement.

IN WITNESS WHEREOF, Juniper Bank and America West have executed and delivered this Agreement as of the date first written above.

AMERICA WEST AIRLINES, INC.                    JUNIPER BANK

/s/ J. Scott Kirby                             /s/ Kevin Kleinschmidt
---------------------------                    ---------------------------
By:     J. Scott Kirby                         By:  Kevin Kleinschmidt
Title:  Executive Vice President. Sales and Marketing   Title:  Managing Director

23

EXHIBIT A

MILES AND PAYMENT

A.   Awarding of Miles:

1.   Base Miles

    (a)   Affinity Cards (except Standard No Fee Cards) - [REDACTED] of Net New Purchase Transaction will be awarded.

    (b)   Standard No Fee Cards - [REDACTED] of Net New Purchase Transaction will be awarded.

2.   Bonus Miles

    (a)   Affinity Cards (except Standard No Fee Cards) - to be awarded at the minimum rate [REDACTED]; Bonus Miles to be awarded for purchases of America West products at the rate set forth on Exhibit B and other promotional bonus offers agreed to in writing by America West and Juniper Bank.

    (b)   Standard No Fee Cards - [REDACTED] for America West ticket purchases at the rate set forth in Section 4, and other promotional bonus offers agreed to in writing by America West and Juniper Bank.

    (c)   Balance Transfers - [REDACTED].

    (d)   Existing Customer Bonus - [REDACTED].

    (e)   Anniversary Miles - [REDACTED].

3.   Adjustment Miles - Will be awarded and paid at the applicable rates as if they were initially properly awarded.

EXHIBIT B

CARD BENEFITS

| | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
|---|---|---|---|---|---|
| ACTIVATION BONUS MILES | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| MILES EARNED PER DOLLAR | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| MILES EARNED PER DOLLAR ON AMERICA WEST TICKET PURCHASES. AWA VACATIONS (EXCLUDING CRUISES), AND AWA CLUB PASSES** | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| MILES EARNED PER DOLLAR OF QUALIFYING BALANCE TRANSFER | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| AMERICA WEST CLUB PASSES (VALID IN PHOENIX &LAS VEGAS)* | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |
| COMPANION PASS* | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] | [REDACTED] |

\*    America West will provide. at America West's sole discretion.

\*\*    Juniper Bank will provide and purchase the incremental America West ticket
purchase miles at the Bonus Mileage Rate.

EXHIBIT C
FLIGHTFUND PARTICIPATION AGREEMENT
AMERICA WEST PARTNER STANDARD INTERFACE RECORD LAYOUT
HEADER RECORD

| FIELD NAME | POSITION | LENGTH | TYPE | DESCRIPTION | VALUE |
|---|---|---|---|---|---|
| RECORD TYPE | 01 | 01 | X(01) | RECORD TYPE | `1' |
| PARTNER CODE | 02 | 02 | X(02) | PARTNER | `XX' – NEED HOTEL CODE AND NAME |
| PARTNER TYPE | 04 | 01 | X(01) | PARTNER TYPE | `H' |
| FILE DATE | 05 | 06 | 9(06) | FILE DATE | DATE OF FILE (MMDDYY FORMAT) |
| RECORD COUNT | 11 | 07 | 9(07) | RECORD COUNT | NUMBER DETAIL RECORDS IN FILE (EXCLUDING HEADER RECORD) |
| FILLER | 18 | 63 | X(63) | UNUSED | SPACES |

DETAIL RECORD

| FIELD NAME | POSITION | LENGTH | TYPE | DESCRIPTION | VALUE |
|---|---|---|---|---|---|
| RECORD TYPE | 01 | 01 | X(01) | RECORD TYPE | `2' |
| FLIGHT FUND NUMBER | 02 | 11 | 9(11) | FLIGHT FUND NUMBER | RIGHT JUSTIFIED – ZERO FILLED |
| PARTNER CODE | 13 | 02 | X(02) | PARTNER | `xx' |
| PARTNER TYPE | 15 | 01 | X(01) | PARTNER TYPE | `H' |
| LOCATION CODE | 16 | 04 | X(04) | OPTIONAL | YOUR DISCRETION |
| ACTIVITY DATE | 20 | 06 | 9(06) | EFFECTIVE DATE OF BONUS | EFFECTIVE DATE OF BONUS (MMDDYY FORMAT) |
| DAY COUNT | 26 | 04 | 9(04) | LENGTH OF STAY | RIGHT JUSTIFIED ZERO FILLED |
| REFERENCE NUMBER | 30 | 08 | X(08) | OPTIONAL | YOUR DISCRETION |
| BASE LEVEL | 38 | 01 | X(01) | BASE LEVEL | SPACES |
| LAST NAME | 39 | 18 | X(18) | LAST NAME | LAST NAME OF CUSTOMER |
| CANCEL FLAG | 57 | 01 | X(01) | UNUSED | SPACES |
| CREDIT AMOUNT | 58 | 07 | 9(07) | MILEAGE | Miles to apply to customer. Right justify, zero fill. |
| BONUS INDICATOR | 65 | 01 | X(01) | BONUS INDICATOR | SPACE (Values are assigned by America West) |
| RETRO FLAG | 66 | 01 | X(01) | UNUSED | SPACE |
| PREFIX | 67 | 01 | X(01) | UNUSED | SPACE |
| CHECK DIGIT | 68 | 01 | X(01) | UNUSED | SPACE |
| AWV DEST CODE | 69 | 04 | X(04) | UNUSED | SPACES |
| FILLER | 73 | 08 | X(08) | UNUSED | SPACES |

Standard Edits for America West Partners Interface

YEAR 2000 COMPLIANCE:

- If the Year of any date is less than `80' then system forces century `20'.
- If the Year of any date is equal to or greater than `80' then system forces century `19'.

RECORD VALIDATION:

America West Partner Interface system will REJECT Detail records that contain ANY of the following conditions:

- Activity date is not valid.
- Activity date is in the future.
- Flight Fund Number is not numeric.
- Flight Fund Number is zeroes.
- Flight Fund Number does not pass `Mod-10 Check-digit' testing.
- Invalid Partner Code.
- Invalid Bonus Indicator.

EXHIBIT D

FLIGHTFUND PARTICIPATION AGREEMENT

FLIGHTFUND TERMS AND CONDITIONS FOR COMMUNICATION VEHICLES

Disclaimer Option 1:

America West reserves the right to change, suspend, or terminate any or all
rules. regulations, travel programs or offers of the FlightFund program at any
time without notice. Miles earned are subject to terms and conditions of the
FlightFund program. The number of Award seats is limited and subject to
availability. Blackout dates apply  America West Airlines and FlightFund are
registered trademarks of America West Airlines, Inc.

Disclaimer Option 2:

America West Airlines and FlightFund are registered trademarks of America West
Airlines, Inc. All FlightFund terms and conditions apply. Visit flightfund.com
for details.

</TEXT>
</DOCUMENT>

Created by 10KWizard Technology    www.10KWizard.com

# EXHIBIT 8

JS Airways/America West Airlines Merger Information | Frequent F...   http://www.usairways.com/awa/corporate/mediakit/frequent_flyer.aspx

US AIRWAYS | AMERICA WEST

Home | Site Map | Contact Us | Search | GO

Joining together to create the world's largest low-fare airline

Making Reservations | Frequent Flyer | Airport Clubs | Airport Experience | Online Experience | **FAQs**

You are here: Home   FAQs   Frequent Flyer

# Frequent Flyer

Making Reservations
**Frequent Flyer**
Airport Clubs
Airport Experience
Online Experience
In-Flight

I heard the FlightFund Visa card is going away. Is this true?

Will the miles and segments I've earned in both Dividend Miles and FlightFund count towards my Preferred or Elite Status?

I am an America West FlightFund member. Will my miles be transferred to a US Airways Dividend Miles account?

I am a US Airways Dividend Miles member. Will my miles be transferred to the new US Airways Dividend Miles program?

I am a member of both FlightFund and Dividend Miles. Will my accounts be merged?

As a Dividend Miles member, will my Star Alliance benefits be affected by the merger?

When will I be able to earn and redeem miles across the entire route network?

I am a Dividend Miles member. How do I redeem my Dividend Miles on an America West flight?

I am a FlightFund member. How do I redeem my FlightFund miles on a US Airways flight?

Will the merger affect Dividend Miles Preferred status or FlightFund Elite status in any way?

I am a Dividend Miles Preferred Member. Will I receive credit on America West flights I have flown prior to the airline merger?

I am a Dividend Miles member. Am I eligible for upgrades on America West flights?

I am a FlightFund member, Am I eligible for upgrades on US Airways flights?

I am a Dividend Miles member. Will my existing number change with the merger between US Airways and America West?

Why was "Dividend Miles" chosen as the name for the new frequent flyer program?

I am a FlightFund member. Will my existing number change with the merger between US Airways and America West?

Why isn't my Preferred/Elite status reflected on my boarding pass?

I am a FlightFund member. Will FlightFund partnerships with other airlines be changing?

I am a Dividend Miles member. Will the Dividend Miles partnership with other non-Star Alliance partners be changing?

## Credit Card FAQ

Will I be able to earn miles for credit card purchases in the future?

Will I lose my FlightFund miles when the FlightFund Visa card goes away at the end of 2005?

Can I still earn miles with my FlightFund Visa card?

What type of benefits will be associated with the Barclays Bank card?

When can I apply for the new Barclays card?

Doesn't US Airways have a current card with Bank of America?

Do I need to sign up for the new Bank of America US Airways Signature Card in order to continue earning miles for credit card purchases?

**I heard the FlightFund Visa card is going away. Is this true?**

While it has been a long and successful partnership with America West and Bank of America, the new US Airways has signed an agreement with Barclays Bank to be the provider of the new US Airways Dividend Miles credit card The current Bank of America US Airways Dividend Miles Visa card will continue to be available for up to two years; however, the new Barclays Bank US Airways Dividend Miles credit card will be the card going forward

All FlightFund miles and Dividend Miles balances will be combined in the spring of 2006.

Learn about important changes to the current FlightFund Visa® card and get information on the new US Airways Dividend Miles credit card

**Top of Page**

**Will the miles and segments I've earned in both Dividend Miles and FlightFund count towards my Preferred or Elite Status?**

Yes. All miles and segments you've earned in both frequent flyer programs will count towards your 2006 Preferred status in the new Dividend Miles program  For example, if in 2005 you accrued 75 Dividend Miles segments and 25 FlightFund

segments. a total of 100 segments will be used to determine your new Dividend Miles status - 100 segments means you will be a Platinum Preferred member for 2006

**Top of Page**

**I am an America West FlightFund member. Will my miles be transferred to a US Airways Dividend Miles account?**
Yes, your FlightFund miles will be merged automatically into a Dividend Miles account at a rate of one-to-one in early 2006. In the meantime. continue to accrue miles in the program of your choice

**Top of Page**

**I am a US Airways Dividend Miles member. Will my miles be transferred to the new US Airways Dividend Miles program?**
Yes, your Dividend Miles will be automatically transferred into your new US Airways Dividend Miles account at a rate of one-to-one in early 2006

**Top of Page**

**I am a member of both FlightFund and Dividend Miles. Will my accounts be merged?**
In early 2006, the combined airlines plan to merge active membership accounts and miles earned in both airlines' programs will be combined into a single US Airways Dividend Miles account automatically. In the meantime, continue to accrue miles in either program

**Top of Page**

**As a Dividend Miles member, will my Star Alliance benefits be affected by the merger?**
No, your Star Alliance benefits will remain the same. You can continue to accrue and redeem on Star Alliance member airlines. However, at this point United Mileage Plus members are not able to earn or redeem miles on flight segments operated by America West.

**Top of Page**

**When will I be able to earn and redeem miles across the entire route network?**
Effective October 5, 2005, Dividend Miles members can redeem on America West FlightFund members can redeem on US Airways beginning October 19, 2005 Please provide your frequent flyer account number when making your reservation. Miles will automatically be credited to your account. To enjoy the benefits of the Star Alliance network. you must be a member of Dividend Miles. If you are not already a member of Dividend Miles, please enroll.

**Top of Page**

**I am a Dividend Miles member. How do I redeem my Dividend Miles on an America West flight?**
Call US Airways Reservations at 1-800-428-4322.

**Top of Page**

**I am a FlightFund member. How do I redeem my FlightFund miles on a US Airways flight?**
Beginning October 19, 2005, you will be able to redeem FlightFund miles for travel on US Airways Please call the FlightFund Service Center at 1-800-247-5691. or visit flightfund.com.

**Top of Page**

**Will the merger affect Dividend Miles Preferred status or FlightFund Elite status in any way?**
Beginning October 5. 2005. you can earn miles and segments towards Dividend Miles Preferred status or FlightFund Elite status when flying on the combined US Airways and America West network. Plus you can earn Preferred and Elite bonus miles and benefit from unlimited complimentary First Class upgrades

**Top of Page**

**I am a Dividend Miles Preferred Member. Will I receive credit on America West flights I have flown prior to the airline merger?**

If you accrued FlightFund miles and segments for your flights, these will be added
to your new Dividend Miles account in spring 2006. All miles and segments earned
in the Dividend Miles and FlightFund programs will be added together in the new
Dividend Miles program and used to calculate Preferred status for 2006

**Top of Page**

**I am a Dividend Miles member. Am I eligible for upgrades on America West
flights?**
Yes. Learn about Preferred upgrades

**Top of Page**

**I am a FlightFund member. Am I eligible for upgrades on US Airways
flights?**
Yes. Learn about Elite upgrades

**Top of Page**

**I am a Dividend Miles member. Will my existing number change with the
merger between US Airways and America West?**
No, existing Dividend Miles members will keep their current number

**Top of Page**

**Why was "Dividend Miles" chosen as the name for the new frequent flyer
program?**
Both Dividend Miles and FlightFund have a loyal following and have been
outstanding programs for their members. Obviously, only one name could be
chosen and Dividend Miles was selected due to its history with the US Airways
brand and name recognition throughout large parts of the country

**Top of Page**

**I am a FlightFund member. Will my existing number change with the
merger between US Airways and America West?**
There will be no immediate impact to FlightFund account numbers as a result of the
merger. Please continue to visit flightfund.com for updates on this topic

**Top of Page**

**Why isn't my Preferred/Elite status reflected on my boarding pass?**
In some cases, Preferred/Elite status may not be reflected on boarding passes. For
example, Dividend Miles Preferred status will not appear on an America West
boarding pass until late 2005. In addition, FlightFund Chairman's Elite members will
notice that despite their new status, "Platinum" still appears on their boarding pass
If your Preferred/Elite status is omitted or outdated on your boarding pass, this will
not affect your Elite benefits. Dividend Miles Preferred members, for example,
should feel free to board in "Group 1" when traveling on flights operated by
America West

**Top of Page**

**I am a FlightFund member. Will FlightFund partnerships with other airlines
be changing?**
As America West prepares to enter the Star Alliance several of the airline's
partnerships are changing. The frequent flyer partnerships with British Airways and
Northwest Airlines are coming to an end, while the Hawaiian Airlines partnership is
changing from a system-wide partnership to a limited partnership.

All benefits on British Airways and Northwest Airlines will cease as per the dates
outlined below. Benefits with Hawaiian Airlines will only be available for flights
between the Hawaiian Islands (inter-island) and for flights to/from the South
Pacific. Transpacific flights (flights between the mainland US and Hawaii) will no
longer be eligible for benefits as per the dates below.

**Top of Page**

| | | | |
|---|---|---|---|
| Last day to ticket a mileage-eligible flight | 12/31/05 | 12/15/05 | 3/3 |
| Last day to earn miles on eligible flights | 12/31/05 | 6/14/06 | 3/3 |
| Last day to request an award ticket | 12/15/05 | 12/15/05 | 3/2 |
| Last day to ticket award travel | 3/1/06 | 12/15/05 | 3/3 |
| All award travel must be complete by | 1/31/07 | 12/14/06 | 3/3 |
| Last date for reciprocal club access | NA | NA | 3/3 |

Flight Fund relationships with Virgin Atlantic, Big Sky, and Royal Jordanian re
unaffected by the merger

To

I am a Dividend Miles member. Will the Dividend Miles partnership
other non-Star Alliance partners be changing?
The Dividend Miles partnership with non-Star Alliance partners Air One, Ba
Air, Caribbean Star, Caribbean Sun, and Qantas remains unaffected by the
You may continue to earn and redeem miles on these carriers

To

## Credit Card FAQs

Will I be able to earn miles for credit card purchases in the future?
Until December 31, 2005:
FlightFund members can earn miles using the Bank of America Flight
Card
Dividend Miles members can earn miles using the Bank of America US
Dividend Miles Card

Beginning January 1, 2006:
All members will earn Dividend Miles when using the Barclays Bank U
Airways Dividend Miles credit card or the Bank of America US Airways
Dividend Miles Visa card
Please note: Beginning January 1, members will not longer earn Fligh
miles All members will earn Dividend Miles. All FlightFund miles and
Miles balances will be combined in the spring of 2006

The Bank of America card will continue to earn miles for two years The Ba
Bank card will be available going forward

To

Will I lose my FlightFund miles when the FlightFund Visa card goes
the end of 2005?
No, members will not lose miles as a result of this change All FlightFund n
Dividend Miles balances will be combined in the spring of 2006

To

Can I still earn miles with my FlightFund Visa card?
The benefit of earning FlightFund miles using your Bank of America FlightF
card will be available through December 31, 2005 Beginning January 1, 2
will earn Dividend Miles when using the Barclays Bank US Airways Dividen
credit card or the Bank of America US Airways Dividend Miles Visa card
All FlightFund miles and Dividend Miles balances will be combined in the s
2006

To

What type of benefits will be associated with the Barclays Bank cal
Members will be receiving information in the mail in the near future detail
benefits of the new affinity card
In order to make a fully informed decision, members may want to wait for
on the Barclays Bank credit card before deciding whether to switch to the
America or Barclays Bank US Airways Dividend Miles credit card.

To

**When can I apply for the new Barclays card?**

The Barclays Bank credit card will be available beginning January 1. 2006
update your FlightFund profile to receive important communications from (
will send you information via e-mail when it becomes available in the comi
weeks

Toj

**Doesn't US Airways have a current card with Bank of America?**

The current US Airways card with Bank of America will be phased out over
two years  Going forward, the Barclays Bank credit card will be the card fc
US Airways

Toj

**Do I need to sign up for the new Bank of America US Airways Signi
Card in order to continue earning miles for credit card purchases?**

You will continue to earn miles on your FlightFund Visa® card through Dec
31, 2005  Beginning January 1, 2006 the new Barclays Bank US Airways D
Miles credit card will be available. You should be receiving information on t
credit card in the mail soon

Toj

# US·AIRWAYS

Home    Customer Service    Search & Index

usairways.com -> site information -> limitations on liability

## Site Information



**usairways.com**

▶Reservations
▶Timetables
▶Dividend Miles
▶Promotions

**Site Information**

▶Privacy Policy
▶Credit Card Security
▶System Requirements
▶Limitations on Liability

### Limitations on Liability

Thank you for visiting the US Airways Web site. The information contained in this site is provided for your use and convenience. It is subject to change without notice.

We encourage you to share your comments with our Webmaster. Your input will help us offer pertinent information and services in these Web Pages. We will make efforts to review all mail that you send, but we may not be able to respond to all messages. Also, we are not soliciting ideas or suggestions for our business, and take no responsibility for reviewing submissions of this nature. Any such submissions will become the exclusive property of US Airways, and we will have no liability stemming from any similarities that may appear in future US Airways undertakings.

These Web Pages are not the final authority for the information that they set forth. You should not rely upon the information found in this source to make your travel plans or other decisions. Our official source of information is our Reservations office, and you should confirm everything you read here with one of our reservations sales representatives or your travel consultant. If there is any inconsistency between the information set forth in these pages and the information provided by our Reservations office, you should base your planning on the information from our Reservations office. By using the information provided in these Web Pages, you agree that you will not hold US Airways liable for the result, foreseeable or unforeseeable, of any action you may take in reliance on this information.

We revise and update our flight schedules regularly. We will revise these Web Pages as quickly as possible to reflect changes, but there may be a delay of 15 hours or more between the time a schedule change is loaded in our Reservations computer and its appearance in these pages. Also, there are daily adjustments to our schedule due to weather, aircraft availability and various other conditions, which cannot be reflected in these pages at this time.

The primary document that sets forth the liability that US Airways accepts is the "Terms of Transportation." A copy of this document is available at any US Airways airport or City Ticket Office location. The summary of the Terms of Transportation provided in these Web Pages is for informational purposes only. In the event of any uncertainty or inconsistency, the actual Terms of Transportation will control.

THE MATERIALS AND INFORMATION IN THE US AIRWAYS WEB PAGES ARE PROVIDED "AS IS," WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY FOR INFORMATION, SERVICES, OR PRODUCTS PROVIDED THROUGH OR IN CONNECTION WITH THE US AIRWAYS WEB PAGES AND ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. This exclusion is not applicable in jurisdictions that do not permit exclusion of implied warranties.

US Airways owns all of the data and information contained on these web pages. You can review and download this data and information for your own personal use, but you may not copy the data or information, or distribute it to any other party.



Copyright © 2005, US Airways, Inc
All Rights Reserved