# EXHIBIT 9

Case 1:05-cv-00793-JJF    Document 20-4    Filed 12/02/2005    Page 1 of 14

EFiled: Oct 12 2005 2:06PM EDT
Transaction ID 7080377

IN THE COURT OF CHANCERY FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| BANK OF AMERICA, N.A. (USA), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> US AIRWAYS, INC., US AIRWAYS GROUP, ) <br> INC. and AMERICA WEST AIRLINES, INC. ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. _____ |

## COMPLAINT

Bank of America, N.A. (USA) ("Bank of America"), by its undersigned attorneys, for its complaint herein alleges, upon knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

### Nature of the Action

1.  This is an action for breach of contract and tortious interference with contract and prospective economic relations. US Airways, Inc. is a party to a Co-Branded Card Agreement with Bank of America dated as of May 20, 2003 and the amendments thereto (the "Agreement"). Pursuant to the Agreement, US Airways, Inc. granted Bank of America the exclusive right to offer a credit card to US Airways' frequent flyer customers (the "Card"). US Airways, Inc., in concert with US Airways Group, has breached, and, absent the relief requested herein, will continue to breach, its obligations under the Agreement by, among other things, negotiating and entering into a similar, competing agreement with Juniper Bank ("Juniper"), permitting or licensing Juniper to issue a US Airways card and/or refusing to market Bank of America's Card in

accordance with its contractual obligations under the Agreement. America West Airlines, Inc. ("America West") and US Airways Group, Inc. ("US Airways Group") induced and/or effected these breaches and, with US Airways, Inc., otherwise caused injury to Bank of America. As a result, Bank of America has sustained and/or will sustain irreparable harm. Bank of America therefore brings this Complaint seeking equitable and other relief.

Parties

2. Plaintiff Bank of America is a national banking association organized and existing under the laws of the United States, with its principal executive offices in Phoenix, Arizona. Bank of America is in the credit card marketing and processing and merchant services business. Bank of America is an indirect subsidiary of Bank of America Corporation, a bank holding company and a financial holding company, incorporated in Delaware, which provides a diversified range of banking and nonbanking financial services and products.

3. Defendant US Airways, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices in Virginia. US Airways, Inc. provides scheduled airline services and operates as part of its service a customer loyalty program featuring airline mileage or other travel credit or awards and including the Dividend Miles Program. US Airways, Inc. is the principal operating subsidiary of US Airways Group, Inc. (collectively here "US Airways").

4. Defendant US Airways Group is a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices in Virginia. On September 16, 2005, US Airways Group emerged from the protection of

2

Federal bankruptcy court. US Airways Group acted for and on behalf of US Airways, Inc. in breaching the Agreement and in otherwise injuring Bank of America as described below.

5. Defendant America West is a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices in Arizona. America West is wholly owned by America West Holdings Corporation ("America West Holdings"), which is also a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices in Arizona. America West is a domestic airline offering frequent flyer miles to members of America West's Frequent Flyer Program.

The Merger Between America West Holdings and US Airways Group

6. On May 19, 2005, America West Holdings and US Airways Group announced an agreement to merge, pending approval by the Bankruptcy Court overseeing US Airways Group's reorganization under Chapter 11 of the United States Bankruptcy Code.

7. On September 16, 2005, the merger was approved by the Bankruptcy Court.

8. The Agreement was assumed under and unaffected by the bankruptcy proceedings.

9. The merger of US Airways Group and America West Holdings became effective on September 27, 2005. As a result of the merger, America West Holdings Corporation became a subsidiary of US Airways Group. The merged entity will operate under the US Airways brand name.

3

10. The merger agreement between America West Holdings and US Airways Group provides that, once the merger becomes effective, the separate corporate existence of America West Holdings "shall continue unaffected by the Merger".

11. Following the merger, the new US Airways operates one of the nation's largest airlines.

## Background

### A. The Co-Branded Card Agreement

12. On May 20, 2003, Bank of America and US Airways, Inc. executed the Agreement. The term of the Agreement ends on December 3, 2008, unless renewed.

13. The Agreement restates, amends and extends the parties' previous agreement, dated December 4, 2000, establishing and maintaining a co-branded credit card program for the benefit of US Airways' frequent flyers and customers.

14. Under the Agreement, Bank of America is the sole issuer of the Card to consumers who reside in the United States. Holders of the Card earn miles in US Airways' frequent flyer program, Dividend Miles, each time they use the Card.

15. Bank of America entered into a similar co-branded credit card agreement with America West dated January 1, 2001, with an expiration date of December 31, 2005 (the "America West Agreement"). Under the America West Agreement, Bank of America is the sole issuer of America West cards from January 1, 2001 to December 31, 2005. Holders of the America West card earn miles in America West's frequent flyer program, FlightFund, each time they use the America West card.

B. <u>The Agreement's Exclusivity Provision</u>

16. The Agreement requires US Airways, Inc. to give Bank of America exclusivity during the term of the Agreement. The relevant provision (the "Exclusivity Provision") states:

SECTION 5: <u>EXCLUSIVITY</u>

\* \* \*

5.2.1 Bank Sole Card Issuer for US Airways

(a) <u>Generally</u>

During the term of this Agreement, Bank [of America] shall be the only Person that US Airways permits or licenses, directly or indirectly, to issue a US Airways Card to consumers who reside in the United States of America. US Airways shall not issue or market a Competing Card. In addition, US Airways shall not enter into, solicit, offer, negotiate or otherwise attempt to enter into any agreement with a third party that would permit such third party to issue or market a Competing Card.

17. As a result of this provision, which is a clear, definite and key term of the Agreement, Bank of America is the only person or entity that US Airways, Inc. may permit or license to issue a US Airways card; US Airways, Inc. may not issue or market a competing card; and US Airways, Inc. may not enter into, solicit, offer, negotiate or otherwise attempt to enter into an agreement with a third party that would result in issuing or marketing a competing card.

18. Exclusivity provisions such as the Exclusivity Provision are common and essential features, and are understood and generally accepted to be key provisions, of co-branded card contracts.

19. Bank of America reasonably relied on the Exclusivity Provision in entering into the Agreement.

5

C.  US Airways' Marketing Obligations

20. Under Section 2.4 of the Agreement, US Airways, Inc, has a continuing obligation during the term of the Agreement to "market the [co-branded card] Program to Members, the Bank's customers and the general public as set forth in this Section 2.4".

21. Section 2.4 requires, among other things, that US Airways, Inc. facilitate and solicit participation in the Bank of America/US Airways co-branded card program, such as by providing Bank of America with member lists, displaying Take-One Applications and working with Bank of America on a commercially reasonable basis to match other airline co-brand new products or initiatives.

22. Since the effective date of the Agreement and until the conduct complained of herein, Bank of America and US Airways, Inc. engaged in marketing of the Card, as required by the Agreement.

D.  Inducement of Breaches

23. On January 25, 2005, America West entered into an agreement with Juniper (the "Juniper/America West Agreement") under which Juniper will replace Bank of America and become the exclusive issuer of America West cards upon the expiration of the America West Agreement.

24. America West intentionally induced, and/or caused US Airways Group to enter into a contract pursuant to which US Airways Group would permit Juniper to offer a competing US Airways card during the term of the Agreement.

25. America West was aware of the existence of the Agreement, including the Exclusivity Provision.

26. On August 8, 2005, following a period of negotiation, America West, US Airways Group and Juniper entered into an agreement authorizing Juniper to offer and market a co-branded card program for the New US Airways Group (the Juniper/US Airways Agreement). The Juniper/US Airways Agreement took effect on September 27, 2005.

27. The Juniper/US Airways Agreement purports to amend the Juniper/America West Agreement dated January 25, 2005, and assigns the Juniper/America West Agreement to US Airways Group. Under this agreement, Juniper is to offer a US Airways card that competes with the Card.

28. US Airways Group negotiated and/or entered into the Juniper/US Airways Agreement for, with and on behalf of US Airways, Inc. whose performance is required under the Juniper/US Airways Agreement.

E. US Airways' Breaches of Contract

29. Despite the clear and definite terms of the Agreement, US Airways, Inc. breached the Agreement by, among other things, negotiating and/or executing the Juniper/US Airways Agreement, permitting and/or licensing Juniper to issue a US Airways card to consumers, and/or marketing the Juniper card.

30. US Airways, Inc. also breached the Agreement by failing properly to market the Card and/or stating that it no longer intends to market the Card as required by the Agreement.

31. For example, US Airways, Inc. has stated in clear and definite terms that it intends to impair programs such as Take One, the Employee Incentive Program, and Gold, Signature, Secured, and Signature Caribbean Cards, including their

7

associated marketing programs such as Companion Vouchers and US Airway Club Membership discounts.

    F.    <u>Bank of America Has Been and Will Continue to Be Injured by Defendants' Misconduct</u>

32.    Bank of America has been and will continue to be injured as a result of US Airway, Inc.'s breaches of the Agreement and America West's and US Airways Group's interference with the Agreement and Bank of America's prospective economic relations.

33.    Defendants' misconduct has deprived and/or seeks to deprive Bank of America of the contractual rights for which it bargained and its prospective economic relations. Unless US Airways, Inc. is required to perform its obligations under the Agreement, and America West and US Airways Group are enjoined from interfering with US Airways, Inc.'s performance of the Agreement and Bank of America's prospective economic relations, Bank of America's rights will be harmed irreparably, and it will be left without an adequate remedy at law.

34.    If Bank of America is not afforded the relief requested herein, it will be impossible to undo the harm caused by Defendants and to restore Bank of America's rights under the Agreement. It is currently impossible to quantify precisely the damages that Bank of America has sustained and will sustain as a result of Defendants' misconduct.

35.    Estimating how many current Bank of America card accounts were or will be lost as a result of the misconduct, as well as how many future Bank of America card accounts will never be established as a result of the misconduct, cannot be established at this time. Similarly, measuring the impact of consumer confusion resulting

from the issuance of Juniper's competing card will be difficult to determine with respect to new and/or existing Bank of America card accounts.

36. There is no adequate remedy at law for the harm that Bank of America has suffered and/or will suffer as a result of these breaches. The harm to Bank of America if Defendants' conduct is not enjoined outweighs any harm to Defendants if an injunction is issued.

## CLAIMS FOR RELIEF

### COUNT I

Breach of Contract Against US Airways – Exclusivity

37. Bank of America repeats, realleges and incorporates by reference herein the allegations of paragraphs 1 to 36.

38. The Agreement is a valid, binding and enforceable contract between Bank of America and US Airways, Inc.

39. Bank of America has performed its obligations under and is not in breach of the Agreement.

40. The Exclusivity Provision is a clear and definite term of the Agreement.

41. US Airways, Inc. has materially breached the Agreement by, among other things: (1) permitting or licensing a person or entity other than Bank of America to issue a US Airways card to consumers who reside in the United States of America; (2) issuing or marketing a competing card; and/or (3) entering into, soliciting, offering, negotiating, or otherwise attempting to enter into any agreement with a third party that would permit such third party to issue or market a competing card.

42. As a result of US Airways, Inc.'s breaches, Bank of America has suffered and will suffer irreparable injury.

## COUNT II

### Breach of Contract Against US Airways -- Other

43. Bank of America repeats, realleges and incorporates by reference herein the allegations of paragraphs 1 to 42.

44. The Agreement is a valid, binding and enforceable contract between Bank of America and US Airways, Inc.

45. Bank of America has performed its obligations under and is not in breach of the Agreement.

46. The Agreement contains clear and definite provisions relating to US Airways, Inc.'s marketing and other obligations with respect to Bank of America and the Card.

47. US Airways, Inc. has materially breached the Agreement by, among other things, failing to fulfill its marketing obligations as required by the Agreement.

48. As the result of US Airways, Inc.'s breach, Bank of America has suffered and will suffer irreparable injury.

## COUNT III

### Tortious Interference with Contract
### Against America West

49. Bank of America repeats, realleges and incorporates by reference herein the allegations of paragraphs 1 to 48.

10

50. The Agreement is a valid, binding and enforceable contract between Bank of America and US Airways, Inc.

51. At all relevant times, America West was aware of the existence of the Agreement.

52. America West intentionally and wrongfully interfered with the contractual relationship between Bank of America and US Airways, Inc. by, among other things, inducing or causing US Airways, Inc. to breach the Agreement.

53. In so doing, America West acted without justification or privilege.

54. As a result of America West's tortious interference, Bank of America has suffered and will suffer injury.

### COUNT IV

#### Tortious Interference With Prospective Economic Advantage Against US Airways Group and America West

55. Bank of America repeats, realleges and incorporates by reference herein the allegations of paragraphs 1 to 54.

56. Bank of America has a valid expectancy of future business relationships with current and future holders of the Card, making future economic benefit probable.

57. US Airways Group and America West were aware that Bank of America reasonably expected to gain a future economic advantage by continuing to provide co-branded card services.

58. US Airways Group and America West intentionally and improperly interfered with Bank of America's reasonable expectations of realizing this future commercial benefit by, among other things, inducing or causing US Airways, Inc.

11

to breach the Agreement and/or engaging in unfair competition.

59. In so doing, US Airways Group and America West acted without justification or privilege.

60. US Airways Group and America West have thereby caused Bank of America to suffer substantial injury.

## PRAYER FOR RELIEF

WHEREFORE, Bank of America requests a judgment against Defendants as follows:

(1) with respect to US Airways, an order requiring it to specifically perform its obligations under the Agreement and enjoining it from further breaches of those obligations, including but not limited to: (a) an order requiring US Airways not to permit or license any Person other than Bank of America to issue a US Airways credit card; not to issue or market a competing card; and not to enter into, solicit, offer, negotiate or otherwise attempt to enter into any agreement with a third party that would permit such third party to issue or market a competing card; (b) an order requiring US Airways to market the Card as required by the Agreement; and (c) an order requiring US Airways otherwise to perform its obligations under the Agreement.

(2) with respect to America West and US Airways Group Inc., an order enjoining them from interfering with US Airways, Inc.'s performance of its obligations under the Agreement;

(3) with respect to all Defendants, awarding damages in an amount to be proven at trial, plus pre-judgment interest, insofar as the relief otherwise requested herein is insufficient to redress the injuries inflicted on Bank of America; and

(4) with respect to all Defendants, such other and further relief as the Court deems just and proper, including, but not limited to, an award of costs and attorneys' fees.

POTTER ANDERSON & CORROON LLP

By _____
Richard L. Horwitz (I.D. #2246)
Kevin R. Shannon (I.D. #3137)
Brian C. Ralston (I.D. #3770)
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
302-984-6000

Attorneys for Plaintiff

OF COUNSEL:

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: October 12, 2005
703008