# EXHIBIT 15 – PART 4

The Court approved the Bidding Procedures, as modified, as well as the form and manner of notice of the Bidding Procedures (the "Bidding Procedures Notice") on May 31, 2005 (the "Bidding Procedures Order"). In accordance with the Bidding Procedures Order, the Debtors (i) served a copy of the Bidding Procedures Notice, along with a copy of the Bidding Procedures Order, to potential plan sponsors identified by the Debtors and all persons or entities on the Master Service List within five (5) days from the date on which the Bidding Procedures Order was entered, and (ii) caused the Bidding Procedures Notice to be published one time in the Wall Street Journal (National Edition) on June 8, 2005. Among other things, the Bidding Procedure Orders approved a bilateral termination fee in the amount of $15 million (inclusive of expenses) between Group and America West, payable by one party to the other under a variety of circumstances, as well as break-up fees and expense reimbursements payable to certain of the Plan Investors, as described in Section III.D of this Disclosure Statement. In addition, the Bidding Procedures Orders set forth the requirements for consideration of competing proposals and, among other things, established a deadline of July 1, 2005 for the submission of any such proposals. No qualified competing proposals were submitted by this deadline.

On July 7, 2005 the Court held an approval hearing and on July 14, 2005 entered an Amended Bidding Procedures Order (Docket No. 2394) approving the Investment Agreements and the Merger Agreement as the "Approved Proposal."

## VIII.    SUMMARY OF THE REORGANIZATION PLAN

THIS SECTION CONTAINS A SUMMARY OF THE STRUCTURE OF, CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS IN, AND IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND TO THE EXHIBITS ATTACHED THERETO OR REFERRED TO THEREIN. CAPITALIZED TERMS NOT DEFINED HEREIN SHALL HAVE THE RESPECTIVE MEANINGS SET FORTH IN THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS. THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN, WHICH ARE OR WILL HAVE BEEN FILED WITH THE COURT, WILL CONTROL THE TREATMENT OF CREDITORS AND EQUITY SECURITY HOLDERS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE OF THE PLAN, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN THE REORGANIZED DEBTORS AND OTHER PARTIES IN INTEREST, REGARDLESS OF WHETHER OR HOW THEY HAVE VOTED ON THE PLAN.

A.    Overall Structure of the Plan

Since filing for Chapter 11 relief, the Debtors have focused on formulating a plan of reorganization that would enable them to emerge from Chapter 11 and to preserve the value of their business as a going concern. The Debtors recognize that in the competitive industry in which they operate, lengthy and uncertain Chapter 11 Cases adversely affect the confidence of their vendors and customers, further impair their financial condition and dim the prospects for a successful reorganization.

As described in Section III above, a central feature of the Plan is a merger between the Debtors and America West, together with new investments to be made by the Plan Investors pursuant to the Investment Agreement. The Merger is to be accomplished pursuant to the Merger Agreement.

The Plan constitutes a separate plan of reorganization for each of the Debtors. Accordingly, the voting and other confirmation requirements of the Bankruptcy Code must be satisfied for each of the Debtors. Under the Plan, Claims against, and Interests in, each of the Debtors are divided into Classes according to their relative seniority and other criteria.

If the Plan is confirmed by the Bankruptcy Court and consummated, Classes of Claims against and Interests in the Debtors will receive the treatment described in this Disclosure Statement. A description of the debt Claims and equity Interests included in each Class of Claims and Interests, the treatment of those Classes under the Plan, and the securities and other property (if any) to be distributed to holders of Claims or Interests in those Classes under the Plan are described below.

The amounts and forms (e.g., Cash, New Common Stock) of distributions under the Plan are based upon, among other things, the requirements of applicable law and the Debtors' assessment of their ability to achieve the goals set forth in their business plan.

B.    **Classification and Treatment of Claims and Interests**

Section 1122 of the Bankruptcy Code requires that a plan of reorganization classify the claims of a debtor's creditors and the interests of its equity holders. The Bankruptcy Code also provides that, except for certain claims classified for administrative convenience, a plan of reorganization may place a claim of a creditor or an interest of an equity holder in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.

The Bankruptcy Code also requires that a plan of reorganization provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest. The Debtors believe that they have complied with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the Claimholders affected do not consent to the treatment afforded them under the Plan.

The Plan classifies the following in separate Classes:

| Chapter 11 Case | Class | |
|---|---|---|
| US Airways, Inc. | Class USAI-1 | Miscellaneous Secured Claims |
| | Class USAI-2A | GECC Claims |
| | Class USAI-2B | GEAE Claims |
| | Class USAI-3 | ATSB Loan Claims |
| | Class USAI-5 | Other Priority Claims |
| | Class USAI-6 | Aircraft Secured Claims |
| | Class USAI-7 | PBGC Claims |
| | Class USAI-8 | General Unsecured Convenience Claims |
| | Class USAI-9 | General Unsecured Claims |
| | Class USAI-10 | Interests in USAI |
| US Airways Group, Inc. | Class Group-1 | Miscellaneous Secured Claims |
| | Class Group-2A | GECC Claims |
| | Class Group-2B | GEAE Claims |
| | Class Group-3 | ATSB Loan Claims |
| | Class Group-4 | Airbus Claims |
| | Class Group-5 | Other Priority Claims |
| | Class Group-6 | Aircraft Secured Claims |
| | Class Group-7 | PBGC Claims |
| | Class Group-8 | General Unsecured Convenience claims |
| | Class Group-9 | General Unsecured Claims |
| | Class Group-10 | Interests in Group |
| | Class Group-11 | Subordinated Securities Claims |

| Chapter 11 Case | Class | |
|---|---|---|
| PSA Airlines, Inc. | Class PSA-1 | Miscellaneous Secured Claims |
| | Class PSA-2A | GECC Claims |
| | Class PSA-2B | GEAE Claims |
| | Class PSA-3 | ATSB Loan Claims |
| | Class PSA-5 | Other Priority Claims |
| | Class PSA-6 | Aircraft Secured Claims |
| | Class PSA-7 | PBGC Claims |
| | Class PSA-8 | General Unsecured Convenience Claims |
| | Class PSA-9 | General Unsecured Claims |
| | Class PSA-10 | Interests in PSA |
| Piedmont Airlines, Inc. | Class Piedmont-1 | Miscellaneous Secured Claims |
| | Class Piedmont-2A | GECC Claims |
| | Class Piedmont-2B | GEAE Claims |
| | Class Piedmont-3 | ATSB Loan Claims |
| | Class Piedmont-5 | Other Priority Claims |
| | Class Piedmont-6 | Aircraft Secured Claims |
| | Class Piedmont-7 | PBGC Claims |
| | Class Piedmont-8 | General Unsecured Convenience Claims |
| | Class Piedmont-9 | General Unsecured Claims |
| | Class Piedmont-10 | Interests in Piedmont |
| Material Services Company, Inc. | Class Material Services-1 | Miscellaneous Secured Claims |
| | Class Material Services-2A | GECC Claims |
| | Class Material Services-2B | GEAE Claims |
| | Class Material Services-3 | ATSB Loan Claims |
| | Class Material Services-5 | Other Priority Claims |
| | Class Material Services-6 | Aircraft Secured Claims |
| | Class Material Services-7 | PBGC Claims |
| | Class Material Services-8 | General Unsecured Convenience Claims |
| | Class Material Services-9 | General Unsecured Claims |
| | Class Material Services-10 | Interests in Material Services |

In addition, the definition of General Unsecured Claims contained in the Plan states that General Unsecured Claims include all Claims that do not fall within another class of Claims set forth in the Plan. Accordingly, the Debtors believe that they have classified all Claims and Interests in compliance with the requirements of Section 1122 of the Bankruptcy Code. If a Claimholder or Interestholder challenges such classification of Claims or Interests and the Court finds that a different classification is required for the Plan to be confirmed, the Debtors, to the extent permitted by the Court, intend to make such modifications to the classifications of Claims or Interests under the Plan to provide for whatever classification might be required by the Court for confirmation. UNLESS SUCH MODIFICATION OF CLASSIFICATION ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM OR INTEREST AND REQUIRES RESOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM OR INTEREST PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM OR INTEREST REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER IS ULTIMATELY DEEMED TO BE A MEMBER.

As stated above, the Plan is a plan of reorganization proposed by each of the respective Debtors. The classifications set forth below apply separately with respect to each Debtor. For example, General Unsecured Claims relating to Group are included in Class Group-9 of the Plan, while General Unsecured Claims relating to USAI are included in Class USAI-9 of the Plan.

*1.*     *Treatment of Unclassified Claims.*

    *(a)*     *Treatment of Administrative Claims*

Administrative Claims consist primarily of the costs and expenses of administration of the Chapter 11 Cases. They include, but are not limited to, the cost of operating the Debtors' businesses since the Petition Date, the outstanding unpaid fees and expenses of the professionals retained by the Debtors, the Creditors' Committee and the Retiree Committee as approved by the Court, the payments necessary to cure prepetition defaults on unexpired leases and executory contracts that are being assumed under the Plan ("Cure") and the ATSB's superpriority Administrative Claims under the ATSB Cash Collateral Order. All payments to professionals in connection with the Chapter 11 Cases for compensation and reimbursement of expenses, and all payments to reimburse allowed expenses of members of the Creditors' Committee and the Retiree Committee will be made in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules and are subject to the approval of the Court as being reasonable.

The Debtors believe that the aggregate amount of Administrative Claims will not exceed the Reorganized Debtors' ability to pay such Claims when they are allowed and/or otherwise become due. The procedures governing allowance and payment of Administrative Claims are described in Section VIII.D below entitled "Distributions."

Subject to the provisions of <u>Article X</u> of the Plan, on the first Periodic Distribution Date occurring after the later of (a) the date an Administrative Claim becomes an Allowed Administrative Claim, or (b) the date an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Administrative Claim, an Allowed Administrative Claimholder in the Chapter 11 Cases shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim, or (ii) such other treatment as to which the Debtors (or the Reorganized Debtors) and such Claimholder shall have agreed upon in writing; provided, however, that (x) Eastshore shall have an Allowed Administrative Claim under the Eastshore Financing Agreement in such amount as to which the Debtors and Eastshore shall have agreed in writing or as fixed by the Bankruptcy Court, which Administrative Claim shall be paid as of the Effective Date, (i) in Cash in respect of any accrued and unpaid interest, and (ii) in 8,333,333 shares of New Common Stock, in each case pursuant to the terms of the Eastshore Financing Agreement in respect of the outstanding principal amounts due thereunder, which treatment shall satisfy in full Eastshore's Secured Claims against the Debtors arising under the Eastshore Financing Agreement, and (y) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

    *(b)*     *Treatment of Priority Tax Claims*

Priority Tax Claims are those tax claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. The Plan provides that, with respect to each Allowed Priority Tax Claim in the Chapter 11 Cases, at the sole option of the Debtors (or the Reorganized Debtors after the Effective Date), the Allowed Priority Tax Claimholder shall be entitled to receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (a) equal Cash payments made on the last Business Day of every three-month period following the Effective Date, over a period not exceeding six (6) years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance from the Effective Date calculated at the interest rate available on ninety (90) day United States Treasury bills on the Effective Date; (b) such other treatment agreed to by the Allowed Priority Tax Claimholder and the Debtors (or the Reorganized Debtors), provided such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors after the Effective Date) than the treatment set forth in clause (a) hereof; or (c) payment in full in Cash.

2.    *Treatment of Classified Claims.*

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in each of the Debtors. All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in <u>Article II</u> of the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class only for the purpose of voting on, and of receiving distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise satisfied prior to the Effective Date.

(a)    *Unimpaired Classes of Claims against and Interests in USAI*

(i)    *Class USAI-1 (Miscellaneous Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, at the option of the Debtors each holder of an Allowed Miscellaneous Secured Claim in USAI's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Miscellaneous Secured Claim, one of the following treatments: (i) the legal, equitable, and contractual rights of the Claimholder shall be Reinstated; (ii) Cash equal to the value of the Miscellaneous Secured Claimholder's interest in the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim; (iii) the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim shall be conveyed to the holder of such Claim; (iv) a note secured by such Claimholder's collateral (or, if approved by the Bankruptcy Court, a portion of such collateral and/or substitute collateral), which note shall (1) have an original principal balance equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, and (2) have a term, interest rate, amortization schedule, and other provisions established by the Debtors, subject to approval by the Bankruptcy Court at the Confirmation Hearing, provided that (x) such terms shall be disclosed at or prior to the Confirmation Hearing and (y) the terms of such note shall be such that the note has a present value equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, such that the note satisfies the requirements set forth in Section 1129(b)(2)(A)(i) of the Bankruptcy Code; (v) such other treatment determined by the Debtors and held by the Bankruptcy Court as constituting the indubitable equivalent of such Claimholder's Claim, in accordance with Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; or (vi) such other treatment as to which USAI (or Reorganized USAI) and the holder of such Allowed Miscellaneous Secured Claim have agreed upon in writing. USAI's failure to object to any such Miscellaneous Secured Claim shall be without prejudice to Reorganized USAI's right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of USAI or Reorganized USAI) when and if such Claim is sought to be enforced by the Class USAI-1 Miscellaneous Secured Claimholder. Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, unless the Bankruptcy Court orders otherwise, all prepetition liens on property of USAI held by or on behalf of the Class USAI-1 Miscellaneous Secured Claimholders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claimholders until, as to each such Claimholder, the Allowed Claims of such Class USAI-1 Miscellaneous Secured Claimholder are satisfied in accordance with the terms of the Plan.

(ii)    *Class USAI-5 (Other Priority Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Priority Claim becomes an

Allowed Other Priority Claim, or (ii) the date an Other Priority Claim becomes payable pursuant to any agreement between USAI (or Reorganized USAI) and the holder of such Other Priority Claim, an Allowed Class USAI-5 Other Priority Claimholder in USAI's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class USAI-5 Other Priority Claim (a) Cash equal to the amount of such Allowed Class USAI-5 Other Priority Claim, or (b) such other treatment as to which USAI (or Reorganized USAI) and such Claimholder shall have agreed in writing.

(iii)    *Class USAI-6 (Aircraft Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Aircraft Secured Claim becomes an Allowed Aircraft Secured Claim or (ii) the date an Aircraft Secured Claim becomes payable pursuant to any agreement between USAI (or Reorganized USAI) and the holder of such Aircraft Secured Claim, an Allowed Class USAI-6 Aircraft Secured Claim either shall be Reinstated or the Claimholder shall receive, in full s satisfaction, settlement, release and discharge of and, in exchange for, such Class USAI-6 Aircraft Secured Claim such treatment as to which USAI (or Reorganized USAI) and such Claimholder shall have agreed in writing.

(b)    *Impaired Classes of Claims against and Interest in USAI*

(i)    *Class USAI-2A (GECC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against USAI, GECC shall receive treatment in accordance with the GE Master MOU.

(ii)    *Class USAI-2B (GEAE Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against USAI, GEAE shall receive treatment in accordance with the GE Master MOU.

(iii)    *Class USAI-3 (ATSB Loan Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, their ATSB Loan Claims, the ATSB Lenders shall receive treatment in accordance with the ATSB Term Sheet.

(iv)    *Class USAI-7 (PBGC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, the PBGC Claim, PBGC shall receive: (i) Cash in the amount of $13,500,000; (ii) an unsecured promissory note in the principal amount of $10,000,000 issued by Reorganized USAI and guaranteed by Reorganized Group, bearing interest at a rate of 6.00% per annum payable annually in arrears, such promissory note to payable in a single installment on the seventh anniversary of the Effective Date; and (iii) seventy percent (70%) of the Unsecured Creditors Stock, or such other treatment as may be agreed to by the parties or ordered by the Bankruptcy Court.

(v)    *Class USAI-8 (General Unsecured Convenience Claims)*

On the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim, or (ii) the date an Allowed General Unsecured Convenience Claim becomes payable pursuant to any agreement between USAI (or Reorganized USAI) and the holder of such Allowed General Unsecured Convenience Claim, the holder of an Allowed Class USAI-8 General Unsecured Convenience Claim in USAI's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Class USAI-8 General Unsecured Convenience Claim (and any and all other

General Unsecured Convenience Claims or General Unsecured Claims of such Claimholder against any of the Debtors), Cash equal to (a) ten percent (10%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $50,000, or (b) $5,000 if the amount of such Allowed Claim is greater than $50,000. Any Claimholder that receives General Unsecured Convenience Class treatment in accordance with Section 5.1(i) of the Plan waives any right such Claimholder might otherwise have to receive a distribution under any other section of the Plan on account of such General Unsecured Claim or General Unsecured Convenience Claim.

(vi)    *Class USAI-9 (General Unsecured Claims)*

Subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (ii) the date a General Unsecured Claim becomes payable pursuant to any agreement between USAI (or Reorganized USAI) and the holder of such General Unsecured Claim, the Disbursing Agent shall deliver to such Allowed Class USAI-9 General Unsecured Claimholder in USAI's Chapter 11 Case, in full satisfaction, settlement, release and discharge of and, in exchange for, its Allowed General Unsecured Claim, such Claimholder's Pro Rata share of thirty percent (30 %) of the Unsecured Creditors Stock.

(vii)    *Class USAI-10 (Interests in USAI)*

Subject to Section 7.11 of the Plan, on the Effective Date all Interests in USAI shall be Reinstated.

(c)    *Unimpaired Classes of Claims against and Interests in Group*

(i)    *Class Group-1 (Miscellaneous Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, at the option of the Debtors each holder of an Allowed Miscellaneous Secured Claim in Group's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Miscellaneous Secured Claim, one of the following treatments: (i) the legal, equitable, and contractual rights of the Claimholder shall be Reinstated; (ii) Cash equal to the value of the Miscellaneous Secured Claimholder's interest in the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim; (iii) the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim shall be conveyed to the holder of such Claim; (iv) a note secured by such Claimholder's collateral (or, if approved by the Bankruptcy Court, a portion of such collateral and/or substitute collateral), which note shall (1) have an original principal balance equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, and (2) have a term, interest rate, amortization schedule, and other provisions established by the Debtors, subject to approval by the Bankruptcy Court at the Confirmation Hearing, provided that (x) such terms shall be disclosed at or prior to the Confirmation Hearing, and (y) the terms of such note shall be such that the note has a present value equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, such that the note satisfies the requirements set forth in Section 1129(b)(2)(A)(i) of the Bankruptcy Code; (v) such other treatment determined by the Debtors and held by the Bankruptcy Court as constituting the indubitable equivalent of such Claimholder's Claim, in accordance with Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; or (vi) such other treatment as to which Group (or Reorganized Group) and the holder of such Allowed Miscellaneous Secured Claim have agreed upon in writing. Group's failure to object to any such Miscellaneous Secured Claim shall be without prejudice to Reorganized Group's right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of Group or Reorganized Group) when and if such Claim is sought to be enforced by the Class Group-1 Miscellaneous Secured Claimholder. Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, unless the Bankruptcy Court orders otherwise, all prepetition liens on property of Group held by or on behalf of the Class Group-1 Miscellaneous Secured Claimholders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claimholders until, as to each such Claimholder, the Allowed

Claims of such Class Group-1 Miscellaneous Secured Claimholder are satisfied in accordance with the terms of the Plan.

      (ii)    *Class Group-5 (Other Priority Claims)*

      Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Priority Claim becomes an Allowed Other Priority Claim, or (ii) the date an Other Priority Claim becomes payable pursuant to any agreement between Group (or Reorganized Group) and the holder of such Other Priority Claim, an Allowed Class Group-5 Other Priority Claimholder in Group's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class Group-5 Other Priority Claim, (a) Cash equal to the amount of such Allowed Class Group-5 Other Priority Claim, or (b) such other treatment as to which Group (or Reorganized Group) and such Claimholder shall have agreed in writing.

      (iii)    *Class Group-6 (Aircraft Secured Claims)*

      Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Aircraft Secured Claim becomes an Allowed Aircraft Secured Claim, or (ii) the date an Aircraft Secured Claim becomes payable pursuant to any agreement between Group (or Reorganized Group) and the holder of such Aircraft Secured Claim, an Allowed Class Group-6 Aircraft Secured Claim either shall be Reinstated or the Claimholder shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class Group-6 Aircraft Secured Claim, such treatment as to which Group (or Reorganized Group) and such Claimholder shall have agreed in writing.

      (d)    *Impaired Classes of Claims against and Interest in Group*

      (i)    *Class Group-2A (GECC Claims)*

      In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against Group, GECC shall receive treatment in accordance with the GE Master MOU.

      (ii)    *Class Group-2B (GEAE Claims)*

      In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against Group, GEAE shall receive treatment in accordance with the GE Master MOU.

      (iii)    *Class Group-3 (ATSB Loan Claims)*

      In full satisfaction, settlement, release and discharge of and, in exchange for, their ATSB Loan Claims, the ATSB Lenders shall receive treatment in accordance with the ATSB Term Sheet.

      (iv)    *Class Group-4 (Airbus Claims)*

      In full satisfaction, settlement, release and discharge of and, in exchange for, the Airbus Claim, Group shall assume its existing aircraft purchase obligations with Airbus, as amended, and together with USAI and America West, shall consummate the transactions described in the term sheet attached as Exhibit A to the Plan.

      (v)    *Class Group-7 (PBGC Claims)*

      In full satisfaction, settlement, release and discharge of and, in exchange for, the PBGC Claim, PBGC shall receive: (i) Cash in the amount of $13,500,000; (ii) an unsecured promissory note in the principal amount of $10,000,000 issued by Reorganized USAI and guaranteed by Reorganized

75

Group, bearing interest at a rate of 6.00% per annum payable annually in arrears, such promissory note to payable in a single installment on the seventh anniversary of the Effective Date; and (iii) seventy percent (70%) of the Unsecured Creditors Stock, or such other treatment as may be agreed to by the parties or ordered by the Bankruptcy Court.

(vi)    *Class Group-8 (General Unsecured Convenience Claims)*

On the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim, or (ii) the date an Allowed General Unsecured Convenience Claim becomes payable pursuant to any agreement between Group (or Reorganized Group) and the holder of such Allowed General Unsecured Convenience Claim, the holder of an Allowed Class Group-8 General Unsecured Convenience Claim in Group's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Class Group-8 General Unsecured Convenience Claim (and any and all other General Unsecured Convenience Claims or General Unsecured Claims of such Claimholder against any of the Debtors), Cash equal to (a) ten percent (10%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $50,000, or (b) $5,000 if the amount of such Allowed Claim is greater than $50,000. Any Claimholder that receives General Unsecured Convenience Class treatment in accordance with Section 5.2(i) of the Plan waives any right such Claimholder might otherwise have to receive a distribution under any other section of the Plan on account of such General Unsecured Claim or General Unsecured Convenience Claim.

(vii)    *Class Group-9 (General Unsecured Claims)*

Subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (ii) the date a General Unsecured Claim becomes payable pursuant to any agreement between Group (or Reorganized Group) and the holder of such General Unsecured Claim, the Disbursing Agent shall deliver to such Allowed Class Group-9 General Unsecured Claimholder in Group's Chapter 11 Case, in full satisfaction, settlement, release and discharge of and, in exchange for, its Allowed General Unsecured Claim, such Claimholder's Pro Rata share of thirty percent (30%) of the Unsecured Creditors Stock.

(viii)    *Class Group-10 (Interests in Group)*

Class Group-10 Interests shall be cancelled and extinguished, and, holders of such Interests shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Interests.

(ix)    *Class Group-11 (Subordinated Securities Claims)*

Class Group-11 Subordinated Securities Claims in Group's Chapter 11 Case shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Claims.

(e)    *Unimpaired Classes of Claims against and Interests in PSA.*

(i)    *Class PSA-1 (Miscellaneous Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, at the option of the Debtors each holder of an Allowed Miscellaneous Secured Claim in PSA's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Miscellaneous Secured Claim, one of the following treatments: (i) the legal, equitable, and contractual rights of the Claimholder shall be Reinstated; (ii) Cash equal to the value of the Miscellaneous Secured Claimholder's interest in the property of the Estate that constitutes collateral for such Allowed

Miscellaneous Secured Claim; (iii) the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim shall be conveyed to the holder of such Claim; (iv) a note secured by such Claimholder's collateral (or, if approved by the Bankruptcy Court, a portion of such collateral and/or substitute collateral), which note shall (1) have an original principal balance equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, and (2) have a term, interest rate, amortization schedule, and other provisions established by the Debtors, subject to approval by the Bankruptcy Court at the Confirmation Hearing, provided that (x) such terms shall be disclosed at or prior to the Confirmation Hearing, and (y) the terms of such note shall be such that the note has a present value equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, such that the note satisfies the requirements set forth in Section 1129(b)(2)(A)(i) of the Bankruptcy Code; (v) such other treatment determined by the Debtors and held by the Bankruptcy Court as constituting the indubitable equivalent of such Claimholder's Claim, in accordance with Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; or (vi) such other treatment as to which PSA (or Reorganized PSA) and the holder of such Allowed Miscellaneous Secured Claim have agreed upon in writing. PSA's failure to object to any such Miscellaneous Secured Claim shall be without prejudice to Reorganized PSA's right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of PSA or Reorganized PSA) when and if such Claim is sought to be enforced by the Class PSA-1 Miscellaneous Secured Claimholder. Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, unless the Bankruptcy Court orders otherwise, all prepetition liens on property of PSA held by or on behalf of the Class PSA-1 Miscellaneous Secured Claimholders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claimholders until, as to each such Claimholder, the Allowed Claims of such Class PSA-1 Miscellaneous Secured Claimholder are satisfied in accordance with the terms of the Plan.

          (ii)     *Class PSA-5 (Other Priority Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Priority Claim becomes an Allowed Other Priority Claim, or (ii) the date an Other Priority Claim becomes payable pursuant to any agreement between PSA (or Reorganized PSA) and the holder of such Other Priority Claim, an Allowed Class PSA-5 Other Priority Claimholder in PSA's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class PSA-5 Other Priority Claim, (a) Cash equal to the amount of such Allowed Class PSA-5 Other Priority Claim, or (b) such other treatment as to which PSA (or Reorganized PSA) and such Claimholder shall have agreed in writing.

          (iii)     *Class PSA-6 (Aircraft Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Aircraft Secured Claim becomes an Allowed Aircraft Secured Claim, or (ii) the date an Aircraft Secured Claim becomes payable pursuant to any agreement between PSA (or Reorganized PSA) and the holder of such Aircraft Secured Claim, an Allowed Class PSA-6 Aircraft Secured Claim either shall be Reinstated or the Claimholder shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class PSA-6 Aircraft Secured Claim such treatment as to which PSA (or Reorganized USAI) and such Claimholder shall have agreed in writing.

        (f)     *Impaired Classes of Claims against and Interest in PSA.*

          (i)     *Class PSA-2A (GECC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against PSA, GECC shall receive treatment in accordance with the GE Master MOU.

(ii)    *Class PSA-2B (GEAE Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against PSA, GEAE shall receive treatment in accordance with the GE Master MOU.

(iii)    *Class PSA-3 (ATSB Loan Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, their ATSB Loan Claims, the ATSB Lenders shall receive treatment in accordance with the ATSB Term Sheet.

(iv)    *Class PSA-7 (PBGC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, the PBGC Claim, PBGC shall receive: (i) Cash in the amount of $13,500,000; (ii) an unsecured promissory note in the principal amount of $10,000,000 issued by Reorganized USAI and guaranteed by Reorganized Group, bearing interest at a rate of 6.00% per annum payable annually in arrears, such promissory note to payable in a single installment on the seventh anniversary of the Effective Date; and (iii) seventy percent (70%) of the Unsecured Creditors Stock, or such other treatment as may be agreed to by the parties or ordered by the Bankruptcy Court.

(v)    *Class PSA-8 (General Unsecured Convenience Claims)*

On the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim, or (ii) the date an Allowed General Unsecured Convenience Claim becomes payable pursuant to any agreement between PSA (or Reorganized PSA) and the holder of such Allowed General Unsecured Convenience Claim, the holder of an Allowed Class PSA-8 General Unsecured Convenience Claim in PSA's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Class PSA-8 General Unsecured Convenience Claim (and any and all other General Unsecured Convenience Claims or General Unsecured Claims of such Claimholder against any of the Debtors), Cash equal to (a) ten percent (10%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $50,000, or (b) $5,000 if the amount of such Allowed Claim is greater than $50,000. Any Claimholder that receives General Unsecured Convenience Class treatment in accordance with Section 5.3(h) of the Plan waives any right such Claimholder might otherwise have to receive a distribution under any other section of the Plan on account of such General Unsecured Claim or General Unsecured Convenience Claim.

(vi)    *Class PSA-9 (General Unsecured Claims)*

Subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Claim becomes an Allowed General Unsecured Claim, or (ii) the date a General Unsecured Claim becomes payable pursuant to any agreement between PSA (or Reorganized PSA) and the holder of such General Unsecured Claim, the Disbursing Agent shall deliver to such Allowed Class PSA-9 General Unsecured Claimholder in PSA's Chapter 11 Case, in full satisfaction, settlement, release and discharge of and, in exchange for, its Allowed General Unsecured Claim, such Claimholder's Pro Rata share of thirty percent (30%) of the Unsecured Creditors Stock.

(vii)    *Class PSA-10 (Interests in PSA).*

Subject to Section 7.11 of the Plan, on the Effective Date, all Interests in PSA shall be Reinstated.

(g)     *Unimpaired Classes of Claims against and Interests in Piedmont*

(i)     *Class Piedmont-1 (Miscellaneous Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, at the option of the Debtors each holder of an Allowed Miscellaneous Secured Claim in Piedmont's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Miscellaneous Secured Claim, one of the following treatments: (i) the legal, equitable, and contractual rights of the Claimholder shall be Reinstated; (ii) Cash equal to the value of the Miscellaneous Secured Claimholder's interest in the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim; (iii) the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim shall be conveyed to the holder of such Claim; (iv) a note secured by such Claimholder's collateral (or, if approved by the Bankruptcy Court, a portion of such collateral and/or substitute collateral), which note shall (1) have an original principal balance equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, and (2) have a term, interest rate, amortization schedule, and other provisions established by the Debtors, subject to approval by the Bankruptcy Court at the Confirmation Hearing, provided that (x) such terms shall be disclosed at or prior to the Confirmation Hearing, and (y) the terms of such note shall be. such that the note has a present value equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, such that the note satisfies the requirements set forth in Section 1129(b)(2)(A)(i) of the Bankruptcy Code; (v) such other treatment determined by the Debtors and held by the Bankruptcy Court as constituting the indubitable equivalent of such Claimholder's Claim, in accordance with Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; or (vi) such other treatment as to which Piedmont (or Reorganized Piedmont) and the holder of such Allowed Miscellaneous Secured Claim have agreed upon in writing. Piedmont's failure to object to any such Miscellaneous Secured Claim shall be without prejudice to Reorganized Piedmont's right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of Piedmont or Reorganized Piedmont) when and if such Claim is sought to be enforced by the Class Piedmont-1 Miscellaneous Secured Claimholder. Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, unless the Bankruptcy Court orders otherwise, all prepetition liens on property of Piedmont held by or on behalf of the Class Piedmont-1 Miscellaneous Secured Claimholders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claimholders until, as to each such Claimholder, the Allowed Claims of such Class Piedmont-1 Miscellaneous Secured Claimholder are satisfied in accordance with the terms of the Plan.

(ii)     *Class Piedmont-5 (Other Priority Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Priority Claim becomes an Allowed Other Priority Claims, or (ii) the date an Other Priority Claim becomes payable pursuant to any agreement between Piedmont (or Reorganized Piedmont) and the holder of such Other Priority Claim, an Allowed Class Piedmont-5 Other Priority Claimholder in Piedmont's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class Piedmont-5 Other Priority Claim, (a) Cash equal to the amount of such Allowed Class Piedmont-5 Other Priority Claims, or (b) such other treatment as to which Piedmont (or Reorganized Piedmont) and such Claimholder shall have agreed in writing.

(iii)     *Class Piedmont-6 (Aircraft Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Aircraft Secured Claim becomes an Allowed Aircraft Secured Claim, or (ii) the date an Aircraft Secured Claim becomes payable pursuant to any agreement between Piedmont (or Reorganized Piedmont) and the holder of such Aircraft Secured Claim, an Allowed Class Piedmont -6 Aircraft Secured Claim either shall be Reinstated or the Claimholder shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class

Piedmont -6 Aircraft Secured Claim such treatment as to which Piedmont (or Reorganized Piedmont) and such Claimholder shall have agreed in writing.

        (h)      *Impaired Classes of Claims against and Interest in Piedmont*

        (i)      *Class Piedmont-2A (GECC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against Piedmont, GECC shall receive treatment in accordance with the GE Master MOU.

        (ii)      *Class Piedmont-2B (GEAE Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against Piedmont, GEAE shall receive treatment in accordance with the GE Master MOU.

        (iii)      *Class Piedmont-3 (ATSB Loan Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, their ATSB Loan Claims, the ATSB Lenders shall receive treatment in accordance with the ATSB Term Sheet.

        (iv)      *Class Piedmont-7 (PBGC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, the PBGC Claim, PBGC shall receive: (i) Cash in the amount of $13,500,000; (ii) an unsecured promissory note in the principal amount of $10,000,000 issued by Reorganized USAI and guaranteed by Reorganized Group, bearing interest at a rate of 6.00% per annum payable annually in arrears, such promissory note to payable in a single installment on the seventh anniversary of the Effective Date; and (iii) seventy percent (70%) of the Unsecured Creditors Stock, or such other treatment as may be agreed to by the parties or ordered by the Bankruptcy Court.

        (v)      *Class Piedmont-8 (General Unsecured Convenience Claims)*

On the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim, or (ii) the date an Allowed General Unsecured Convenience Claim becomes payable pursuant to any agreement between Piedmont (or Reorganized Piedmont) and the holder of such Allowed General Unsecured Convenience Claim, the holder of an Allowed Class Piedmont-8 General Unsecured Convenience Claim in Piedmont's Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Class Piedmont-8 General Unsecured Convenience Claim (and any and all other General Unsecured Convenience Claims or General Unsecured Claims of such Claimholder against any of the Debtors), Cash equal to (a) ten percent (10%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $50,000, or (b) $5,000 if the amount of such Allowed Claim is greater than $50,000. Any Claimholder that receives General Unsecured Convenience Class treatment in accordance with Section 5.4(h) of the Plan waives any right such Claimholder might otherwise have to receive a distribution under any other section of the Plan on account of such General Unsecured Claim or General Unsecured Convenience Claim.

        (vi)      *Class Piedmont-9 (General Unsecured Claims)*

Subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (ii) the date a General Unsecured Claim becomes payable pursuant to any agreement between Piedmont (or Reorganized Piedmont) and the holder of such General Unsecured Claim, the Disbursing Agent shall deliver to such Allowed Class Piedmont-9 General Unsecured Claimholder in Piedmont's

Chapter 11 Case, in full satisfaction, settlement, release and discharge of and, in exchange for, its Allowed General Unsecured Claim, such Claimholder's Pro Rata share of thirty percent (30%) of the Unsecured Creditors Stock.

(vii)    *Class Piedmont-10 (Interests in Piedmont).*

Subject to Section 7.11 of the Plan, on the Effective Date, all Interests in Piedmont shall be Reinstated.

(i)    *Unimpaired Classes of Claims against and Interests in Material Services.*

(i)    *Class Material Services-1 (Miscellaneous Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, at the option of the Debtors each holder of an Allowed Miscellaneous Secured Claim in Material Services' Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Miscellaneous Secured Claim, one of the following treatments: (i) the legal, equitable, and contractual rights of the Claimholder shall be Reinstated; (ii) Cash equal to the value of the Miscellaneous Secured Claimholder's interest in the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim; (iii) the property of the Estate that constitutes collateral for such Allowed Miscellaneous Secured Claim shall be conveyed to the holder of such Claim; (iv) a note secured by such Claimholder's collateral (or, if approved by the Bankruptcy Court, a portion of such collateral and/or substitute collateral), which note shall (1) have an original principal balance equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, and (2) have a term, interest rate, amortization schedule, and other provisions established by the Debtors, subject to approval by the Bankruptcy Court at the Confirmation Hearing, provided that (x) such terms shall be disclosed at or prior to the Confirmation Hearing, and (y) the terms of such note shall be such that the note has a present value equal to the amount of such Claimholder's Allowed Secured Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, such that the note satisfies the requirements set forth in Section 1129(b)(2)(A)(i) of the Bankruptcy Code; (v) such other treatment determined by the Debtors and held by the Bankruptcy Court as constituting the indubitable equivalent of such Claimholder's Claim, in accordance with Section 1129(b)(2)(A)(iii) of the Bankruptcy Code; or (vi) such other treatment as to which Material Services (or Reorganized Material Services) and the holder of such Allowed Miscellaneous Secured Claim have agreed upon in writing. Material Services failure to object to any such Miscellaneous Secured Claim shall be without prejudice to Reorganized Material Services right to contest or otherwise defend against such Claim in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of Material Services or Reorganized Material Services) when and if such Claim is sought to be enforced by the Class Material Services-1 Miscellaneous Secured Claimholder. Notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, unless the Bankruptcy Court orders otherwise, all prepetition liens on property of Material Services held by or on behalf of the Class Material Services-1 Miscellaneous Secured Claimholders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claimholders until, as to each such Claimholder, the Allowed Claims of such Class Material Services-1 Miscellaneous Secured Claimholder are satisfied in accordance with the terms of the Plan.

(ii)    *Class Material Services-5 (Other Priority Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Other Priority Claim becomes an Allowed Other Priority Claim, or (ii) the date an Other Priority Claim becomes payable pursuant to any agreement between Material Services (or Reorganized Material Services) and the holder of such Other Priority Claim, an Allowed Class Material Services-5 Other Priority Claimholder in Material Services' Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class Material Services-5 Other Priority Claim, (a) Cash equal to the amount of such Allowed Class

Material Services-5 Other Priority Claim, or (b) such other treatment as to which Material Services (or Reorganized Material Services) and such Claimholder shall have agreed in writing.

(iii)    *Class Material Services-6 (Aircraft Secured Claims)*

Except as otherwise provided in and subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date an Aircraft Secured Claim becomes an Allowed Aircraft Secured Claim, or (ii) the date an Aircraft Secured Claim becomes payable pursuant to any agreement between Material Services (or Reorganized Material Services) and the holder of such Aircraft Secured Claim, an Allowed Class Material Services -6 Aircraft Secured Claim either shall be Reinstated or the Claimholder shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Class Material Services -6 Aircraft Secured Claim such treatment as to which Material Services (or Reorganized Piedmont) and such Claimholder shall have agreed in writing.

(j)    *Impaired Classes of Claims against and Interest in Material Services.*

(i)    *Class Material Services-2A (GECC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against Material Services, GECC shall receive treatment in accordance with the GE Master MOU.

(ii)    *Class Material Services-2B (GEAE Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, its Claims against Material Services, GEAE shall receive treatment in accordance with the GE Master MOU.

(iii)    *Class Material Services-3 (ATSB Loan Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, their ATSB Loan Claims, the ATSB Lenders shall receive treatment in accordance with the ATSB Term Sheet.

(iv)    *Class Material Services-7 (PBGC Claims)*

In full satisfaction, settlement, release and discharge of and, in exchange for, the PBGC Claim, PBGC shall receive: (i) Cash in the amount of $13,500,000; (ii) an unsecured promissory note in the principal amount of $10,000,000 issued by Reorganized USAI and guaranteed by Reorganized Group, bearing interest at a rate of 6.00% per annum payable annually in arrears, such promissory note to payable in a single installment on the seventh anniversary of the Effective Date; and (iii) seventy percent (70%) of the Unsecured Creditors Stock, or such other treatment as may be agreed to by the parties or ordered by the Bankruptcy Court.

(v)    *Class Material Services-8 (General Unsecured Convenience Claims)*

On the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim, or (ii) the date an Allowed General Unsecured Convenience Claim becomes payable pursuant to any agreement between Material Services (or Reorganized Material Services) and the holder of such Allowed General Unsecured Convenience Claim, the holder of an Allowed Class Material Services -8 General Unsecured Convenience Claim in Material Services' Chapter 11 Case shall receive, in full satisfaction, settlement, release and discharge of and, in exchange for, such Allowed Class Material Services -8 General Unsecured Convenience Claim (and any and all other General Unsecured Convenience Claims or General Unsecured Claims of such Claimholder against any of the Debtors), Cash equal to (a) ten percent (10%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $50,000, or (b) $5,000 if the amount of such Allowed Claim is greater than $50,000. Any Claimholder that receives

General Unsecured Convenience Class treatment in accordance with Section 5.5(h) of the Plan waives any right such Claimholder might otherwise have to receive a distribution under any other section of the Plan on account of such General Unsecured Claim or General Unsecured Convenience Claim.

(vi)    *Class Material Services-9 (General Unsecured Claims)*

Subject to Section 9.8 of the Plan, on the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Claim becomes an Allowed General Unsecured Claim, or (ii) the date a General Unsecured Claim becomes payable pursuant to any agreement between Material Services (or Reorganized Material Services) and the holder of such General Unsecured Claim, the Disbursing Agent shall deliver to such Allowed Class Material Services-9 General Unsecured Claimholder in Material Services' Chapter 11 Case, in full satisfaction, settlement, release and discharge of and, in exchange for, its Allowed General Unsecured Claim, such Claimholder's Pro Rata share of thirty percent (30%) of the Unsecured Creditors Stock.

(vii)    *Class Material Services-10 (Interests in Material Services)*

Subject to Section 7.11 of the Plan, on the Effective Date, all Interests in Material Services shall be Reinstated.

3.    *Special Provision Regarding Intercompany Claims and Interests.*

All Intercompany Claims and Interests will be Reinstated on the Effective Date; provided, however, that notwithstanding the foregoing, the Debtors reserve the right to extinguish or cancel any Intercompany Claims or Interests, as applicable, as of or after the Effective Date, without further notice. No Debtor shall receive any distribution under the Plan on account of any Intercompany Claim.

C.    **Means of Plan Implementation**

1.    *The Merger.*

The Merger will be implemented in accordance with its terms. Consummation of the Merger, described in Section III, is central to implementation of the Plan.

2.    *Plan Investors.*

Upon the terms and subject to the conditions set forth in the Investment Agreements, Reorganized Group shall issue, sell and deliver to the Plan Investors, and the Plan Investors have agreed to purchase from Reorganized Group, the number of shares of New Common Stock set forth for each of the Plan Investors on Exhibit R to the Plan, free and clear of all liens, for a purchase price which is also set forth on Exhibit R to the Plan, to be paid in Cash (or in the case of the Eastshore Financing Agreement, by conversion of the principal amount outstanding under the Eastshore Financing Agreement as set forth in Section 2.1 of the Plan). These new investments are an important part of the Plan because they will help provide the Reorganized Debtors the necessary liquidity to run their business operations going forward. New investments totaling at least $375 million are a condition to the Effective Date of the Plan and to consummation of the Merger pursuant to the Merger Agreement.

3.    *Continued Corporate Existence.*

Each of the Debtors will continue to exist after the Effective Date as a separate corporate entity, with all of the powers of a corporation under applicable law in the jurisdiction in which each applicable Debtor is incorporated and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such Certificate of Incorporation and Bylaws are amended pursuant to the Plan.

4.    *Directors and Officers of Reorganized Group.*

The senior officers of Reorganized Group after the Effective Date shall be as set forth on <u>Exhibit Q</u> to the Plan. On the Effective Date, the term of the current members of the board of directors of Group will expire. The initial board of directors of Reorganized Group will consist of 13 individuals composed as follows: (i) two of the directors will be designated by Group to an initial one-year term; (ii) two of the directors will be designated by America West to an initial one-year term; (iii) one of the directors will be designated by Group to an initial two-year term; (iv) three of the directors will be designated by America West to an initial two-year term; in each case of (i), (ii), (iii) and (iv), all of whom will be Independent Directors; (iv) one of the directors will be W. Douglas Parker, Chief Executive Officer of America West, who will also serve as Chairman of the Board, appointed to an initial three-year term; (v) one of the directors will be Bruce Lakefield, President and Chief Executive Officer of Group and USAI, who will also serve as Vice Chairman of the Board, appointed to an initial three-year term; and (vi) three directors will be appointed by certain Plan Investors to initial three-year terms pursuant to the terms of their respective Investment Agreements and the Stockholders Agreement.

America West, the Plan Investors and any other Persons designating board members shall provide to Group written notice of the identities of such members on a date that is not less than ten (10) days prior to the Confirmation Hearing, and Group will file with the Bankruptcy Court written notice of the identities of all of the initial board members of Reorganized Group on a date that is not less than five (5) days prior to the Confirmation Hearing.

In the event of the death, disability, resignation or removal of a member of the board of directors of Reorganized Group, a replacement for such director shall be designated as set forth in the Certificate of Incorporation and Bylaws of Reorganized Group and the Stockholders Agreement.

*The respective positions of ALPA, AFA, IAM, CWA, and the Debtors on whether this provision is consistent with the Debtors' collective bargaining agreements and the Bankruptcy Code are reviewed in Section VIII.E.3.*

5.    *Directors and Officers of Debtors Other Than Reorganized Group.*

The identities of senior officers and members of the boards of directors of each of the Reorganized Debtors other than Reorganized Group shall be filed with the Bankruptcy Court no later than five (5) days prior to the Confirmation Hearing; provided, however, that the Debtors reserve the right to replace such individuals on or after the Effective Date without notice.

6.    *Employment, Retirement, Indemnification and Other Agreements and Incentive Compensation Programs.*

Subject to <u>Section 8.1.b</u> of the Plan, retirement, benefit, incentive and compensation plans and programs, including, without limitation, those set forth on <u>Exhibit Y</u> to the Plan, and other agreements with the Debtors' respective directors, officers, and employees, as the same may be modified or amended, will remain in place after the Effective Date.

7.    *2005 Equity Incentive Plan.*

On the Effective Date, Reorganized Group will adopt the 2005 Equity Incentive Plan, substantially in the form of <u>Exhibit L</u> to the Plan. The 2005 Equity Incentive Plan will provide for the grant of incentive stock options, nonstatutory stock options, stock appreciation rights, stock purchase awards, stock bonus awards, stock unit awards and other forms of equity compensation (collectively, "stock awards") as well as performance-based cash awards. The 2005 Equity Incentive Plan will be administered by the board of directors of Reorganized Group, who will have authority to construe and interpret the 2005 Equity Incentive Plan and to determine the persons to whom and the dates on which stock awards will be granted, the number of shares of New Common Stock to be subject to each stock award, the time or times during the

term of each stock award within which all or a portion of the award may be exercised, the exercise, purchase, or strike price of each stock award, the type of consideration permitted to exercise or purchase each stock award; and other terms of the stock awards. The board also may accelerate the date on which any stock award vests or become exercisable.

The board will have the authority to delegate some or all of the administration of the 2005 Equity Incentive Plan to a committee or committees. If administration is delegated to a committee, the committee shall consist solely of two or more persons who are "non-employee directors" within the meaning of Rule 16b-3 of the Securities Exchange Act of 1943, as amended, and "outside directors" within the meaning of Section 162(m) of the Internal Revenue Code. In addition, if administration is delegated to a committee, the committee has the authority to delegate certain administrative powers to a subcommittee of one or more members.

Incentive stock options may be granted under the 2005 Equity Incentive Plan only to employees (including officers) of Reorganized Group and its affiliates. Employees (including officers) of and consultants to Reorganized Group and its affiliates, and non-employee directors of Reorganized Group, are eligible to receive all other types of stock awards under the 2005 Equity Incentive Plan.

Under the 2005 Equity Incentive Plan, no person may be granted stock options or stock appreciation rights covering more than 1,000,000 shares of New Common Stock during any calendar year.

A maximum of 12.5% of the fully-diluted shares (as of the completion of the Merger) of New Common Stock available for issuance under the 2005 Equity Incentive Plan may be granted pursuant to incentive stock options. Shares of New Common Stock issued under the 2005 Equity Incentive Plan may be unissued shares or reacquired shares, purchased on the open market or otherwise. The number of shares of New Common Stock available for issuance under the 2005 Equity Incentive Plan will be reduced by (i) one share for each share of New Common Stock issued pursuant to a stock option or a stock appreciation right, and (ii) three shares for each share of New Common Stock issued pursuant to a stock purchase award, stock bonus award, stock unit award, and other full-value types of stock awards. Stock awards that are terminated, forfeited or repurchased will result in an increase in the share reserve of the 2005 Equity Incentive Plan corresponding to the reduction originally made in respect of the award.

On the Effective Date, equity grants substantially in the forms attached to <u>Exhibit L</u> of the Plan, the principal terms of which are summarized below, shall be granted to the executives indicated under the terms of the 2005 Equity Plan and become effective for all purposes as follows:

- Stock appreciation rights will be granted as follows:

  - Mr. Parker – 196,000
  - each executive vice president – 165,000
  - each senior vice president – 51,000

  Each such stock appreciation right will represent the right to receive the value of appreciation of one share of New Common Stock in excess of the fair market value of such share as of the date the Merger is consummated, as determined by the board of directors (which may include averaging daily stock prices in the period before and after the closing to minimize aberrational stock price fluctuations). Subject to acceleration as described below, 50% of the stock appreciation rights granted upon the consummation of the Merger will vest on the second anniversary of the grant date, and 25% will vest on each of the third and fourth anniversaries of the grant date. The stock appreciation rights will be exercisable after vesting for a period of 10 years from the grant date.

- Mr. Parker will be granted 41,250 restricted stock units subject to time vesting. Each such restricted stock unit will represent the right to receive one share of New Common Stock if and when the restricted stock unit vests. Subject to acceleration as described below, 50% of the

restricted stock units granted to Mr. Parker will vest on the second anniversary of the grant date, and 25% will vest on each of the third and fourth anniversaries of the grant date.

- Additional restricted stock units subject to both time and performance vesting will be granted as follows:

  - Mr. Parker – 20,625
  - each executive vice president – 10,300
  - each senior vice president – 3,200

  Each such restricted stock unit will represent the right to receive one of New Common Stock if and when the restricted stock unit vests; provided that such restricted stock units will provide that the restricted stock units will not vest and no underlying shares will be issued unless the operating certificates of USAI and AWA have been combined within three years after the effective time of the Merger. Subject to acceleration as described below, and the restrictions described above, 50% of the restricted stock units will vest on each of the third and fourth anniversaries of the grant date.

- Other than with respect to restricted stock unit awards the vesting of which is conditioned upon combination of the operating certificates of both airlines, the vesting of each equity grant described above will be accelerated if the executive who holds such award is terminated at any time by Reorganized Group without cause or by reason of death or disability, if the executive terminates his or her employment at any time for good reason, or if the executive is terminated involuntarily without cause within 24 months following a change in control of Reorganized Group that occurs subsequent to the Merger. No shares underlying the restricted stock units subject to both time and performance vesting will be issued in any case, however, unless the USAI and AWA operating certificates have been combined before the end of the three year period and the executive has remained employed by Group through that time.

- In consideration for the equity award granted to him as described above and the option grant for 500,000 shares awarded to him in August 2005 under the terms of the America West 2002 Incentive Equity Plan (which will be converted into options to purchase shares of New Common Stock under the terms of the Merger Agreement), Mr. Parker has agreed to waive his rights to voluntarily terminate his employment without good reason in the two year period following the effective time of the Merger and still receive full severance benefits under the terms of his employment agreement with respect to the change in control resulting from the Merger.

  *AFA reserves the right to challenge this provision of the Plan at the Confirmation Hearing*

8       *Continuation of Retiree Benefits.*

Following the Effective Date, the payment of all retiree benefits (as defined in Section 1114(a) of the Bankruptcy Code) for current retirees as defined by the 1114 Orders (as defined below) shall continue, but only at the levels and under the conditions and for the duration established by: (A) the Consent Order Approving Agreement to Modify Certain Retiree Benefits, entered on January 11, 2005 (including Exhibit B to the January 5, 2005 Consent Motion to Approve Agreement to Modify Certain Retiree Benefits) (Docket No. 1579), (B) the October 26, 2004 Consent Order Approving Modifications to Debtors' Collective Bargaining Agreements With Certain Groups Within the Transport Workers Union (Docket No. 588), and (C) the January 11, 2005 Consent Order Approving Agreement With the International Association of Machinists and Aerospace Workers to Modify Certain Retiree Health Benefits (including Exhibit B to the January 7, 2005 Consent Motion to Approve Agreement with the International Association of Machinists and Aerospace Workers to Modify Certain Retiree Health Benefits) (Docket No. 1580) (collectively, the "1114 Orders").

Benefits for future retirees, as defined by the 1114 Orders and the CBA Orders (as defined below), are to be provided as established by the collective bargaining agreements entered into by the unions and approved by the Court in: (A) the January 11, 2005 Order Approving Debtors' Entry Into Collective Bargaining Agreement with the Association of Flight Attendants-CWA, AFL-CIO (Docket No. 1581), (B) the January 6, 2005 Consent Order Approving Modifications to Debtors' Collective Bargaining Agreement with the Communications Workers of America (Docket No. 1549), (C) the October 26, 2004 Consent Order Approving Modifications to the Debtors' Collective Bargaining Agreement with the Air Line Pilots Association International (Docket No. 587), (D) the October 26, 2004 Consent Order Approving Modifications to Debtors' Collective Bargaining Agreements With Certain Groups Within the Transport Workers Union (Docket No. 588), and (E) the January 27, 2005 Order Approving Debtors' Entry into Collective Bargaining Agreements with the International Association of Machinists and Aerospace Workers (Docket No. 1753).

In the event that, after the Effective Date, the Reorganized Debtors suffer extreme hardship that poses an immediate threat of liquidation, the Reorganized Debtors, with prior notice to the individual members who now constitute the Section 1114 Committee, to the extent USAI's Vice President of Human Resources is provided with the current address of such individuals, may institute proceedings in any court of competent jurisdiction to effectuate such changes as such court finds are necessary to avoid liquidation of the Reorganized Debtors, and the Confirmation Order shall so provide.

9       *Certificate of Incorporation and Bylaws*

The Certificates of Incorporation and Bylaws of the Debtors will be amended as may be required in order that they are consistent with the provisions of the Investment Agreement, the Merger Agreement, the Stockholder Agreement, the Plan and the Bankruptcy Code. The Certificate of Incorporation of Reorganized Group will be amended to, among other purposes, (a) authorize two hundred million (200,000,000) shares of New Common Stock, and (b) pursuant to Section 1123(a)(6) of the Bankruptcy Code, add (i) a provision prohibiting the issuance of non-voting equity securities to the extent required by law and (ii) if applicable, a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power. The restated Certificates of Incorporation of each of the Reorganized Debtors are attached to the Plan as Exhibits E-1 through E-5. The restated Bylaws of each of the Reorganized Debtors are attached to the Plan as Exhibits D-1 through D-5. Any modification to the Certificate of Incorporation or the Bylaws of any of the Reorganized Debtors as originally filed may be filed after the Confirmation Date and may become effective on or prior to the Effective Date.

10      *Corporate Action*

Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and will be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, creditors or directors of the Debtors.

11.     *Issuance of New Securities*

(a)     *New Common Stock*

On or before the Distribution Date, Reorganized Group will issue the New Common Stock for distribution in accordance with the schedule attached to the Plan as Exhibit R.

(b)     *Stockholders Agreement*

On the Effective Date, Reorganized Group, the Plan Investors and the other parties thereto shall enter into the Stockholders Agreement.

87

(c)    *Listing on Securities Exchange or Quotation System*

Reorganized Group will list the New Common Stock on the New York Stock Exchange.

(d)    *New Convertible Note*

On the Effective Date, Reorganized USAI shall issue to GECC, or an Affiliate of GECC as designated by GECC, the New Convertible Note.

12.    *Reinstatement of Common Stock of Reorganized Debtors Other Than Reorganized Group.*

The common stock of the Reorganized Debtors (other than Reorganized Group) shall be Reinstated in exchange for Reorganized Group's agreement to distribute certain New Common Stock to the General Unsecured Claimholders of the Debtors other than Group in accordance with the terms of the Plan and to provide management services to such other Reorganized Debtors, and to use its funds and assets, to the extent provided for in the Plan, to satisfy certain obligations of such other Reorganized Debtors.

13.    *Preservation of Causes of Action.*

In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, the Reorganized Debtors and any successors will retain and may (but are not required to) enforce all Retained Actions, a non exclusive list of which is attached as <u>Exhibit O</u> to the Plan, and all other similar claims. The Debtors, or the Reorganized Debtors, in consultation with America West will determine whether to bring, settle, release, compromise or enforce such rights (or decline to do any of the foregoing), and will not be required to seek further approval of the Bankruptcy Court for such action.

14.    *Cancellation of Existing Equity Securities and Agreements.*

On the Effective Date, except as otherwise specifically provided for in the Plan or the Confirmation Order, including, without limitation, with respect to the Aircraft Equipment, on the earlier of the date of entry into a new or amended lease or return of the Aircraft Equipment, (a) the Existing Equity Securities and any other note, bond, indenture, pass through trust agreement, pass through trust certificate, equipment trust certificate guarantee or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors prior to the Petition Date, except such notes, other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated under the Plan, will be cancelled solely as to the Debtors, and the Debtors shall not have any continuing obligations thereunder and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Existing Equity Securities and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors prior to the Petition Date, except such agreements or notes or other instruments evidencing indebtedness or obligations of the Debtors that are Reinstated under the Plan, as the case may be, will be released and discharged; provided, however, that, notwithstanding the release and discharge of Claims against Debtors, to the extent required by applicable nonbankruptcy law in order to permit foreclosure, (1) each such Claim shall not be discharged, and may be asserted, solely against any applicable insurance or Aircraft Equipment or other collateral (other than property of the Reorganized Debtors) securing such Claim or against a non-Debtor party liable thereon and may be credit bid in any foreclosure action with respect to such Aircraft Equipment to the extent permissible under applicable nonbankruptcy law, and (2) the applicable Debtor may be named as a nominal party, without recourse, solely to the extent required by applicable nonbankruptcy law in a foreclosure or other enforcement action with respect to the Aircraft Equipment securing such Claim; <u>provided</u>, <u>however</u>, that any such foreclosure or exercise of related remedies permitted by the Plan must be subject in all respects to the new or amended leases, which shall survive and be fully enforceable notwithstanding such foreclosure or other exercise of related remedies permitted by the Plan; <u>provided</u>, <u>further</u>, that any such foreclosure or other remedies shall

not be exercised in a fashion that would result in the lease being terminated or extinguished or in the applicable Reorganized Debtor being deprived of any of the intended benefits of the lease; provided, further, that any such agreement that governs the rights of the Claimholder will continue in effect solely for purposes of (i) allowing an indenture trustee, an agent or a servicer (each hereinafter referred to as a "Servicer") to make the distributions to be made on account of such Claims under the Plan as provided in Article IX of the Plan, (ii) permitting such Servicer to maintain any rights or liens it may have against property other than the Reorganized Debtors' property for fees, costs, and expenses under such Indenture or other agreement, and (iii) governing the rights and obligations of non-Debtor parties to such agreements, vis-à-vis each other; provided, further, that the preceding proviso will not affect the discharge of Claims against or Interests in the Debtors under the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors. The Reorganized Debtors will not have any obligations to any Servicer (or to any Disbursing Agent replacing such Servicer) for any fees, costs, or expenses except as expressly provided in Section 9.5 of the Plan; provided, however, that nothing herein will preclude any Servicer (or any Disbursing Agent replacing such Servicer) from being paid or reimbursed for prepetition or postpetition fees, costs, and expenses from the distributions being made by such Servicer (or any Disbursing Agent replacing such Servicer) pursuant to such agreement in accordance with the provisions set forth therein, all without application to or approval by the Bankruptcy Court with respect to agreements regarding Aircraft Equipment.

    *15    Exclusivity Period*

The Debtors will retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date; provided, however, that nothing contained in Section 7.14 or any other provision of the Plan shall impair America West's rights under the Merger Agreement, any Plan Investor's rights under the Investment Agreement to which it is a party, the ATSB Lenders' rights under the ATSB Loan, or GEAE's and GECC's rights under the GE Master MOU.

    *16.    Effectuating Documents; Further Transactions.*

Each of (a) the President and Chief Executive Officer, (b) the Executive Vice President - Finance and Chief Financial Officer and (c) the Executive Vice President - Corporate Affairs and General Counsel of Group, or their respective designees, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of each of the Debtors will be authorized to certify or attest to any of the foregoing actions.

    *17.    Exemption From Certain Transfer Taxes and Recording Fees.*

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to the Plan or pursuant to any agreement contemplated by or entered into in connection with the Plan regarding the transfer of title to or ownership of any of the Debtors' aircraft, in the United States will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, FAA filing or recording fee or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

    *18.    Postpetition Aircraft Obligation.*

The Postpetition Aircraft Obligations will become obligations of the Reorganized Debtors or their successors, if applicable, on the Effective Date. The foregoing sentence will be specifically limited with respect to each Postpetition Aircraft Obligation by the express terms of the agreement pursuant to which

such Postpetition Aircraft Obligation arises and nothing contained in the Plan, the Disclosure Statement or the Confirmation Order will be deemed to limit or otherwise affect the terms thereof.

    *19.*    *Alliance Agreements.*

Reorganized Group and certain Affiliates of Air Canada will enter into the agreements and other arrangements described in the term sheet attached to the Plan as <u>Exhibit S</u>.

    *20.*    *Profit Sharing.*

Reorganized USAI shall provide Profit Sharing after the Effective Date, in accordance with the terms set forth on <u>Exhibit T</u> to the Plan.

*The respective positions of ALPA, AFA, IAM, CWA, and the Debtors on whether this provision is consistent with the Debtors' collective bargaining agreements and the Bankruptcy Code are reviewed in Section VIII.E.3.*

    *21*    *Issuance of New Common Stock to ALPA.*

On the Effective Date, Reorganized Group shall issue to ALPA the ALPA Shares in accordance with the terms of the Assumed Modified CBA between USAI and ALPA.

**D.**    **Distributions**

    *1.*    *Time of Distributions.*

Except as otherwise provided for in the Plan or ordered by the Bankruptcy Court, distributions under the Plan shall be made on a Periodic Distribution Date.

    *2.*    *No Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, the ATSB Cash Collateral Order or a postpetition agreement in writing between the Debtors and a Claimholder, postpetition interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

    *3.*    *Disbursing Agent.*

The Disbursing Agent shall make all distributions required under the Plan except with respect to a holder of a Claim whose distribution is governed by an agreement and is administered by a Servicer, which distributions shall be deposited with the appropriate Servicer, who shall deliver such distributions to the holders of Claims in accordance with the provisions of the Plan and the terms of the governing agreement; <u>provided</u>, <u>however</u>, that if any such Servicer is unable to make such distributions, the Disbursing Agent, with the cooperation of such Servicer, shall make such distributions.

    *4.*    *Surrender of Securities or Instruments.*

On or before the Distribution Date, or as soon as practicable thereafter, each holder of an instrument evidencing a Claim (a "Certificate") shall surrender such Certificate to the Disbursing Agent, or, with respect to indebtedness that is governed by an agreement and administered by a Servicer, the respective Servicer, and such Certificate shall be cancelled solely with respect to the Debtors and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another to such instruments; <u>provided</u>, <u>however</u>, that Section 9.4 of the Plan shall not apply to any Claims Reinstated

pursuant to the terms of the Plan. No distribution of property hereunder shall be made to or on behalf of any such holder unless and until such Certificate is received by the Disbursing Agent or the respective Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or the respective Servicer. Any holder who fails to surrender or cause to be surrendered such Certificate, or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or the respective Servicer prior to the second anniversary of the Effective Date, shall be deemed to have forfeited all rights and Claims in respect of such Certificate and shall not participate in any distribution hereunder, and all property in respect of such forfeited distribution, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary.

5.      *Services of Indenture Trustees, Agents and Servicers.*

The services, with respect to consummation of the Plan, of Servicers under the relevant agreements that govern the rights of Claimholders shall be as set forth in Section 7.13 of the Plan, and the Reorganized Debtors shall reimburse any Servicer for reasonable and necessary services performed by it (including reasonable attorneys' fees) as contemplated by, and in accordance with, the Plan, without the need for the filing of an application with, or approval by, the Bankruptcy Court.

6.      *Claims Administration Responsibility.*

The Reorganized Debtors will retain sole responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions (if any) with respect to all Claims against and Interests in the Debtors.

Unless otherwise extended by the Bankruptcy Court, any objections to Claims shall be served and filed on or before the Claims Objection Deadline. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Claimholder if the Debtors or the Reorganized Debtors effect service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a Claimholder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or interest or other representative identified on the proof of claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the Claimholder's behalf in the Chapter 11 Cases. Additionally, nothing contained in Section 11.2 of the Plan constitutes or should be deemed a waiver of any right, claim or Cause of Action that the Debtors or Reorganized Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under Section 157(b) of title 28 of the United States Code.

7.      *Delivery of Distributions.*

Distributions to Allowed Claimholders shall be made by the Disbursing Agent or the appropriate Servicer: (a) at the addresses set forth on the proofs of claim filed by such Claimholders (or at the last known addresses of such Claimholders if no proof of claim is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Disbursing Agent has not received a written notice of a change of address, or (d) in the case of a Claimholder whose Claim is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer. If any Claimholder's distribution is returned as undeliverable, no further distributions to such Claimholder shall be made unless and until the Disbursing Agent or the appropriate Servicer is notified of such Claimholder's then-current address, at which time all missed distributions shall be made to such Claimholder without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed. All funds or other undeliverable distributions returned to the Reorganized Debtors, the Disbursing Agent or the respective Servicer for which no written request for reissuance or remailing is received by the Reorganized Debtors, the Disbursing Agent or the respective Servicer within 180 days of return (and in the case of Cash distributions, distributions which otherwise

remain outstanding as of the 181st day of distribution) shall be redistributed to the other creditors of the Class of which the Claimholder to whom the distribution was originally made is a member in accordance with the provisions of the Plan applicable to distributions to that Class. If, at the conclusion of distributions to a particular Class under the Plan and after consultation with the Post-Effective Date Committee (solely with respect to General Unsecured Claims), the Reorganized Debtors reasonably determine that any remaining New Common Stock or Cash allocated for such Class is immaterial and would thus be too impractical to distribute or would be of no benefit to its respective distributees, any such remaining New Common Stock or Cash will revert to Reorganized Group. Upon such reversion, the claim of any Claimholder or their successors with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

        8.      *Procedures for Voting, Treating and Resolving Disputed and Contingent Claims.*

        (a)      *Voting and Other Rights of Holders of Disputed Claims*

Pursuant to Bankruptcy Rule 3018, a Disputed Claim will not be counted for voting purposes to the extent it is disputed, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rules 3018. Such disallowance for voting purposes is without prejudice to the claimant's right to seek to have its Disputed Claim allowed for purposes of distributions under the Plan.

        (b)      *No Distributions Pending Allowance*

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim. All objections to Claims must be filed on or before the Claims Objection Deadline. Without limiting any of the terms and provisions of the Plan, including Section 9.1 of the Plan, all Claims of each individual agency of the United States shall be paid in accordance with the terms of the Plan as soon as all of the Claims of that individual agency against a particular Debtor are either Allowed or Disallowed.

        (c)      *Distribution Reserve*

The Disbursing Agent will create a separate Distribution Reserve from the property to be distributed to holders of General Unsecured Claims in the Chapter 11 Cases. The amount of New Common Stock withheld as a part of the Distribution Reserve shall be equal to the number of shares the Reorganized Debtors reasonably determine is necessary to satisfy the distributions required to be made to the holders of General Unsecured Claims in the Chapter 11 Cases, when the allowance or disallowance of each Disputed Claim is ultimately determined. The Disbursing Agent, the Debtors, or the Reorganized Debtors may request estimation for any Disputed Claim that is contingent or unliquidated (but is not required to do so). The Disbursing Agent also shall place in the Distribution Reserve any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property initially withheld in the Distribution Reserve, to the extent that such property continues to be withheld in the Distribution Reserve at the time such distributions are made or such obligations arise. The Claimholder shall not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve to pay such Claim. Nothing in the Plan or Disclosure Statement will be deemed to entitle the Claimholder of a Disputed Claim to postpetition interest on such Claim.

        (d)      *Distributions After Allowance*

Payments and distributions from the Distribution Reserve to each respective Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern distributions to such Claimholders. On the first Periodic Distribution Date following the date when a Disputed Claim becomes an undisputed, noncontingent and liquidated Claim, the Disbursing Agent will distribute to the Claimholder any Cash, New Common Stock