# EXHIBIT 16 – PART 1

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, DC 20549

# FORM 8-K

### CURRENT REPORT
### Pursuant to Section 13 or 15(d) of the
### Securities Exchange Act of 1934

**Date of Report**
**(Date of earliest event reported)**

**September 27, 2005**

# US Airways Group, Inc.
### (Commission file number: 1-8444)

and

# US Airways, Inc.
### (Commission file number 1-8442)

(Exact Names of Registrants as specified in their charters)

Delaware                                US Airways Group, Inc. 54-1194634
(State of Incorporation                 US Airways, Inc. 53-0218143
of both registrants)                    (I.R.S. Employer Identification Nos )

111 West Rio Salado Parkway, Tempe, Arizona 85281
(Address of principal executive offices)
(480) 693-0800
(Registrants' telephone number, including area code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Item 1.01 Entry into a Material Definitive Agreement
Item 2.01 Completion of Acquisition or Disposition of Assets
Item 3.02 Unregistered Sales of Equity Securities
Item 5.01 Changes in Control of the Registrant
Item 5.03 Amendments to Articles of Incorporation and Bylaws
Item 9.01 Financial Statements and Exhibits
SIGNATURES
EXHIBIT INDEX
EX-3.1 AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
EX-3.2 AMENDED AND RESTATED BYLAWS
EX-10.1 STOCKHOLDERS' AGREEMENT /ACE AVIATION HOLDINGS INC.
EX-10.2 STOCKHOLDERS' AGREEMENT / EASTSHORE AVIATION, LLC
EX-10.3 STOCKHOLDERS' AGREEMENT / PAR INVESTMENT PARTNERS, L.P.
EX-10.4 STOCKHOLDERS' AGREEMENT / PENINSULA INVESTMENT PARTNERS, L.P.
EX-10.5 STOCKHOLDERS' AGREEMENT / WELLINGTON MANAGEMENT COMPANY, LLP
EX-10.6 STOCKHOLDERS' AGREEMENT / TUDOR INVESTMENT CORP.

### Item 1.01 Entry into a Material Definitive Agreement

On September 27, 2007, US Airways Group, Inc. ("US Airways Group") consummated the transactions contemplated by its plan of reorganization, including its previously announced merger transaction with America West Holdings Corporation ("America West Holdings"). As a result of the merger, America West Holdings became a wholly owned subsidiary of US Airways Group.

In connection with the consummation of these transactions, on September 27, 2005, each of ACE Aviation Holdings Inc. ("ACE"), Eastshore Aviation, LLC ("Eastshore"), Par Investment Partners, L.P. ("Par"), Peninsula Investment Partners, L.P. ("Peninsula"), a group of investors under the management of Wellington Management Company, LLP (collectively, "Wellington") and Tudor Proprietary Trading, L.L.C. and a group of investors for which Tudor Investment Corp. acts as investment adviser (collectively, "Tudor", and together with ACE, Eastshore, Par, Peninsula and Wellington, the "Equity Investors"), entered into a stockholders agreement with US Airways Group. The stockholders agreements provide that, subject to certain exceptions, each Equity Investor agrees not to transfer any of the shares of US Airways Group common stock acquired pursuant to the investment agreements until six months following the closing under the investment agreements and that US Airways Group will provide certain customary registration rights to the Equity Investors, including payment of certain fees if US Airways Group is not able to cause a registration statement to become effective in the agreed upon time period. The ACE, Par and Eastshore stockholders agreements also provide for the appointment of individuals designated by each of those Equity Investors to be appointed to the board of directors of US Airways Group on September 29, 2005, the date which is two business days after the effective time of the merger, for a three-year term. The ACE stockholders agreement provides that (i) for so long as ACE holds at least 66.67% of the number of shares of US Airways Group common stock acquired pursuant to its investment agreement (the "ACE director threshold"), ACE will be entitled to designate a director nominee for successive three-year terms and (ii) if ACE falls below the ACE director threshold, ACE will cause its director designee to resign from the board of directors. In the case of the Equity Investors other than ACE which were entitled to designate a director to the board of directors of US Airways Group, the applicable stockholders agreements provide that (i) for so long as that Equity Investor holds at least 35% of the number of shares of US Airways Group common stock acquired pursuant to its investment agreement (the "designating investor threshold"), that Equity Investor will be entitled to designate a director nominee for successive three-year terms and (ii) if any such Equity Investor falls below the designating director threshold, the designee of that Equity Investor will serve the remainder of that designee's term as a director, but that Equity Investor will no longer have the right to designate a director nominee under the stockholders agreement.

This description of the stockholders agreements is qualified in its entirety by reference to the full text of the stockholders agreements, copies of which are attached as Exhibits 10.1 — 10.6 to this Current Report on Form 8-K.

### Item 2.01 Completion of Acquisition or Disposition of Assets

Effective September 27, 2005, pursuant to an Agreement and Plan of Merger dated as of May 19, 2005, as amended (the "Merger Agreement"), among US Airways Group, America West Holdings and Barbell Acquisition Corp., a wholly owned subsidiary of US Airways Group ("Barbell"), Barbell merged with and into America West Holdings, as a result of which America West Holdings became a wholly owned subsidiary of US Airways Group (such transaction is referred to herein as the "Merger"). As a result of the Merger, each outstanding share of Class B common stock of America West Holdings was converted into 0.4125 of a share of US Airways Group common stock, $0.01 par value per share, and each outstanding share of Class A common stock of America West Holdings was converted into 0.5362 of a share of US Airways Group common stock. An aggregate of approximately 15.1 million shares of common stock of US Airways Group were issued in exchange for America West Holdings Class A and Class B common stock as a result of the Merger.

## Item 3.02 Unregistered Sales of Equity Securities

### Issuances to the Equity Investors

On September 27, 2005, pursuant to six separate investment agreements entered into with US Airways Group and America West Holdings, the Equity Investors invested an aggregate of $565 million in US Airways Group in exchange for shares of US Airways Group common stock. The amount invested and shares received by each Equity Investor were as follows:

- ACE — $75,000,000 of equity investment at a per share purchase price of $15.00 for 5,000,000 shares;

- Eastshore — $125,000,000 of equity investment, through the conversion of and in satisfaction of the $125 million debtor in possession facility provided by Eastshore, at a per share purchase price of $15.00 for 8,333,333 shares;

- Par — $100,000,005 of equity investment at a per share purchase price of $15.00 for 6,768,485 shares, including the 101,818 shares received pursuant to participation agreements with America West Holdings;

- Peninsula — $49,999,995 of equity investment at a per share purchase price of $15.00 for 3,333,333 shares;

- Wellington — an aggregate of $149,999,850 of equity investment at a per share purchase price of $16.50 for an total of 9,090,900 shares; and

- Tudor — an aggregate of $65,000,001 of equity investment at a per share price of $16.50 for a total of 3,939,394 shares.

In addition, in connection with the Equity Investors' agreement to increase the amount of total new equity that US Airways Group could raise, US Airways Group granted to each Equity Investor an option that gives the Equity Investor the right to purchase additional shares of US Airways Group common stock at $15.00 per share as follows:

- Par has the option to purchase up to an additional 4,000,000 shares (which includes the option to purchase 1,666,667 shares that Par purchased from Eastshore and the option to purchase 1,000,000 shares that Par purchased from ACE);

- Peninsula has the option to purchase up to an additional 666,667 shares;

- Wellington has the option to purchase up to an additional 2,000,000 shares in the aggregate; and

- Tudor has the option to purchase up to an additional 866,667 shares in the aggregate.

Each option is transferable, in whole or in part, among the Equity Investors. Two-thirds of each option expired on September 28, 2005, with the remainder expiring 15 days after September 27, 2005. Each of Par, Peninsula, Wellington and Tudor exercised the first two-thirds of its option in full, for a total of 5,022,222 shares and for aggregate proceeds to US Airways Group of $75 million. Upon expiration of the options, US Airways Group will make an additional offer to Eastshore, in an amount equal to one-third of the proceeds received from exercise of the options, to repurchase shares of common stock held by Eastshore at a purchase price of $15.00 per share, and Eastshore will have the right, but not the obligation, to accept that offer to repurchase in whole or in part for a period of at least 30 days after the receipt of the offer.

The issuance and sale of US Airways Group common stock to the Equity Investors was made pursuant to the exemption from registration under Section 4(2) of the Securities Act of 1933, as amended (the "Securities Act") and, to the extent that shares of US Airways Group common stock were issued in exchange for the conversion of the $125 million debtor in possession facility provided by Eastshore, pursuant to Section 1145(a)(1) of the Bankruptcy Code, as described below.

Issuances of Common Stock under the Plan of Reorganization

Under US Airways Group's plan of reorganization, 8,212,121 shares of US Airways Group common stock were distributed to certain holders of general unsecured claims. These shares include 4,873,484 shares issued to the Pension Benefit Guaranty Corporation and 1,250,000 shares issued to the Air Line Pilots Association ("ALPA"). ALPA will also receive options to purchase an additional 1,100,000 shares of US Airways Group common stock. US Airways Group relied, based on the confirmation order its received from the Bankruptcy Court, on Section 1145(a)(1) of the U.S. Bankruptcy Code to exempt from the registration requirements of the Securities Act the offer and sale of US Airways Group common stock to the general unsecured creditors.

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under Section 5 of the Securities Act and state laws if three principal requirements are satisfied:

- the securities must be offered and sold under a plan of reorganization and must be securities of the debtor, of an affiliate participating in joint plan of reorganization with the debtor or of a successor to the debtor under the plan of reorganization;

- the recipients of the securities must hold claims against or interests in the debtor; and

- the securities must be issued in exchange, or principally in exchange, for the recipient's claim against or interest in the debtor.

**Item 5.01 Changes in Control of the Registrant**

Pursuant to US Airways Group's plan of reorganization, all securities of US Airways Group outstanding prior to September 27, 2005 were cancelled upon emergence from the Chapter 11 proceedings. As a result of the Merger, US Airways Group's emergence from the Chapter 11 proceedings under its plan of reorganization, the investments by the Equity Investors and the public offering of 8.5 million shares US Airways Group common stock, immediately after the Merger, former stockholders of America West Holdings held approximately 33% of the outstanding common stock, general unsecured creditors of US Airways Group held approximately 10% of the outstanding common stock, and the Equity Investors in the aggregate held approximately 46% of the outstanding common stock.

Also as a result of the Merger, the identity of a majority of the directors on the US Airways Group board of directors has changed. As set forth in the Merger Agreement, the board of directors of US Airways Group now consists of 13 members. W. Douglas Parker, the Chairman and Chief Executive Officer of America West Holdings, serves as Chairman and Chief Executive Officer of US Airways Group. Bruce R. Lakefield, the former President and Chief Executive Officer of US Airways Group and US Airways, now serves as Vice Chairman of US Airways Group. In addition, the following directors were also nominated to the board of directors pursuant to the terms of the Merger Agreement:

- Herbert M. Baum, Richard C. Kraemer, Denise M. O'Leary, Richard P. Schifter and J. Steven Whisler, who were members of the board of directors of America West Holdings, were nominated by America West Holdings;

- Cheryl G. Krongard, Han Mirka and George M. Philip, who were already members of the board of directors of US Airways Group, were nominated by US Airways Group;

- Robert A. Milton was nominated by ACE;

- Edward L. Shapiro was nominated by Par; and

- Richard A. Bartlett was nominated by Eastshore.

Messrs. Milton, Shapiro and Bartlett all joined the board of directors on September 29, 2005, in accordance with the terms of the investment agreements with ACE, Par and Eastshore. All of the other directors became members of the board immediately upon effectiveness of the Merger.

## Item 5.03 Amendments to Articles of Incorporation and Bylaws

In connection with the Merger, US Airways Group adopted an Amended and Restated Certificate of Incorporation (the "Certificate of Incorporation") and Amended and Restated Bylaws (the "Bylaws"), effective September 27, 2005. The following sets forth a description of the key provisions of the Certificate of Incorporation and Bylaws. This description of the Certificate of Incorporation and Bylaws agreements is qualified in its entirety by reference to the full text of these documents, which are filed as Exhibits 3.1 and 3.2 to this Current Report on Form 8-K.

### Authorized Capital Stock

US Airways Group's authorized capital stock consists of 200 million shares of common stock, par value $0.01 per share.

### Voting Rights

The holders of US Airways Group common stock are entitled to one vote per share on all matters submitted to a vote of common stockholders, except that voting rights of non-U.S. citizens are limited to the extent that the shares of common stock held by such non-U.S. persons would otherwise be entitled to more than 24.9% of the aggregate votes of all outstanding equity securities of US Airways Group. Holders of common stock have no right to cumulate their votes. The common stock is listed on the New York Stock Exchange. Holders of common stock participate equally as to any dividends or distributions on the common stock.

### Stock Certificates

US Airways Group's Bylaws provide that the board of directors may provide by resolution or resolutions that some or all of any or all classes or series of its stock will be uncertificated shares.

### Number of Directors

The Certificate of Incorporation provides that the board of directors will consist of not less than one nor more than 15 directors, the exact number of which will be fixed from time to time by resolution adopted by a majority of the board of directors.

### Classification of Board of Directors

The Certificate of Incorporation classifies the board of directors into three separate classes, consisting as nearly equal in number as may be possible of one-third of the total number of directors constituting the entire board of directors, with staggered three-year terms. If the number of directors is changed, any increase or decrease will be apportioned across classes in order for the classes to remain as nearly equal as possible.

### Removal of Directors

The Certificate of Incorporation provides that any director may be removed only "for cause," and by the affirmative vote of the holders of at least 80% of the voting power of the then issued and outstanding capital stock entitled to vote for the election of directors.

### Vacancies on the Board of Directors

The Certificate of Incorporation provides that, except as may be otherwise provided pursuant to the stockholders agreement or other contracted obligations of US Airways Group, any vacancy on the board of directors that results from an increase in the number of directors may be filled by a majority of the board of directors then in office, provided that a quorum is present, and any other vacancy occurring on the board of directors may be filled by a majority of the board then in office, even if less than a quorum, or by a sole remaining director. Any director of any class elected to fill a vacancy resulting from an increase in the number of directors of that class will hold office for a term that coincides with the remaining term of that class. Any director elected to fill a vacancy not resulting from an increase in the number of directors will have the same remaining term as his or her predecessor.

### Foreign Ownership Limitation

The Certificate of Incorporation and Bylaws provide limits of the voting and ownership of US Airways Group equity securities owned or controlled by persons who are not citizens of the United States in order to comply with U.S. law and related rules and regulations of the U.S. Department of Transportation. Any equity securities owned by non-U.S. persons having in excess of 24.9% of the voting power of the outstanding equity securities will have their voting rights automatically suspended in reverse chronological order based upon the date of registration in US Airways Group's foreign stock record. In addition, any attempt to transfer equity securities to a non-U.S. person in excess of 49.9% of the outstanding equity securities will be void and of no effect and will not be recorded in US Airways Group's books and records.

### Stockholder Action by Written Consent

The Certificate of Incorporation provides that no stockholder action may be taken except at an annual or special meeting of stockholders and that stockholders may not take any action by written consent.

### Amendment to Certificate of Incorporation

The Certificate of Incorporation provides that US Airways Group reserves the right to amend, alter, change or repeal any provision contained in the Certificate of Incorporation in a manner in keeping with the Certificate of Incorporation or the Delaware General Corporation Law ("DGCL"), and that all rights conferred upon stockholders are granted subject to that reservation.

The Certificate of Incorporation requires the affirmative vote of the holders of at least two-thirds of the voting power of the shares entitled to vote for the election of directors to amend, alter, change, repeal or adopt any provision as part of the Certificate of Incorporation inconsistent with the purpose and intent of Articles V (Board of Directors), VIII (No Written Consent), X (Amendment of Bylaws) or XI (Amendment of the Certificate of Incorporation) of the Certificate of Incorporation.

### Amendment of Bylaws

The Certificate of Incorporation provides that an affirmative vote of at least a majority of the board of directors or the affirmative vote of at least 80% of the voting power of the shares entitled to vote for the election of directors will be required to adopt, amend, alter or repeal the Bylaws.

### Special Meeting of Stockholders

The Certificate of Incorporation provides that special meetings of the stockholders may be called by:

- the chairman of the board of directors; or

- the secretary, at the written request or by a resolution adopted by the affirmative vote of a majority of the board of directors.

### Quorum

The Certificate of Incorporation and Bylaws provide that the holders of a majority of the capital stock issued, outstanding and entitled to vote at a meeting of stockholders, present in person or represented by proxy, will constitute a quorum at any meeting of the stockholders held for the purpose of electing directors.

### Notice of Stockholder Meeting

The Bylaws provide that written notice of meetings of stockholders, stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at that meeting, and, in the case of a special meeting, the purpose(s) for which the meeting is called, must be given to each stockholder of record entitled to vote whenever stockholders are required or permitted to take any action at any meeting. The secretary must provide such notice not less than 10 nor more than 60 days before the date of the meeting.

### Delivery & Notice Requirements of Stockholder Nominations and Proposals

The Bylaws provide that at any annual stockholders' meeting only such business may be transacted as has been:

- specified in the notice of meeting or any supplement thereto;

- given by or at the direction of the board or any duly authorized committee thereof;

- otherwise properly brought by or at the direction of the board of directors or any duly authorized committee thereof; or

- otherwise properly brought by any stockholder of US Airways Group (A) who is a stockholder of record on the date of the giving of the notice provided for in the Bylaws and on the record date for the determination of stockholders entitled to notice of and to vote at such annual meeting, and (B) who complies with the notice procedures set forth in the Bylaws.

For a proposal, other than nominations of persons for election to the board of directors, to be properly brought before an annual meeting by a stockholder, the stockholder must have given timely written notice thereof to the secretary of US Airways Group and such business must be a proper matter for stockholder action.

To be timely, a stockholder's notice must be delivered to or mailed to, and received by, the Secretary at US Airways Group's principal executive offices:

- not less than 90 calendar days nor more than 120 calendar days prior to the anniversary date of the immediately preceding annual meeting of stockholders; or

- in the event that the annual meeting is called for a date that is not within 30 days before or after such anniversary date, notice by the stockholder in order to be timely must be so received not later than the close of business on the 10th day following the day on which such notice of the date of the annual meeting was mailed or such public disclosure of the date of the annual meeting was made, whichever first occurs.

The Bylaws also provide that, for business to be properly brought before a special meeting of stockholders, other than nominations of persons for election to the board of directors, a stockholder must give timely written notice thereof to the Secretary of US Airways Group. To be timely, a stockholder's written notice must be received by the Secretary at US Airways Group's principal executive offices at least 10 days prior to the first public notice of the special meeting.

A stockholder's written notice to the Secretary for either an annual meeting or a special meeting must set forth:

- a brief description of the business desired to be brought before the meeting and the reasons for conducting the business at the meeting;

- the name and address of record of the stockholder proposing that business;

- the class and number of shares which are beneficially owned by the stockholder;

- the dates upon which the stockholder acquired those shares;

- documentary support for any claim of beneficial ownership;

- a description of all arrangements or understandings between the stockholder and any other person or persons (including their names) in connection with the proposal and any material interest of the stockholder in the business;

- a representation that the stockholder intends to appear in person or by proxy at the meeting to bring the business before the meeting;

- a statement in support of the matter; and

- for proposals sought to be included in the proxy statement, any other information required by Rule 14a-8 under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

- for proposals sought to be included in the proxy statement, any other information required by Rule 14a-8 under the Exchange Act.

The Bylaws also provide that no business may be conducted at any stockholders' meeting except business brought before the meeting in accordance with the procedures set forth in the Bylaws. If the chairman of the meeting determines that business was not properly brought before the meeting, the chairman will declare that the business was not properly brought and such business will not be considered or transacted.

*Preemptive Rights*

The Certificate of Incorporation does not grant any preemptive rights.

*Dividends*

The Certificate of Incorporation provides that stockholders are entitled to receive such dividends and other distributions in cash, stock or property of US Airways Group when, as and if declared thereon by the board of directors from time to time out of assets or funds legally available therefor.

The Bylaws provide that dividends, if any, may be declared by the board of directors at any regular or special meeting of the board (or any action by written consent in lieu thereof) and may be paid in cash, property or shares of US Airways Group's capital stock. Before payment of any dividend, the directors may set aside a portion of the funds available for dividends such as the board of directors, in its absolute discretion, deems proper as a reserve fund. Also, the board of directors may modify or abolish any such reserve.

*Limitation of Personal Liability of Directors*

The Certificate of Incorporation provides that no director will be personally liable to US Airways Group or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL.

The Certificate of Incorporation further provides that if the DGCL is amended to authorize the further elimination or limitation of the liability of directors, then the liability of a director of the corporation will be eliminated or limited to the fullest extent authorized by the DGCL, as so amended.

*Indemnification of Officers & Directors*

The Certificate of Incorporation provides that US Airways Group:

- will indemnify its directors and officers to the fullest extent authorized or permitted by law. This right to indemnification continues even after a person has ceased to be a director or officer and inures to the benefit of his or her heirs, executors and personal and legal representatives. Subject to applicable law, the right to indemnification includes the right to be paid the expenses incurred in defending or otherwise participating in any proceeding in advance of its final disposition; and

- may, to the extent authorized by the board of directors, provide rights to indemnification and to the advancement of expenses to employees and agents similar to those conferred on directors and officers.

Except for proceedings to enforce rights to indemnification, US Airways Group is not obligated to indemnify any director or officer or his or her heirs, executors or personal or legal representatives in connection with a proceeding or part thereof initiated by that person unless the proceeding or part thereof was authorized or consented to by the board of directors.

The Certificate of Incorporation also provides that the rights to indemnification and to the advance of expenses are not exclusive of any other right which any person may have or acquire under the Certificate of Incorporation, the Bylaws, any statute, agreement, vote of stockholders or disinterested directors or otherwise.

*No Stockholder Rights Plan*

US Airways Group does not have a stockholder rights plan.

*Business Combinations*

Certain provisions of the Certificate of Incorporation and Bylaws may have the effect of delaying or preventing changes in control if the board of directors determines that those changes in control are not in the best interests of US Airways Group and its stockholders. These provisions include, among other things, the following:

- a classified board of directors with three-year staggered terms;

- advance notice procedures for stockholder proposals to be considered at stockholders' meetings;

- the ability of US Airways Group's board of directors to fill vacancies on the board;

- a prohibition against stockholders taking action by written consent;

- a prohibition against stockholders calling special meetings of stockholders;

- requiring the approval of holders of at least 80% of the voting power of the shares entitled to vote in the election of directors for the stockholders to amend the Bylaws; and

- super majority voting requirements to modify or amend specified provisions of the Certificate of Incorporation.

These provisions are not intended to prevent a takeover, but are intended to protect and maximize the value of US Airways Group's stockholders' interests. While these provisions have the effect of encouraging persons seeking to acquire control of the company to negotiate with the board of directors, they could enable the board of directors to prevent a transaction that some, or a majority, of the

stockholders might believe to be in their best interests and, in that case, may prevent or discourage attempts to remove and replace incumbent directors.

In addition, Section 203 of the DGCL protects publicly-traded Delaware corporations, such as US Airways Group, from hostile takeovers, and from actions following the takeover, by prohibiting some transactions once an acquirer has gained a significant holding in the corporation.

A corporation may elect not to be governed by Section 203 of the DGCL. Neither the Certificate of Incorporation nor the Bylaws contain this election. Therefore, US Airways Group is governed by Section 203 of the DGCL.

## Item 9.01 Financial Statements and Exhibits

### (a) Financial Statements of Businesses Acquired

The financial statements for the six month period ended June 30, 2005 and each of the three fiscal years ended December 31, 2004, 2003 and 2002 of America West Holdings were previously filed as part of Annexes B-1 and B-2 to Amendment No. 2 to US Airways Group's Registration Statement on Form S-1 (No. 333-126226) filed on August 31, 2005 and are incorporated herein by reference.

### (b) Pro Forma Financial Information

The unaudited pro forma condensed combined statements of operations for the year ended December 31, 2004 and the six months ended June 30, 2005, reflecting the Merger as if it had occurred on January 1, 2004, and the unaudited pro forma condensed combined balance sheet as of June 30, 2005, reflecting the Merger as if it had occurred on June 30, 2005, were previously filed under the heading "Unaudited Pro Forma Condensed Combined Financial Statements" in Amendment No. 3 to US Airways Group's Registration Statement on Form S-1 (No. 333-126226) filed on September 23, 2005 and are incorporated herein by reference.

### (d) Exhibits

The following exhibits are filed herewith.

| Exhibit No. | Description |
|---|---|
| 2.1 | Agreement and Plan of Merger dated May 19, 2005 by and among US Airways Group, Inc., America West Holdings Corporation and Barbell Acquisition Corp. (incorporated by reference to Exhibit 2.1 to US Airways Group's Registration Statement on Form S-4 (No. 333-126162) filed on June 28, 2005) |
| 2.2 | Letter Agreement dated July 7, 2005 by and among US Airways Group, Inc., America West Holdings Corporation, Barbell Acquisition Corp., ACE Aviation Holdings Inc., Eastshore Aviation, LLC, Par Investment Partners, L.P., Peninsula Investment Partners, L.P., and Wellington Management Company, LLP (incorporated by reference to Exhibit 2.2 to Amendment No. 1 to US Airways Group's Registration Statement on Form S-4 (No. 333-126162) filed on August 8, 2005) |
| 3.1 | Amended and Restated Certificate of Incorporation of US Airways Group, Inc. |
| 3.2 | Amended and Restated Bylaws of US Airways Group, Inc. |

| Exhibit No. | Description |
|---|---|
| 10.1 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and ACE Aviation Holdings Inc. |
| 10.2 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and Eastshore Aviation, LLC |
| 10.3 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and Par Investment Partners, L.P. |
| 10.4 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and Peninsula Investment Partners, L.P. |
| 10.5 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and the group of investors named therein under the management of Wellington Management Company, LLP |
| 10.6 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group, Tudor Proprietary Trading L.L.C. and the group of investors named therein for which Tudor Investment Corp. acts as investment adviser |

## FORWARD-LOOKING STATEMENTS

Certain of the statements contained herein should be considered "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. These forward looking statements may be identified by words such as "may," "will," "expect," "intend," "anticipate," "believe," "estimate," "plan," "could," "should," and "continue" and similar terms used in connection with statements regarding the outlook of US Airways Group (the "Company"), expected fuel costs, the RASM environment, and expected financial performance. Such statements include, but are not limited to, statements about the benefits of the business combination transaction involving America West Holdings Corporation and US Airways Group, including future financial and operating results, the combined companies' plans, objectives, expectations and intentions and other statements that are not historical facts. Such statements are based upon the current beliefs and expectations of the Company's management and are subject to significant risks and uncertainties that could cause the Company's actual results and financial position to differ materially from these statements. Such risks and uncertainties include, but are not limited to, the following: the ability of the Company to obtain and maintain any necessary financing for operations and other purposes (including compliance with financial covenants); the ability of the Company to maintain adequate liquidity; the impact of changes in fuel prices; the impact of economic conditions; changes in prevailing interest rates; the ability to attract and retain qualified personnel; the ability of the companies to attract and retain customers; the ability of the Company to obtain and maintain commercially reasonable terms with vendors and service providers; the cyclical nature of the airline industry; competitive practices in the industry, including significant fare restructuring activities by major airlines; labor costs; security-related and insurance costs; weather conditions; government legislation and regulation; relations with unionized employees generally and the impact and outcome of the labor negotiations; the impact of global instability including the potential impact of current and future hostilities, terrorist attacks, infectious disease outbreaks or other global events; the impact of the resolution of remaining claims in US Airways Group's Chapter 11 proceedings; the ability of the Company to fund and execute its business plan following the Chapter 11 proceedings and the merger; and other risks and uncertainties listed from time to time in the companies' reports to the SEC. There may be other factors not identified above of which the Company is not currently aware that may affect matters discussed in the forward-looking statements, and may also cause actual results to differ materially from those discussed. The Company assumes no obligation to publicly update any forward-looking statement to reflect actual results, changes in

assumptions or changes in other factors affecting such estimates other than as required by law. Additional factors that may affect the future results of the Company are set forth in the filings of US Airways Group and America West Holdings with the SEC, which are available at www.usairways.com and www.americawest.com, respectively.

# SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrants have duly caused this report to be signed on their behalf by the undersigned hereunto duly authorized.

US Airways Group, Inc. (REGISTRANT)

Date: October 3, 2005            By:   /s/ Derek J. Kerr _____
                                 Derek J. Kerr
                                 Senior Vice President and Chief Financial Officer
                                 (Principal Financial and Accounting Officer)

US Airways, Inc. (REGISTRANT)

Date: October 3, 2005            By:   /s/ Derek J. Kerr _____
                                 Derek J. Kerr
                                 Senior Vice President and Chief Financial Officer
                                 (Principal Financial and Accounting Officer)

## EXHIBIT INDEX

| Exhibit No. | Description |
| --- | --- |
| 2.1 | Agreement and Plan of Merger dated May 19, 2005 by and among US Airways Group, Inc., America West Holdings Corporation and Barbell Acquisition Corp. (incorporated by reference to Exhibit 2.1 to US Airways Group's Registration Statement on Form S-4 (No. 333-126162) filed on June 28, 2005) |
| 2.2 | Letter Agreement dated July 7, 2005 by and among US Airways Group, Inc., America West Holdings Corporation, Barbell Acquisition Corp., ACE Aviation Holdings Inc., Eastshore Aviation, LLC, Par Investment Partners, L.P., Peninsula Investment Partners, L.P., and Wellington Management Company, LLP (incorporated by reference to Exhibit 2.2 to Amendment No. 1 to US Airways Group's Registration Statement on Form S-4 (No. 333-126162) filed on August 8, 2005) |
| 3.1 | Amended and Restated Certificate of Incorporation of US Airways Group, Inc. |
| 3.2 | Amended and Restated Bylaws of US Airways Group, Inc. |
| 10.1 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and ACE Aviation Holdings Inc. |
| 10.2 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and Eastshore Aviation, LLC |
| 10.3 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and Par Investment Partners, L.P. |
| 10.4 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and Peninsula Investment Partners, L.P. |
| 10.5 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group and the group of investors named therein under the management of Wellington Management Company, LLP |
| 10.6 | Stockholders' Agreement dated as of September 27, 2005 among US Airways Group, Tudor Proprietary Trading L.L.C. and the group of investors named therein for which Tudor Investment Corp. acts as investment adviser |

```
<DOCUMENT>
<TYPE>EX-3.1
<SEQUENCE>2
<FILENAME>g97532exv3w1.txt
<DESCRIPTION>EX-3.1 AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
<TEXT>
<PAGE>
```

EXHIBIT 3.1

AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
US AIRWAYS GROUP, INC.

----------

PURSUANT TO SECTIONS 242, 245 AND 303 OF THE
DELAWARE GENERAL CORPORATION LAW

----------

US Airways Group, Inc. (the "Corporation"), a corporation organized and existing under the General Corporation Law of the State of Delaware (as the same exists or may hereafter be amended, the "DGCL"), does hereby certify as follows:

1. The name of the Corporation is US Airways Group, Inc. The Corporation was originally incorporated under the name U S Air Group, Inc. The original certificate of incorporation of the Corporation was filed with the office of the Secretary of State of the State of Delaware on February 16, 1982.

2. The Corporation filed an Amended and Restated Certificate of Incorporation, effective as of March 31, 2003, with the office of the Secretary of State of the State of Delaware on March 31, 2003.

3. On September 12, 2004, the Corporation filed a petition in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (the "Bankruptcy Court") seeking relief under Chapter 11 of the United States Bankruptcy Code.

4. This Amended and Restated Certificate of Incorporation was duly adopted pursuant to a plan of reorganization confirmed by an order of the Bankruptcy Court on September 16, 2005 in accordance with Section 303 of the DGCL.

5. This Amended and Restated Certificate of Incorporation restates, integrates, amends and supersedes the provisions of the Amended and Restated Certificate of Incorporation of the Corporation, as heretofore amended or supplemented.

6. The text of the Amended and Restated Certificate of Incorporation is hereby amended and restated to read in its entirety as follows:

ARTICLE I
NAME

The name of the corporation is US Airways Group, Inc. (the "Corporation").

```
<PAGE>
```

ARTICLE II
REGISTERED OFFICE

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its registered agent at that address is The Corporation Trust

ARTICLE III
CORPORATE PURPOSE

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware (as the same exists or may hereafter be amended, the "DGCL") either alone or with others through wholly or partially owned subsidiaries, as a partner (limited or general) in any partnership, as a joint venturer in any joint venture or otherwise.

ARTICLE IV
AUTHORIZED CAPITAL STOCK

SECTION 1. Authorized Capital Stock. The total number of shares of stock which the Corporation shall have authority to issue is 200,000,000 shares of capital stock, consisting of 200,000,000 shares of common stock having a par value of $0.01 per share (the "Common Stock").

SECTION 2. The holders of shares of Common Stock shall have such rights as are set forth in the DGCL and, to the extent consistent therewith, such rights as are set forth below:

(a) Voting. Except as otherwise expressly required by law or provided in this Amended and Restated Certificate of Incorporation, as it may be amended from time to time (the "Certificate of Incorporation"), each holder of record of shares of Common Stock on the relevant record date shall be entitled to cast one vote in person or by proxy for each share of Common Stock standing in such holder's name on the stock transfer records of the Corporation with respect to any and all matters presented to the stockholders of the Corporation for their action or consideration at each meeting of stockholders of the Corporation. There shall be no cumulative voting. At any meeting held for the purpose of electing Directors, the presence in person or by proxy of the holders of a majority of the shares of Common Stock then outstanding shall constitute a quorum of the Common Stock for the purpose of electing Directors by holders of the Common Stock.

(b) Dividends. Subject to any other provisions of this Certificate of Incorporation, holders of shares of Common Stock shall be entitled to receive such dividends and other distributions in cash, stock or property of the Corporation when, as and if declared thereon by the Board of Directors from time to time out of assets or funds of the Corporation legally available therefor.

2

<PAGE>

(c) Liquidation, Dissolution, etc. In the event of any liquidation, dissolution or winding up (either voluntary or involuntary) of the Corporation, the holders of shares of Common Stock shall be entitled to receive the assets and funds of the Corporation available for distribution after payments to creditors in proportion to the number of shares held by them.

(d) Merger, etc. In the event of a merger or consolidation of the Corporation with or into another entity (whether or not the Corporation is the surviving entity), the holders of each share of Common Stock shall be entitled to receive the same per share consideration on a per share basis.

(e) No Preemptive or Subscription Rights. No holder of shares of Common Stock shall be entitled to preemptive or subscription rights.

SECTION 3. Power to Sell and Purchase Shares. Subject to the requirements of applicable law, the Corporation shall have the power to issue and sell all or any part of any shares of any class of stock herein or hereafter authorized to such persons, and for such consideration, as the Board of Directors shall from time to time, in its discretion, determine, whether or not greater consideration could be received upon the issue or sale of the same number of shares of another class, and as otherwise permitted by law. Subject to the requirements of applicable law, the Corporation shall have the power to purchase any shares of any class of stock herein or hereafter authorized from such persons, and for such consideration, as the Board of Directors shall from time to time, in its discretion, determine, whether or not less consideration could be paid upon the purchase of the same number of shares of another class, and as otherwise permitted by law.

SECTION 4. Equity Securities. All (x) capital stock of, or other equity interests in, the Corporation, (y) securities convertible into or exchangeable for shares of capital stock, voting securities or other equity interests in the Corporation, or (z) options, warrants or other rights to acquire the securities described in clauses (x) and (y), whether fixed or contingent, matured or unmatured, contractual, legal, equitable or otherwise (collectively, "Equity Securities") shall be subject to the following limitations:

(a) Non-Citizen Voting and Ownership Limitations. In no event shall any Person who fails to qualify as a "citizen of the United States," as the term is defined in Section 40102(a)(15) of Subtitle VII of Title 49 of the United States Code, as amended, in any similar legislation of the United States enacted in substitution or replacement therefor, and as interpreted by the Department of Transportation, its predecessors and successors, from time to time (a "Non-Citizen"), be entitled to own (beneficially or of record) or have voting control over more than (x) 24.9% of the aggregate votes of all outstanding Equity Securities of the Corporation (the "Voting Cap Amount") or (y) 49.9% of the total number of outstanding shares of Equity Securities of the Corporation ("the Absolute Cap Amount" and together with the Voting Cap Amount, the "Cap Amounts").

3

<PAGE>

(b) Enforcement of Cap Amounts. The restrictions imposed by the Cap Amounts shall be applied in reverse chronological order based upon the date of registration (or attempted registration in the case of the Absolute Cap Amount) on the Foreign Stock Record or the stock transfer records of the Corporation. At no time shall the shares of Equity Securities held by Non-Citizens be voted, unless such shares are registered on the Foreign Stock Record, as such term is defined in the Bylaws. In the event that Non-Citizens shall own (beneficially or of record) or have voting control over any Equity Securities, the voting rights of such persons shall be subject to automatic suspension to the extent required to ensure that the Corporation is in compliance with applicable provisions of law and regulations relating to ownership or control of a United States air carrier. In the event that any transfer of Equity Securities to a Non-Citizen would result in Non-Citizens owning (beneficially or of record) more than the Absolute Cap Amount, such transfer shall be void and of no effect and shall not be recorded in the books and records of the Corporation. The Bylaws shall contain provisions to implement this Section 4, including, without limitation, provisions restricting or prohibiting the transfer of Equity Securities to Non-Citizens and provisions restricting or removing voting rights as to shares of Equity Securities owned or controlled by Non-Citizens. Any determination as to ownership, control or citizenship made by the Board of Directors shall be conclusive and binding as between the Corporation and any stockholder.

(c) Legend for Equity Securities. Each certificate or other representative document for Equity Securities (including each such certificate or representative document for Equity Securities issued upon any permitted transfer of Equity Securities) shall contain a legend in substantially the following form:

> "The [type of Equity Securities] represented by this [certificate/representative document] are subject to voting restrictions with respect to [shares/warrants, etc.] held by persons or entities that fail to qualify as "citizens of the United States" as such term is defined by relevant legislation. Such voting restrictions are contained in the Amended and Restated Certificate of Incorporation of US Airways Group, Inc., as the same may be amended or restated from time to time. A complete and correct copy of such Amended and Restated Certificate of Incorporation shall be furnished free of charge to the holder of such shares of [type of Equity Securities] upon written request to the Secretary of US Airways Group, Inc."

SECTION 5. Issuance of Nonvoting Securities. The Corporation shall not issue nonvoting equity securities to the extent prohibited by Section 1123(a)(6) of the United States Bankruptcy Code for so long as such Section is in effect and applicable to the Corporation.

4

<PAGE>

## ARTICLE V
## BOARD OF DIRECTORS

The provisions of this Article V are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation and of its Directors and stockholders.

SECTION 1. Management. The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

SECTION 2. Number of Directors. The Board of Directors shall consist of not less than one or more than fifteen (15) members, the exact number of which shall be fixed from time to time by resolution adopted by the affirmative vote of a majority of the Board of Directors then in office, except with respect to the initial Board of Directors, as described in Section 3 of this Article V, which shall consist of thirteen (13) members.

SECTION 3. Initial Board of Directors. The initial Board of Directors following the effective date of the Corporation's plan of reorganization (the "Plan"), as confirmed by an order of the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division on September 16, 2005 in connection with the Corporation's filing on September 12, 2004 of a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code, shall be as set forth in the Plan and in the "Merger Agreement," as that term is defined in Article I.B of the Plan.

SECTION 4. Classes of Directors; Term. The Directors shall be divided into three classes, designated Class I, Class II and Class III. Each class shall consist, as nearly as may be possible, of one-third of the total number of Directors constituting the entire Board of Directors. The initial division of the Board of Directors into classes shall be made by the decision of the affirmative vote of a majority of the entire Board of Directors. The terms of the initial Class I, Class II and Class III Directors shall commence at the "Effective Time" of the "Merger," as those terms are defined in the Plan. The

annual meeting of the stockholders following the Effective Time of the Merger. The term of the initial Class II Directors shall expire at the time of the second annual meeting of the stockholders following the Effective Time of the Merger. The term of the initial Class III Directors shall expire at the time of the third annual meeting of the stockholders following the Effective Time of the Merger. Thereafter, Directors elected to replace those whose terms have expired at each such annual meeting shall be elected at such meeting to hold office for a full three-year term in accordance with such classification. If the number of Directors is changed, any increase or decrease in the number of directorships shall be apportioned among the classes so as to maintain the number of Directors in each class as nearly equal as possible. Any additional Director of any class elected to fill a vacancy resulting from (i) an increase in such class, (ii) the removal from office, death, disability, resignation or disqualification of a Director, or (iii) other cause, shall hold office for a term that shall coincide with the remaining term

5

<PAGE>

of that class, but in no case will a decrease in the number of Directors have the effect of removing or shortening the term of any incumbent Director.

    SECTION 5. Removal. A Director shall hold office until the annual meeting of stockholders for the year in which his or her term expires and until his or her successor shall be properly elected and shall qualify, subject, however, to prior death, resignation, retirement, disqualification or removal from office. Any or all of the Directors of the Corporation may be removed from office at any time, but only for cause and only by the affirmative vote of the holders of at least eighty percent (80%) of the voting power of the Corporation's then issued and outstanding capital stock entitled to vote for the election of Directors.

    SECTION 6. Vacancies. Except as may be otherwise provided pursuant to those certain Stockholders' Agreements, each dated as of September 27, 2005, by and among the Corporation and each of ACE Aviation Holdings, Inc., Eastshore Aviation, LLC, PAR Investment Partners, L.P., Peninsula Investment Partners, L.P., Wellington Management Company, LLP, and Tudor Investment Corp., or pursuant to other contractual obligations of the Corporation, any vacancy on the Board of Directors that results from an increase in the number of Directors may be filled by a majority of the Board of Directors then in office, provided that a quorum is present, and any other vacancy occurring on the Board of Directors may be filled by a majority of the Board of Directors then in office, even if less than a quorum, or by a sole remaining Director. Any Director of any class elected to fill a vacancy resulting from an increase in the number of Directors of such class shall hold office for a term that shall coincide with the remaining term of that class. Any Director elected to fill a vacancy not resulting from an increase in the number of Directors shall have the same remaining term as his or her predecessor.

    SECTION 7. Powers. In addition to the powers and authority herein or by statute expressly conferred upon them, the Directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the provisions of the DGCL, this Certificate of Incorporation, and any bylaws adopted by the stockholders; provided, however, that no bylaws hereafter adopted by the stockholders shall invalidate any prior act of the Directors which would have been valid if such bylaws had not been adopted.

                              ARTICLE VI
                  LIMITATION OF DIRECTORS' LIABILITY

    No Director shall be personally liable to the Corporation or any of its

except to the extent such exemption from liability or limitation thereof is not permitted under the DGCL. If the DGCL is amended hereafter to authorize the further elimination or limitation of the liability of Directors, then the liability of a Director of the Corporation shall be eliminated or limited to the fullest extent authorized by the DGCL, as so amended. Any repeal or modification of this Article VI shall not adversely affect any right or protection of a Director of the Corporation existing at the time of such repeal or modification with respect to acts or omissions occurring prior to such repeal or modification.

6

<PAGE>

## ARTICLE VII
## INDEMNIFICATION

SECTION 1. Right of Indemnification. The Corporation shall indemnify its Directors and officers to the fullest extent authorized or permitted by law, as now or hereafter in effect, and such right to indemnification shall continue as to a person who has ceased to be a Director or officer of the Corporation and shall inure to the benefit of his or her heirs, executors and personal and legal representatives; provided, however, that, except for proceedings to enforce rights to indemnification, the Corporation shall not be obligated to indemnify any Director or officer (or his or her heirs, executors or personal or legal representatives) in connection with a proceeding (or part thereof) initiated by such person unless such proceeding (or part thereof) was authorized or consented to by the Board of Directors. The right to indemnification conferred by this Article VII shall include, subject to applicable law, the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any proceeding in advance of its final disposition.

SECTION 2. Prepayment of Expenses. Subject to applicable law, the Corporation may, to the extent authorized from time to time by the Board of Directors, provide rights to indemnification and to the advancement of expenses to employees and agents of the Corporation similar to those conferred in this Article VII to Directors and officers of the Corporation.

SECTION 3. Nonexclusivity of Rights. The rights to indemnification and to the advance of expenses conferred in this Article VII shall not be exclusive of any other right which any person may have or hereafter acquire under this Certificate of Incorporation, the Bylaws, any statute, agreement, vote of stockholders or disinterested Directors or otherwise.

SECTION 4. Repeal or Modification. Any repeal or modification of this Article VII shall not adversely affect any rights to indemnification and to the advancement of expenses of a Director or officer of the Corporation existing at the time of such repeal or modification with respect to any acts or omissions occurring prior to such repeal or modification.

## ARTICLE VIII
## NO WRITTEN CONSENT

Any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of stockholders of the Corporation. Unless otherwise required by law, special meetings of the stockholders, for any purpose or purposes, may be called by either (i) the Chairman of the Board of Directors, (ii) the Chief Executive Officer or President or (iii) the Board of Directors. The ability of the stockholders to call a special meeting of stockholders is hereby specifically denied.

<PAGE>

## ARTICLE IX
## STOCKHOLDER MEETINGS

Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide. The books of the Corporation may be kept (subject to any provision contained in the DGCL) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws.

## ARTICLE X
## AMENDMENT OF BYLAWS

In furtherance and not in limitation of the powers conferred upon it by the laws of the State of Delaware, the Board of Directors shall have the power to adopt, amend, alter or repeal the By-Laws. The affirmative vote of at least a majority of the entire Board of Directors shall be required to adopt, amend, alter or repeal the By-Laws. The By-Laws also may be adopted, amended, altered or repealed by the affirmative vote of the holders of at least eighty percent (80%) of the voting power of the shares entitled to vote for the election of Directors.

## ARTICLE XI
## AMENDMENT OF THE CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed in this Certificate of Incorporation or the DGCL, and all rights herein conferred upon stockholders are granted subject to such reservation; provided, however, that, notwithstanding any other provision of this Certificate of Incorporation (and in addition to any other vote that may be required by law), the affirmative vote of the holders of at least two-thirds of the voting power of the shares entitled to vote for the election of Directors shall be required to amend, alter, change or repeal, or to adopt any provision as part of this Certificate of Incorporation inconsistent with the purpose and intent of Article V, Article VIII and Article X of this Certificate of Incorporation or this Article XI.

8

<PAGE>

IN WITNESS WHEREOF, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed on its behalf this September 27, 2005.

US AIRWAYS GROUP, INC.

By: /s/ James E. Walsh III
---------------------------------------
Name: James E. Walsh
Title: Senior Vice President and
       General Counsel

</TEXT>
</DOCUMENT>