# EXHIBIT 17 – PART 4

of $15,000,000 (the "West Termination Fee"), payable by wire transfer of same day funds. East acknowledges that the agreements contained in this Section 6.5(c) are an integral part of the transactions contemplated by this Agreement, and that, without these agreements, West would not enter into this Agreement; accordingly, if East fails to promptly pay any amount due pursuant to this Section 6.5(c), and, in order to obtain such payment, West commences a suit which results in a judgment against East for the fee, charges or expenses to which reference is made in this paragraph (c), East shall pay to West its costs and expenses (including attorneys' fees) in connection with such suit, together with interest on the amount of the fee at the prime rate of Citibank, N.A. in effect on the date such payment was required to be made. Notwithstanding anything to the contrary in this Agreement, the parties hereby acknowledge that payment of the West Termination Fee shall be West's sole and exclusive remedy under this Agreement and West shall have no other rights or remedies in law or equity against East.

(d)     Notwithstanding the foregoing Section 6.5(c), the parties hereby acknowledge that in the event that this Agreement is validly terminated by West pursuant to Section 6.3(d), then in addition to East paying the West Termination Fee as set forth in Section 6.5(c), West shall also be entitled to seek any other additional remedy at law or equity, including, but not limited to, injunctive relief from the Bankruptcy Court and damages sustained by West (to the extent the amount of such damages exceeds the West Termination Fee).

(e)     East's obligations pursuant to this Section 6.5 shall survive termination of this Agreement and shall constitute an allowed administrative expense of East.

-77-

<PAGE>

ARTICLE VII

Miscellaneous and General

7.1     Survival. This Article VII and the agreements of West, East and Merger Sub contained in Article II and Sections 4.10 (Employee Benefits) and 4.12 (Indemnification; Directors' and Officers' Insurance) shall survive the consummation of the Merger. This Article VII and the agreements of West, East and Merger Sub contained in Section 4.11 (Expenses) and Section 6.5 (Effect of Termination and Abandonment) and the Confidentiality Agreement (as defined in Section 7.7) shall survive the termination of this Agreement. All other representations, warranties, covenants and agreements in this Agreement shall not survive the consummation of the Merger or the termination of this Agreement.

7.2     Modification or Amendment. Subject to the provisions of the applicable Laws, at any time prior to the Effective Time, the parties hereto may modify or amend this Agreement, by written agreement executed and delivered by duly authorized officers of the respective parties.

7.3     Waiver of Conditions. The conditions to each of the parties' obligations to consummate the Merger are for the sole benefit of such party and may be waived by such party in whole or in part to the extent permitted by applicable Laws.

7.4     Counterparts. This Agreement may be executed in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same

agreement.

        7.5    Governing Law And Venue; Waiver Of Jury Trial. (A) THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN AND IN ALL RESPECTS SHALL BE INTERPRETED, CONSTRUED AND GOVERNED BY AND IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS OF LAW PRINCIPLES THEREOF. The parties hereby irrevocably submit to the jurisdiction of the Bankruptcy Court, or if such court will not hear any such suit, the courts of the State of New York and the federal courts of the United States of America located in the State of New York, solely in respect of the interpretation and enforcement of the provisions of this Agreement and of the documents referred to in this Agreement, and in respect of the transactions contemplated hereby, and hereby waive, and agree not to assert, as a defense in any action, suit or proceeding for the interpretation or enforcement hereof or of any such document, that it is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in said courts or that the venue thereof may not be appropriate or that this Agreement or any such document may not be enforced in or by such courts, and the parties hereto irrevocably agree that all claims with respect to such action or proceeding shall be heard and determined in such courts. The parties hereby consent to and grant any such court jurisdiction over the person of such parties and consent to the jurisdiction of any such court over the subject matter of such dispute and agree that mailing of process or other papers in connection with any such action or proceeding in the manner provided in

-78-

<PAGE>

Section 7.6 or in such other manner as may be permitted by Law shall be valid and sufficient service thereof.

        (B)    EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (i) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (iii) EACH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (iv) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.5.

        7.6    Notices. Any notice, request, instruction or other document to be given hereunder by any party to the others shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, by facsimile or by overnight courier:

    If to East or Merger Sub:

    US Airways Group, Inc.
    2345 Crystal Drive
    Arlington, Virginia 22227
    Attention: Elizabeth K. Lanier
    Fax: 703-872-5208

    With a copy to:

    Arnold & Porter LLP

```
                    1600 Tysons Boulevard
                    Suite 900
                    McLean, Virginia 22102
                    Attention: Kevin Lavin, Esq.
                    Fax: 202-942-5999

                    Arnold & Porter LLP
                    370 Seventeenth Street
                    Suite 4500
                    Denver, Colorado 80202
                    Attention: Brian Leitch, Esq.
                    Fax: 303-832-0428

                              -79-
```

<PAGE>

```
                    If to West:

                    America West Holdings Corporation
                    111 West Rio Salado Parkway
                    Tempe, Arizona 85281
                    Attention: James E. Walsh III
                    Fax: 480-693-5155

                    With a copy to:

                    Skadden, Arps, Slate, Meagher & Flom LLP
                    333 West Wacker Drive
                    Suite 2100
                    Chicago, Illinois  60606
                    Attention:  Peter Krupp, Esq.
                                Timothy Pohl, Esq.
                                Kimberly deBeers, Esq.
                    Fax:  312-407-0411
```

or to such other persons or addresses as may be designated in writing by the party to receive such notice as provided above. Any notice, request, instruction or other document given as provided above shall be deemed given to the receiving party upon actual receipt, if delivered personally; three business days after deposit in the mail, if sent by registered or certified mail; upon confirmation of successful transmission if sent by facsimile (provided that if given by facsimile such notice, request, instruction or other document shall be followed up within one business day by dispatch pursuant to one of the other methods described herein); or on the next business day after deposit with an overnight courier, if sent by an overnight courier.

    7.7    Entire Agreement. This Agreement (including any exhibits hereto), the West Disclosure Letter, the East Disclosure Letter and the Confidentiality Agreement, dated February 24, 2004, as amended on January 7, 2005, between East and West (the "Confidentiality Agreement") constitute the entire agreement, and supersede all other prior agreements, understandings, representations and warranties both written and oral, among the parties, with respect to the subject matter hereof.

    7.8    Third Party Beneficiaries. Except as provided in Section 4.12 (Indemnification; Directors' and Officers' Insurance), this Agreement is not intended to, and does not, confer upon any Person other than the parties hereto any rights or remedies hereunder; provided, however, that the shareholders of West shall be deemed third party beneficiaries solely with respect to the right to receive the Applicable Per Share Merger Consideration

pursuant to Article II hereof.

7.9    Obligations of East and of West. Whenever this Agreement requires a Subsidiary of East to take any action, such requirement shall be deemed to include an undertaking on the part of East to cause such Subsidiary to take such action. Whenever

-80-

<PAGE>

this Agreement requires a Subsidiary of West to take any action, such requirement shall be deemed to include an undertaking on the part of West to cause such Subsidiary to take such action and, after the Effective Time, on the part of the Surviving Corporation to cause such Subsidiary to take such action.

7.10    Definitions. Each of the terms set forth in Annex A is defined in the Section of this Agreement set forth opposite such term.

7.11    Severability. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

7.12    Interpretation; Construction.

(a)    The table of contents and headings herein are for convenience of reference only, do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof. Where a reference in this Agreement is made to a Section or Exhibit, such reference shall be to a Section of or Exhibit to this Agreement unless otherwise indicated. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation."

(b)    The parties have participated jointly in negotiating and drafting this Agreement. In the event that an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

(c)    Each of West and East has or may have set forth information in its respective disclosure letter in a section thereof that corresponds to the section of this Agreement to which it relates. A matter set forth in one section of a disclosure letter need not be set forth in any other section of the disclosure letter so long as its relevance to the latter section of the disclosure letter or section of the Agreement is readily apparent on the face of the information disclosed in the disclosure letter to the Person to which such disclosure is being made. The fact that any item of information is disclosed in a disclosure letter to this Agreement shall not be construed to mean that such information is required to be disclosed by this Agreement. Such information and the dollar thresholds set forth herein shall not be used as a

basis for interpreting the terms "material," "West

-81-
<PAGE>

Material Adverse Effect," "East Material Adverse Effect" or other similar terms in this Agreement.

       7.13    Assignment. This Agreement shall not be assignable by operation of law or otherwise. Any purported assignment in violation of this Agreement will be void ab initio.

-82-
<PAGE>

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the duly authorized officers of the parties hereto as of the date first written above.

```
                              US AIRWAYS GROUP, INC.

                              By      /s/ Bruce R. Lakefield
                                 ---------------------------------
                                 Name:  Bruce R. Lakefield
                                 Title: Chief Executive Officer


                              AMERICA WEST HOLDINGS CORPORATION

                              By      /s/ W. Douglas Parker
                                 ---------------------------------
                                 Name:  W. Douglas Parker
                                 Title: Chairman and Chief Executive
                                        Officer


                              BARBELL ACQUISITION CORP.

                              By      /s/ Stephen Morrell
                                 ---------------------------------
                                 Name:  Stephen Morrell
                                 Title: Chief Executive Officer
```

-83-
<PAGE>

ANNEX A

DEFINED TERMS

```
Terms                                                                 Section
-----                                                                 -------
ADs.................................................................3.1(i)(i)
Additional Pre-Investment Value.....................................4.20(b)
Agreement...........................................................Preamble
Alternative Transaction.............................................4.20(b)
Applicable Per Share Merger Consideration...........................2.1(a)(iii)
ATSB................................................................3.1(d)(i)
```

Audit Date........................................................................3.1(e)(i)
Auction Termination Date..........................................................4.2(b)
Bankruptcy and Equity Exception...................................................3.1(c)(i)
Bankruptcy Code...................................................................Recitals
Bankruptcy Court..................................................................Recitals
Bidding Procedures................................................................4.2(a)
Cases.............................................................................Recitals
CERCLA............................................................................3.1(m)(iv)
Certificate.......................................................................2.1(a)(iii)
Certificate of Merger.............................................................1.3
Class A Share.....................................................................2.1(a)(i)
Class A Merger Exchange Ratio.....................................................2.1(a)(i)
Class B Share.....................................................................2.1(a)(ii)
Class B Merger Exchange Ratio.....................................................2.1(a)(ii)
Closing...........................................................................1.2
Closing Date......................................................................1.2
Code..............................................................................Recitals
Computer Software.................................................................3.1(p)
Confidentiality Agreement.........................................................7.7
Confirmation Order................................................................Recitals
Continuing Employees..............................................................4.10(b)
Contract..........................................................................3.1(d)(ii)
Copyrights........................................................................3.1(p)
Costs.............................................................................4.12(a)
D&O Insurance.....................................................................4.12(c)
Debtor............................................................................Recitals
Debtors...........................................................................Recitals
DGCL..............................................................................1.1
DHS...............................................................................3.1(d)(i)
Directors' Recommendation.........................................................3.1(c)(ii)
DOT...............................................................................3.1(d)(i)
East..............................................................................Preamble
East Acquisition Proposal.........................................................4.4(a)
East Aircraft.....................................................................3.2(s)(i)

A-1

<PAGE>

East Audit Date...................................................................3.2(f)(i)
East CBAs.........................................................................3.2(p)(i)
East Common Stock.................................................................2.1(a)(i)
East Compensation and Benefit Plan................................................3.2(i)(i)
East Disclosure Letter............................................................3.2
East ERISA Affiliate..............................................................3.2(i)(i)
East Gates........................................................................3.2(l)(ii)
East Leased Real Property.........................................................3.2(l)(iii)
East Material Adverse Effect......................................................3.2(a)
East Material Contracts...........................................................3.2(k)(iii)
East Owned Real Property..........................................................3.2(l)(i)
East Real Property................................................................3.2(l)(iii)
East Reports......................................................................3.2(f)(i)
East Slots........................................................................3.2(t)
East Termination Fee..............................................................6.5(b)
East's Knowledge..................................................................3.2(f)(iv)
Effective Time....................................................................1.3
Encumbrance.......................................................3.1(k)(ix), 3.2(l)(ix)
Environmental Laws................................................................3.1(m)(ii)
Environmental Liability...........................................................3.1(m)(iii)
Equity Investors..................................................................Recitals
Equity Participation..............................................................4.20(a)

| | |
|---|---|
| ERISA | 3.1(h)(ii) |
| Exchange Act | 3.1(d)(i) |
| Exchange Agent | 2.2(a) |
| Exchange Fund | 2.2(a) |
| Excluded Class A Share | 2.1(a)(i) |
| Excluded Class B Share | 2.1(a)(ii) |
| Excluded Shares | 2.1(a)(ii) |
| FAA | 3.1(d)(i) |
| FARs | 3.1(i)(i) |
| FCC | 3.1(d)(i) |
| Final Order | 4.2(e) |
| Financing Commitments | Recitals |
| Foreign Corrupt Practices Act | 3.1(q)(i) |
| GAAP | 3.1(e)(ii) |
| Governmental Consents | 5.1(b) |
| Governmental Entity | 3.1(d)(i) |
| Hazardous Substance | 3.1(m)(iv) |
| HSR Act | 3.1(d)(i) |
| Indemnified Parties | 4.12(a) |
| Independent Director | 1.8(a) |
| Intellectual Property | 3.1(p) |
| IRS | 3.1(h)(2) |
| IT Assets | 3.1(p) |
| Laws | 3.1(i)(i) |

A-2

<PAGE>

| | |
|---|---|
| Licenses | 3.1(i)(i) |
| Lien | 3.1(b) |
| Maximum Annual Premium | 4.12(c) |
| Merger | Recitals |
| Merger Sub | Preamble |
| Newco | 4.7(e) |
| Newco Material Adverse Effect | 4.7(e) |
| Notice of West Superior Proposal | 4.3(a) |
| NYSE | 1.8(a) |
| Order | 5.1(c) |
| Outstanding Class A Share | 2.1(a)(i) |
| Outstanding Class B Share | 2.1(a)(ii) |
| Outstanding Shares | 2.1(a)(ii) |
| Parent Amended By-Laws | 1.7(a) |
| Parent Charter | 1.6(a) |
| Patents | 3.1(p) |
| Per Share Class A Merger Consideration | 2.1(a)(i) |
| Per Share Class B Merger Consideration | 2.1(a)(ii) |
| Person | 2.2(b) |
| Plan | Recitals |
| Prospectus/Proxy Statement | 4.5 |
| RCRA | 3.1(m)(iv) |
| Release | 3.1(m)(v) |
| Removal, Remedial or Response Actions | 3.1(m)(vi) |
| Representatives | 4.3(a), 4.4(a) |
| S-4 Registration Statement | 4.5 |
| SEC | 2.5(c) |
| Securities Act | 3.1(d)(i) |
| Shareholders Meeting | 4.6 |
| Shares | 2.1(a)(ii) |
| SOX Act | 3.1(e)(i) |
| Subsidiary | 3.1(a) |

Surviving Corporation..................................................1.1
Surviving Corporation By-Laws......................................1.7(b)
Surviving Corporation Charter......................................1.6(b)
Takeover Statute...................................................3.1(l)
Tax................................................................3.1(n)
Tax Return.........................................................3.1(n)
Taxes..............................................................3.1(n)
Termination Date......................................................6.2
Trade Secrets......................................................3.1(p)
Trademarks.........................................................3.1(p)
Voting Agreement..................................................Recitals
West.............................................................Preamble
West Acquisition Proposal..........................................4.3(a)
West Additional Pre-Investment Value..............................4.20(a)

A-3
<PAGE>

West Aircraft...................................................3.1(r)(i)
West Awards........................................................2.5(b)
West CBAs.......................................................3.1(o)(i)
West Compensation and Benefit Plan..............................3.1(h)(i)
West Convertible Debt..............................................3.1(b)
West Disclosure Letter................................................3.1
West ERISA Affiliate............................................3.1(h)(i)
West Gates.....................................................3.1(k)(ii)
West Leased Real Property.....................................3.1(k)(iii)
West Material Adverse Effect.......................................3.1(a)
West Material Contracts.......................................3.1(j)(iii)
West Owned Real Property.......................................3.1(k)(i)
West Option........................................................2.5(a)
West Preferred Shares..............................................3.1(b)
West Real Property............................................3.1(k)(iii)
West Reports....................................................3.1(e)(i)
West Requisite Vote.............................................3.1(c)(i)
West Slots.........................................................3.1(s)
West Stock Plans...................................................2.5(a)
West Superior Proposal.............................................4.3(a)
West Termination Fee...............................................6.5(c)
West Warrants......................................................3.1(b)
West's Knowledge...............................................3.1(e)(iv)
2009 Notes.........................................................3.1(b)
2023 Notes.........................................................3.1(b)

A-4
</TEXT>
</DOCUMENT>