IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BANK OF AMERICA, N.A. (USA),<br><br>                    Plaintiff,<br><br>        v.<br><br>US AIRWAYS, INC., US AIRWAYS GROUP, INC., and AMERICA WEST AIRLINES, INC.,<br><br>                    Defendants,<br><br>     and<br><br>JUNIPER BANK,<br><br>                    Intervenor. | C.A. No.  05-793 (JJF) |

## ANSWERING BRIEF OF DEFENDANTS US AIRWAYS, INC., US AIRWAYS GROUP, INC., AND AMERICA WEST AIRLINES, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED REMAND

OF COUNSEL:

MUNGER, TOLLES & OLSON LLP
Mark H. Epstein
Kristin Linsley Myles
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
(213) 683-9100

DATED:  December 5, 2005

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
David C. McBride (#408)
Christian Douglas Wright (#3554)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for US Airways, Inc., US Airways Group, Inc. and America West Airlines, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 5

    A.   The BofA/US Airways Agreement ........................................................... 5

    B.   The *US Airways* Bankruptcy ................................................................... 6

    C.   The Juniper Bank Agreement ................................................................... 7

    D.   Bank Of America's Administrative Claims And Other Participation
        In The *US Airways* Bankruptcy ............................................................. 8

    E.   Confirmation Of The Plan ........................................................................ 9

    F.   The Delaware Action ................................................................................ 9

    G.   Bank Of America's Second Set Of Administrative Claims
        And Defendants' Objection .................................................................... 10

III. ARGUMENT ................................................................................................... 10

    A.   This Court Should Defer Ruling On Plaintiff's Remand Motion Until
        After It Decides Defendants' Motion To Transfer ................................. 10

    B.   Federal Subject Matter Jurisdiction Exists Over This Action ............... 16

        1.   This Action Is A "Core Proceeding" .......................................... 16

        2.   This Action "Relates To" The *US Airways* Bankruptcy .............. 22

    C.   "Mandatory Abstention" Does Not Apply To This Action ................... 24

    D.   Neither Equitable Remand Nor Discretionary Abstention Is Appropriate Here ............. 28

    E.   Bank Of America Has Waived Any Right To Seek Arbitration ...................... 30

IV. CONCLUSION ................................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Communications Corp.*,
   307 B.R. 404 (Bankr. S.D.N.Y. 2004) ........................................................................ 22, 26, 27

*Allen v. J.K. Harris & Co.*
   331 B.R. 634 (E.D. Pa. 2005) .................................................................................................. 27

*Atlantic Ship Rigging Co. v. McLellan*,
   288 F.2d 589 (3d Cir. 1961) .............................................................................................. 13, 14

*Borne v. New Orleans Health Care, Inc.*,
   116 B.R. 487 (E.D. La. 1990) .................................................................................................. 28

*C.F. Trust, Inc. v. Tyler*,
   318 B.R. 795 (E.D. Va. 2004) ............................................................................................ 15, 17

*Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*,
   50 F.3d 388 (7th Cir. 1995) ..................................................................................................... 30

*Continental Airlines, Inc. v. Chrysler*,
   133 B.R. 585 (Bankr. D. Del. 1991) ....................................................................................... 25

*Donaldson v. Bernstein*
   104 F.3d 547 (3d Cir. 1997) .................................................................................................... 23

*Dornbusch v. Commissioner*,
   860 F.2d 611 (5th Cir. 1988) .................................................................................................. 13

*Goodman v. Phillip R. Curtis Enter., Inc.*,
   809 F.2d 228 (4th Cir. 1987) .................................................................................................. 24

*Greiner v. Columbia Gas Transmission Corp.*,
   41 F. Supp. 2d 625 (S.D. W.Va. 1999) .............................................................................. 26, 28

*In re 666 Assocs.*
   57 B.R. 8 (Bankr. S.D.N.Y. 1985) ........................................................................................... 28

*In re Ahearn*,
   318 B.R. 638 (Bankr. E.D. Va. 2003) ................................................................................ 25, 29

*In re Best Reception Sys., Inc.*,
   220 B.R. 932 (Bankr. E.D. Tenn. 1998) ............................................................................... 3, 18

*In re Fairchild Aircraft Corp.*,
   1990 WL 119650 (Bankr. W.D. Tex. 1990) ............................................................................ 26

*In re G.I. Indus., Inc.*,
  204 F.3d 1276 (9th Cir. 2000) ................................................................ 18

*In re HQ Global Holdings, Inc.*,
  293 B.R. 839 (Bankr. D. Del. 2003) ....................................................... 19

*In re Ivy*,
  901 F.2d 7 (2d Cir. 1990) ........................................................................ 14

*In re LaRoche Indus.*,
  312 B.R. 249 (Bankr. D. Del. 2004) .................................................. 25, 29

*In re Lazar*,
  237 F.3d 967 (9th Cir. 2001) .................................................................. 26

*In re Merry-Go-Round Enters., Inc.*,
  222 B.R. 254 (D. Md. 1998) ................................................................... 28

*In re Meyertech Corp.*,
  831 F.2d 410 (3d Cir. 1987) ................................................................... 17

*In re Norrel*,
  198 B.R. 987 (Bankr. N.D. Ala. 1996) ................................................... 28

*In re Northwestern Corp.*,
  319 B.R. 68 (D. Del. 2005) ............................................................... 20, 21

*In re PSA, Inc.*,
  2003 WL 22938894 (Bankr. D. Del. 2003) ........................................... 27

*In re Resorts Int'l, Inc.*,
  372 F.3d 154 (3d Cir. 2004) ............................................................. 23, 24

*In re S.G. Phillips Constrs., Inc.*,
  45 F.3d 702 (2d Cir. 1995) ..................................................................... 17

*In re Winimo Realty Corp.*,
  270 B.R. 108 (S.D.N.Y. 2001) ......................................................... passim

*Lone Star Indus., Inc. v. Liberty Mut. Ins. Co.*,
  131 B.R. 269 (D. Del. 1991) ........................................................ 13, 15, 16

*McLaughlin v. Arco Polymers, Inc.*,
  721 F.2d 426 (3d Cir. 1983) ................................................................... 13

*Medical Society v. Connecticut General Corp.*,
  187 F. Supp. 2d 89 (S.D.N.Y. 2001) ................................................. 14, 15

*Nierbo Co. v. Bethlehem Shipbuilding Corp.*,
    308 U.S. 165 (1939) ........................................................................................ 14

*O'Neill v. New England Road, Inc.*,
    2000 WL 435507 (D. Conn. 2000) ................................................................ 22

*Pacor v. Higgins*,
    743 F.2d 984 (3d Cir. 1984) ..................................................................... 23, 24

*Security Farms v. International Brotherhood of Teamsters,
    Chauffers, Warehousemen & Helpers*,
    124 F.3d 999 (9th Cir. 1997) ............................................................. 26, 27, 28

*Seybolt v. Bio-Energy of Lincoln, Inc.*,
    38 B.R. 123 (Bankr. D. Mass. 1984) ............................................................. 15

*Southmark Corp. v. Coopers & Lybrand*,
    163 F.3d 925 (5th Cir. 1999) .......................................................................... 27

*Tifa Ltd. v. Republic of Ghana*,
    692 F. Supp. 393 (D. N.J. 1988) ............................................................... 13, 14

*U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*,
    166 F.3d 552 (3d Cir. 1999) .......................................................................... 23

*United States v. Mine Workers*,
    330 U.S. 258 (1947) ........................................................................................ 14

**Statutes**

28 U.S.C. § 152(b) ................................................................................................... 3

28 U.S.C. § 157(b) ............................................................................................... 4, 17

28 U.S.C. § 157(b)(2) ......................................................................................... 19, 25

28 U.S.C. § 157(b)(2)(A) .................................................................................... 21, 22

28 U.S.C. § 157(b)(2)(B) ............................................................................... 3, 17, 18

28 U.S.C. § 1334 ................................................................................................ 23, 27

28 U.S.C. § 1334(b) ........................................................................... 10, 16, 17, 24

28 U.S.C. § 1334(c) ................................................................................................ 27

28 U.S.C. § 1334(c)(1) ............................................................................. 4, 27, 28, 29

28 U.S.C. § 1334(c)(2) ..................................................................................... passim

28 U.S.C. § 1142(b) ........................................................................................................ 23

28 U.S.C. § 1452(a) .............................................................................................. 10, 16, 27

28 U.S.C. § 1452(b) ...................................................................................... 4, 26, 27, 28

28 U.S.C. § 1631 .................................................................................................... 13, 14

**Other Authorities**

Federal Courts Improvement Act of 1982 .................................................................. 13

DB02:5116811.1                                                                                                064703.1001

Defendants US Airways, Inc., US Airways Group, Inc., and America West Airlines, Inc. ("Defendants") hereby submit their Answering Brief in opposition to the Motion for Expedited Remand to Vice Chancellor Strine of the Delaware Chancery Court ("Remand Motion"), filed by Plaintiff Bank of America, N.A. (USA) ("Plaintiff" or "Bank of America"). As a threshold matter, Defendants continue to urge this Court to defer ruling on the Remand Motion and to grant Defendants' motion to transfer this action to the Eastern District of Virginia, where US Airways was the debtor in reorganizations proceedings before the Honorable Stephen S. Mitchell (*see In re US Airways, Inc., et al.*, E.D. Va. No. 04-13819-SSM ("*US Airways* bankruptcy"). The Remand Motion, which was filed after the transfer motion, should be decided by Judge Mitchell, who has extensive knowledge of the *US Airways* bankruptcy and as a result is, Defendants respectfully submit, in a better position to decide the questions presented here – such as whether this action is a "core proceeding" with respect to – or "arises in" or "relates to" – the bankruptcy, and whether the injunction and other relief sought by Bank of America here would affect the administration of the US Airways Plan of Reorganization ("Plan" or "Plan of Reorganization").

## I. INTRODUCTION

Bank of America filed this action in the Delaware Court of Chancery, alleging that defendant US Airways, Inc. – which was the debtor in the *US Airways* reorganization proceedings and which remains subject to the Plan of Reorganization in that proceeding, *see In re US Airways, Inc., et al.*, No. 04-13819-SSM (Bankr. E.D. Va.) ("*US Airways* bankruptcy") – breached a co-branded credit card agreement between Bank of America and US Airways, Inc. (the "BofA/US Airways Agreement" or "Agreement"; *see infra*, Section II.A). Although Bank of America brought this action as a separate state court proceeding, it previously had placed at

issue in the *US Airways* bankruptcy the very same BofA/US Airways agreement on which it now bases its claims in this action.  In fact, Bank of America filed not one, but two sets of Administrative Claims in the *US Airways* bankruptcy, seeking recovery for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating to" the BofA/US Airways Agreement, as well as for "any and all other matters pertaining to credit cards, debit cards, or similar products." Wright Decl., ¶ 5 & Ex. C.[1]  Bank of America's claims in this action – which allege that US Airways, Inc. breached the agreement when it entered into negotiations with Juniper Bank for a separate co-branded card arrangement and later concluded such an arrangement – clearly arise from the same contract as the Administrative Claims and, in fact, are subsumed within the broad language of those Claims.  Moreover, in addition to filing its Administrative Claims, Bank of America sought and purportedly secured from the Bankruptcy Court protection for its potential contract rights under the BofA/US Airways Agreement through an express carve-out in the Order approving the Plan of Reorganization ("Confirmation Order") that specifically prevents Bank of America's claims from being extinguished through the release and other provisions in the Plan.  In its Remand Motion, Bank of America has raised issues about what effect that carve-out should have on its claims in this action – issues that would call for an interpretation of that provision of the Confirmation Order entered by Judge Mitchell.

---

[1]  All references herein to "Bankr. Ct. Docket #" refer to the docket entries in the *US Airways* bankruptcy proceedings in Case No. 04-13819 in the Eastern District of Virginia.  The Wright Declaration (D.I. 7) was filed as part of Defendants' Motion to Transfer this action to the Eastern District of Virginia.  Unless otherwise expressly stated herein, all references or citations to "Exhibit" or "Ex. _" are to Exhibits A through G to the Notice of Removal, filed on November 15, 2005 (to which the cited paragraphs in the Wright Declaration refer), or to Exhibit H, which was attached directly to the Wright Declaration.

2

This background makes clear that the present action should be transferred to the Bankruptcy Court and that Bank of America's motion to remand it to the Delaware Court of Chancery should be denied. Contrary to Bank of America's arguments, this action is a "core proceeding" within the meaning of the Bankruptcy Code, *see* 28 U.S.C. § 152(b). The law is clear that where a non-party to a bankruptcy invokes the Bankruptcy Court's jurisdiction by submitting a claim against the debtor as part of the bankruptcy process, any other action between the same parties that arises from the same transaction is deemed a "core" proceeding that can be resolved by the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(B). *See, e.g., In re Best Reception Sys., Inc.*, 220 B.R. 932, 947 (Bankr. E.D. Tenn. 1998) (citing authorities). In the case of claims brought under a contract, it is enough that both the claim filed in bankruptcy and the separate claim arise under the same contract, and that the parties are the same. *See, e.g., In re Winimo Realty Corp.*, 270 B.R. 108, 120-23 (S.D.N.Y. 2001). This rule is not limited, as Bank of America asserts, to "proofs of claim" relating to matters occurring before the bankruptcy petition was filed, but applies to "administrative claims" of the sort filed by Bank of America here. Indeed, as with any proof of claim, and as part of his administration of the *US Airways* bankruptcy and the Plan of Reorganization, Judge Mitchell will have to resolve the contractual issues raised by the Administrative Claims – all of which have been contested in the *US Airways* bankruptcy by the Defendants in this action. *See* Wright Decl., ¶ 10 & Ex. H. Any attempt to resolve these same claims through this action necessarily would impinge upon Judge Mitchell's jurisdiction to resolve the same claims in *US Airways*. It is precisely this sort of conflict that the Bankruptcy Code is meant to avoid by to deeming all such administrative claims "core" proceedings subject to bankruptcy court oversight and jurisdiction.

3

As set forth more fully below, several conclusions follow from the status of Bank of America's claims as "core" – all of which preclude remand of this action to the Court of Chancery and militate strongly in favor of transferring this action to the Eastern District of Virginia for resolution by Judge Mitchell.

*First*, core proceedings by definition fall within the subject matter jurisdiction of the federal courts because they are deemed to "arise under" the Bankruptcy Code or to "arise in" the bankruptcy case within the meaning of 28 U.S.C. § 157(b). Even if that were not so, the claims clearly "relate to" the *US Airways* proceeding, which is sufficient to establish subject matter jurisdiction. Thus, Bank of America's argument that neither this Court nor, apparently, the Bankruptcy Court has subject matter jurisdiction is simply incorrect.

*Second*, the mandatory abstention statute, which by its terms applies only to cases "not arising under title 11 or arising in a case under title 11," *see* 28 U.S.C. § 1334(c)(2), does not apply.

*Third*, the compelling reasons for resolution by the Bankruptcy Court that render the action "core" also militate against either permissive abstention under 28 U.S.C. § 1334(c)(1), or equitable remand under 28 U.S.C. § 1452(b). The law strongly favors resolution by the Bankruptcy Court not only of claims filed against the debtor in the bankruptcy, but also of all other claims between the parties arising from the same transaction or contract. Judge Mitchell already will be called upon as part of the administrative claims process to decide Bank of America's Administrative Claims, which are disputed by Defendants. Judge Mitchell clearly is in the best position both to decide the issues between the parties arising from the same BofA/US Airways Agreement, to interpret the "carve-out" provision for Bank of America's contract claims in the Confirmation Order, and to consider the effect on the *US Airways* reorganization of

4

the relief that Bank of America now seeks – including a proposed injunction against performance under the contract with Juniper Bank that was central to the financing that facilitated the Plan.

*Fourth,* the status of Bank of America's claims as "core" weigh heavily against forcing the claims to arbitration, even if Bank of America's half-hearted, belated attempt to suggest mandatory arbitration had not been waived by virtue of its filing of this action in court – which it clearly has.

*Finally,* even if this Court or the Bankruptcy Court finds that this action is "non-core," it should not be remanded.  Subject matter jurisdiction plainly exists because, at a minimum, this action is "related to" the *US Airways* bankruptcy, which is all that is required.  Not only does the action raise claims arising from the same contract (the BofA/US Airways Agreement) as the Administrative Claims, but both that contract, which Bank of America seeks to enforce, and the Amended Juniper Agreement (defined below), which it seeks to enjoin, were central to the *US Airways* bankruptcy.  Mandatory abstention is inappropriate because, among other things, the statute requires that there be a separate proceeding ongoing in another court – a factor not present here.  Permissive abstention, equitable remand, and other discretionary doctrines do not support remand or abstention because, once again, Judge Mitchell is in the best position to resolve this dispute and Bank of America has pointed to no institutional or comity advantage to having the case decided in a Delaware court when the case has no material connection with Delaware.  For all of these reasons, Bank of America's Remand Motion should be denied.

DB02:5116795.1                                                                                                         064703.1001

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.    The BofA/US Airways Agreement

In May 2003, Bank of America and US Airways, Inc. entered into a "Co-Branded Card and Merchant Services Agreement" (the BofA/US Airways Agreement),[2] under which Bank of America was authorized to issue co-branded credit cards that allowed consumers to earn US Airways frequent flier miles.  Although the Agreement grants certain exclusivity rights to Bank of America with respect to the co-branded card program generally, the Agreement specifically provides that "[i]n the event of a merger involving US Airways or any of its Affiliates and a third party that has a contract with a Card issuer other than [Plaintiff] to issue a Competing Card, the US Airways Surviving Entity may provide the [Plaintiff] with one of the two written notices described below."  One of those notices is a "Two-Program Notice," under which the "US Airways Surviving Entity" may authorize *both* the Bank of America card *and* the "Competing Card."  If US Airways does not provide a notice within the 90-day prescribed time frame, then a "Two-Program" structure is deemed to apply.

### B.    The *US Airways* Bankruptcy

On September 12, 2004, US Airways, Inc., US Airways Group, Inc (US Airways, Inc.'s parent company), and other affiliates (collectively "US Airways") filed a Chapter 11 petition initiating the *US Airways* bankruptcy in the Eastern District of Virginia.  The bankruptcy case was assigned to the Honorable Stephen S. Mitchell, who has presided over the proceeding since its inception and continues to preside over the claims administrative process.  Early in the bankruptcy proceedings, US Airways assumed the BofA/US Airways Agreement.  On May 19, 2005, US Airways Group, Inc. and one of its subsidiaries entered into a formal "Agreement and

---

[2]   A copy of the Agreement, including subsequent modifications thereto, is attached as Exhibit 1 to the Ralston Affidavit submitted in support of Bank of America's Remand Motion.

Plan of Merger" (the "Merger") with America West Holdings Corporation, the parent of America West Airlines, Inc.  *See* Wright Decl., ¶ 3 & Ex. A.  The consummation of the Merger became the focal point of the Plan of Reorganization in the bankruptcy proceedings.

### C.    The Juniper Bank Agreement

America West Airlines, Inc. ("America West") previously had entered into a contract, dated January 25, 2005, with Juniper to issue co-branded credit cards beginning on or about January 1, 2006.[3]  As a result of the proposed Merger, and consistent with the above-quoted merger provisions of the BofA/US Airways Agreement, America West and Juniper amended their existing contract and assigned the amended contract to US Airways Group, Inc., all effective upon the consummation of the Merger (the "Amended Juniper Agreement").  The Amended Juniper Agreement provided approximately $455 million in liquidity to the combined companies after US Airways emerged from bankruptcy.

The $455 million cash infusion from the Amended Juniper Agreement was a major component of the Plan of Reorganization.  The Merger was the centerpiece of the Plan, and the amount received under the Amended Juniper Agreement a key source of liquidity by which both the Merger and US Airways' emergence from bankruptcy were funded.  US Airways' reliance on this specific source of liquidity was documented fully and disclosed in securities and court filings.  *See* Wright Decl. ¶ 7 & Ex. E at 30.  On September 16, 2005, the Bankruptcy Court confirmed the Plan.  *See* Wright Decl., ¶ 4 & Ex. B.

---

[3] *See* Ralston Aff. (D.I. 15) ¶ 5(f) & Ex. 6.  America West had been operating under a co-branding agreement with Bank of America to issue cards.  That agreement expires by its terms on December 31, 2005.  Accordingly, the contract with Juniper allows Juniper to issue cards commencing January 1, 2006.

**D.    Bank Of America's Administrative Claims And
Other Participation In The *US Airways* Bankruptcy**

On August 17, 2005, prior to the confirmation of the Plan of Reorganization, Bank of

America and its affiliates filed Administrative Claims (for the period ending July 31, 2005)

seeking recovery for "any and all claims, rights and interests of Bank of America, N.A. (USA)

and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating

to either: (i) the Co-Branded and Merchant Services Agreement, dated as of May 20, 2003, as

amended, (which was assumed, as amended, pursuant to a Bankruptcy Court Order at Docket

# 855) (the 'Card Agreement') and (ii) any and all other matters pertaining to credit cards, debit

cards, or similar products."  Wright Decl., ¶ 5 & Ex. C. The contract referenced in these

Administrative Claims is the same BofA/US Airways Agreement that forms the basis for

Plaintiff's claims in this action.

A month later, again before confirmation of the Plan, Bank of America filed a "Limited

Objection," arguing that certain release language in the Plan potentially interfered with its

substantive rights under the BofA/US Airways Agreement and its agreement with AmericaWest,

to the extent that it might be construed as releasing certain obligations thereunder.  *See* Wright

Decl., ¶ 9 & Ex. G.  Bank of America suggested adding language to the Confirmation Order to

address these concerns.  Bank of America represented to the Bankruptcy Court that the proposed

change was minor, that it "is not central and essential to the Debtor's plan," and that "[i]t is

simply inconceivable that the [requested change] is central to the Debtor's reorganization, let

alone that the Plan 'hinges' upon such releases."  *Id*.  Nowhere did it suggest that the provision

would or could change the procedural or jurisdictional rules that would govern resolution of

Bank of America's Administrative Claims, nor did it indicate that it planned to bring an action

on the same contract in a separate court.  Based on the limited scope of Bank of America's

8

objection, US Airways agreed to the minor changes that Bank of America requested, and the Bankruptcy Court adopted those changes *verbatim*. *Id*. ¶ 4 & Ex. B.

### E.    Confirmation Of The Plan

On September 27, 2005, after Bank of America had filed its first set of Administrative Claims but before it filed its second set, the Plan of Reorganization went into effect and the Merger became effective.  In its Confirmation Order, the Bankruptcy Court set specific procedures for the filing and resolution of Claims, and retained jurisdiction over "all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law." Wright Decl., ¶ 4 & Ex. B at 39.  The *US Airways* bankruptcy remains open and active, and the claims resolution process is underway in the Bankruptcy Court.

### F.    The Delaware Action

On October 12, 2005, Bank of America filed this action in the Court of Chancery for the State of Delaware.  The Complaint alleges that US Airways, Inc. breached the BofA/US Airways Agreement when it (a) negotiated and later entered into a contract with Juniper that permitted Juniper to offer co-branded credit cards after the Merger, (b) permitted and licensed Juniper to issue co-branded credit cards after the Merger, and (c) marketed Juniper co-branded credit cards. The Complaint further alleges that America West tortiously interfered with the BofA/US Airways Agreement and that both America West and US Airways Group interfered with Bank of America's prospective economic advantage by causing US Airways, Inc. to breach the BofA/US Airways Agreement.  It seeks monetary damages and specific performance of the BofA/US Airways Agreement, and also seeks to enjoin US Airways from performing the Amended Juniper Agreement by licensing or issuing credit cards pursuant to the terms of that contract.

9

On November 15, 2005, Defendants removed the action to this Court under 28 U.S.C.

§§ 1334(b) and 1452(a) on the ground that the action is "related to" and "arises in" the *US

Airways* bankruptcy. The next day, Defendants moved to transfer the action to the United States

District Court for the Eastern District of Virginia, Alexandria Division, where the *US Airways*

bankruptcy is pending before Judge Mitchell. *See In re US Airways, Inc., et al.*, E.D. Va. No.

04-13819-SSM. On November 22, 2005, Bank of America filed the Remand Motion.

### G.    Bank Of America's Second Set Of Administrative Claims And Defendants' Objection

After filing this action in state court, Bank of America filed another set of Administrative

Claims in the Bankruptcy Court, which claims are substantially identical to those filed on August

17, 2005, except that they cover the period between August 1, 2005 and September 27, 2005 and

contain reservation of rights language purporting to limit the Bankruptcy Court's jurisdiction

over the breach of contract claims. Wright Decl., ¶ 6 & Ex. D. On November 16, 2005, US

Airways filed a timely Objection to both sets of Administrative Claims. *Id.*, ¶ 9 & Ex. H.

Among other things, US Airways contested Bank of America's underlying theory that US

Airways' arrangements with America West and Juniper constituted a breach of the BofA/US

Airways Agreement, and raised specific defenses – including the defense that Bank of America

waived its claims when it permitted the Plan of Reorganization to go into effect without

including in its objections to the Plan any objection based upon the breach of contract and related

theories asserted in the Administrative Claims (and also asserted in this action). US Airways has

requested a hearing before the Bankruptcy Court on Bank of America's Administrative Claims

and US Airways' Objection thereto.

## III.  ARGUMENT

**A.    This Court Should Defer Ruling On Plaintiff's Remand Motion Until After It Decides Defendants' Motion To Transfer**

As set out in more detail in Defendants' Opening Brief in support of their Motion to Transfer, this Court should defer ruling on Plaintiff's Remand Motion until after deciding the transfer motion.  The Remand Motion presents numerous issues that are better decided by the Bankruptcy Court presiding over the *US Airways* bankruptcy, including (1) whether this action is a "core proceeding" by virtue of Bank of America's filing of its Administrative Claims in the *US Airways* bankruptcy relating to the same contract that is at issue here; (2) whether this action otherwise is "related to" or "arises in" the *US Airways* bankruptcy; and (3) whether the present action, which seeks to enjoin a contract that was central to the confirmation of the US Airways Plan of Reorganization, would adversely affect the implementation of the Plan.  Given that the Bankruptcy Court already will be called upon to adjudicate Bank of America's disputed Administrative Claims, which relate to the same BofA/US Airways Agreement that is at issue here, that court is in the best position to resolve the parties' disputes – an allocation that would comport with the strong interest both in ensuring uniform treatment of issues affecting a reorganization and in centralizing their resolution in the responsible Bankruptcy Court.

Moreover, Judge Mitchell already has had occasion to consider the BofA/US Airways Agreement, which was called to his attention and actively litigated at several points in the *US Airways* proceedings.  *See* Wright Decl., ¶ 9 & Exhibit G at 3-4, ¶¶ 3-5 (proceedings and negotiations concerning US Airways' assumption of the co-branded card agreement); *id.*, at 5-14, ¶¶ 9-15 (Bank of America's objection to the US Airways Plan of Reorganization based on concerns over its rights under that agreement); Confirmation Order ¶ 45 (provision in order accommodating Bank of America's concern that its claims under that agreement not be

extinguished by the release and similar provisions in the Plan). Judge Mitchell clearly is in the best position both to resolve other issues that arise between the parties relating to this same contract, and to interpret the "carve-out" provision that Bank of America secured in the Confirmation Order but now is trying to expand beyond its original purpose, which was simply to preserve Bank of America's claims from being extinguished through the release provisions of the Plan. Finally, Judge Mitchell is in the best position to consider the effect on the reorganization of the relief that Bank of America seeks against the estate – including an injunction against performance under the contract with Juniper Bank that was central to the financing for the Plan of Reorganization.

By contrast, neither the Delaware Court of Chancery nor this Court has any inherent interest in deciding these questions. The BofA/US Airways Agreement is "governed by the laws of the United States and the Commonwealth of Virginia," and does not mention, or call for the application of, Delaware law. Ralston Aff., Ex. 1, § 8.9.8. Bank of America does not allege that any relevant activities, including acts contributing to any alleged breach of contract or duty, took place in Delaware, and there is no forum selection clause calling for suit in Delaware. Nor is there any indication that relevant witnesses, documents, or other evidence is located in Delaware. In fact, the *only* connection between this action and the State of Delaware is the fact that Defendants – specifically US Airways, Inc., US Airways Group, and America West Airlines, Inc. – are incorporated there, Complaint ¶¶ 2-4, and a non-party, Juniper Bank, has an office there, but those facts are of little importance in a breach of contract and tort action that involves no issue of the "internal affairs" of any Delaware corporation. Accordingly, there is no reason why this action should remain in this Court or in the Delaware Court of Chancery.

Bank of America does not seriously dispute any of these points, nor does it suggest any interest that any Delaware court, state or federal, has in hearing this action or, in the case of this Court, deciding the Remand Motion. Rather, Bank of America argues, quoting *Lone Star Indus., Inc. v. Liberty Mut. Ins. Co.*, 131 B.R. 269, 273 (D. Del. 1991), that "'as a logical and practical matter, the court should determine *whether any* bankruptcy court should hear a proceeding before it determines *which* bankruptcy court should hear it.'" Memorandum of Plaintiff Bank of America in Opposition to Defendants' Motion to Transfer at 4. Bank of America also suggests that even if the Eastern District of Virginia has jurisdiction over this matter as an extension of its existing jurisdiction over the *US Airways* bankruptcy, this Court may not transfer the action to that court because this Court itself lacks subject matter jurisdiction. *Id.* at 4 n.3.

Bank of America is incorrect. Federal courts clearly have the power to transfer venue in appropriate circumstances before their subject matter jurisdiction has been established, or even when subject matter jurisdiction is found to be lacking. Although some prior federal cases, including in the Third Circuit, had held otherwise, *see, e.g., Atlantic Ship Rigging Co. v. McLellan*, 288 F.2d 589 (3d Cir. 1961), these cases were overruled by Congress in 1982 in the Federal Courts Improvement Act of 1982, which expressly authorizes a federal court that lacks subject matter jurisdiction over an action to transfer the action to a proper court "if it is in the interest of justice." *See* 28 U.S.C. § 1631. *See generally McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 428 (3d Cir. 1983) (any broad argument against a power to transfer based on cases like *Atlantic Ship Rigging* "has now been weakened" by Section 1631, "which authorizes the court in which a case has been improperly filed to transfer it to a court in which the action or appeal could have been brought 'if it is in the interest of justice'"); *Dornbusch v. Commissioner*, 860 F.2d 611, 612-16 (5th Cir. 1988) (reciting history of Section 1631 and its effect on pre-

13

§ 1631 caselaw, including *Atlantic Ship Rigging*).[4]  Indeed, courts following the passage of

Section 1631 repeatedly have transferred actions in which a remand motion was pending where

the transferee court was better situated to decide the subject matter jurisdiction issues raised by

the remand motion.  *See, e.g., In re Ivy*, 901 F.2d 7 (2d Cir. 1990); *see also Medical Society v.*

*Connecticut General Corp.*, 187 F. Supp. 2d 89, 91 (S.D.N.Y. 2001) (not only does court have

the power to transfer a case even after a jurisdictional challenge has been lodged, but, "allowing

the transferee court to resolve the jurisdictional question may be the preferable practice").

     This result is consistent with the understanding that questions of federal subject matter

jurisdiction generally go to the relationship between the federal court system or the United States

District Courts as a group, on the one hand, and other court systems or tribunals, such as state

courts or specialized federal tribunals, on the other.  *Nierbo Co. v. Bethlehem Shipbuilding*

*Corp.*, 308 U.S. 165, 167 (1939).  Venue, by contrast, addresses the much less important

question *which* federal district within the federal court system will hear a dispute.  *Id.*  From the

standpoint of subject matter jurisdiction, then, it should not matter *which* judge in *which* federal

district decides whether the federal district court system generally has the power to hear a

dispute.  As with the general rule that a federal court always has jurisdiction to determine its own

jurisdiction, *see United States v. Mine Workers*, 330 U.S. 258, 290 (1947), the power to make

*that* determination can rest with any district court within the federal system.  Accordingly, and

for the reasons set out above, any broad suggestion that this Court lacks the *power* to defer the

---

[4]   Although at least one post-1982 district court case within the Third Circuit has relied on
*Atlantic Ship Rigging* for the broad proposition that "[a] district court is powerless to transfer a
case unless the court has subject matter jurisdiction over the action," *see Tifa Ltd. v. Republic of*
*Ghana*, 692 F. Supp. 393, 398 (D. N.J. 1988), this clearly is no longer the law after the passage
of § 1631.  *See McLaughlin*, 721 F.2d at 428.

Remand Motion until after this action is transferred to the Eastern District of Virginia is simply incorrect.[5]

        To the extent Bank of America's argument is more properly understood as one invoking this Court's *discretion* – as the quoted language from *Lone Star* would suggest – it makes far more "logical and practical" sense in this case for the bankruptcy-related issues raised by the Remand Motion to be decided by the court that has the most familiarity with, and interest in the resolution of, those issues. "The equitable considerations underlying a motion to remand are best addressed by the bankruptcy court that has the entire proceeding before it." *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (Bankr. D. Mass. 1984). *See also Medical Society*, 187 F. Supp. 2d at 92 ("[t]he question is not whether there will be a decision on the jurisdictional issue, but rather which court is in the best position to decide it"); *C.F. Trust, Inc. v. Tyler*, 318 B.R. 795, 802 (E.D. Va. 2004) (because the question "[w]hether a proceeding is core or non-core depends, in turn, on the nature of the proceeding and its relationship to the bankruptcy process," the bankruptcy court is in the best position to make that determination). As discussed above, Judge Mitchell has presided over the *US Airways* bankruptcy from its inception: he confirmed the Plan of Reorganization; will decide Bank of America's contested Administrative Claims; and has reserved jurisdiction to resolve all matters arising under the Plan, including interpretive matters such as the intent and scope of the "catch-all" provision of the Confirmation Order upon which Bank of America relies so heavily here. Clearly, "logical and practical" considerations counsel in favor of having him decide those issues.

---

[5]   Even if this Court were to conclude that it is compelled to decide the issue of subject matter jurisdiction before addressing venue, the Court still should defer the issues of equitable remand and abstention – neither of which goes to the question of subject matter jurisdiction – so that those issues can be decided by the Bankruptcy Court.

                                                            

Nothing in *Lone Star* compels a contrary result.  In that case, the District Court adopted, without comment, the opinion of Chief Bankruptcy Judge Balick, including the "logical and practical" language quoted by Bank of America.  But nothing in Judge Balick's opinion suggests that a court *must* decide the equitable remand motion before determining the venue motion – only that given the specifics of the *Lone Star* case, it was more practical to do so.  As to that conclusion, the facts of the case differ strikingly from those here.  In *Lone Star*, it was the plaintiff, Lone Star, that had brought an action against an insurer and 26 excess insurers in Delaware Superior Court, and then had requested, successfully, that the action be specifically assigned because it involved "'numerous defendants and the application of millions of dollars of insurance during a period of many years,' and because 'numerous issues may arise that could be resolved more efficiently if they were all heard by the same judge.'"  131 B.R. at 271.  After the parties had conducted extensive discovery and the judge had ruled on summary judgment motions, Lone Star filed a Chapter 11 petition in the Southern District of New York.  *Id.*  Only at that point, more than a year after the complaint had been filed, did Lone Star seek a change of venue for the action, which it conceded was non-core.  *Id.* at 272.  In this case, by contrast, the party seeking a transfer is not the one that chose the state forum to begin with, and here Defendants sought a transfer promptly after the case was filed and removed.

### B.  Federal Subject Matter Jurisdiction Exists Over This Action

Throughout its motion, Bank of America argues that the federal courts lack subject matter jurisdiction over this action.  But this court has subject matter jurisdiction over all matters that are "properly removed."  *See Lone Star*, 131 B.R. at 272.  Under 28 U.S.C. §§ 1452(a) and 1334(b), removal is proper for all "civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Bank of America's assertion that this action does

16

not fall within the broad language of Section 1334(b) is wrong because this action is a "core proceeding" and also "relates to" the *US Airways* bankruptcy.

### 1.    This Action Is A "Core Proceeding"

Contrary to Bank of America's assertion, there clearly is federal subject matter jurisdiction over this action because it is a "core proceeding" within the meaning of 28 U.S.C. § 157(b), and thus it is deemed to "arise under" the Bankruptcy Code or to "arise in" the bankruptcy case. *See* 28 U.S.C. § 157(b); *see also In re Winimo Realty Corp.*, 270 B.R. at 119 ("'[c]ore' proceedings are matters 'arising under' the Bankruptcy Code or 'arising in' bankruptcy cases"). "Whether a proceeding is core or non-core depends, in turn, on the nature of the proceeding and its relationship to the bankruptcy process." *C.F. Trust, Inc. v. Tyler*, 318 B.R. at 802.

Congress has not defined the term "core proceedings" and instead has set forth a "non-exhaustive list" of examples of matters that qualify, including "matters concerning the administration of the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship." *C.F. Trust*, 318 B.R. at 802. As the "breadth of matters encompassed by these examples suggests, and courts construing the amended statute have confirmed, ... Congress intended that 'core proceedings' would be interpreted broadly." *Id.* (citations and internal quotations omitted).

The law is clear that where a non-party to a bankruptcy invokes the jurisdiction of the Bankruptcy Court by filing a claim against the debtor through the bankruptcy process, any other action between the same parties that arises from the same transaction is deemed a "core" proceeding that can be resolved by the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(B). *See In re Meyertech Corp.*, 831 F.2d 410, 417-18 (3d Cir. 1987); *In re S.G. Phillips Constrs., Inc.*, 45

F.3d 702, 707-08 (2d Cir. 1995); *see also In re Best Reception Sys., Inc.*, 220 B.R. 932, 947 (Bankr. E.D. Tenn. 1998) (citing additional authorities).  In the case of claims brought under a contract, it is enough that both the claim filed in bankruptcy and the separate claim arise under the same contract, so long as the parties are the same; the two claims need not be the same, or even overlapping.  *See Winimo Realty*, 270 B.R. at 120-23.

        As set out above, Bank of America filed in the *US Airways* bankruptcy not one, but two sets of Administrative Claims, seeking recovery for "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating to" that same co-branded credit card agreement, as well as for "any and all other matters pertaining to credit cards, debit cards, or similar products."  Wright Decl., ¶ 5 & Ex. C.  Defendants have contested these Administrative Claims, which now must be resolved by Judge Mitchell.  Bank of America's claims in this action – which allege that US Airways, Inc. breached the agreement when it entered into negotiations with Juniper for a separate co-branded card arrangement and later concluded such an arrangement – clearly arise from the same contract as the Administrative Claims and, in fact, are subsumed within the broad language of those Claims.  Because a judgment in this action clearly would affect the Administrative Claim, this is a matter affecting the "allowance or disallowance of claims against the estate" and thus falls within one of Congress's explicit examples of "core proceedings."  *See* 28 U.S.C. § 157(b)(2)(B).  As Judge Scheindlin held in *Winimo Realty*, it is sufficient to deem the breach of contract matter "core" if it invokes the same contract and involves the same parties as the claim filed in bankruptcy.  270 B.R. at 120-23.  It does not matter that the claims may not cover precisely the same time period, or even the same legal theories.  *Id.  See also In re G.I Indus., Inc.*, 204 F.3d 1276, 1279-80 (9th Cir. 2000) ("The filing of a proof of claim is the

18

prototypical situation involving the 'allowance or disallowance of claims against the estate,' [and thus is] a core proceeding under 28 U.S.C. § 157(b)(2).") (citations omitted). That the separate action involves only state law claims is immaterial. *See In re HQ Global Holdings, Inc.*, 293 B.R. 839, 842 (Bankr. D. Del. 2003) ("[p]roceedings to allow or disallow claims against a debtor are expressly core" and "[t]he Bankruptcy Court is not deprived of its core jurisdiction over a claim simply because the claim must be decided under state law").

For this reason, Bank of America's strained effort to show its Administrative Claims do not have precisely the same scope as the present action is largely irrelevant, but it also is factually incorrect. Even if it were not the law that an action invoking the "same contract" as an Administrative Claim is necessarily core, *see Winimo Realty*, 270 B.R. at 120-23, the issues raised in this action clearly are encompassed within the broad language of Bank of America's Administrative Claims, which cover "any and all claims, rights and interests of Bank of America, N.A. (USA) and Bank of America, N.A. (and their affiliated entities) in any manner arising from or relating to either: (i) the Co-Branded and Merchant Services Agreement, dated as of May 20, 2003, as amended, (which was assumed, as amended, pursuant to a Court Order at Docket No. 855) (the 'Card Agreement') and (ii) any and all other matters pertaining to credit cards, debit cards, or similar products." In this action, Bank of America seeks both damages arising from an alleged breach of the BofA/US Airways Agreement, and injunctive relief against US Airways relating to the Amended Juniper Agreement. The breach of contract claims, which assert that US Airways breached the BofA/US Airways Agreement by negotiating and entering into the Amended Juniper Agreement, on their face involve "claims, rights and interests" of Bank of America "in any manner arising from or relating to" the BofA/US Airways Agreement and "any and all other matters pertaining to credit cards, debit cards, or similar products." Likewise,

19

Plaintiff's tort claims for interference and their prayer to enjoin Defendants' performance under the Amended Juniper Agreement to provide co-branded credit cards with Juniper and to compel performance of the BofA/US Airways Agreement also involve both "claims, rights and interests" in that contract, and "other matters pertaining to credit cards" within the broad language of the Administrative Claims.

Likewise without merit is Bank of America's argument that its Administrative Claims concern two periods of time – September 12, 2004 to July 31, 2005 and August 1, 2005 to September 27, 2005 – that predate the *effective date* of the Amended Juniper Agreement. Remand Motion at 14. This assertion ignores Bank of America's own allegation in the Complaint that the earlier *negotiation* of the Amended Juniper Agreement itself constituted a breach of the BofA/US Airways Agreement. Complaint ¶ 29. Moreover, the Amended Juniper Agreement executed on August 8, 2005, and became effective on September 27, 2005. Amended Juniper Agreement at 1, 3. Thus, included in the period covered by the second set of Administrative Claims is both the execution and effective date of the contract that forms the basis for the present action. *See* Complaint ¶ 29 ("US Airways, Inc. breached the Agreement by, among other things[,] ... *executing* the Juniper/US Airways Agreement.").

That Bank of America's second set of Administrative Claims contained a reservation of rights clause changes nothing. Although one decision of this Court states that where "the proof of claim contains a reservation of rights and is filed under the compulsion of the bar date, the proof of claim does not necessarily operate to transform a non-core claim into a core claim," *In re Northwestern Corp.*, 319 B.R. 68, 75 n.1 (D. Del. 2005), that caveat is inapposite here. First, *Northwestern Corp.* involved an appeal from a Bankruptcy Court decision denying the appellant's motion for relief from an automatic stay – quite a different procedural posture from

20

that presented here.  This Court in *Northwestern Corp.* also held that the appellant's claim was not a core proceeding, and in so doing, declined to take judicial notice of the fact that the "Appellant filed proofs of claim *subsequent* to this appeal."  *Id.* (emphasis added).  Here, the first Administrative Claims were filed before Bank of America brought this action, and the second set of Claims were brought before any ruling on the core/non-core issue.  In any event, because the Court's holding in *Northwestern Corp.* went only to the issue of judicial notice, it is of limited import here.

Moreover, in addition to filing its Administrative Claims, Bank of America also actively brought its potential contract rights under the BofA/US Airways Agreement to the Bankruptcy Court, and secured protection of those rights in a carve-out to the Plan of Reorganization preserving its claims from being extinguished by means of the release and other provisions in the Plan of Reorganization.  Any attempt to resolve these same claims through this action necessarily would affect, and interfere with, Judge Mitchell's jurisdiction to resolve the same claims in *US Airways*.  It is precisely this sort of conflict that the Bankruptcy Code is meant to avoid by to deeming all such administrative claims "core" proceedings subject to bankruptcy court jurisdiction.  Moreover, Bank of America's claims here are core because they amount to a disguised attack on the Plan of Reorganization approved by the Bankruptcy Court, and therefore is a "core proceeding".  *See* 28 U.S.C. § 157(b)(2)(A) (defining "matters concerning the administration of the estate" as an example of "core proceedings").  As discussed above, the funding provided through the Amended Juniper Agreement was a critical part of the liquidity that funded the Merger and US Airways' emergence from bankruptcy.  The relief sought in this action – including an order enforcing the BofA/US Airways Agreement and enjoining the Amended Juniper Agreement – clearly would have an effect on the US Airways Plan as

confirmed.  For all of these reasons, this action concerns "the administration of the estate" within the meaning of 28 U.S.C. § 157(b)(2)(A).

Finally, this result does not differ, as Bank of America asserts, because the claims at issue here are "administrative claims" for post-petition actions, rather than "proofs of claim" for disputes occurring before the bankruptcy petition was filed.  On the contrary, courts have made clear that the same rule applies to both "proofs of claim" and "administrative claims" of the sort filed by Bank of America here.  *See Adelphia Communications Corp.*, 307 B.R. 404, 424 (Bankr. S.D.N.Y. 2004) ("[a] finding that the City's purported 'proofs of claim' were in fact claims for administrative expenses would not alter the conclusion that this is a core proceeding") (citing authorities); *Winimo Realty*, 270 B.R. at 122-23 (same; noting that "'[r]esolution of post-petition [administrative expense] claims are as much a function of the bankruptcy court's equitable apportionment of the estate as resolution of pre-petition claims,'" and that a claim for an administrative expense is a "core matte[r]") (quoting *O'Neill v. New England Road, Inc.*, 2000 WL 435507, *7 (D. Conn. 2000)).  Indeed, as with any proof of claim, and as part of his administration of the *US Airways* bankruptcy and the Plan of Reorganization, Judge Mitchell will have to resolve the contractual issues raised by the Administrative Claims – all of which have been contested in the *US Airways* bankruptcy by US Airways, Inc. and the other defendants in this action.

### 2.    This Action "Relates To" The *US Airways* Bankruptcy

Even if this action were not "core," and thus deemed to "arise under" the Bankruptcy Code or to "arise in" the *US Airways* bankruptcy, Bank of America's claims clearly "relate to" the *US Airways* bankruptcy – a fact that alone is enough to establish subject matter jurisdiction. An action "relates to" a bankruptcy proceeding if its outcome "*could conceivably have any effect*

22

*on the estate being administered in bankruptcy*." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original, citations omitted), *rev'd on other grounds, Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995). *See also In re Resorts Int'l, Inc.*, 372 F.3d 154, 164 (3d Cir. 2004) ("a key word in this test is 'conceivable' and ... '[c]ertainty, or even likelihood, is not a requirement'"). The present action clearly meets this test because any judgment here could have a preclusive effect on Bank of America's Administrative Claims, just as a resolution of the Administrative Claims would affect the claims in this action. Moreover, the relief that Bank of America seeks here – including orders enjoining the Amended Juniper Agreement, which was central to the Plan of Reorganization, and specifically enforcing the BofA/US Airways Agreement, which also was placed at issue in the *US Airways* bankruptcy – would directly affect matters involved in the *US Airways* bankruptcy.

Nor is the result different simply because the Plan of Reorganization has been confirmed. In fact, the Third Circuit has explicitly rejected the very argument that Bank of America advances for that proposition, namely that, after confirmation, "related to" jurisdiction extends only to "'matters concerning the implementation or execution of a confirmed plan.'" Remand Motion at 18. In *U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552 (3d Cir. 1999), the Third Circuit expressly held that confirmation of a plan "does not change the jurisdictional analysis under § 1334." *Id*. at 556. The court further hold that "[s]ection 1142(b) is a grant of authority to the bankruptcy court that channels, but does not abrogate, the bankruptcy court's jurisdiction post-confirmation." *Id. See also Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997) (declining to adopt the stricter post-confirmation standard because, under either standard, bankruptcy jurisdiction was proper where one party's actions impaired the other's ability to act in accordance with the plan and thus could affect the integrity of the

23

bankruptcy process). More recently, in *Resorts International*, the Third Circuit clarified the applicable standard, noting that "[t]hough courts have varied the standard they apply post-confirmation, the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." 372 F.3d at 166-67. *Cf. Goodman v. Phillip R. Curtis Enter., Inc.*, 809 F.2d 228, 232 (4th Cir. 1987) (noting that confirmation does not itself divest the bankruptcy court of jurisdiction).

This action meets any of these "related to" standards, even the incorrect version posited by Bank of America for post-confirmation proceedings. As noted above, the administrative claims process set out in the Bankruptcy Court's Confirmation Order, and the court explicitly retained jurisdiction over "all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law." Wright Decl., ¶ 4 & Ex. B at 39. The present action, a judgment in which would encompass the same contract claims as are encompassed by the pending Administrative Claims, and which seeks to enjoin an agreement central to the Plan, clearly involves "'matters concerning the implementation or execution of a confirmed plan'" (Remand Motion at 18) – *i.e.*, matters that could directly affect the post-confirmation resolution of claims by the Bankruptcy Court and the viability of the Plan itself. For the same reasons, this action clearly has a "close nexus" to the bankruptcy plan or proceeding and "could conceivably have a[n] effect on the estate." *See Resorts Int'l*, 372 F.3d at 164; *Pacor v. Higgins*, 743 F.2d at 994. Accordingly, this action "relates to" the *US Airways* bankruptcy within the meaning of 28 U.S.C. 1334(b) and this Court has subject matter jurisdiction.

C.    **"Mandatory Abstention" Does Not Apply To This Action**

Bank of America erroneously argues that, even if this Court or the Bankruptcy Court has subject matter jurisdiction, abstention is required under Section 1334(c)(2). But Section

24

1334(c)(2) does not apply to a "core" proceeding; it is triggered only in a case "related to a case under title 11 *but not arising under title 11 or arising in a case under title 11*." 28 U.S.C. § 1334(c)(2) (emphasis added). Because this action is "core," and thus by definition "arises under" title 11 and "arises in" a case under title 11," the abstention rule of Section 1334(c)(2) simply does not apply. *See In re Ahearn*, 318 B.R. 638, 644 (Bankr. E.D. Va. 2003) (mandatory abstention provisions of § 1334(c)(2) do not apply to a core proceeding); *In re LaRoche Indus.*, 312 B.R. at 253 (because the debtor's claim was a core proceeding, it did "not meet the requirements for mandatory abstention"); *Continental Airlines, Inc. v. Chrysler*, 133 B.R. 585, 587 (Bankr. D. Del. 1991) ("the determination that this adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2) would render the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) inapplicable"). That some other criteria for abstention – such as the existence of "related to" jurisdiction – may be present is not relevant, because "[a] party must meet all the requirements of mandatory abstention for relief to be granted." *In re Mobile Tool*, 320 B.R. at 556 (citing *In re LaRoche Indus.*, 312 B.R. 249, 253 (Bankr. D. Del. 2004)).

Moreover, even if this action were not "core," the better-reasoned view of 28 U.S.C. § 1334(c)(2) is that it does not apply, by its terms, where the "State" action in favor of which the federal court is being asked to abstain is the very same federal court action in which the abstention request is made – *i.e.*, where the state action is simply removed to the federal court. The text of the statute plainly contemplates two separate actions – (1) the "proceeding" before the federal court to which the abstention request is made; and (2) "an action" in state court to which the federal court is being asked to defer:

> Upon timely motion of a party *in a proceeding* based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in

> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing *such a proceeding if an*
> *action* is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphases added).  The reference in the text to "a proceeding" and, later,

to "such a proceeding," both refer to the action in which the abstention request is made, whereas

the term "an action" – which follows immediately after the second reference to the "proceeding"

– seems plainly to refer to an action *different* from the "proceeding."  If Congress had meant

them to refer to the same actions, it should have used the term "such proceeding" rather than "an

action," which seems plainly to refer to a different action.  Although courts are split on the issue,

the better judicial reading of the statute holds that the mandatory abstention simply cannot apply

to a removed case because one of the express elements of the statute – a parallel proceeding in

state court in favor of which the court can abstain – is lacking.  As the Ninth Circuit explained in

*Security Farms v. International Brotherhood of Teamsters, Chauffers, Warehousemen &*

*Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997), "inherent in the concept of abstention is the

presence of a pendant state action in favor of which the federal court must, or may, abstain."  *See*

*also In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001); *Greiner v. Columbia Gas Transmission*

*Corp.*, 41 F. Supp. 2d 625, 627 n.4 (S.D. W.Va. 1999) ("abstention is inappropriate where, as

here, the only state civil proceeding was removed to federal court"); *In re Fairchild Aircraft*

*Corp.*, 1990 WL 119650, *2 (Bankr. W.D. Tex. 1990) ("[a]s a general rule, abstention is

inapposite in the context of a removed action in a bankruptcy case").[6]  Courts also have reasoned

---

[6]  *See also In re Adelphia Communications Corp.*, 285 B.R. 127 (Bankr. S.D.N.Y. 2002);
*O'Rourke v. Cairns*, 129 B.R. 87, 89 (E.D. La. 1991); *In re Duval County Ranch Co.*, 167 B.R.
848, 849 (Bankr. S.D. Tex. 1994); *In re AK Servs., Inc.*, 159 B.R. 76, 83-84 (Bankr. D. Mass.
1993); *In re Pacor, Inc.*, 72 B.R. 927, 931 (Bankr. E.D. Pa.), *aff'd*, 86 B.R. 808 (E.D. Pa. 1987),
*appeal dismissed*, 1988 WL 235479 (3rd Cir. 1988); *In re Micro Mart, Inc.*, 72 B.R. 63, 64-5
(Bankr. N.D. Ga. 1987); *see also In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr. C.D.
Cal. 1987); *In re Unity Foods, Inc.*, 35 B.R. 876, 880 (Bankr. N.D. Ga. 1983).

that Section 1334(c) should be read *in pari materia* with section 1452(b) remand, so that "the former applies only in those cases in which there is a related proceedings that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2)." *See Security Farms*, 124 F.3d at 1010.

Although neither the Third nor Fourth Circuit has ruled on this issue, at least one court in the District of Delaware has held that mandatory abstention cannot apply in this context. In *In re PSA, Inc.*, the Bankruptcy Court for the District of Delaware held that "[m]andatory abstention does not apply here for the simple reason that there is no pending state action, an explicit requirement under section 1334(c)(2)." *In re PSA, Inc.*, 2003 WL 22938894, *4 (Bankr. D. Del. 2003). As the court noted, "[a]bstention by its very nature, is an exercise of comity to a sister court. Where there is no such court, the doctrine loses considerable meaning." *Id.*[7]

Courts denying abstention also have reasoned that "[t]o require a pendant state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b), which provides district courts with the authority to remand civil actions properly removed to federal court, in situations where there is no parallel proceeding." *Security Farms*, 124 F.3d at 1010. If Congress had intended that in considering whether to remand a removed action, a court should look to § 1334(c)(2), Congress would have inserted the appropriate cross-reference in § 1452(b), just as a cross-reference to § 1334 was added in § 1452(a). As the court in *In re Adelphia Communications Corp.*, 285 B.R. 127 (Bankr. S.D.N.Y. 2002), noted, "[t]he absence of such a

---

[7] As noted above, some courts have read the statute to allow abstention in a removed action. *See, e.g., Allen v. J.K. Harris & Co.*, 331 B.R. 634, 639 (E.D. Pa. 2005); *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 929 (5th Cir. 1999). But the principal textual argument in favor of this result – which suggests that the phrase "if an action is commenced" can be satisfied by an action "commenced" in the state court but then removed to the federal court, *see Allen*, 331 B.R. at 639 – entirely overlooks the term "an action," which, in the context of the other statutory text, simply cannot be read to refer to the "proceeding" referenced earlier in the statute.

27

cross-reference is striking since removed actions would principally be state court actions and presumably be based on state law." *Id.* at 143 n.46 (quoting *In re 666 Assocs.*, 57 B.R. 8, 12 (Bankr. S.D.N.Y. 1985)). Additionally, "'[i]f [the] Court were to abstain, nothing would happen because there is only one lawsuit. What movant really seeks is remand … back to State Court.'" *Griener v. Columbia Gas Transmission Corp.*, 41 F. Supp. 2d 625, 627 n.4 (S.D. W.Va. 1999) (quoting *Security Farms*, 124 F.3d at 1010 n.10). Ordinary abstention principles would not send the case back to state court, but rather would result in a stay or dismissal of the case. For these reasons, this Court should follow the better view and hold that mandatory abstention is not available in this case.

### D.     Neither Equitable Remand Nor Discretionary Abstention Is Appropriate Here

Contrary to Bank of America's arguments, neither equitable remand pursuant to 28 U.S.C. § 1452(b), nor discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1), is appropriate. Courts look to the same general equitable considerations in applying both of these statutes. *See In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 256 (D. Md. 1998) (stating that "virtually the same (if not the identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of a remand under § 1452(b)"). *See also In re Norrell*, 198 B.R. 987, 998 (Bankr. N.D. Ala. 1996) ("The considerations underlying discretionary abstention and remand are the same.") (citing *Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487, 494 (E.D. La. 1990)).

The bankruptcy court has discretion to abstain if doing so furthers the interests of justice or comity. Section 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a

case under title 11." 28 U.S.C. § 1334(c)(1). Factors courts consider when determining whether

to exercise permissive abstention (and equitable remand) include:

> (1) the court's duty to resolve matters properly before it; (2) the
> predominance of state law issues and non-debtor parties; (3) the
> economical use of judicial resources; (4) the effect of remand on the
> administration of the bankruptcy estate; (5) the relatedness or remoteness
> of the action to the bankruptcy case; (6) whether the case involves
> questions of state law better addressed by the state court; (7) comity
> considerations; (8) any prejudice to the involuntarily removed parties; (9)
> forum non conveniens; (10) the possibility of inconsistent results; (11) any
> expertise of the court where the action originated; and (12) the existence
> of a right to a jury trial.

*In re Ahearn,* 318 B.R. at 644. *See also In re LaRoche Indus. Inc.,* 312 B.R. 249, 252-53 (Bankr.

D. Del. 2004) (listing nearly identical factors).

Bank of America's principal arguments in support of abstention or equitable remand are

that this case will have no effect on the administration of the US Airways estate and the issues

presented involve the application of state law. Remand Motion at 25. These assertions are

incorrect for the reasons stated above. This action certainly will have an effect on the

administration of the US Airways bankruptcy, in particular the resolution of Bank of America's

Administrative Claims and Defendants' objections thereto. That the claim arises under state law

is immaterial; so, presumably, do the Administrative Claims. Indeed, because the claims all arise

under Virginia law pursuant to the parties' contract, *see* BofA/US Airways Agreement, § 8.9.8,

the Delaware Court of Chancery has no special expertise that could be brought to bear in

resolving them. *Cf. LaRoche Indus.,* 312 B.R. at 254 (holding that where the state law issues

involved are "straightforward breach of contract issues" this factor does not favor abstention

because "[a]bstention is best when novel or unsettled issues of state law are involved").

Moreover, it would be far more economical and would conserve judicial and party

resources to allow Judge Mitchell to resolve the present claims. The principal parties to this

action – Bank of America, US Airways, and America West – are parties to the *US Airways* bankruptcy and/or participated actively in it. Moreover, Judge Mitchell has presided over the *US Airways* bankruptcy since its inception and, as noted above, will have to resolve the pending Administrative Claims. Judge Mitchell also in the best position to consider, in the light of the Plan of Reorganization, the proposed injunction that Bank of America seeks to enforce its contractual rights. As noted above, Plaintiff has offered no reason why the Delaware Court of Chancery would be in a better position to handle these matters, nor has it identified any relevant prejudice to itself through resolution by the Bankruptcy Court. Accordingly, because the factors for permissive abstention and equitable remand weigh strongly against remand, the court should not remand the case and should instead transfer the action to the Eastern District of Virginia.

### E.    Bank Of America Has Waived Any Right To Seek Arbitration

Bank of America's final argument – that if this action is to remain in federal court and not be remanded to the Delaware Court of Chancery, Bank of America should be entitled to arbitrate it – is utterly specious. Bank of America clearly waived any right to pursue arbitration by filing this action in the Court of Chancery rather than seeking an arbitral forum as an initial matter, and then seeking summary judgment in that action. Bank of America offers no authority for the proposition that it can file an action and court and then selectively decide, after the fact, which procedural avenues it has waived through such a filing and which it has not.

In fact, the law is clear that filing a lawsuit in *any* judicial forum is a waiver -- particularly where, as here, the plaintiff then actively pursues the case on the merits. *See, e.g., Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) ("an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate"). As Judge Posner explained in *Cabintree*:

> The arbitration clause gives either party the choice of an alternative, nonjudicial forum in which to seek a resolution of a dispute arising out of the contract. But the intention behind such clauses, and the reason for judicial enforcement of them, are not to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums. Cabinetree, which initiated this litigation, could, instead of filing suit in a Wisconsin state court, have demanded arbitration under the contract. It did not, thus signifying its election not to submit its dispute with Kraftmaid to arbitration.

*Id.* For the same reasons, Bank of America cannot bring an action in state court and then, when that action is legitimately removed and transferred to the proper court pursuant to established rules and procedures, change its mind and pursue its already-waived arbitration option.

## IV.  CONCLUSION

For all of the foregoing reasons, Bank of America's motion to remand this action to the Delaware Court of Chancery should be denied.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

David C. McBride (#408)
Martin S. Lessner (#3109)
Christian Douglas Wright (#3554)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
cwright@ycst.com

OF COUNSEL:

Mark H. Epstein
Kristin Linsley Myles
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071-1560
(213) 683-9100

DATED:  December 5, 2005

*Attorneys for Defendants US Airways, Inc.,
US Airways Group, Inc. and America West
Airlines, Inc.*

31

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, Esquire, hereby certify that on December 5, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard L. Horwitz, Esquire
> Kevin R. Shannon, Esquire
> Potter Anderson & Corroon LLP
> 1313 North Market Street
> PO Box 951
> Wilmington, DE 19899-0951
>
> Kenneth J. Nachbar, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on December 5, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record

> YOUNG CONAWAY STARGATT
> & TAYLOR, LLP
>
> *Christian Douglas Wright*
> Christian Douglas Wright (#3554)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899-0391
> (302) 571-6600
> cwright@ycst.com
>
> *Attorneys for Defendants US Airways, Inc.,*
> *US Airways Group, Inc. and America West*
> *Airlines, Inc.*