# TAB 1

Westlaw.

Not Reported in B.R.    Page 1

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

**H**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.
In re FAIRCHILD AIRCRAFT CORPORATION, Debtor.
Gertrude BAUMGART, Individually, and as Personal Representative of the Estate of Hans-Joachim Baumgart and Hanns-Sebastian Baumgart and Babette Baumgart, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Magret KOELLER, Individually, and as Personal Representative of the Estate of Rainer Koeller, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Regine GRIGOLEIT, Individually, and as Personal Representative of the Estate of Udo Grigoleit and as the mother and natural guardian of Bianca Grigoleit, a minor, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Christiane HENNIG, Individually, and as Personal Representative of the Estate of Werner Hennig and as the mother and natural guardian of Thomas Hennig and Thorsten Hennig, minors, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Juge FISS, Individually and as Personal Representative of the Estate of Karl-Heinz Fiss, and as mother and natural guardian of Christopher-David Fiss and

Ann-Cathrin Fiss, minors, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Brigitte NABER, Individually, and as Personal Representative of the Estate of Dr. Gerd Naber, and as mother and natural guardian of Tyll Naber, a minor, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Marie-Luise FRICKE, Individually, and as Personal Representative of the Estate of Martin Fricke, and as the mother and natural guardian of Dirk Fricke, a minor, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Erika HAFERKORN, Individually, and as Personal Representative of the Estate of Herman Haferkorn and Silke Haferkorn and Arne Haferkorn, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Marie-Luise REMMERS, Individually, and as Personal Representative of the Estate of Dieter Remmers, and Ute Remmers, Jons Remmers, Elke Remmers, and Dirk Remmers, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a Fairchild, and Swearingen Aviation Corporation, d/b/a Swearingen, Defendants.
Dorothie SCHMIDT, Individually and as Personal Representative of the Estate of Lothar Schmidt, and as the mother and natural

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                        Page 2

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))

guardian of Stephan Schmidt,
Thomas Schmidt, and Judith Schmidt, minors,
Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Ursala SCHUBERT, Individually and as Personal
Representative of the Estate of
Anurcas Schubert, and as the mother and natural
guardian of Tanja Schubert, a
minor, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Helga TENNHARD, Individually and as Personal
Representative of the Estate of
Klaus Tennhard, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Roger SCHOLZ and Fritz-Brown Scholz,
Individually and as Personal
Representatives of the Estate of Herbert Scholz,
Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Karin SOTONYI, Individually and as Personal
Representative of the Estate of
Tamas Sotonyi, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Gisela SELLMAN, Individually and as Personal
Representative of the Estate of
Heinreich Sellman, Plaintiff,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Kate WINTER, Individually and as Personal
Representative of the Estate of
Hermann Winter, and Birgit Winter and Torsten

Winter, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Peter HELLMER, Individually and as Personal
Representative of the Estate of
Jurgen Hellmer, and Jrma Hellmer, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Janice Marie MORRIS, Individually and as
Personal Representative of the Estate
of Harold Anthony Morris, and Richard Paul Morris
and Andrea Lorraine Morris,
Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
Elsbeth ROSKE, Individually and as Personal
Representative of the Estate of
Joachim Roske, deceased, and Axel Roske and
Detlev Roske, Plaintiffs,
v.
FAIRCHILD AIRCRAFT CORPORATION, d/b/a
Fairchild, and Swearingen Aviation
Corporation, d/b/a Swearingen, Defendants.
**Bankruptcy No. 90-50257C.**
**Adv. Nos. 90-5131C to 90-5149C.**

June 18, 1990.

*REPORT AND RECOMMENDATION ON*
*MOTION TO ABSTAIN OR REMAND*

LEIF M. CLARK, Bankruptcy Judge.

*1 Came on for hearing before this Court the
Plaintiffs' Motions to Abstain or to Remand and the
Defendants' Response thereto in the above
referenced nineteen adversary proceedings.
Pursuant to Bankruptcy Rules 5011(b) and 9027(e),
this court submits this its Report and
Recommendation to the United States District Court
with respect to the Motions. For the reasons set
forth herein, this court recommends that the district

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                      Page 3

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))

court deny the motion for discretionary abstention and the motion for remand in each of the proceedings, on equitable grounds, and further recommends that the district court enter an order pursuant to 28 U.S.C. § 157(c)(5) setting these adversary proceedings on its civil docket for trial of the plaintiffs' claims.

## REPORT
### I. *Background*

The instant adversary proceedings allege that, on February 8, 1988, Hans-Joachim Baumgart, Rainer Koeller, Udo Grigoleit, Werner Hennig, Karl-Heinz Fiss, Gerd Naber, Martin Fricke, Herman Haferkorn, Dieter Remmers, Lothar Schmidt, Anurcas Schubert, Klaus Tennhard, Herbert Scholz, Tamas Sotonyi, Heinreich Sellmann, Hermann Winter, Jurgen Hellmer, Harold Anthony Morris, and Joachim Roske, all West German nationals, were passengers aboard an aircraft designed and manufactured by the defendants and that the aircraft crashed near the town of Kettwig, West Germany, causing the decedents to suffer severe personal injuries that resulted in their deaths. Plaintiffs further allege that the subject aircraft was struck by lightning during flight and that, because of defects in the aircraft's electrical system, the strike rendered the aircraft uncontrollable. Plaintiffs allege that a properly designed and manufactured aircraft would have continued to operate, allowing the aircraft to complete its flight.

Based on the these allegations, the various plaintiffs filed nineteen separate lawsuits against Defendants in the sixteen different district courts of Bexar County, Texas on January 10, 1990, shortly before the expiration of the applicable statute of limitations. Each of the Plaintiffs' Original Petition and Jury Demand alleges causes of action based on strict liability, breach of warranty, negligence and gross negligence. Plaintiffs each seek wrongful death and survival damages, prejudgment interest and exemplary damages under Texas state law.

On February 1, 1990, Defendants filed a voluntary Chapter 11 petition, for reasons having nothing to do with this litigation. [FN1] The bankruptcy case is currently pending before this

court. On April 20, 1990, Defendants removed each of the state court suits to this court, initiating these adversary proceedings. On May 3, 1990, Plaintiffs filed their Motion to Abstain or Remand.

### II. *Motion to Abstain*

Plaintiffs move for discretionary abstention under 28 U.S.C. § 1334(c)(1). Plaintiffs also seek remand of all of the cases to state court under 28 U.S.C. § 1452(b). As a general rule, abstention is inapposite in the context of a removed action in a bankruptcy case. *In re 666 Associates*, 57 Bankr. 8, 12 (Bankr.S.D.N.Y.1985). As Judge Abram correctly observed, the mechanics of abstention

*2 are premised on the existence of *two* proceedings: one in bankruptcy court and a second one in the state court. Indeed if there were only one proceeding, and the court abstained with respect to it, nothing would go forward. In a removed action, there is perforce only one proceeding once removal has been made.

*Id.; but see In re Chiodo*, 88 Bankr. 780, 785 (W.D.Tex.1988). [FN2]

Even if discretionary abstention is appropriately considered in the context of a removed action, [FN3] the court should consider the remand issue first. Section 1452(a) confers broad authority to centralize in a single forum the disparate litigation that typically accompanies a bankruptcy. The statute tends to further the congressional policy underlying the Bankruptcy Reform Act of 1978 that favors a single forum for the adjudication of all matters relating to the bankruptcy case, a clear departure from the fragmentation that marked the administration of cases under the former Bankruptcy Act. *See* H.Rep. No. 595, 95th Cong, 1st Sess 45 *et seq.* (1977); *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 87 n. 40 (1982) ( "[i]ndeed, we note that one of the express purposes of the [Bankruptcy Reform Act of 1978] was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes"); *A.H. Robins v. Piccinin*, 788 F.2d 994, 1014 (4th Cir.1986) ("[n]o progress along estimating these

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                 Page 4

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

contingent claims, however, can be made until all Dalkon Shield claims and suits are centralized before a single forum where all interests can be heard and in which the interests of all claimants with one another may be harmonized"). The broad language of Section 1452(b), governing removal of actions removed in the context of bankruptcy, furthers this policy by permitting the district court the power to decide remand motions on any *equitable* grounds, and to do so without further review. 28 U.S.C. § 1452(b). [FN4]

Thus, if discretionary abstention is available, it should not be employed in a manner that works to undermine this important bankruptcy policy. Abstention is not a favored doctrine in the federal system in any event.

This Court repeatedly has stated that the federal courts have a "virtually unflagging obligation" to exercise their jurisdiction except in those extraordinary circumstances " 'where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' "

*Deakins v. Monaghan,* 484 U.S. 193, 108 S.Ct. 523, 530 (1988), *citing Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 813 (1976) *and Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 14-15 (1983). The federal court's jurisdiction has been properly invoked here. 28 U.S.C. §§ 1334(a), 1452(a); *see* 11 U.S.C. § 502 (relating to the allowance and disallowance of claims). Federal courts are not permitted to use abstention to shirk their duty, as it were, where the jurisdiction of the court has otherwise been appropriately invoked, absent the presence of clear equitable considerations warranting abstention. [FN5]

*3 Section 1452(b) already directs the court to take equitable considerations into account when deciding a motion to remand. 28 U.S.C. § 1452(b) ("the court to which such claim or cause of action is removed may remand such claim or cause of action *on any equitable grounds* "). Thus, as a practical matter, the scope of review on the motion to remand already encompasses the motion for discretionary

abstention. In general, if remand is not appropriate, then neither is discretionary abstention. *In re Chiodo,* 88 Bankr. at 785; *In re Baren,* 47 Bankr. 39, 42-43 (Bankr.N.D.Ill.1984). [FN6]

The court therefore recommends that the motions for discretionary abstention be controlled by the decision on the motions for remand, discussed below.

Plaintiffs did not move for mandatory abstention under 28 U.S.C. § 1334(c)(2). That subsection, by its own terms, requires the timely motion of a party for its invocation. *Id.; In re 666 Associates,* 57 Bankr. 8, 12 (Bankr.S.D.N.Y.1985). As plaintiffs did not request mandatory abstention in their motion, it is now too late to urge it. Mandatory abstention also only applies to those cases which could not have been commenced in a federal court. This matter could have been, as it falls within the diversity jurisdiction of the federal courts. 28 U.S.C. § 1332(a)(2) (suits between citizens of a state and citizens of a foreign state).

This is certainly *not* to say that the considerations enumerated in Section 1334(c)(2) might not inform a court's decision to grant or deny a motion to remand, as the court may remand a case on *any* equitable ground, including grounds identical to those set out in the mandatory abstention section of Section 1334. By the same token, a court may also *deny* a motion to remand *notwithstanding* the presence of the mandatory abstention elements set out in Section 1334(c)(2).

### III. *Motion to Remand*

As noted above, the removal/remand scheme in Section 1452 is an important adjunct to the entire bankruptcy "single forum" scheme envisioned by Congress in the passage of the Bankruptcy Reform Act of 1978. H.Rep. No. 595, 95th Cong, 1st Sess 45 *et seq.* (1977); *Marathon, supra; A.H. Robins, supra.* In service to that policy, the scope of bankruptcy removal is thus considerably broader than that available for ordinary civil actions outside of bankruptcy. *Browning v. Navarro,* 743 F.2d at 1076 n. 21. Section 1452 permits the removal of any action provided (1) the matter is not a Tax

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                    Page 5

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

Court proceeding, (2) the matter is not an enforcement action by a governmental agency exercising its police or regulatory powers, and (3) the district court has jurisdiction of the claim or cause of action under Section 1334. 28 U.S.C. § 1452(a). [FN7]

Outside of bankruptcy, removal to federal district court is not automatically sanctioned. *Adolph Coors Co. v. Sickler,* 608 F.Supp. 1417 (C.D.Cal.1985); 14 Wright, Miller & Cooper, *Federal Practice & Procedure,* § 3739 (1976). Removal petitions not involving bankruptcy are either subjected to an evidentiary hearing to determine whether the removal petition should be granted or are summarily dismissed based on the district court's review of the moving papers. 28 U.S.C. § 1446. By contrast, bankruptcy removal is automatic. The matter once removed stays in the federal system for trial, without further review or consideration by the court, unless a party specifically requests remand. 28 U.S.C. § 1452(a), (b).

*4 A district court's decision *not* to remand a civil action removed under Section 1447 is reviewable for abuse of discretion upon the entry of a final, appealable order. The same court's decision not to remand an action removed under the bankruptcy removal statute, however, is *not* reviewable, not even for an abuse of discretion. *Browning v. Navarro,* 743 F.2d at 1076 n. 21. [FN8]

The differences between the two schemes clearly demonstrate the overarching policy that favors the consolidation of matters relating to a bankruptcy case in the federal system and that disfavors piecemeal disposition of bankruptcy-related matters in multiple forums. The bankruptcy removal statute performs the necessary function of giving the debtor's legal successor-in-interest, the trustee in bankruptcy, [FN9] the unquestioned power to assemble disparate litigation pending in multiple forums into the single forum furnished by Section 1334.

Remand of an action properly removed pursuant to Section 1452 must be undertaken with these policy

considerations in mind. The Fifth Circuit in *Browning v. Navarro* laid out some of the equitable grounds a court might evaluate in deciding a motion to remand an action removed to a federal court in the context of a bankruptcy. They include:

(1) forum non conveniens;

(2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court;

(3) a holding that a state court is better able to respond to questions involving state law;

(4) expertise of the particular court;

(5) duplicative and uneconomic effort of judicial resources in two forums;

(6) prejudice to the involuntarily removed parties;

(7) comity considerations; and

(8) a lessened possibility of an inconsistent result.

*Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984) (decided under the predecessor statute to Section 1452, 28 U.S.C. § 1478(b)). An analysis of these considerations, in light of the underlying intentions of Congress as discussed above, leads me to recommend that remand of these actions to state court is neither necessary, appropriate nor equitable. That analysis follows.

(1) First, there are nineteen lawsuits currently pending before sixteen different judges in Bexar County, all of which were brought by the same lawfirm. Although the plaintiffs' lawyers assure the court that they will seek consolidation of these matters before a single judge as a precondition to remand of these cases, there is no guarantee that all the current judges before whom the cases are pending will consent to such a consolidation. Furthermore, plaintiffs rely on Rule 42 of the Texas Rules of Civil Procedure as their authority for consolidation of these cases. That rule, however, sets out the procedure for maintaining a *class action*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF    Document 23-2    Filed 12/05/2005    Page 7 of 30
Not Reported in B.R.

Page 6

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

in state court. Those standards do not apply to these cases. *See* Tex.R.Civ.P., Rule 42(a). [FN10]

Procedural consolidation of the adversary proceedings in federal district court is, by comparison, quite simple. Rule 42(a), Fed.R.Civ.P. Consolidation reduces the likelihood of inconsistent results, reduces litigation costs, and permits the court to fashion mechanisms for streamlining discovery, pretrial and trial. *See Browning v. Navarro, supra; see also* note 6 *supra.* Because all nineteen of these cases represent similar claims against the same bankruptcy estate, the equities do not favor remand or retention.

*5 Contrary to plaintiffs' assertions, the defendant has never had an opportunity to seek consolidation of these matters in state court. The answer date for these lawsuits fell on a date after the bankruptcy filing, at which time the statutory *automatic* stay halted the litigation. The chapter 11 trustee appointed in this bankruptcy case then elected to exercise her removal rights under Section 1452(a), bringing all nineteen of the lawsuits into a single court, foregoing the more cumbersome and less predictable consolidation process in the sixteen state courts. The trustee has thus elected what appears to her (and to this court) to have been the more efficient means for achieving consolidation of these cases, initiated by this removal application. The trustee is justified in concluding that, from her point of view, the claims adjudication process will be more streamlined before one federal judge than before sixteen state judges. [FN11]

(2) Second, the claim which underlies these lawsuits originates out of an aircraft crash in Germany, raising questions about *forum non conveniens. Browning v. Navarro, supra.* Plaintiffs have ignored this ground for remand, so clearly referenced in *Browning v. Navarro,* and have instead focused on their contention that the *forum non conveniens* doctrine was not available as a grounds for dismissal in the state forum they had originally selected. [FN12] They divine from the bankruptcy trustee's removal to federal court an intent to subvert or avoid this state court rule. Accusing the defendant of "forum shopping,"

plaintiffs conclude that the tactic should not be sanctioned by permitting the removals to stand. [FN13]

We must distinguish between the application of *forum non conveniens* to the case on the merits and the application of the doctrine for purposes of deciding the motions for remand. While related, the focus of the inquiry for remand consideration is slightly different. The proper question to ask, under *Browning v. Navarro,* is whether the state court forum is an inconvenient forum, relative to the federal forum, or vice versa. Plaintiffs complain that the federal forum is "inconvenient" because plaintiffs might be subjected to a dismissal here (on *forum non conveniens* grounds). Defendant correctly notes, however, because the state forum forces it to proceed in an inconvenient forum (i.e., Texas as opposed to West Germany) by virtue of the *Alfaro* decision (note 12, *supra* ), the state forum has *itself* become an inconvenient forum for purposes of considering the remand action. On balance, the more important question to resolve, for purposes of evaluating the remand motion, is whether, as a result of the forum in which this case goes forward (state court versus federal court), one or the other party will be forced to litigate in an inconvenient forum, as demarcated by the *forum non conveniens* doctrine (i.e., Texas versus West Germany). To resolve this question, we must of necessity visit the underlying *forum non conveniens* issue.

*6 In these cases, we note that (1) the accident occurred in West Germany, (2) the pilots were West German, (3) the airline was West German, (4) all of the plaintiffs are West German, and (5) Texas is one of the few states that entertains suits in her state courts initiated by foreign nationals. [FN14] As defendant correctly points out in its responsive brief, the Supreme Court sanctioned the application of *forum non conveniens* dismissal to a case both factually and procedurally similar to these cases. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 265, 266 (1981). The Supreme Court there made the following telling observations, all of which apply here:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

(a) Fewer evidentiary problems were posed by the trial being held where the accident occurred, even though the plaintiffs there also contended that records associated with the design and manufacture of the alleged defective part were in the United States. In the cases at hand, substantial discovery will have to take place in Germany, including depositions of each of the nineteen families, depositions of the airline crew, depositions of the airline company, depositions of air traffic controllers in Germany, and the review of significant documents located in Germany. The plaintiffs' discovery is but one side of the story. Ease of discovery from the point of view of the plaintiffs alone hardly puts an end to the issue.

(b) The defendant in *Piper Aircraft* faced greater problems with impleading third-party defendants in the United States than it would were the action initiated in the country in which the third-party defendants resided. The defendant here faces a similar problem, as it desires to bring in the West German airline, the West German flight crew, and the West German air traffic control entity. If these third-party defendants cannot be impleaded, separate actions for indemnity and contribution would have to be initiated in the foreign forum. It would be more convenient to resolve all the related claims in one trial, especially in view of the "single forum" policy considerations which predominate in bankruptcy. *See* discussion *supra.*

(c) The Court in *Piper Aircraft* found that proceeding in the foreign jurisdiction might also serve the public interest, because, for example, there might be a need to apply the law of the jurisdiction in which the accident took place. In view of the fact that the pilot, the air carrier, the plaintiffs and the situs of the accident in these cases are all West German, West German law will likely apply to the cases under choice of law authorities in both Texas and federal courts. *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979); *Harris v. Polskie Liniee Lotnicze,* 820 F.2d 1000, 1003-04 (9th Cir.1987); *Corporacion Venegonlana de Fomenta v. Vintero Sales Corp.,* 629 F.2d 786, 795 (2d Cir.1980), *cert. denied* 101 S.Ct. 863 (1981). The nation in which the accident took place also has a

strong interest in the litigation because it occurred in its airspace. Here, the West German government has already issued its report indicating *its* conclusions as to fault. Finally all the decedent's survivors are residents of the foreign jurisdiction.

*7 The facts of these cases strongly suggest that the suits should have been initiated in Germany against the air carrier and the pilots as well as the debtor in the first place. There is thus a significant likelihood that, if the *forum non conveniens* doctrine is applied to the cases on their merits, the defendant's position will be upheld, mandating that the actions be instituted in West Germany if they are to be entertained at all. The state court forum which, under *Alfaro,* refuses to afford the defendant an opportunity to even raise this issue is thus *itself* an "inconvenient forum." On this ground, then, remand to that forum would not appear to be equitable. *Browning v. Navarro,* 743 F.2d at 1076 n. 21.

At the very least, there is no equitable reason why these actions *must* be tried in the state court when federal courts are well familiar with mass tort and multi-district litigation similar to these cases and with the application of foreign law to those sorts of proceedings. *See, e.g.,* 28 U.S.C. § 1407; *In re Agent Orange Product Liability Litigation,* 818 F.2d 145 (2d Cir.), *cert. denied,* 108 S.Ct. 695 (1987); *In re Korean Air Lines Disaster of September 1, 1983,* 575 F.Supp. 342 (Jud.Pan.Multi.Lit.1979). [FN15]

(3) The third ground for recommending denial of the motion for remand is that the lawsuits directly involves property of the bankruptcy estate, over which the federal courts have exclusive jurisdiction. 28 U.S.C. § 1334(d). Circuit courts in at least five circuits, including this one, have held that insurance coverage is property of the bankruptcy estate. *See MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 837 F.2d 89 (2d Cir.), *cert. denied,* 109 S.Ct. 176 (1988); *National Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.),* 837 F.2d 325 (8th Cir.1988); *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553 (1st Cir.1986); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.),*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876 (1986); *Minoco Group of Companies, Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of Companies, Ltd.),* 799 F.2d 517 (9th Cir.1986); *In re Davis,* 730 F.2d 176 (5th Cir.1984). The incident from which these lawsuits arose is not the only claim against the insurance coverage now held by the debtor. There is here the very real prospect of multiple competing claims against a single *res,* not only from these multiple plaintiffs in these nineteen separate lawsuits but also from plaintiffs in other covered incidents. These claims should be adjudicated in a single forum to maximize ratable distributions and to minimize the cost of litigation. [FN16] This court is the more appropriate forum to handle competing claims over property of a bankruptcy estate, over which this court has exclusive jurisdiction. *See* 28 U.S.C. § 1334(d).

The bankruptcy estate's property interests are further affected by this litigation because of the deductible and indemnity provisions of the insurance policies. The claims here in question are apparently insured through member companies of Associated Aviation Underwriters, but carries a $2 million annual aggregate deductible, covered by a letter of credit. A call on the letter of credit would further impair estate assets. [FN17] In addition, Transamerica Insurance Company evidently issued a policy for a 20% quota share, reinsured by Americas Insurance Company. The debtor was allocated a self-insured retention of this 20% quota share and agreed to indemnify Americas against liability covered by the policy, entitling Americas to a claim against Fairchild for its 20% share of $8 million of aggregate coverage in excess of the $2 million deductible up to $10 million, an additional $1.6 million of claim against Fairchild. The estate's exposure could thus reach $3.6 million. The plaintiffs' contention that the estate is not affected by this litigation because of the presence of insurance coverage is thus disingenuous.

*8 (4) Fourth, and perhaps most significant, the federal district court has exclusive jurisdiction to hear and determine the allowance and estimation of these claims. 28 U.S.C. § 1334(a); 11 U.S.C. §

502(b), (c); *Katchen v. Landy,* 382 U.S. 323, 328-30 (1966). Even were these cases to be returned to the state court for adjudication on the merits, the state court lacks the jurisdiction to either allow or estimate the claims either for purposes of a bankruptcy plan or for distribution purposes. [FN18]

An action for claims allowance or estimation lies at the very core of the administration of the bankruptcy case. It is an essential prerequisite to the most central features of bankruptcy, the classification of claims, the determination of whether a given class has accepted or rejected a plan, and the pro rata distribution of assets in satisfaction of those claims. Said the Supreme Court in *Katchen v. Landy,*

the expressly granted power to "allow," "disallow" and "reconsider" claims which is of "basic importance in the administration of a bankruptcy estate" is to be exercised in summary proceedings and not by slower and more expensive processes of plenary suit ... The Trustee is enjoined to examine all claims and to present his objections ... and "when ... objections are made, [the court] is *duty bound* to pass on them." ... "The whole process of proof, allowance, and distribution is shortly speaking, an adjudication of interest claimed in *res,* ..." and thus falls within the principle quoted above that bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property within their possession.... "objections shall be heard and determined in a summary way".

*Katchen v. Landy,* 382 U.S. 323, 328-30 (1966); *see also In re Manville Forest Products Corp.,* 896 F.2d 1384 (2d Cir.1990); *In re Chateaugay Corp.,* 111 Bankr. 67, 72 (Bankr.S.D.N.Y.1990); *In re Comstock Financial Services, Inc.,* 111 Bankr. 849, 855 (Bankr.C.D.Cal.1990), *citing Pepper v. Litton,* 308 U.S. 295, 304 (1939); ("[t]hat bankruptcy courts have exclusive jurisdiction over the liquidation and allowance of bankruptcy claims is a principle long recognized and not reasonably disputed"). [FN19]

The fact that a particular claim happens to arise out of a personal injury action does not alter this basic

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

structure of claims allowance and estimation. *In re Chateaugay Corp.*, 111 Bankr. 67, 75-76 (Bankr.S.D.N.Y. March 7, 1990). Section 157(b)(2)(B) parses the allowance or estimation of claims to the district court for distribution purposes, but to the bankruptcy court for all other purposes, including the allowance and estimation of the claim. *Id.;* 28 U.S.C. § 157(b)(2)(B). Subsection (b)(5) of that statute directs that the trial of the liquidation or estimation of personal injury claims be conducted before an Article III tribunal, but only *for distribution purposes.* 28 USC § 157(b)(5); *In re Chateaugay Corp.*, 111 Bankr. at 72.

**\*9** There is a clear distinction drawn in the statute between the *liquidation* of a claim and its *allowance.*
   Liquidation of a claim is but one step in the larger process of allowance. *In re Comstock Financial Services, Inc.,* 111 Bankr. at 856; *In re Chateaugay Corp.,* 111 Bankr. at 75-77. Once this step is completed, the balance of the allowance process is entrusted to the bankruptcy court, which determines under Section 502 whether the claim should be allowed against estate assets, under Section 510 whether the claim should be subordinated, under Section 506 the extent to which the claim should be allowed as a secured claim, under Section 507 the extent (if any) that the claim should be accorded priority status, and so forth. All of these "allowance" questions are directly related to the extent to which a claim will be permitted to share in the estate's assets, either under a confirmed plan or under a scheme of liquidation. [FN20]

Of particular significance is that allowance or estimation of claims *for plan purposes*--even personal injury and wrongful death claims--is part of the core responsibility of the bankruptcy court. "The estimation of such claims by a bankruptcy court for other purposes, such as determining the feasibility of a debtor's plan of reorganization, is permissible and constitutes a "core" proceeding." *In re Chateaugay Corp.,* 111 Bankr. at 72. The statute assigning responsibility of bankruptcy matters to the bankruptcy courts provides, *inter alia,* that

(2) Core proceedings include, but are not limited

to--

(B) allowance or disallowance of claims against the estate ... and estimation of claims or interests *for purposes of confirming a plan* under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate *for purposes of distribution* in a case under title 11.

28 U.S.C. § 157(b)(2)(B) (emphasis added). Congress intended that the bankruptcy court (or the district court, if reference is withdrawn) estimate *for plan purposes* claims such as the one presented by this lawsuit. Noted the district court for the Southern District of New York,

Even assuming that Section 157(b)(5) requires that all personal injury and wrongful death claims be tried in the district courts ... Section 157(b)(2)(B) does not exclude from the definition of core proceedings estimations of personal injury and wrongful death claims for all purposes. The section is limited to estimation "for purposes of distribution." This leaves estimation for other purposes within the jurisdiction of the bankruptcy court.

*In re Johns-Manville Corp.,* 45 Bankr. 823, 826 (S.D.N.Y.1984). The actual liquidation of claims for distribution purposes often follows plan confirmation and can be deferred until that time.

In this case, the likelihood is high that a plan will be proposed, voted on, considered, and ruled on well before this tort litigation is concluded, regardless of the forum. The estate is currently operating under a six-month budget funded by Sanwa Business Credit, designed to have the debtor up to full operational capacity by October 1990. At the same time, the Chapter 11 Trustee is actively pursuing potential purchasers for the company. The upshot of these two factors is that a plan of reorganization is highly likely before the end of the year, well before these cases are ready for a trial on the merits (for distribution purposes).

**\*10** It is equally clear, therefore, that either this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

court or the district court is going to have to consider this claim in some detail *anyway* just to estimate it for plan purposes under Section 502(c). [FN21] Claims estimation must precede confirmation and preferably occur before the disclosure statement is filed. [FN22] *See In re Aquaslide 'N' Dive Corp.,* 85 Bankr. 545, 549 (9th Cir.B.A.P.1987); *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 650-51 (2d Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176 (1988) ("a bankruptcy court *must* estimate 'any contingent or unliquidated claim, the fixing of which would unduly delay the administration of the case' ") (emphasis added).

It makes little or no sense that the estimation process for plan purposes and the adjudication process for distribution purposes proceed before different courts. Hearing both the estimation and the final adjudication of these claims in the federal district court reduces the prospect of "duplicative and uneconomic effort of judicial resources in two forums." *Browning v. Navarro, supra.* It also further reduces the prospect of an inconsistent result *vis-a-vis* the estimation of the claim (which determines the relative strength of a claim for voting on the plan of reorganization) and the ultimate adjudication of the claim (which determines the actual amount of claim to be allowed against the estate's assets).

Litigation costs are also reduced significantly by uniting these dual responsibilities in a single forum. The court which ultimately presides over the liquidation of the claims will have considered the claims in a summary fashion in the claims estimation process, leading in all likelihood to a more efficient trial on the merits and an economic use of judicial resources. [FN23]

Motions for remand typically call for a balancing of competing equities, and there are, of course, some factors which favor remand. These factors do not, on balance, outweigh the reasons for denying the motion to remand, however. For example, plaintiffs point out that the current caseload of the federal district courts in this district are such that the cases will not be reached for a number of years. The cases are likely to take a

number of years in state court as well, however, given the kind of discovery that the parties will have to pursue (including substantial discovery in Germany). [FN24] What is more, the cases might be resolved solely on consideration of the defendants' motion for dismissal based on *forum non conveniens. See Piper Aircraft Co. v. Reyno,* 102 S.Ct. at 266. The claims estimation process will have to be heard by the federal court in any event, so the net time savings to the district court achieved by remanding trial to the state court is illusory. The claims estimation, coupled with the plan eventually submitted, may ultimately render any actual trial unnecessary.

Plaintiffs also argued that, but for bankruptcy, these cases could not have been removed because the defendant is a resident of Texas. 28 U.S.C. § 1445(b). The lack of independent jurisdiction is, according to plaintiffs, yet another equitable reason for remanding the cases. Plaintiffs however fail to distinguish the pre-bankruptcy debtor (Fairchild) from the post-bankruptcy estate, presided over by a chapter 11 trustee. Bankruptcy itself created the legally sufficient grounds for removal under Section 1452(a), a statute that does *not* contain the limitations which Section 1445 places on ordinary removal, evincing a Congressional intent that removal be more generally available (and more generously indulged) in bankruptcy cases.

*11 Finally, the plaintiffs point out that state law issues predominate. In fact, the cases are more likely to be dominated by issues of comity and choice of law involving the laws of Germany, questions of international law involving necessary parties, subject matter and *in personam* jurisdiction, arising out of the inevitable attempt to join the airline and pilot as third party defendants, and attempts at enforcing discovery orders in a foreign jurisdiction. Neither comity nor state law questions control the disposition of these motions. [FN25] *See Browning v. Navarro, supra.*

As a footnote, it should be noted that the jury trial issue which so often attends such motions is not an issue here. Because Section 157(b)(5) requires the district court to adjudicate the merits of cases such

Not Reported in B.R.                                                                 Page 11

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))

as these anyway (assuming the motions to remand are denied as recommended here), the usual concerns about *de novo* review of jury findings made in related proceedings does not come up. *See* 28 U.S.C. § 157(c)(2). Furthermore, the plaintiffs will not be entitled to a jury trial on the allowance or estimation of their claims for plan purposes. *Katchen v. Landy,* 382 U.S. 323, 330 (1966); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782 (1989); *In re Chateaugay Corp.,* 111 Bankr. at 78.

### RECOMMENDATION

For all of the foregoing reasons, this court recommends that the district court enter an order denying the motions to abstain or to remand, that it withdraw the reference with regard to these claims for purposes of estimating the claims under Section 502(c), pursuant to 28 U.S.C. § 157(d), and that it docket these adversary proceedings on its civil docket for trial on the merits for distribution purposes, pursuant to 28 U.S.C. § 157(b)(5). [FN26]

> FN1. Swearingen Aviation is the predecessor in interest of Fairchild. Infighting among Fairchild's competing shareholder groups led to severe lapses in management, followed by layoffs, and eventual pressure from the company's principal lender, Sanwa Business Credit. The bankruptcy was filed in consultation with Sanwa, with an understanding that the debtor would immediately seek the appointment of a Chapter 11 Trustee to take over the company's affairs. A trustee was in fact appointed, with the cooperation and assistance of Sanwa, and is currently operating the company with a post-petition financing facility from Sanwa.

> FN2. With all due respect to my former colleague, Judge R. Glen Ayers, Jr., I must disagree with his interpretation of the interplay between Sections 1334(c) and 1452(b). The premise of Judge Ayers' decision is that there will never be an occasion to invoke abstention other than to

actions removed from state court (at least in cases of mandatory abstention). *In re Chiodo,* 88 Bankr. at 785 ("this [Judge Abram's] reasoning reads subsection (c)(2) out of section 1334"). However, it is not difficult to envision a debtor initiating a compulsory counterclaim by way of an independent action brought in a bankruptcy adversary proceeding, in lieu of asserting the claim in the state court action where the debtor is the defendant. As the matter no doubt involves the same transaction, abstention (even mandatory abstention) could well apply, even though the removal statute had not come into play. The premise of *Chiodo* is thus faulty.

> FN3. Judge Abram suggests that it might be. *See In re 666 Associates,* 57 Bankr. at 12.

> FN4. The prohibition on review of remand decisions is a significant adjunct to the bankruptcy removal process and indicates how important it is to that process that the trustee be afforded a single forum for the speedy adjudication of disputes. It is in the interests of all concerned to get to the merits of the proceeding as promptly as possible. To this end, the decision of a district court made under section 1452(b) is final when entered and cannot be attacked either at the time it is made or later. The decision may not be collaterally attacked, as by mandamus or other proceedings.
> 1 *Collier on Bankruptcy,* ¶ 3.01[5][g], at page 3-99 (15th ed. 1989), *referring to* 1A *Moore's Federal Practice,* ¶ 0.169[2.-1] (2d ed.1987). The policy of promoting a single forum for speedy adjudication becomes most significant when matters close to the core of bankruptcy (such as the allowance or estimation of claims is involved. *See Gardner v. New Jersey,* 329 U.S. 565, 573-74 (1947); *Lesser v. Gray,* 236 U.S. 70, 74 (1915); *United States Fidelity & Guaranty Co. v. Bray,* 225 U.S.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                      Page 12

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))

205, 217 (1915).

FN5. The *Younger* abstention doctrine has no application to the facts of this case. *Younger v. Harris,* 401 U.S. 37 (1971). There are no compelling state interests implicated by resolving a claim against a bankruptcy estate within the federal system. Even in in *Pennzoil Co. v. Texaco, Inc.,* one of the broader applications of the *Younger* doctrine, Justice Powell cautioned that [o]ur opinion does not hold that *Younger* abstention is always appropriate whenever a civil proceeding is pending in a state court. Rather, as in *Juidice,* we rely on the State's interest in protecting "the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 1527 n. 12 (1987).

FN6. The exercise [of] discretionary abstention, provided for in section 1334(c)(1), would essentially consist of an examination of the same equitable considerations addressed by the Court by motions to remand. *In re Baren,* 47 Bankr. at 44.

FN7. The general removal statutes applicable to civil actions removed to federal court, by contrast, render removal subject to whatever limitations might be placed on removal by other federal laws, prohibit removal if one of the defendants is a resident of the state in which the action is brought, and exclude civil actions against railroads, their receivers or trustees, civil actions against common carriers, their receivers or trustees (if less than $10,000) and civil actions arising under state worker compensation laws. 28 U.S.C. §§ 1441, 1445.

FN8. Review may be had of an order denying a motion to remand in the narrow circumstance in which the district court lacks subject matter jurisdiction of the entire underlying matter. *Browning v. Navarro,* 743 F.2d at 1076 n. 21. That is not the situation here, however. The subject matter of the litigation is the adjudication of claims against the estate, a matter clearly arising under the Bankruptcy Code (11 U.S.C. § 502). 28 U.S.C. § 1334(b).

FN9. The chapter 11 trustee in this case was appointed approximately a month after the case was filed and was given control of and responsibility for the company and its assets. She was, of course, not involved with the company when this lawsuit was instituted. She has inherited this claim just as she inherited all of the other claims against the estate.

FN10. Under that rule, an action can only be maintained as a class action if it meets the prerequisites of subsection (a), which in turn specifies that the court find that "the class is so numerous that joinder of all members is impracticable." Tex.R.Civ.P., Rule 42(a). Nineteen plaintiffs is a lot of plaintiffs, but their joinder is not impracticable. One wonders why they were not joined in a single lawsuit in the first place, unless the plaintiffs sought to exploit whatever procedural advantages (or disadvantages, from the defendant's point of view) might accrue from having multiple cases before different judges. Perhaps they hoped to increase the chances of a large award by having nineteen chances at it.

FN11. This is especially true because the ultimate issue of allowance of the claims against the estate will be decided by the federal court. *See Katchen v. Landy,* 382 U.S. 323, 330 (1966); *Pepper v. Litton,* 308 U.S. 295, 304 (1939); *In re Manville Forest Products Corp.,* 896 F.2d 1384 (2d Cir.1990), *cited in In re Chateaugay Corp.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

111 Bankr. 67 (Bankr.S.D.N.Y.1990).

FN12. The Texas Supreme Court recently decided that *forum non conveniens* is not a valid defense or ground for dismissal of an action brought in state court. *Dow Chemical Co. v. Alfaro,* 33 Tex.Sup.Ct.J. 326 (March 28, 1990). The rule is different in federal court. *Piper Aircraft Co. v. Reyno,* 102 S.Ct. 265, 266 (1981); *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504 (1946).

FN13. In point of fact, removal is *typically* invoked to avoid an unfavorable forum. In fact, it is one of the more common routes by which diversity cases find their way into federal court. The underlying rationale for diversity jurisdiction was the perception that a foreign defendant might not like the local forum the local plaintiff had picked for it. The theory of diversity was that it would afford the foreign defendant an impartial forum before a federal tribunal appointed by the national government.

FN14. Local jury awards are also fast giving our city the reputation as a great place to bring a personal injury suit, a fact certainly not lost on plaintiffs' counsel, who no doubt pursue this case on a contingency fee, giving them nearly as great an economic interest in the locale and ultimate outcome of the litigation as the plaintiffs themselves.

FN15. Plaintiffs could hardly complain that West Germany is an inconvenient forum for them, as they are West German nationals.

FN16. The insurance company is covering the cost of defending the nineteen suits involved in these motions for remand, but that cost is (or may be) billed against the debtor's deductible. The greater the cost of defense, the greater the burden on the debtor and its creditors.

FN17. The court recognizes that the letter of credit is itself not property of the estate and that the pledge against estate assets to secure that letter of credit already fully encumbers those assets to the full exposure of the letter of credit. However, if the claims are ultimately resolved in a fashion that does not call for the letter of credit to be presented and the letter is ultimately cancelled or expires by its terms, then the encumbrance on estate assets will be released, to the benefit of the estate and its other creditors.

FN18. Here is how the estimation process works and what its role is in the overall reorganization of the debtor's estate. A contingent or unliquidated claim (such as this tort action) is nonetheless a claim which can be discharged in the bankruptcy, regardless whether it has been reduced to judgment before confirmation of the plan. *See* 11 U.S.C. §§ 101(4) (definition of a claim), 1141(d)(1) (all claims, allowed or otherwise, are discharged and bound by the confirmation of a plan); *In re American Properties, Inc.,* 30 Bankr. 239, 246 (Bankr.D.Kan.1983); *In re White Farm Equipment Co.,* 38 Bankr. 718, 724 (D.Ohio 1984). Only allowed claims are counted for purposes of voting on a plan of reorganization. 11 U.S.C. §§ 1126(a), 1129(a)(8). Section 502(c) then provides that (c) There shall be estimated for purposes of allowance under this section-- (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case ... 11 U.S.C. § 502(c). In the usual case, a plan of reorganization is likely to be presented and considered long before the average pending tort litigation gets to trial, regardless of the forum.

FN19. Lest there be any confusion, a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

removed case such as this, in which the debtor is the defendant, is precisely the *opposite* of *Marathon* (where the debtor, as *plaintiff* tried to hale a third party into bankruptcy court). There is no question about the jurisdiction of this court over this case, because it involves, at bottom, nothing more than a determination of the amount of the claim the plaintiffs will be entitled to assert against property of the estate.

FN20. The 1984 amendments entrusted the *trial* of personal injury tort and wrong death actions to an Article III tribunal. 28 U.S.C. § 157(b)(5); *In re Poole Funeral Chapel, Inc.,* 63 Bankr. 527, 532 (Bankr.N.D.Ala.1986). If the claim is not allowable as a matter of law, however, then even for distribution purposes no trial would be necessary and the bankruptcy court could summarily dispose of the allowance question under Section 157(b)(2)(B). *In re Chateaugay Corp.,* 111 Bankr. at 76-77.

FN21. Section 502(c) is a *mandatory* provision. Contingent and unliquidated claims must be estimated by the court for purposes of a plan, even if noone requests it, in order to go forward with the plan confirmation process itself. *In re Continental Airlines Corp.,* 64 Bankr. 865, 868 (Bankr.S.D.Tex.1986); *In re Curtis,* 40 Bankr. 795, 801 n. 7 (Bankr.D.Utah 1984); *In re Nova Real Estate Investment Trust,* 23 Bankr. 62, 65 (Bankr.E.D.Va.1982).

FN22. The Chapter 11 Trustee will need to know how much the claims are in order to develop an appropriate responsive plan. Creditors will be entitled to know the estate's exposure to evaluate whether the plan eventually proposed is one that will work, that is fair to them, and is worthy of their support. Even prospective purchasers will want to know the estate's

exposure before "buying into" the debtor.

FN23. Plaintiffs argue in their post-submission brief that "the only possible reason for retaining the case in federal court is to protect the estate. Statistically, Defendant's estate has only a one-in-ten chance of successfully confirming a reorganization plan." Plaintiffs' Supplemental Brief, p. 5-6. The argument is a red herring, as the success rate of reorganization cases has no legal, factual, or equitable bearing on the locus of claims litigation. The quoted statistic is misleading anyway. The success rate for *large* reorganization cases is considerably higher.

FN24. The defendant will no doubt need to depose each of the plaintiffs and their families, all of whom are located in Germany. Discovery will also be needed of the German airline and its flight crew, German officials who investigated the accident, and German air traffic controllers.

FN25. Plaintiffs also attempt to urge what they contend are the facts of the case as a basis for abstention or remand. These facts are at this point presumably contested. The motion at hand is not a motion for summary judgment.

FN26. The recommendation to withdraw the reference as to these claims for estimation purposes grows out of this court's belief that resolution of all of these related issues in a single forum is the result most consistent with this report's findings and legal analysis. This court acknowledges that the estimation of these claims for plan purposes could, under the statute, be accomplished by the bankruptcy court as well. 28 U.S.C. § 157(b)(2)(B); *In re Chateaugay Corp.,* 11 Bankr. at 75-76.

Not Reported in B.R., 1990 WL 119650

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.

Not Reported in B.R., 1990 WL 119650 (Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

**(Cite as: 1990 WL 119650 (Bankr.W.D.Tex.))**

(Bankr.W.D.Tex.), 4 Tex.Bankr.Ct.Rep. 308

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

Not Reported in B.R.

Page 1

Not Reported in B.R., 2003 WL 22938894 (Bankr.D.Del.)

**(Cite as: 2003 WL 22938894 (Bankr.D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States Bankruptcy Court,
D. Delaware.
In re PSA, INC, a Delaware Corporation, and
affiliates, Debtors.
PSA, INC., Plaintiff,
v.
INTER-WORLD COMMUNICATIONS, INC.,
Corpserve, S.A. de C.V., World Center of
Video Conferences, S.A. de C.V., Dean Hollis
Velazco, and John Remke,
Defendants.
**Nos. 00-3570(CGC), 00-3571(CGC),
00-3572(CGC), 00-3718(CGC), 003719(CGC),
00-
3725(CGC), ADV. 02-5565.**

Dec. 8, 2003.

**Background:** Chapter 11 debtors brought
adversary proceeding against other participants in
joint venture to operate telephones in Mexico, and
against related entities, asserting claims for turnover
of estate property, fraudulent transfers, breach of
contract, and conversion of estate assets.
Defendants filed motion to abstain.

**Holdings:** The Bankruptcy Court, Case, J., held
that:
(1) abstention was not warranted on grounds that
proceeding was non-core breach of contract action;
(2) mandatory abstention did not apply, given
absence of pending state-court action; and
(3) permissive abstention was not warranted.
Motion denied.

West Headnotes

**[1] Bankruptcy** ☞2103
51k2103 Most Cited Cases

**[1] Federal Courts** ☞47.5
170Bk47.5 Most Cited Cases
Bankruptcy court was not required to abstain from
hearing adversary proceeding in which Chapter 11
debtors asserted claims against other participants in
joint venture and related entities on grounds that
proceeding was non-core breach of contract action,
inasmuch as some of debtors' claims, alleging
fraudulent transfers and seeking turnover of estate
property, were core claims, while other claims, such
as claims for breach of contract and conversion,
were, at the least, "related to" claims based
substantially on state law, and appropriate remedy,
to the extent one was required, was to seek
withdrawal of the reference, rather than abstention
in favor of non-existent proceeding in the Republic
of Mexico, in that withdrawal of the reference
would solve any jurisdictional and jury trial issues,
and denial of withdrawal motion would be explicit
determination that bankruptcy court was proper
forum. 28 U.S.C.A. § 157.

**[2] Federal Courts** ☞47.5
170Bk47.5 Most Cited Cases
Mandatory abstention did not apply in adversary
proceeding for which there was no parallel pending
state-court action. 28 U.S.C.A. § 1334(c)(2).

**[3] Federal Courts** ☞47.5
170Bk47.5 Most Cited Cases
Permissive abstention was not warranted in Chapter
11 debtors' adversary proceeding against other
participants in joint venture and related entities, in
which debtors asserted claims for turnover of estate
property, fraudulent conveyance, breach of contract,
and conversion of estate assets, inasmuch as claims
would have no adverse impact on efficient
administration of debtors' estates, state-law issues
did not predominate litigation, there was no pending
parallel action in another court, there was basis for
federal diversity jurisdiction, proceeding was
related to main bankruptcy case and was core
proceeding, proceeding's outcome would have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                              Page 2

Not Reported in B.R., 2003 WL 22938894 (Bankr.D.Del.)

**(Cite as: 2003 WL 22938894 (Bankr.D.Del.))**

direct effect on creditor distributions, and jury trial could be conducted by either bankruptcy court, with parties' express consent and special designation by district court, or by district court, if defendants held and asserted right to jury trial. Bankr.Code, 11 U.S.C.A. § 548; 28 U.S.C.A. §§ 157(b)(2)(E), (e), 1332, 1334(c)(1).

Sarah Robinson Borders, Jonathan W. Jordan, King & Spalding LLP, Atlanta, Georgia, and Brendan Linehan Shannon, Sean M. Beach, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Debtors and Debtors in Possession.

Marla R. Eskin, Mark T. Hurford, Campbell & Levine, LLC, Wilmington, Delaware, and David B. Salzman, Campbell & Levine, LLC, Pittsburgh, Pennsylvania, for Defendants.

*MEMORANDUM OPINION*

CASE, Bankruptcy J.

*INTRODUCTION*
\*1 The issue before this Court is whether to abstain from hearing the pending adversary proceeding (Doc, # 5). After considering the parties' briefs and oral argument, the Court denies the Motion.

*FACTS*
PSA, Inc., ETS Payphones, Inc, and related debtor entities (collectively the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code on September 11, 2000 and September 21, 2000 (collectively the "Petition Date"). On September 10, 2002, Debtors filed an Adversary Complaint for turnover of property of the estates, fraudulent conveyance, breach of contract, and conveyance of assets of the estate against Inter-World Communications, Inc. ("IWCI"), Corpserve, S.A. de C.V. ("Corpserve"), World Center of Video Conferences, S.A. de C.V. ("WCVC"), Dean Hollis Velazco ("Hollis"), and John Remke ("Remke") (collectively the "Defendants").

These claims arose out of a relationship among the parties that began in 1998, when the Debtors and IWCI, Hollis and Remke negotiated an agreement to form a joint business venture to operate

telephones in Mexico. On November 20, 1998, Pay Phones of the Americas, LLC ("POA") was formed and a certificate of formation was filed with the Delaware Secretary of State on November 30, 1998. POA's principal place of business was in Duluth, Georgia.

Debtors paid approximately $7,000,000 in cash and equipment from 1998 through 2000 to IWCI, Hollis, Remke, Corpserve and WCVC in exchange for (1) 12,000 site agreements for pay telephone locations in Mexico, (2) 133 Elcotel pay telephones, (3) licenses from Mexico telecommunications to operate business in Mexico, (4) 60% ownership in POA (IWCI would own the other 40% of POA) and (5) an additional 12,000 sites for pay telephone locations in Mexico. None of these items were ever delivered to Debtors.

On January 8, 2003, the Defendants filed a Motion to Dismiss for Insufficiency of Service of Process Pursuant to Federal Rule of Bankruptcy Procedure 7012 and a Motion to Abstain Pursuant to 28 U.S .C. § 1334(c)(1) (Doc. # 5). Judge Kevin J. Carey's Order, dated February 21, 2003, denied Defendants' Motion to Dismiss, ordered Debtors to serve Defendants Corpserve, WCVC, Hollis and Remke pursuant to the Hague Convention on Service abroad and Judicial Extrajudicial Documents in Civil and Commercial Matter, and reserved the Defendants' Motion to Abstain (Doc. # 10). Thus, the only issue before this Court now is whether to abstain from hearing this Adversary Proceeding. [FN1]

*DISCUSSION*
A. 28 U.S.C. Section 157

[1] Defendants assert that the Court should abstain because Debtors' Complaint is a non-core breach of contract action. In relevant part, 28 U.S.C. section 157 states:
   (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
   (b)(1) Bankruptcy judges may hear and determine

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                          Page 3

Not Reported in B.R., 2003 WL 22938894 (Bankr.D.Del.)

**(Cite as: 2003 WL 22938894 (Bankr.D.Del.))**

all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ...
**\*2** (b)(2) Core proceedings include, but are not limited to -
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...
(b)(3) The bankruptcy judge shall determine ... whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to the case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to the case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
28 U.S.C. § 157.

The substance of Debtors' Complaint is as follows. In Count I, Debtors seek turnover of property of the estates, pursuant to 11 U.S .C. sections 541 and 542 , that Defendants allegedly acquired with funds provided by Debtors. Debtors assert that the property includes pay telephones, a site lease agreement, licenses, and a operating entity, allegedly causing damages in the amount of $9,000,000. In Count II, Debtors seek recovery of $7,000,000 fraudulently conveyed to Defendants to create and operate POA. Count III seeks damages for breach of contract relating to the formation, funding, and operation of a joint business venture with the Defendants. Counts IV and V allege conversion of corporate assets that belonged in part

to Debtors.

In the Third Circuit, a proceeding is a core proceeding "(1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *In re Integrated Health Services, Inc.,* 291 B.R. 615, 618 (Bankr.D.Del.2003), *quoting Halper v. Halper,* 164 F.3d 830, 836 (3d Cir.1999); *see also Sun Healthcare Group, Inc. v. Levin (In re Sun Healthcare Group, Inc.),* 267 B.R. 673, 678 (Bankr.D.Del.2000); *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990). Simply put, if the claim could not have been brought in the absence of a bankruptcy filing, the claim is a core proceeding. *See In re Omna Medical Partners, Inc.,* 2000 WL 33712302, at \*2 (Bankr.D.Del. June 12, 2000) (holding claim for turnover of property of the estate pursuant to 11 U.S.C. § 542 is a core proceeding where claim arises solely because of bankruptcy filing).

At the least, a number of the claims asserted are core claims-i.e ., fraudulent transfer and turnover. [FN2] Other claims may or may not be core-i.e., breach of contract and conversion. [FN3] However, even if such claims are non-core, they are based substantially on Delaware law. The appropriate remedy, if one is required, is not to abstain in favor of a non-existent proceeding in the Republic of Mexico but rather to seek a withdrawal of the reference. A withdrawal by the United States District Court ("District Court") would solve any jurisdictional and jury trial issues; likewise, if the District Court declined to withdraw the reference, it would be an explicit determination that the bankruptcy court is the appropriate forum. Finally, this Court could enter final judgments on the core issues and make recommendations to the District Court on the non-core issues. Any of these options address the jurisdictional question in a manner that is superior to abstention where there is no pending proceeding in a state court.

B. Abstention Under 11 U.S.C. Section 1334

\*3 Section 1334 of the Bankruptcy Code provides for both mandatory and permissive abstention.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                    Page 4

Not Reported in B.R., 2003 WL 22938894 (Bankr.D.Del.)

**(Cite as: 2003 WL 22938894 (Bankr.D.Del.))**

1. 28 U.S.C. Section 1334(c)(2)--Mandatory Abstention

[2] The Bankruptcy Code provides for mandatory abstention if the matter is non-core and an action is commenced and can be timely adjudicated in state court. *See In re Integrated Health Services,* 291 B.R. at 618. In particular, section 1334(c)(2) states:

[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Mandatory abstention does not apply here for the simple reason that there is no pending state action, an explicit statutory requirement under section 1334(c)(2).

2. 28 U.S.C. Section 1334(c)(1)--Permissive Abstention

[3] Courts consider twelve factors when deciding whether to abstain under section 1334(c)(1):

1. the effect or lack thereof on the efficient administration of the estate;
2. the extent to which state law issues predominate over bankruptcy issues;
3. the difficulty or unsettled nature of the applicable state law;
4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;
5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. the substance rather than form of an asserted "core" proceeding;
8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. the burden of the court's docket;
10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. the exercise of a right to a jury trial; and
12. the presence in the proceeding of non-debtor parties.

*Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.),* 289 B.R. 27, 29 (Bankr.D.Del.2003). [FN4]

Courts consider these factors on a case-by-case basis given the facts and circumstances of each case: "Evaluating the twelve factors is not a mathematical formula." *In re Sun Healthcare Group,* 267 B.R. at 679, *citing Trans World Airlines, Inc. v. Karabus Corp.,* 196 B.R. 711, 715 (Bankr.D.Del.1996). Under the circumstances of this case, the factors do not weigh in favor of abstention. For example, the Court finds that hearing Debtors' claims will have no adverse impact on the efficient administration of the bankruptcy estates. Further, state law issues do not predominate the litigation and, even if they did, bankruptcy courts frequently are asked to pass on questions of state law, such as when determining the allowability of various claims, breach of contract and tort. *See In re HQ Global Holdings, Inc.,* 293 B.R. 839, 845 (Bankr.D.Del.2003). And, again, because there is no pending proceeding where a state court could apply its own law, this factor's importance is minimal.

*4 In addition, the parties acknowledge that there is no unsettled state law at issue here and no state court or other federal court proceeding already commenced. *See In re Valley Media,* 289 B.R. at 30 (holding that the court's abstention would require the plaintiff to file a new complaint because a state court proceeding was never filed, which would impose additional costs and attorneys fees for the new filing and cause delay in resolution of the dispute). Further, as Defendants concede, there is independent basis for federal diversity jurisdiction. 28 U.S.C. § 1332. Further, the adversary proceeding is related to the main bankruptcy case in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                    Page 5

Not Reported in B.R., 2003 WL 22938894 (Bankr.D.Del.)

(Cite as: 2003 WL 22938894 (Bankr.D.Del.))

that the outcome of this action will have a direct effect on the distributions to creditors and is a core proceeding under 11 U.S.C. section 548 and 28 U.S.C. section 157(b)(2)(E). The breach of contract and conversion causes of action are in turn closely related to the chapter 11 case under 28 U.S.C. section 1334. It would be difficult to sever the state law claims since all of the causes of action involve the same facts and severing would not lead to a resolution of those issues by an appropriate state court. There is also no evidence that a different court will hear this matter any more quickly than this Court or that Debtors are forum shopping by seeking this Court's jurisdiction. Although Defendants seem to assert a right to jury trial, there is no suggestion that such a right would be available in Mexico while, pursuant to 28 U.S.C. section 157(e), "[i]f the right to a jury trial applies in a proceeding ..., the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." [FN5]

Last, this case has been pending for over a year in this Court; Defendants' motion to dismiss has previously been denied. To abstain at this point, with no other action pending, would do little to further this case to a quick, efficient resolution. Abstention at this time would result in Debtors incurring additional, unnecessary litigation expenses. Under the circumstances of this case, it is not in the interest of justice for the Court or the parties to abstain from this adversary proceeding.

Beyond the weighing of the factors is the fundamental flaw that there is no parallel state proceeding pending; indeed, it appears no such proceeding has been or is currently contemplated. At most, there may be a Mexican proceeding. Although section 1334(c)(1) does not explicitly require a pending state proceeding, at least one Circuit has held that "abstention can exist only where there is a parallel proceeding in state court." *In re Integrated Health Services,* 291 B.R. at 621, *quoting Sec. Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1009 (9th Cir.1997). This makes sense. Abstention, by its nature, is an exercise of comity to a sister court. Where there is no such court, the

doctrine loses considerable meaning. [FN6]

*CONCLUSION*

*5 For the foregoing reasons, the Defendants' Motion for Abstention under the 28 U.S.C. section 1334 is denied.

  Counsel for plaintiff is to submit an order.

> FN1. Although Debtors filed an Amended Complaint, it was withdrawn on the same day it was filed, October 22, 2003.

> FN2. Whether these claims have merit is not before the Court.

> FN3. At the least, these are "related to" claims.

> FN4. *In re Integrated Health Services,* 291 B.R. at 619; *In re Sun Healthcare Group,* 267 B.R. at 678; *In re Omna Medical Partners, Inc.,* 2000 WL 33712302, at *2; *Cont'l Airlines, Inc. v. Allen (In re Cont'l Airlines, Inc.),* 156 B.R. 441, 443 (Bankr.D.Del.1993); *TTS, Inc. v. Stackfleth (Matter of Total Technical Services, Inc.),* 142 B.R. 96, 100 (Bankr.D.Del.1992); *See also Trans World Airlines, Inc. v. Karabus Corp.,* 196 B.R. 711 (Bankr.D.Del.1996).

> FN5. Of course, a jury trial could be held as of right in District Court.

> FN6. Certainly, other remedies may exist where there is no parallel proceeding-a motion to dismiss for lack of jurisdiction or for forum non conveniens, a motion to transfer venue, or the like come to mind. But abstention is different and these facts do not fit that doctrine.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.
John J. O'NEILL, Trustee,
v.
NEW ENGLAND ROAD, INC. et al. (In re Neri
Bros. Construction Corp .).
**No. 3:99MC 309 SRU.**

Feb. 28, 2000.

RULING RE; DEFENDANTS' RENEWED
MOTION TO WITHDRAW THE REFERENCE

UNDERHILL.
*1 Pending before this court is a Renewed Motion
to Withdraw the Reference filed by defendants,
New England Road, Inc., Alan Neri, Jr ., Helen
Neri, and John Neri (collectively the "defendants").
FN1 Defendants seek to have the court withdraw
the reference of the adversary proceeding currently
pending in the bankruptcy court (the "Adversary
Proceeding"), in order to have a trial by jury in this
court. The plaintiff, John J. O'Neill, as chapter 11
trustee of the estate of Neri Bros. Construction
Corp. (the "debtor"), opposes defendants' motion
primarily on the ground that the defendants have
waived any right they had to a jury trial. For the
following reasons, the defendants' motion (doc. # 1)
is DENIED.

> FN1. Alan Neri, Sr., who is not a party to
> the present motion, filed a proof of claim
> in the underlying bankruptcy action. In
> response, the trustee filed an objection
> questioning the validity of the proof of
> claim and setting forth a counterclaim for
> return of excessive salary.

BACKGROUND

The debtor in this case was formed in or about

1967, and during its years of operation, was
engaged in the business of constructing roads,
bridges and other large construction projects. In
connection with that business, the debtor owned a
number of pieces of machinery and equipment.
During most of its history, Alan Neri, Sr. ("Neri,
Sr. ") served as the debtor's president, controlling
shareholder and director, while the remaining
officers, directors and shareholders were members
of the Neri family.

In early 1990, Neri, Sr., along with other family
members, allegedly created the defendant, New
England Road, Inc. ("NE Road"), to engage in the
same business as the debtor. After the formation of
NE Road, the debtor allegedly began to rent a
number of pieces of its machinery and equipment to
NE Road for substantially less than their reasonable
rental value. In addition, at various times during
1993 and 1994, Neri, Sr. and the other Neri family
members allegedly caused the debtor to allow NE
Road to use machinery and equipment at no charge.
On January 17, 1995, the debtor filed a voluntary
bankruptcy petition for relief under chapter 11 of
the United States Code.

On or about October 31, 1995, Alan D. Sibarium
was approved as the original chapter 11 trustee of
the debtor's estate (the "trustee"). On January 16,
1997, the trustee filed the underlying Adversary
Proceeding asserting claims arising out of the
alleged failure by defendant, NE Road, to pay
reasonably equivalent value to the debtor for the use
of the debtor's machinery and equipment over a
number of years. The complaint further alleges
claims of improper diversion of corporate
opportunities, breach of fiduciary duty, disregard of
corporate veil and participation in breach of
fiduciary duty, against the individual defendants,
Alan Neri, Sr., Alan Neri, Jr., Helen Neri and John
Neri (collectively the "individual defendants"). On
March 12, 1997, each of the defendants filed a
separate answer to the trustee's complaint. Unlike
the other defendants, NE Road's answer included

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2

Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

several counterclaims. Also on March 12, 1997, the defendants filed a motion to withdraw the reference. That motion was denied on April 27, 1999, by this Court based on several procedural deficiencies.

*2 After the initial complaint was filed in 1997, the trustee filed several amended complaints, the last one on October 2, 1997, seeking money damages on all but one count and punitive damages and attorneys fees on all counts. In response to each complaint, the defendants continued to file separate answers and jury claims. In addition to jury claims, NE Road also included a counterclaim in its answers. In its counterclaim, NE Road alleges breach of implied contract, unjust enrichment, quantum meruit, and set-off and/or recoupment. FN2 NE Road also filed a proof of claim for $9,019.91 in the bankruptcy case on February 26, 1998. On June 14, 1999, NE Road replaced its proof of claim with a request for payment of administrative expenses pursuant to section 503(a) and (b)(1), under the theory that the amount claimed related to post-petition services and expenses. On June 24, 1999, the defendants filed a renewed motion to withdraw the reference. In conjunction with this renewed motion, defendants, Alan Neri, Jr., Helen Neri, and John Neri, withdrew their prior jury claims, leaving only NE Road with a jury claim in the case.

> FN2. The first three counterclaims listed above relate to a post-petition agreement allegedly entered into between NE Road and the trustee regarding the auctioning of the debtor's assets. The last claim made in the counterclaim, seeking set-off and/or recoupment, relates to the pre-petition relationship between NE Road and the debtor.

In support of the present motion, defendants argue that a withdrawal of the reference is appropriate because: (1) NE Road timely requested a jury trial; (2) NE Road is entitled to a jury trial based on the plaintiff's state law claims; (3) NE Road's substitution of its proof of claim for an administrative claim avoids waiver of its right to a jury trial; and (4) judicial economy requires a

withdrawal of the reference. In essence, the defendants argue that all of the trustee's causes of action are based on the debtor's pre-petition relationship with NE Road and are interwoven with the trustee's claims against the individual defendants.

Accordingly, the argument goes, while the trustee's action against the individual defendants may proceed in the bankruptcy court, NE Road is entitled to a jury trial in the district court. Therefore, defendants argue, judicial economy requires that both the trustee's claims and NE Road's counterclaims be tried together before a jury in this court.

In response, the trustee argues that, by "filing counterclaims in this Adversary Proceeding and filing a claim for allowance of an administrative expense, New England Road has submitted to the jurisdiction of the bankruptcy court and thereby waived any right it may have had to a jury trial in this Adversary Proceeding." Pl.'s Mem. of Law in Opp'n to Defs.' Renewed Mot. to Withdraw the Reference at 3-4. The trustee further argues that all of the issues presented in the Adversary Proceeding are core issues and are properly before the bankruptcy court. Finally, the trustee argues that discretionary withdrawal by this court is unwarranted under the present circumstances.

DISCUSSION

A. *Standard for Withdrawal of the Reference*

District courts have original jurisdiction over all civil proceeding arising under Title 11 of the United States Code. 28 U.S.C. § 1334(b). Each district court may provide that any or all cases or claims arising in or relating to bankruptcy matters may be referred to the bankruptcy judges for the district. In this district, by standing order issued pursuant to 28 U.S.C. § 157(a), FN3 the district court refers all cases arising under Title 11 to the bankruptcy court. See General Order of Reference (Sept. 21, 1984). The statute authorizing references of cases and claims to the bankruptcy court also provides that the district court may withdraw the reference "for cause

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 3

Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

shown." 28 U.S.C. § 157(d).

> FN3. Section 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

**\*3** Section 157(d) provides that:
The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.
The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of a proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The Second Circuit requires district courts to examine a number of factors when determining whether to withdraw a matter from the bankruptcy court. See *In re Orion Pictures Corp* ., 4 F.3d 1095 (2d Cir.1993), cert. dismissed, 511 U.S. 1026 (1994). "A district court considering whether to withdraw a reference should first evaluate whether the claim is core or non-core ..." *Id.* at 1101. After the district court determines whether a proceeding is core or non-core, the court " should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion,* 4 F.3d at 1101. Because the classification of a matter as core or non-core is not wholly determinative, these factors of judicial economy must be considered regardless of the outcome of the first factor. See *In re Houbigant,* 185 B.R. 680, 686 (S.D.N.Y.1995).

### B. *Core v. Non-Core Proceedings*

A determination of whether a proceeding is a core proceeding under Title 11 depends on the nature of

the proceeding. *In re Best Products Co.,* 68 F.3d 26, 31 (2d Cir.1995), see also *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP,* 201 B.R. 635, 639 (S.D.N.Y.1996) (core proceeding is one that invokes a substantive right provided by Title 11; non-core proceeding involves disputes over rights that have little or no relation to the bankruptcy code, that do not arise under the federal bankruptcy law, and that would exist in the absence of a bankruptcy case). With respect to core matters, the bankruptcy court may issue final orders and judgments and may conduct jury trials. See 28 U.S.C. § 157(b)(1). *In re Ben Cooper, Inc.,* 896 F.2d 1394, 1402 (2d Cir.1990), vacated and remanded, 498 U.S. 964 (1990), *reinstated,* 924 F.2d 36 (2d Cir.1991), *cert. denied,* 500 U.S. 928 (1991). With respect to non-core matters, the bankruptcy court may not issue final orders. 28 U.S.C. § 157(c)(1). In addition, the bankruptcy court may not conduct jury trials of non-core matters. *In re Orion,* 4 F.3d at 1101. If a case is non-core and a jury demand has been filed, the district court may find that the inability of the bankruptcy court to hold the trial itself constitutes cause to withdraw the reference. *Id.*

Section 157(b)(2) provides a nonexclusive list of core matters that includes, *inter alia:* (1) matters concerning the administration of the debtor's estate; (2) allowance or disallowance of claims against the estate; (3) counterclaims by the estate against persons filing claims against the estate; (4) orders to turn over property of the estate; (5) proceedings to determine, avoid, or recover fraudulent conveyances; (6) determinations regarding the dischargeability of particular debts; and (7) determinations of the validity, extent, or priority of liens. See 28 U.S.C. § 157(b)(2). A matter not included in the statutory list of core proceedings may be deemed core if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. See *Brooks Fashion Stores, Inc. v. Michigan Employment Sec. Comm'n,* 124 B.R. 436 (Bankr.S.D.N.Y.1991) (citing *In re Wood* 825 F.2d 90, 97 (5th Cir .1987)). Courts have held that certain post-petition transactions are matters concerning the administration of the bankruptcy estate within the meaning of 28 U.S.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4

Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

157(b)(2)(A) and should be treated as core proceedings. See *In re Ben Copper,* 896 F.2d at 1399 ("post-petition contracts with the debtor-in-possession, therefore, are integral to the estate administration from the date they are entered into"). In *In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir.1987), the court observed that:

*\*4 A party who contracts with an apparently healthy company-a company that has not filed a petition in bankruptcy-may find it unpleasantly surprising to have to defend its prepetition contract in a bankruptcy court, without a jury or Article III protections. But it is difficult to see any unfair surprise in bringing a post-petition contract action before a bankruptcy court. Parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise.*

*In re Arnold,* 815 F.2d at 170.

The current Adversary Proceeding centers around alleged fraudulent conveyances, and as such, is a core proceeding. FN4 Moreover, the parties agree that all the claims at issue arise from "essentially the same facts." Dfs.' Mem. of Law on Renewed Mot. to Withdraw the Reference at 11. In addition, NE Road's counterclaims would not exist but for the bankruptcy case, making them core proceedings for that reason, as well. See *Wechsler,* 201 B.R. at 639. Finally, three out of the four counts alleged in NE Road's counterclaim arise out of a post-petition transaction, and as such, should be treated as core proceedings. See Defs.' Reply at 1-2.

> FN4. As indicated by section 157(b)(2)(H), a proceeding to "determine, avoid or recover fraudulent conveyances" is a "core proceeding."

Even if this court were to conclude that the defendants' counterclaims were non-core proceedings, they are sufficiently related to core proceedings to be heard by the bankruptcy court. A proceeding is related to a bankruptcy case if its outcome "*could conceivably have any effect on the* *estate being administered in bankruptcy.*" *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original). See also *In re American Hardwoods, Inc.,* 885 F.2d 621, 623 (9th Cir.1989); *In re Kolinsky,* 100 B.R. at 702. Obviously, a proceeding that could affect the amount of property available for distribution to creditors is a related proceeding. See *In re Colbert,* 117 BR. 51, 53 (Bankr.D.Conn.1990). This Adversary Proceeding is intended to achieve that result. Unless there is some substantial reason why the Adversary Proceeding should be withdrawn, the matter should be reviewed first by the bankruptcy court. See *In re Century Bass Products, Inc.,* No. 2:91-79X(JACK), 1992 WL 22191, \*4 (D.Conn. Jan. 7, 1992).

As indicated above, the court concludes that the claims raised in the Adversary Proceeding and those raised by NE Road's counterclaims are core proceedings, making the bankruptcy court the proper forum. Even if the court were to conclude that these matters are non-core, for the reasons discussed below, the defendants have waived their right to a jury trial. Accordingly, this action is appropriately before the Bankruptcy Court.

### C. Defendants Have Failed to Show "Cause" for Withdrawing the Reference

As indicated above, after a district court determines whether a proceeding is core or non-core, the court " should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion,* 4 F.3d at 1101.

\*5 Adjudicating this case in the bankruptcy court will promote uniform administration, because prior proceedings in that court have involved the same properties and issues as are presently before this court. In addition, the bankruptcy court is already familiar with the facts in this case and judicial economy would be promoted by having the plaintiff proceed in that court. Allowing the bankruptcy court to retain jurisdiction would result in the least delay and cost to the parties, the most efficient use of judicial resources, and the most uniform

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

administration of the bankruptcy estate. See *In re Century Brass Prod, Inc.,* No. 91-2251, 1992 WL 22191 (D.Conn. Jan. 7, 1992) (refusing to withdraw reference of non-core proceeding despite fact that jury demand was made and that resolution would require application of unsettled and complex body of law); *In re Kenaf Corp.,* 136 BR. 59, 61 (Bankr, S.D.N.Y.1992) (denying motion to withdraw reference in non-core proceeding because bankruptcy judge was familiar with debtor's case and in best position to monitor all proceedings related to bankruptcy).

For these reasons, the court concludes that the defendants have failed to show "cause" for withdrawing the reference to the bankruptcy court.

### D. *Right to Jury Trial*

Setting aside the conclusions reached above in the application of the *In re Orion* test, the court will now examine NE Road's claimed right to a jury trial and the trustee's assertion that such a right has been waived. There is no dispute that NE Road filed a timely jury claim and that a jury trial cannot be held in the bankruptcy court because the parties have not consented to such a trial as required by 28 U.S.C. § 157(e). Therefore, to the extent that NE Road is entitled to a jury trial, a withdrawal of the reference is necessary to preserve NE Road's seventh amendment right. For the reasons set forth below, the court concludes that NE Road has waived its right to a jury trial.

The Court must look to the holdings in three seminal Supreme Court cases to determine whether NE Road has waived its right to a jury trial, See *Katchen v. Landy,* 382 U.S. 323 (1966); *Granfinanciera S.A. v. Nordberg,* 492 U.S. 33 (1989); *Langenkamp v. Culp,* 498 U.S. 42 (1990).

The Second Circuit has summarized this line of cases as follows:
As the Supreme Court has explained, by filing a claim against the estate a creditor triggers the process of allowance and disallowance of claims, and the Debtors' preference action against the creditor becomes part of the claims-allowance

process. This process is integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction, which the creditor has invoked by filing the claim, and the preference action is therefore triable only in equity.

*In re Hooker Investments,* Inc., 937 F.2d 833, 838 (2d Cir.1991) (citing *Langenkamp,* 498 U.S. at 44-45; *Granfinanciera,* 492 U.S. at 57-59 & n. 14). "On the other hand, where no claim is filed against the estate and the action to recover a preference is essentially a legal one, a jury trial may be entirely proper." *In re Mindeco Corp.,* 212 B.R. 447, 450 (E.D.N.Y.1997) (citing *Hooker,* 937 F.2d at 838). Relying on *Granfinanciera* and *Langenkamp,* numerous courts have construed counterclaims filed in an adversary proceeding instituted by a chapter 11 trustee as claims against the bankruptcy estate that divest a defendant of the right to a jury trial. See, e.g., *Mindeco,* 212 B.R. at 450-51; *Peachtree Lane Assocs., Ltd. v. Granader,* 175 B.R. 232 (N.D.Ill.1994); *Murray v. Richmond Steel & Welding Co.,* 170 B.R. 868, 874-75 (E.D.N.C.1994).

*6 In the present case, the counterclaims raised by NE Road seek to establish NE Road as a creditor. Accordingly, NE Road's claims go to the heart of the bankruptcy proceeding and the amount of property available for distribution to creditors. Therefore, by filing its claims with the bankruptcy court, NE Road has waived its right to a jury trial. The defendants assert three arguments to avoid this conclusion: (1) because NE Road's counterclaims are compulsory FN5 in nature and do not invoke the process of allowance and disallowance, it has not waived its jury trial rights, Defs.' Reply at 1; (2) because NE Road's set-off and/or recoupment counterclaim is permissive and seeks no affirmative relief against the bankruptcy estate, it does not invoke the claims allowance process resulting in the waiver of its jury right, Defs.' Reply at 4; and (3) because NE Road substituted its proof of claim with an administrative claim, it has not waived its right to a jury.

FN5. Bankruptcy Rule 7013 differs from Fed.R.Civ.P. 13 in that a party sued by a trustee need not assert as a counterclaim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

any claim against the trustee unless the claim arose after the order for relief. Here, the counterclaims-at least as to counts 1, 2 and 3-arose as a result of agreements after the order for relief and are governed by Bankruptcy Rule 7013, which makes them compulsory.

First, as discussed above, numerous courts have construed counterclaims filed in an adversary proceeding instituted by a trustee or debtor in possession as claims against the bankruptcy estate that divest a defendant in an adversary proceeding to the right to a jury trial. In addition, each of the claims the defendants argue are compulsory in nature, FN6 are also post-petition claims. As articulated in *In re Arnold,* "[p]arties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court; that the bankruptcy court would resolve subsequent disputes should therefore come as no surprise." *In re Arnold,* 815 F.2d at 170.

        FN6. Counts 1, 2, and 3 of NE Road's Counterclaim.

Second, defendants argue that NE Road's pre-petition set-off and/or recoupment claim involves the same transaction as alleged in the Trustee's complaint. Def.'s Reply at 4. Defendants state that this counterclaim seeks merely to "reduce the Trustee's prospective judgment, rather than obtain affirmative relief against the estate." *Id.*

Accordingly, under the contrary classification of Fed.R.Bankr.P. 7013(a), defendants argue that the set-off and/or recoupment claim is permissive rather than compulsory. *Id.* Defendants claim they "are therefore uncertain as to whether they must raise their set-off/recoupment counterclaims or risk preclusion, yet have no fair warning as to the result on their jury trial rights."

*Id.* When viewed in light of their first argument, defendants are suggesting that regardless of whether a counterclaim is permissive or compulsory, pre-or post-petition a defendant asserting such a claim has

not waived a jury trial.

To the contrary, in *In re Hudson,* 170 B.R. 868, 874 (E.D.N.C.1994), the court rejected a similar argument regarding the classification of a defendant's counterclaim. Specifically, the court rejected the defendant's argument that the filing of a counterclaim should not operate as a waiver of its right to a jury trial because the counterclaim was compulsory. *Id.* The court concluded:
**\*7** the defendant did not lose its right to a jury trial by filing a counterclaim and thereby waiving the right. Instead, the defendant lost its right to a jury trial by filing a counterclaim and thereby seeking a piece of the disputed res, the debtors' estate, which was subject to the bankruptcy court's equitable power to allow and disallow claims. Regardless of whether the counterclaim was permissive or compulsory, it represented the defendant's attempt to obtain a portion of the debtors' estate.

*Id.* at 875. In the present case, NE Road's claims undeniably seek a piece of the debtor's estate, which is subject to the bankruptcy court's equitable power. As such, NE Road has submitted to NE Road bankruptcy court's jurisdiction and waived its right to a jury trial in this court, whether its counterclaims are permissive or compulsory.

Third, defendants attempt to draw a definitive distinction between a proof of claim and an administrative claim. Defs.'s Mem. of Law on Renewed Mot. to Withdraw the Reference at 6. On the one hand, the defendants do not dispute that there is no right to a jury trial in cases where a defendant has filed a proof of claim. See *Langenkamp v. Culp,* 498 U.S. 42, 45 (1990). On the other hand, defendants argue that, because NE Road withdrew its proof of claim and replaced it with a counterclaim for payment of administrative expenses under § 503(a) and (b), it did not submit itself to the Bankruptcy Court's jurisdiction and has preserved its right to a jury trial. Dfs.' Mem. of Law on Renewed Mot. to Withdraw the Reference at 6-7.

In general, any liability the estate incurs post-petition constitutes an "administrative expense." See, e.g., *In re Dennis Ponte, Inc.,* 61 B.R. 296, 298 (9th Cir.1986). Payment of administrative

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)
**(Cite as: Not Reported in F.Supp.2d)**

expense by the estate is entitled to priority over all unsecured creditors. See 11 U.S.C. § 507(a)(1). As was the case here, administrative expenses are normally sought by application or motion in the bankruptcy court. FN7

> FN7. Section 503 provides that "[a]n entity may file a request for payment of an administrative expense" and that such expenses shall be allowed "[a]fter notice and a hearing" for "the actual, necessary costs and expenses of preserving the estate . .." 11 U.S.C. § 503.

Therefore, an administrative expense claim qualifies as an equitable claim to a pro rata share of the bankruptcy res, the assertion of which extinguishes otherwise available seventh amendment rights to a jury trial.

Regardless of whether the counterclaims are pre- or post-petition, they are still claims against the debtor's estate and hence seek a piece of the res under the equitable jurisdiction of the bankruptcy court. The court can find no legal significance in the fact that the piece of the pie that NE Road seeks to carve out of the estate stems from post-petition conduct by the debtor. Resolution of post-petition claims are as much a function of the bankruptcy court's equitable apportionment of the estate as resolution of pre-petition claims.

## CONCLUSION

For the reasons given above, Defendant's Renewed Motion to Withdraw the Reference (doc. # 1) is DENIED. There exists no substantial reason why the reference should be withdrawn.

The bankruptcy court will retain jurisdiction over the Adversary Proceeding and will issue final orders and judgments on all core matters and sufficiently related non-core matters.

**\*8** SO ORDERED this 28th day of February 2000, at Bridgeport, Connecticut.

D.Conn.,2000.
O'Neill v. New England Road, Inc.
Not Reported in F.Supp.2d, 2000 WL 435507 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.