# TAB 1

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 31175 (W.D.La.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, W.D. Louisiana.
David ALLISON, et al.
v.
ALLSTATE INSURANCE CO., et al.
**Civ. A. No. 96-2757.**

Jan. 22, 1997.

MEMORANDUM RULING

EDWIN F. HUNTER, Jr., Senior District Judge:
*1 The instant suit was initially filed on May 24, 1996, in the 33rd Judicial District Court for the Parish of Allen, State of Louisiana. Made defendants were Ford Motor Company ("Ford") and Allstate Insurance Company ("Allstate"), the manufacturer and uninsured motorist carrier of the pickup David Allison was driving when a "phantom " vehicle forced him off the road and into a tree in May, 1995. On September 17, 1996, Ford removed the case to the United States District Court for the Middle District of Louisiana on the basis of diversity jurisdiction, 28 U.S.C. § 1332. FN1 In October, 1996, plaintiffs filed the instant motion to remand. However, recognizing that Allen Parish was situated in the federal Western District of Louisiana, Ford filed a motion to transfer venue. On November 26, 1996, Honorable Judge Frank Polozola granted the motion, and ordered the case transferred to this court. The pending motion to remand was carried with the case, and is now ripe.

> FN1. On September 13, 1996, a copy of the notice of removal was forwarded to plaintiffs' counsel. The notice was filed on September 17, and removal became effective.

Plaintiffs' motion to remand alleges that removal

was untimely, and that Allstate did not timely consent to removal. It is important to emphasize that plaintiffs do not contend that this court lacks subject matter jurisdiction, (i.e. less than $50,000.01 in controversy, or lack of complete diversity between parties). Instead, the two grounds proffered by plaintiffs in support of remand identify alleged defects in the removal procedure. *See, Ventana Investments v. 909 Corp.,* 65 F.3d 422, 425 (5th Cir. 1995)(citing, *Barnes v. Westinghouse Elec. Corp.,* 962 F.2d 513, 516 (5th Cir.), *cert. denied,* 113 S.Ct. 600 (1992))("untimely removal is a procedural defect and does not go to subject matter jurisdiction") and *Getty Oil, Div. Of Texaco v. Ins. Co. of North America,* 841 F.2d 1254, 1263 (5th Cir. 1988)(plaintiff who delays in seeking remand may waive objection to untimely joinder by co-defendant).

Since plaintiffs allege procedural defects in the removal process, they must be raised within 30 days after the filing of the notice of removal. 28 U.S.C. § 1447(c). Here, the notice of removal was filed on September 17. The motion to remand was considered "filed" by the Clerk of the Middle District on October 18, -- 31 days after removal. However, plaintiffs' counsel avers that the Clerk's office received the motion to remand on October 16, 1997, but would not file the pleading due to: (1) the absence of an attached notice of setting hearing, and (2) since the pleading was signed by an attorney who was not listed as "attorney of record." FN2

> FN2. Attorney, Perry Sanders, signed the original state court petition. His law partner, John Crochet, signed the motion to remand.

The requirement that each motion shall be accompanied by a notice of setting hearing is a local rule of the Middle District, U.L.L.R. 2.01M. Moreover, Fed.R.Civ.P. 11(a) mandates that an " attorney of record" sign written motions; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 2

Not Reported in F.Supp., 1997 WL 31175 (W.D.La.)
**(Cite as: Not Reported in F.Supp.)**

provides that an unsigned paper will be stricken unless the omission is corrected promptly. Fed.R.Civ.P. 11(a). Nevertheless, the federal rules provide that the Clerk shall not refuse to file any paper merely because it is not in proper form as required by the rules of civil procedure or by local rule. Fed.R.Civ.P. 5(e). The Clerk should have filed the motion to remand on October 16, and allowed plaintiffs an opportunity to correct the procedural deficiencies. Thereafter, if plaintiffs had not complied, the motion could have been stricken from the record. Here, plaintiffs forwarded a corrected version of the motion which was received by the Clerk on October 18. Plaintiffs promptly remedied the technical errors, and we deem that filing was effective as of October 16. Accordingly, plaintiffs' motion to remand was filed within 30 days of removal, and the court may properly consider the alleged defects in removal procedure.

**\*2** Plaintiffs' first argument is that Ford should have filed its petition of removal within thirty days of defendant's receipt of a "copy of the initial pleading" -- 28 U.S.C. § 1446(b). Instead, Ford propounded discovery, and did not receive medical information regarding the extent of plaintiff's injuries until August 29, 1996. Within 30 days of receiving this information, Ford removed the case to federal court on September 17, 1996. 28 U.S.C. section 1446(b) provides in part,

(b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, ...

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...

28 U.S.C. § 1446(b)

The problem in this case is that the complaint does not allege the specific monetary amount of damages which the plaintiffs seek to recover. Of course,

under Louisiana state court rules, plaintiffs are prevented from including a damages clause. Louisiana Code of Civil Procedure Article 893. However, in 1982 Article 893 was amended to allow the petitioner to state whether there existed an insufficient amount of damages to preclude federal court jurisdiction. La. Code of Civil Procedure Art. 893 A(1) (1983). Plaintiffs did not take advantage of this article.

Once Ford received the petition they were in a quandary. They could have: (1) immediately removed within thirty days of service, but then risked remand if (and when) plaintiff challenged the jurisdictional amount; or (2) waited for answers to interrogatories, but then run the risk that plaintiffs would argue they waited too long to remove. Ford chose the latter option. Professor Moore stated on this subject,

Under some state practices an ad damnum clause is not required or has been eliminated, as where the damages are unliquidated. If, as a result of this practice, the defendant is unable to determine whether the jurisdictional amount is present, the defendant's time for removal should not begin to run until he is apprised of claims by the plaintiff for an amount that satisfies the jurisdictional requirement. For example, where the defendant may make a demand upon the plaintiff for a statement as to damages and he does so, defendant's time for removal should begin to run from the time of the receipt by him of the plaintiff's answer or response to defendant's demand, which shows a claim that satisfies the jurisdictional amount required for removal. Plaintiff's answer or response comes within the "other paper" mentioned in Section 1446(b).

1A *Moore's Federal Practice,* ¶ 0.168 [3.-5], n. 32 at 483-84)

**\*3** We are in complete agreement with Professor Moore's assessment. Plaintiff's petition simply alleged that he incurred, "physical injuries; past, present and future medical expenses; past present and future pain and suffering; lost wages; such other and further damages as may be hereafter shown." Pl. Petition, ¶ 16. This statement does not reveal the nature, nor extent of plaintiff's injuries, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1997 WL 31175 (W.D.La.)
**(Cite as: Not Reported in F.Supp.)**

provides no help in determining whether the federal jurisdictional amount has been satisfied. We find that the case did not become removable until August 29, when Ford received plaintiff's medical history and prognosis. Removal was timely.

Plaintiffs next contend that Allstate did not timely consent to the removal. Of course, all properly joined and served defendants must join in the removal petition. *Getty Oil,* 841 F.2d at 1262. Failure to do so, renders the removal defective. *Id.* Moreover, the consent must be written and timely filed on behalf of each defendant. *Getty Oil,* 841 F.2d at 1262, n. 11. The record contains no timely, written consent to removal filed on behalf of Allstate. Accordingly, the removal was procedurally defective and remand is required.

In accordance with the foregoing, plaintiffs' motion to remand is hereby GRANTED. Plaintiffs' request for costs and/or fees is DENIED.

### ORDER TO REMAND

The above cause, having been removed from the Judicial District Court for the Parish of Allen, to this Honorable Court, and complainants having made and filed in this Court, their motion to have this cause remanded to the 33rd Judicial District Court for the Parish of Allen, State of Louisiana.

IT IS HEREBY ORDERED that this cause be remanded to said 33rd Judicial District Court in accordance with today's memorandum ruling.

IT IS FURTHER ORDERED that the Clerk of Court make out a certified copy of the Motion to Remand, and this Order, and forward the same to the Clerk of the 33rd Judicial District Court for the Parish of Allen, State of Louisiana.

W.D.La.,1997.
Allison v. Allstate Ins. Co.
Not Reported in F.Supp., 1997 WL 31175 (W.D.La.)

Briefs and Other Related Documents (Back to top)

• 2:96CV02757 (Docket) (Dec. 05, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

LEXSEE 1998 U.S. DIST. LEXIS 5359

**BANK OF AMERICA, NT&SA, v. GARY NICKELE, et al.**

**CIVIL ACTION NO. 98-1501**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*1998 U.S. Dist. LEXIS 5359*

**April 16, 1998, Decided**
**April 16, 1998, Filed, Entered**

**DISPOSITION:** [*1] Bank of America's motion to abstain or remand pursuant to *28 U.S.C. § 1334*(c)(2) DENIED; Disposition of Bank of America's motion to abstain or remand pursuant to *28 U.S.C. § 1334*(c)(1) and *28 U.S.C. § 1452*(b) DEFERRED; Defendants' motion to transfer GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff bank received an injunction in state court against defendants, a board of directors of a debtor, preventing the directors from taking any action against the debtor. The state court action was removed to the court. The debtor filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Hawaii. The directors filed a motion to transfer. The bank filed a motion to abstain or to remand to the state court.

**OVERVIEW:** The debtor owned a chain of retail stores in Hawaii. The bank was the administrative agent for a group of lenders. The bank sought control over the directors' voting rights in accordance with a pledge agreement. The directors claimed that the action was a core proceeding in bankruptcy. The bank claimed that the action raised only state law issues and was unrelated to the bankruptcy action. The court granted the directors' motion to transfer. The court held that actions to obtain control of a debtor-in-possession went to the heart of the administration of a debtor's estate, that the bank sought control of the debtor-in-possession, that the bank's action impacted the debtor-creditor relationship, that the fact that state law was involved was irrelevant, and that the bank's action was a core proceeding in bankruptcy. The court also held that the convenience of the parties and the interests of justice favored transferring the action to Hawaii, that the debtor was based in Hawaii, that the court

had fewer ties to the case than Hawaii, and that the bank's action was required to be transferred to Hawaii.

**OUTCOME:** The court denied the bank's motion to abstain or remand, granted the directors' motion to transfer, and directed that the action be transferred to the United States District Court for the District of Hawaii.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
*Civil Procedure > State & Federal Interrelationships > Abstention*
[HN1] Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under the section, the district court shall abstain from hearing such a proceeding if an action is commenced and can be timely adjudicated in a state forum of appropriate jurisdiction. *28 U.S.C.S. § 1334*(c)(2).

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN2] A proceeding found to be arising under Title 11 or arising in a case under Title 11 constitutes a "core proceeding."

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN3] Section 157(b) of the Bankruptcy Code defines core proceedings and provides that bankruptcy judges

1998 U.S. Dist. LEXIS 5359, *

may hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11, referred under § 157(a). Core proceedings include, but are not limited to, matters concerning the administration of the estate. *28 U.S.C.S. § 157*(b)(1)-(2)(A).

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN4] A "core proceeding" is one which invokes a substantive right provided by Title 11 or which, by its nature, can arise only in the context of a bankruptcy case. An action invokes a substantive right provided by Title 11 if it fits under one of the categories listed in *28 U.S.C.S. § 157*(b)(2).

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN5] An action brought to restrain interference resulting from proceedings in conflict with bankruptcy reorganization clearly may by its nature be a core proceeding because it will likely affect the administration of the estate.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
*Bankruptcy Law > Chapter 11 (Reorganization) > Debtors in Possession*
[HN6] An action between non-debtor parties seeking determination of the ownership and control of a debtor-in-possession is a core proceeding in bankruptcy.

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN7] Other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship constitute core proceedings in bankruptcy. *28 U.S.C.S. § 157*(O).

*Bankruptcy Law > Practice & Proceedings > Jurisdiction*
[HN8] A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law. *28 U.S.C.S. § 157*(b)(3). Even in core proceedings, state law is pervasive in most decisions which bankruptcy courts must make.

*Civil Procedure > Removal > Basis for Removal*

*Bankruptcy Law > Practice & Proceedings > Adversary Proceedings*
[HN9] Upon motion and after a hearing, a court may transfer an adversary proceeding pursuant to *28 U.S.C.S. § 1412. Fed. R. Bankr. P. 7087. 28 U.S.C.S. § 1412* allows a district court to transfer a case or proceeding under Title 11 to a district court for another district in the interests of justice or for the convenience of the parties.

*Bankruptcy Law > Practice & Proceedings > Adversary Proceedings*
[HN10] An adversary proceeding is a proceeding to obtain an injunction or other equitable relief. *Fed. R. Bankr. P. 7001(7)*. It can be a core or a non-core proceeding.

*Bankruptcy Law > Practice & Proceedings > Adversary Proceedings*
[HN11] Civil proceedings shall be tried in the "home" court, namely, the court where the bankruptcy case itself is pending.

*Civil Procedure > Removal > Basis for Removal*
*Bankruptcy Law > Practice & Proceedings > Adversary Proceedings*
[HN12] The factors to be considered in transferring an adversary action are: (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the economic necessity for ancillary administration if liquidation should result.

**COUNSEL:** For BANK OF AMERICA NY&SA, PLAINTIFF: MATTHEW A. WHITE, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, PHILA, PA USA. ABBE F. FLETMAN, WOLF, BLOCK, SCHORR AND SOLIS-COHEN, PHILA, PA USA.

For GARY NICKELE, H. RIGEL BARBER, NEIL BLUHM, KENNETH FOREMAN, BURTON E. GLAZOV, JUDD MALKIN, STEVEN E. PLONSKER, DEFENDANTS: JOHN G. HARKINS, JR., HARKINS CUNNINGHAM, PHILA, PA USA. GAY BARLOW PARKS RAINVILLE, HARKINS CUNNINGHAM, PHILADELPHIA, PA.

**JUDGES:** William H. Yohn, Jr., J.

**OPINIONBY:** WILLIAM H. YOHN, JR.

**OPINION:**

## MEMORANDUM AND ORDER

Yohn, J.

April 16, 1998

On March 19, 1998, Liberty House, Inc. ("Liberty House") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Hawaii (the "Hawaii Bankruptcy Court"). Just several hours prior to this filing, the plaintiff in the instant action, Bank of America, sought and received an injunction in the [*2] Philadelphia Court of Common Pleas preventing the defendants Gary Nickele, H. Rigel Barber, Neil Bluhm, Kenneth Foreman, Burton E. Glazov, Judd Malkin, and Steven R. Plonsker (collectively, "the defendants") from taking any action on behalf Liberty House. Notice of Removal Ex. C. Invoking the jurisdictional provision, *28 U.S.C. § 1334*(b) (1993), the defendants removed this case to the United States District Court for the Eastern District of Pennsylvania. Notice of Removal at 3. On the heels of this removal notice, the defendants filed the instant motion to transfer this case to the Hawaii Bankruptcy Court or the United States District Court for the District of Hawaii. n1 Bank of America not only opposed this motion but filed its own motion to abstain or remand the case to the Philadelphia Court of Common Pleas. I will grant the defendants' motion to transfer this case and deny in part and defer judgment in part on the plaintiff's motion to abstain or remand.

> n1 The defendants' motion to transfer requests this court to transfer the case to the United States Bankruptcy Court for the District of Hawaii. At oral argument on the motion, however, the defendants' counsel agreed that removal to the District Court of Hawaii or the Hawaii Bankruptcy Court would be proper. Tr. Prelim. Inj. Hr'g, 3/25/98, at 22.

[*3]

## Background

Liberty House, a corporation organized under the laws of Pennsylvania but based in Hawaii, is one of the Pacific's largest retail chains, with 12 department stores and 25 resort and specialty shops in Hawaii and Guam. Nickele Aff., Ex. A. Defs.' M. Transfer. Liberty House has assets of approximately $ 270 million and employs about 4,000 employees, virtually all in Hawaii and the Pacific region. Id. On March 19, 1998, Liberty House filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code in the Hawaii Bank-

ruptcy Court. Liberty House is currently a debtor-in-possession in a Chapter 11 case pending in Hawaii. Defs.' M. Transfer at 1.

The plaintiff, Bank of America, is the administrative agent for a group of lenders ("the lenders") who have lent over $ 173 million to Liberty House pursuant to a Credit Agreement and a Pledge Agreement, which are governed by Hawaii law, and a Voting Trust Agreement, which is governed by Pennsylvania law. App. M. Remand Exs. A-G. On the same day that Liberty House initiated Chapter 11 proceedings, Bank of America attempted to exercise its contractual rights under the abovementioned agreements [*4] "to remove and replace [Liberty House's] directors in the hope that, under new direction, [Liberty House] will be able to satisfactorily manage its debt." Pl.'s Compl. P3. Specifically, Bank of America invoked § 7(a) of the Pledge Agreement, which provided that upon default, Bank of America would have the right "to obtain immediate control over the voting rights that attached to all [of Liberty House's] outstanding common stock." Id. P33. Claiming to be the sole voting stockholder of Liberty House, Bank of America removed the instant defendants, the then current directors of Liberty House, and replaced them with a new slate of directors. Id. P49. Then, just several hours prior to the commencement of Liberty House's Chapter 11 proceedings, Bank of America sought and received, in the Philadelphia Court of Common Pleas, an injunction preventing the defendants from, among other things, "taking any action on behalf of Liberty House, Inc." Notice of Removal Ex. C. at 3.

The defendants countered the plaintiff's injunction by removing this case to the Eastern District of Pennsylvania and, immediately thereafter, filing the instant motion to transfer this case to the Hawaii [*5] Bankruptcy Court. They contend that under *28 U.S.C. § § 1404* and 1412 (1993 & Supp. 1997), this case should be transferred to Hawaii based on the close ties between this action and the pending bankruptcy proceeding. Defs.' M. Transfer at 2. Bank of America, on the other hand, asserts that this case is unrelated to the bankruptcy action because it raises only issues of state law. Thus, Bank of America opposes the motion to transfer and requests that this court either abstain or remand the case to the state court.

## DISCUSSION

### I. The Motion to Abstain or Remand

The defendants argue that, pursuant to *28 U.S.C § 1334*(c)(2) (Supp. 1997), this court must either abstain from hearing this case or remand it to state court. This section provides:

[HN1] Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, [*6] and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*28 U.S.C. § 1334*(c)(2) (emphasis supplied). Thus, mandatory abstention is only appropriate if this action is "related to" a case under title 11 but not "arising under" or "arising in" such a case. In the Third Circuit, [HN2] a proceeding found to be arising under title 11 or arising in a case under title 11 constitutes a "core proceeding." *Burke v. Donington, Karcher, Salmond, Ronan, & Rainone, P.A. (In re Donington, Karcher, Ronan, & Rainone, P.A.), 194 B.R. 750, 757 (D.N.J. 1996).*

[HN3] Section 157 of the Bankruptcy Code further defines core proceedings:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section . . .

(2) Core proceedings include, but are not limited to -

(A) matters concerning the administration of the estate;

. . . .

*28 U.S.C. § 157*(b)(1)-(2)(A). n3 The Third Circuit has held that [HN4] a "core proceeding" is one which "invokes a substantive right provided by title 11 or which, by its nature, could arise only in the context [*7] of a bankruptcy case." *Torkelsen v. Maggio (In re the Guild and Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir. 1996); In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 267 (3d. Cir. 1991).* An action invokes a substantive right provided by title 11 if it fits under one of the categories listed in *§ 157*(b)(2). *Torkelsen, 72 F.3d at 1173*

(a matter concerning the administration of the estate under *§ 157*b(2)(A) is a "core proceeding").

n3 Congress passed this section in response to *Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982).* In Marathon, the Court held that bankruptcy courts do not have the power to adjudicate "state-created private rights" that are the province of Article III courts. *458 U.S. at 71.* Reacting to Marathon, Congress passed *§ 157*(b)(1), which codified the core/noncore distinction and provided that bankruptcy judges may hear and enter final judgments in "core proceedings." Additionally, Congress provided a nonexhaustive list of the types of actions that constitute core proceedings. See *28 U.S.C. § 157*(b)(2)(A-O).

[*8]

In *Johns-Manville Corp. v. Equity Securities Holders Comm., 801 F.2d 60 (2d Cir. 1986),* the Second Circuit held that an action similar to the instant one constituted a core proceeding under *§ 157*(b)(2)(A). There, the bankruptcy court appointed an Equity Security Holders Committee ("the committee") to represent the interests of stockholders in the debtor's reorganization proceedings. *Id. at 61.* Displeased with the proposed reorganization plan, the committee brought an action in state court to compel the debtor to hold a shareholders' meeting pursuant to state law. *Id. at 62.* The avowed purpose of this action was to replace the debtor's directors so that a new board might consider submitting a different plan. Id. The debtor countered by requesting the bankruptcy court to issue an injunction preventing the committee from pursuing state action on the ground that it may interfere with the debtor's reorganization proceedings. *Id. at 63.*

Appealing this injunction, the committee argued that the debtor's action did not constitute a core proceeding and, therefore, the bankruptcy court did not have jurisdiction to issue the equitable relief. Id. Disagreeing, the Second [*9] Circuit concluded that [HN5] "an action brought to restrain interference resulting from proceedings in conflict with reorganization clearly may by its nature be core, . . ., since it will likely affect the administration of the estate." Id. The critical factor was the likelihood that the debtor's injunctive relief would affect the reorganization.

Likewise, *Elsinore Shore Assocs. v. Local 54, Hotel Employees & Restaurant Employees Int'l Union, 820 F.2d 62 (3d Cir. 1987),* concluded that an injunction brought by the debtor-in-possession against a union representing the debtor's employees pursuant to a collective

bargaining agreement would likely affect the administration of the estate. Here, the principal disagreement between the parties concerned the interpretation of the collective bargaining agreement, particularly whether the labor dispute was subject to mandatory arbitration prior to a strike. *Id. at 64*. Despite the contractual nature of the disputed issue and the union's tenuous connection to the bankruptcy proceeding, the court found that the debtor's attempt to prevent the union from striking was a "matter concerning the administration of the estate" under § 157(b)(2)(A). [*10] *Id. at 66*. Thus, the action amounted to a core proceeding. Id.

In the same vein, [HN6] an action between non-debtor parties "seeking determination of the ownership and control of a debtor-in-possession" is a core proceeding. *SCK Corp. v. Rosenblum (In re SCK Corp.), 54 B.R. 165, 169 (Bankr. D.N.J. 1984)*. There, Rosenblum, a former shareholder of debtor corporation ("SCK"), filed a complaint in state court against the present shareholders of SCK. Id. Rosenblum sought a declaration that he remained the president and sole shareholder of the debtor corporation. Id. The court concluded that because "control of a debtor-in-possession goes to the very heart of the administration of the debtor's estate, it necessarily follows that the bankruptcy court may properly determine where such control resides." Id. (emphasis supplied).

In the instant case, Bank of America, the representative of Liberty House's lenders, allegedly took control of the debtor pursuant to rights created in several loan documents. Commencing the instant take-over action in state court, Bank of America successfully obtained an injunction which ordered the defendants not to take "any action on behalf [*11] of Liberty House, Inc. . . . ." Pl.'s Mem. Supp. M. Abstain or Remand at 1. As shown, actions to obtain control of a debtor-in-possession "[go] to the very heart of the administration of the debtor's estate . . ." and, therefore, are core proceedings. *SCK Corp., 54 B.R. at 169*.

In fact, the nature of this case falls even further within the core of federal bankruptcy power because Bank of America and the lenders it represents are creditors of Liberty House, the debtor it seeks to control. In addition to listing matters concerning the administration of the estate as core proceedings, § 157's catch-all provision provides [HN7] "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship" constitute core proceedings. *28 U.S.C. § 157*(O); see also *Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982)* ("the restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power . . . "). This case affects the debtor-creditor relationship because the agent of the creditors seeks to position itself as the sole director of the debtor, doubtlessly [*12] altering the nature of the debtor-creditor association.

The plaintiff mounts several defenses to the defendants' claim that this action is a core proceeding. First, Bank of America argues that because the proceeding primarily involves state law contract and corporate governance claims it cannot constitute a core proceeding. Section 157(b)(3) expressly rejects this contention - [HN8] "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *28 U.S.C. § 157*(b)(3). Indeed, "even in core proceedings" state law "is pervasive in most decisions which bankruptcy courts must make." *Official Comm. of Unsecured Creditors v. Provident Nat'l Bank (In re United Church of the Ministers of God), 74 B.R. 271, 278 (Bankr. E.D. Pa. 1987)*.

Second, Bank of America contends that this case could not "arise in" or "arise under" title 11 because the plaintiff has not invoked a substantive right provided by title 11. Pl.'s Supp. Mem. at 7. The plaintiff, however, does not point to and the court has not found any authority supporting the position that the plaintiff's allegations dictate the nature of the action [*13] for purposes of determining whether the proceeding "invokes a substantive right provided by title 11." See *In re the Guild and Gallery Plus, Inc., 72 F.3d at 1178*. Indeed, in *Elsinore, 820 F.2d 62 at 66*, both parties agreed that the basis of the disagreement between the parties amounted to nothing more than differing interpretations of a collective bargaining agreement. Nevertheless, the court found that because the action was likely to affect the administration of the estate it amounted to a core proceeding. Id. n4

> N4 Bank of America argues that this case "could not arise in the context of a bankruptcy case," see *In re Guild and Gallery Plus, Inc., 72 F.3d at 1178*, because there was no bankruptcy case pending when the plaintiff commenced this action. As explained, in the Third Circuit, a core proceeding is "one which invokes a substantive right provided by title 11 or which, by its nature, could arise only in the context of a bankruptcy case." Id. (emphasis supplied.) Having found that this case invokes federal bankruptcy rights, this court need not address whether or not the action could arise only in the context of a bankruptcy proceeding. See *Elsinore, 820 F.2d at 63* (holding that a corporation's attempt to prevent a union from striking, an action which could have arisen outside of a bankruptcy proceeding, constitutes a core proceeding).

1998 U.S. Dist. LEXIS 5359, *

[*14]

In sum, Bank of America, as the lenders' representative, seeks to take control of the debtor-in-possession, Liberty House. Because this matter concerns the administration of the estate, will impact the debtor-creditor relationship, and, indeed, goes to the very heart of bankruptcy jurisdiction as it involves control of the debtor-in-possession, an entity that, at least initially, controls the corporate debtor's actions, this is a core proceeding.

## II. Motion to Transfer

[HN9] Upon motion and after a hearing, a court may transfer an adversary proceeding pursuant to *28 U.S.C. § 1412.* 11 U.S.C. Bankr. Rule 7087; see also *Raytech Corp. v. White, 54 F.3d 187, 189 (3d Cir. 1995)* (transferring adversary proceeding arising in bankruptcy case under § 1412). n5 Section 1412 allows a district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties."

> n5 [HN10] An adversary proceeding is a proceeding "to obtain an injunction or other equitable relief." See 11 U.S.C. Bankr. R. 7001(7). It can be a core or a noncore proceeding. See e.g., *In re Marin Oil, Inc., 689 F.2d 445 (3d Cir. 1982),* cert. denied, *459 U.S. 1206, 459 U.S. 1207, 75 L. Ed. 2d 440, 103 S. Ct. 1196 (1983).*

[*15]

A presumption has developed that [HN11] civil proceedings should be tried in the "home" court, namely, the court where the bankruptcy case itself is pending. See *In re 1606 New Hampshire Ave. Assocs., 85 B.R. 298, 305 (Bankr. E.D. Pa. 1988); Colarusso v. Burger King Corp., 35 B.R. 365, 368 (Bankr. E.D. Pa. 1984); Stamm v. Rapco Foam, Inc., 21 B.R. 715, 724-25 (Bankr. W.D. Pa. 1982);* see also, COLLIER ON BANKRUPTCY 4.04[1] (15th ed. 1997). "We are most reluctant to allow pieces to be severed from a case requiring litigation in several jurisdictions, rather than the desired goal of 'centering' administration of an entire case in one jurisdiction." *In re 1606 New Hampshire Ave. Assoc., 85 B.R. 298, 305.* In light of Chapter 11's underlying principles, the court begins its analysis from the presumption that the instant proceeding should be tried in Hawaii.

Moreover, the two general considerations that § 1412 explicitly instructs the court to take into account, the convenience of the parties and the interests of justice, also favor transferring the action to Hawaii. [HN12] The well-established factors to be considered in this type of determination are the following: (1) the [*16] proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; (6) the economic necessity for ancillary administration if liquidation should result. See *In re Commonwealth Oil Refining Co., 596 F.2d 1239, 1247 (5th Cir.1979),* cert. denied, *444 U.S. 1045, 62 L. Ed. 2d 731, 100 S. Ct. 732 (1980);* accord *In re J&L Plumbing & Heating, Inc., 186 B.R. 388, 392 (Bankr. E.D. Pa. 1995); In re Midland Associates, 121 B.R. 459, 460-61 (Bankr. E.D. Pa. 1990); In re Boca Raton Sanctuary Associates, 105 B.R. 273, 274 (Bankr. E.D. Pa. 1989).*

Liberty House, the debtor, although incorporated in Pennsylvania, is a Hawaiian based corporation, with 12 department stores and 25 resort shops in Hawaii and Guam. The debtor and most of the its assets, therefore, are much closer to the Hawaiian venue. The parties have introduced scant evidence as to the proximity of the creditors to either venue. Bank of America, however, the administrative agent of the lenders, is a California-based national bank. [*17] Based on the evidence introduced, therefore, the creditors, as well as the debtor and its assets, are closer to Hawaii than Philadelphia. Furthermore, in light of the debtor's and creditor's proximity to Hawaii and the location of the assets and the proximity of the creditors to that venue the movants have overwhelmingly shown that the estate can be most economically administered in Hawaii.

Finally, the court must observe that it perceives no tactical advantage to either party from transferring this case to the District of Hawaii and none has been proffered by either party. The plaintiff, Bank of America, claims that the defendants are primarily residents of Illinois and Massachusetts, and that many of the relevant documents are in Chicago. Presumably concerned for the convenience of the parties, Bank of America argues that this case should not be transferred to Hawaii. Despite its concern, Bank of America has not asked this court to transfer the case to Illinois or Massachusetts. Instead, the plaintiff attempts to try this action in Pennsylvania, a forum that is no more convenient to the defendants and has many less ties to the case than Hawaii. Indeed, the only significant tie to [*18] this situs is the fact that Liberty House is incorporated under Pennsylvania law. Furthermore, the defendants themselves urge a transfer to Hawaii. Finally, the bankruptcy proceedings, which will most likely require the attendance of many of the same witnesses and the introduction of many of similar documents, will continue in Hawaii regardless of where the instant action is tried. Thus, it would be extremely burdensome and inefficient to both the court and the parties to litigate these two actions on opposite ends of the United States. In sum, the presumption favoring the

1998 U.S. Dist. LEXIS 5359, *

"home" court as well as the factors listed in *28 U.S.C §
1412* overwhelmingly favor granting the defendants' motion to transfer.

### ORDER

AND NOW, this 16th day of April, 1998, upon consideration of the motion to remand or abstain of the plaintiff, Bank of America, and the response of the defendants, Gary Nickele, H. Rigel Barber, Neil Bluhm, Kenneth Foreman, Burton Glazov, Judd Malkin, and Steven Plonsker, ("the defendants") thereto, the defendants' motion to transfer and Bank of America's response, along with the supplemental memorandums provided by both parties, **IT IS HEREBY ORDERED**, as follows:

(1) [*19] The Bank of America's motion to abstain or remand pursuant to *28 U.S.C. § 1334*(c)(2) is **DENIED**;

(2) Disposition of Bank of America's motion to abstain or remand pursuant to *28 U.S.C. § 1334*(c)(1) and *28 U.S.C. § 1452*(b) is **DEFERRED**;

(3) In the interests of justice and for the convenience of the parties, the defendants' motion to transfer is **GRANTED** and the Clerk is directed to transfer this action to the United States District Court for the District of Hawaii.

William H. Yohn, Jr., J.

# TAB 3

Westlaw.

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1992 WL 19113 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Ronald BARNES, Plaintiff,
v.
RESOLUTION TRUST CORP., as Receiver for
OAK TREE SAVINGS BANK, S.S.B., Defendant.
**Civ. A. No. 91-2900-LFO.**

Jan. 17, 1992.

ORDER

OBERDORFER, District Judge.
*1 On November 20, 1991, a show cause order was
issued directing counsel to show cause on or before
December 18, 1991 why this action should not be
transferred to the United States District Court for
the Eastern District of Louisiana in the interest of
justice pursuant to 28 U.S.C. § 1404(a). On
December 10, 1991, the Resolution Trust
Corporation (RTC) filed a response indicating that
although it had no objection to the ultimate transfer
of the case, the order transferring the case should be
stayed until the period to file a motion for remand
elapsed. On December 18, 1991, plaintiff filed a
response to the show cause order objecting to the
RTC's request that the Court hold the transfer order
in abeyance.

RTC argues that the jurisdiction question of remand
is more appropriately addressed before the venue
question. In addition, RTC argues that the
Financial Institutions Reform Recovery and
Enforcement Act of 1989 (FIRREA) provided a
uniform national approach for resolving the thrift
crises, which somehow requires this court rule on
all removals. As Judge Gesell noted in *Resolution
Trust Corp. v. Davis, et al.,* No. 91-2938 (D.D.C.
Dec. 6, 1991), neither contention is availing.
FIRREA does not mandate such a stay. *See id.,*
slip op. at 4-5. In fact, the statute gives the United

States district courts jurisdiction over any case in
which the FTC is a party. Since the RTC removal
action brought this case to federal court, only
plaintiff would have reason to challenge
jurisdiction. As Judge Gesell observed, plaintiff
can challenge removal more easily and with far less
expense in the transferee district. *See id.,* slip op.
at 6.

Accordingly, it is this 17th day of January, 1992,

ORDERED: that defendant's request for a stay of
the proceedings is DENIED; and it is further

ORDERED: that this case should be and is hereby
transferred to the United States District Court for
the Eastern District of Louisiana in the interest of
justice pursuant to 28 U.S.C. § 1404(a).

D.D.C.,1992.
Barnes v. Resolution Trust Corp. for Oak Tree Sav.
Bank S.S.B.
Not Reported in F.Supp., 1992 WL 19113 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 1:91cv02900 (Docket) (Nov. 08, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2004 WL 1125055 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Kay BURSE, individually and on behalf of all
others similarly situated, Plaintiffs,
v.
PURDUE PHARMA COMPANY, et al.,
Defendants.
**No. C-04-594 SC, C-04-713 SC.**

May 3, 2004.

Mark J. Tamblyn, Garth A. Rosengren, Kershaw
Cutter Ratinoff & York LLP, Sacramento, CA,
Daniel W. Krasner, Fred Taylor Isquith, Wolf
Haldenstein Adler Freeman&Herz LLP, New York,
NY, Francis A. Bottini, Jr., Rachele R. Rickert,
Francis M. Gregorek, Wolf Haldenstein Adler
Freeman & Herz, San Diego, CA, Mary Jane
Edelstein Fait, Wolf Haldenstein Adler Freeman
Herz LLP, Chicago, IL, for Plaintiff.
Richard Allen Jones, Timothy C. Hester,
Christopher N. Sipes, Paul W. Schmidt, Covington
& Burling, San Francisco, CA, Mark H. Lynch,
Covington & Burling, Washington, DC, for
Defendants.

ORDER GRANTING MOTION TO TRANSFER

CONTI, J.

I. *BACKGROUND*

*1 These related cases involve class-action lawsuits
brought against Defendant Purdue Pharma
Company, et al. ("Purdue" or "Defendant")
regarding the pain-relief drug OxyContin. Plaintiffs
Kay Burse and Susan Burnham are the named class
representatives for the two related cases, C-04-594
and C-04-713, respectively. Each assert violations
of the Cartwright Act, California Business
Professions Code § 16720 *et seq.,* regarding abuse

of monopoly power and § 17200 for unfair business
practices. Each Plaintiff initially brought her
respective suit in California state court, and
Defendant removed both cases to this Court.
Plaintiffs now motion for removal back to state
court, arguing that there is no proper basis for
federal jurisdiction. Defendant opposes remand and
instead petitions this Court to transfer both cases to
the Southern District of New York as part of the
Judicial Panel on Multidistrict Litigation (the "
MDL Panel").

Defendant holds a series of patents related to
OxyContin, a controlled pain-release medication
approved by the Food and Drug Administration. In
2000 Purdue initiated a patent enforcement action
against Endo Pharmaceuticals, Inc. ("Endo"), a
non-party to this suit, before Judge Stein in the
Southern District of New York. On January 4,
2004, Judge Stein ruled that Purdue had engaged in
inequitable conduct while applying for its
OxyContin patents from the United States Patent
and Trademark Office and issued an injunction
barring Purdue from enforcing those patents.
*Purdue Pharma. L.P. v. Endo Pharmaceuticals,
Inc.,* 2004 WL 26523 (S.D.N.Y. Jan.5, 2004).
Although Purdue appealed Judge Stein's decision to
the Federal Circuit Court of Appeals, a deluge of
litigation ensued nevertheless. Plaintiffs nation-wide
have filed approximately 44 antitrust cases against
Purdue related to the OxyContin patents.

A plaintiff in one of the related actions in the
Southern District of New York (before Judge Stein)
brought a motion for coordinated and consolidated
proceedings pursuant to 28 U.S.C. § 1407 with two
other actions pending in the District of Connecticut.
On April 22, 2004, the MDL Panel ordered the two
Connecticut cases to be consolidated with the
Southern District Case. In its decision, the MDL
Panel noted 41 other related actions against Purdue
as potential tag-along actions, including the two
cases pending before this Court. Defendant's motion
to transfer seeks to designate these two actions as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1125055 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

tag-along actions to be consolidated with the MDL
cases before Judge Stein in the Southern District.

## II. *COMPETING MOTIONS*

The simultaneous motion for remand and motion to
transfer complicate the Court's deliberations for
each motion, as we must decide which motion to
consider first. The Court is free to rule on the
competing motions in any order. *Compare Gould v.
Nat'l Life Ins. Co.,* 990 F.Supp. 1354, 1358
(M.D.Ala.1998) (granting transfer motion prior to
ruling on remand motion) *with Tortola Restaurants,
L.P. v. Kimberly-Clark Corp.,* 987 F.Supp. 1186,
1188-89 (N.D.Cal.1997) (a court weighing a motion
to transfer is not required to postpone rulings on
other motions merely because an MDL transfer
motion is pending). The Court acknowledges an
apparent practice within the Ninth Circuit for courts
to rule on remand motions before deciding motions
to transfer. *See, e.g., Johnson v. America Online,
Inc.,* 2002 WL 1268397 (N.D.Cal. Mar.21, 2002);
*Smith v. Mail Boxes, Etc. USA, Inc.,* 191 F.Supp.2d
1155, 1157 (E.D.Cal.2002); *Tortola,* 987 F.Supp.
1186. However, these cases indicate that a court's
decision whether to decide on a remand or transfer
motion first is extremely sensitive to the facts of the
particular case. *Id.* The circumstances of these cases
involve a series of nation-wide class actions against
identical defendants grounded in a similar factual
foundation, that being Purdue's unenforceable
patents. The various actions which are ripe for
consolidation before the MDL implicate
overlapping legal issues, and the pending appeal to
the Federal Circuit looms over all the related cases.
For these reasons, the Court finds that it is
appropriate to consider Defendant's motion to
transfer prior to Plaintiffs' motion for remand. If
transfer is inappropriate, then the Court will
proceed to rule on the motion for remand. If,
however, transfer is warranted, then the MDL Panel
will subsequently determine whether federal
jurisdiction exists and resolve the motion for
remand accordingly.

## III. *MOTION TO TRANSFER*

### *A. Legal Standard*

**\*2** Transfer to a different venue is appropriate "for
the convenience of parties and witnesses [and] in
the interest of justice." 28 U.S.C. § 1404(a).
Transfer is only permissible to a district where the
case could have been brought initially. *Id.*

The Ninth Circuit has articulated a series of factors
that a court should consider in evaluating a motion
to transfer: (1) the location where the relevant
agreements were negotiated; (2) the state most
familiar with the governing law; (3) the plaintiff's
choice of forum; (4) the parties' contacts with the
forum; (5) the contacts relating to the cause of
action in the chosen forum; (6) the differences in
the expense of litigation between the two forums;
(7) the court's ability to compel attendance of
unwilling witnesses; and (8) the ease of access to
sources of proof. *Jones v. GNC Franchising, Inc.,*
211 F.3d 495, 498-99 (9th Cir.2000). Also, the
public policy of the forum state is a factor for
consideration. *Id* . at 499.

### *B. Discussion*

The Court finds that the interests of justice and
convenience to the parties warrants transfer of these
cases to the MDL Panel in New York. Although
Plaintiffs assert violations of California statutes, the
factual allegations on which those claims rest are
identical to that of the cases presently before the
MDL. All of Plaintiffs' causes of actions are
predicated upon Purdue having fraudulently
obtained the OxyContin patents. *See* Burnham
Compl., ¶¶ 18, 55, 60; Burse Compl., ¶¶ 28,
30, 36. Furthermore, as part of its claim under the
Cartwright Act, Plaintiffs allege that Defendant
engaged in "sham" litigation to prevent the
introduction of generic OxyContin substitutes into
the market. *See* Burse Compl., ¶ 30. The alleged "
sham" litigation was the case between Purdue and
Endo over which Judge Stein presided. Therefore,
considering that the MDL has consolidated the
various cases before Judge Stein in the Southern
District, it seems most appropriate for Judge Stein
to determine whether the Purdue/Endo suit-with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3

Not Reported in F.Supp.2d, 2004 WL 1125055 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

which he is intimately familiar-constituted a "sham."

The convenience to the parties favors transfer. Denying transfer would force Purdue to defend itself in multiple forums across the country, arguably resulting in greater prejudice against Purdue than the inconvenience of requiring Plaintiffs to litigate in a distant forum. Additionally, Defendant would likely produce the larger number of trial witnesses; the named Plaintiffs themselves may not have to testify whatsoever given the nature of the action. Because Purdue operates in the New York metropolitan area, New York is a more convenient forum.

Two factors in particular seemingly justify denial of the transfer motion. First, California is certainly more familiar with the applicable causes of action-most of which are violations of California Business Professions Code. However, the fact that Plaintiffs' claims necessarily involve issues surrounding Purdue's patents, the patent application process, and the lawsuit with Endo-facts which are common to all actions and with which Judge Stein is intimately familiar-mitigates the significance of this factor. Second, Plaintiffs' choice of forum is entitled to less deference than usual because this is a class-action and the underlying facts-Purdue's alleged monopolistic suppression of potential competitors-did not occur in California. *See Koster v. Lumbermens Mutual Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (in a class action, "the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened"); *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir.1968) (plaintiff's choice of forum entitled to minimum consideration where operative facts have not occurred within selected forum).

## IV. *CONCLUSION*

*3 For the reasons articulated above, these actions are HEREBY TRANSFERRED to the MDL Panel in the Southern District of New York.

IT IS SO ORDERED.

N.D.Cal.,2004.
Burse v. Purdue Pharma Co.
Not Reported in F.Supp.2d, 2004 WL 1125055 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 3:04cv00594 (Docket) (Feb. 12, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 5

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 1376383 (D.Ariz.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Arizona.
Faye FRIEDMAN, on behalf of herself and all
others similarly situated, Plaintiff,
v.
THE PURDUE PHARMA COMPANY, Purdue
Pharma L.P., The Purdue Frederick Company,
Purdue Pharmaceuticals, L.P., and P.F.
Laboratories, Inc., Defendants.
**No. Civ.04-0404-PHX-EHC.**

June 2, 2004.

Francis Joseph Balint, Jr., Esq., Andrew S.
Friedman, Esq., Bonnett Fairbourn Friedman &
Balint PC, Phoenix, AZ, for Plaintiff.
Douglas W. Seitz, Esq., Bhavi A. Shah, Snell &
Wilmer LLP, Phoenix, AZ, Paul Schmidt,
Christopher Sipes, Timothy Hester, Mark Lynch,
Covington & Burling, Washington, DC, for
Defendants.

ORDER

CARROLL, J.
*1 Pending before the Court are: (1) Plaintiff's
Motion to Remand [Dkt. 3]; (2) Plaintiff's Motion
to Accelerate a Hearing on the Motion to Remand
[Dkt. 4]; (3) Purdue Defendants' ("Defendants")
Motion to Transfer [Dkt. 5]; (4) Defendants' Motion
for Leave to Engage in Jurisdictional Discovery
[Dkt. 23]; (5) Defendants' Notice of MDL Transfer
and Conditional Motion to Stay Plaintiff's Motion
to Remand and other Proceedings [Dkt. 27]; and (6)
Defendants' Motion for Leave to File a
Supplemental Brief on why Collateral Estoppel
does not bar Removal Jurisdiction. [Dkt. 29].

Discussion

On January 26, 2004, Plaintiff filed her Complaint
in Maricopa County Superior Court. [Dkt. 1, Exh.
A]. The Complaint alleges: (1) "Defendants
engaged in conduct designed to create and
perpetuate their monopoly over the manufacture and
marketing of OxyContin, oxycodone hydrochloride
c-r and OxyContin equivalents in Arizona in
violation of A.R.S. § 44-1403", the Arizona
Antitrust Act; (2) Defendants' actions constitute a
violation of A.R.S. § 44-1522(A), the Arizona
Consumer Fraud Act; and (3) that Defendants have
benefitted from their unlawful acts through the
receipt of profits on the sale of OxyContin at
inflated prices and that it would be inequitable for
Defendants to be permitted to retain the benefit of
overpayments. Id. ¶ 38-53.

On March 3, 2004, Plaintiff filed a Motion to
Remand and Defendants filed a Motion to Transfer.
[Dkt. 3; 5]. Plaintiff's Motion to Remand argues: (1)
that the Court lacks diversity jurisdiction because
Plaintiff's claims do not exceed $75,000.00; (2) that
the Court lacks federal question jurisdiction and
Plaintiff may avoid federal jurisdiction by pleading
only state-law claims. Id. Defendants filed their
Response on March 17, 2004. [Dkt. 17].
Defendants' Response argues: (1) that this case
should be transferred to the Southern District of
New York, so that the remand issues raised here
may be considered by that court along with the
remand issues presented in other similar removed
cases; (2) that the Court has federal question
jurisdiction because the Complaint requires
resolution of substantial questions of federal patent
law; (3) that the Court has federal jurisdiction
because Plaintiff's claims are completely preempted
by ERISA; and (4) that the Court has diversity
jurisdiction. [Dkt. 17]. Plaintiff filed its Reply on
March 24, 2004. [Dkt. 21].

Defendants' Motion to Transfer argues: (1) that the
interests of justice favor transfer to the Southern
District of New York; (2) that the convenience of
parties and witnesses favors transfer to New York;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 1376383 (D.Ariz.)
**(Cite as: Not Reported in F.Supp.2d)**

and (3) Plaintiff's choice of forum is not entitled to deference in this case. [Dkt. 5]. On March 8, 2004, Plaintiff filed a Response that the Court should first determine whether the Court has subject matter jurisdiction before it considers Defendants' Motion to transfer and if the Court determines it has subject matter jurisdiction, Plaintiff will not oppose a transfer to a court determined by the Judicial Panel on Multidistrict Litigation. [Dkt. 10].

*2 On April 27, 2004, Defendants filed a Notice of MDL Transfer Order and Conditional Motion to Stay Plaintiff's Motion to Remand and other Pending Proceedings. [Dkt. 27]. Defendants' Notice attached a Transfer Order from the Judicial Panel on Multidistrict Litigation that referred to two actions in the District of Arizona as potential tag-along actions. *Id.* at Exh. A, fn. 1. Defendants argue that this action is one of the potential tag-along actions. *Id.* Plaintiff did not file a Response.

### Discussion

Courts have held that where there exists both a Motion to Remand and a Motion to Transfer, a court may decide them in any order. *Burse v. Purdue Pharma,* 2004 WL 1125055 (N.D.Cal.2004) (*citing Gould v. Nat'l Life Ins. Co.,* 990 F.Supp. 1354, 1358 (M.D.Ala.1998). Specifically, the *Burse* court found that:
[t]he circumstances of these cases involve a series of nation-wide class actions against identical defendants grounded in a similar factual foundation, that being Purdue's unenforceable patents. The various actions which are ripe for consolidation before the MDL implicate overlapping legal issues, and the pending appeal to the Federal Circuit looms over all the related cases. For these reasons, the Court finds that it is appropriate to consider Defendant's motion to transfer prior to Plaintiffs' motion for remand.

*Id.*

Because this case involves the same issues FN1 presented before the *Burse* court, this Court is able to decide a motion to transfer before a motion to

remand. This case will be transferred to the MDL Panel in New York and the Court will grant Defendants' Motion to Transfer. [Dkt. 5].

> FN1. This action and the one before the *Burse* Court are based on the decision in *Purdue Pharma L.P., et al., v. Endo Pharmaceuticals, Inc., et al.,* 2004 WL 26523 (S.D.N.Y.2004).

Accordingly,

IT IS ORDERED that Defendants' Motion to Transfer [Dkt. 5] is GRANTED.

D.Ariz.,2004.
Friedman v. Purdue Pharma Co.
Not Reported in F.Supp.2d, 2004 WL 1376383 (D.Ariz.)

Briefs and Other Related Documents (Back to top)

• 2:04CV00404 (Docket) (Feb. 25, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.