# TAB 6

Westlaw.

Slip Copy                                                                                                                                                   Page 1

Slip Copy, 2005 WL 3095713 (N.D.Ga.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Georgia, Atlanta Division.
Brigitte HOFFMAN, et al., Plaintiffs,
v.
MEDQUIST, INC., et al., Defendants.
**No. 1:04-CV-3452-WSD.**

Nov. 16, 2005.

Joshua A. Millican, Law Office of Joshua A. Millican, Melanie Carstairs Eyre, Stevan Anthony Miller, Scott P. Archer, Drew Eckl & Farnham, for Plaintiffs.
David M. Hickey, Neal R. Marder, Winston & Strawn, LLP, Los Angeles, CA, for Defendants.
Oscar N. Persons, Alston & Bird, Atlanta, GA.

ORDER

DUFFEY, J.
*1 This matter is before the Court on Defendants MedQuist Inc. and MedQuist Transcriptions, Ltd.'s (collectively, the "MedQuist Defendants") Motion to Dismiss or Transfer the Amended Class Action Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(3) and 28 U.S.C. § 1406, or to Transfer Pursuant to 28 U.S.C. § 1404[16].

*Background*

This is a class action brought on behalf of Plaintiffs and all other employees and statutory workers of the MedQuist Defendants from January 1, 1998, to the present, who are or were compensated on a "per line " basis for medical transcription services. Plaintiffs allege they and members of the nationwide class they purport to represent have been systematically and wrongfully underpaid for medical transcription services as a result of the acts or omissions of Defendants. Specifically, they allege Defendants, primarily the MedQuist Defendants, devised and enacted a scheme to undercount the number of lines that Plaintiffs transcribed, resulting in reduced pay and benefits to Plaintiffs, by (i) failing to consistently and accurately count the true number of characters within documents; (ii) using ratios and formulas to arrive at line counts, rather than counting characters, thereby undercounting the number of transcribed lines for payroll purposes; (iii) creating, manipulating, and routinely changing and altering software, transcription platforms and other technology, which were supposed to accurately count the number of transcribed lines, but instead which were created, designed, altered or modified by Defendants to undercount the number of transcribed lines for which Plaintiffs were to be paid; (iv) constructing a complex, varying and inconsistent line calculation method, which bore no rational resemblance to the contracted-for definition of a line; and (v) employing methods of transcription and internal procedures to conceal from Plaintiffs the methods used to determine the number of transcribed lines for payroll purposes. (Am.Compl.¶¶ 7-10.) The scheme is alleged to have been conceived and enacted in New Jersey, the site of MedQuist's headquarters and where the company's senior management works.

Plaintiffs assert claims for fraud in the inducement, actual fraud, constructive fraud, breach of contract, *quantum meruit,* unjust enrichment, conversion, negligence, and negligent supervision, as well as claims under the federal and Georgia Racketeer Influenced and Corrupt Organizations Acts. They also seek an accounting of the amounts of compensation allegedly unlawfully retained and not paid for medical transcription services provided by Plaintiffs. In addition to the MedQuist Defendants, Plaintiffs named the following entities and persons as defendants in this action: Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics of the Netherlands (a Dutch corporation alleged to own a controlling interest in MedQuist, Inc.), U.S.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3095713 (N.D.Ga.)
**(Cite as: Slip Copy)**

Philips Corporation, Philips Electronics North America Corporation and Philips Medical Systems, Inc. (wholly owned United States subsidiaries of Royal Philips Electronics incorporated in Delaware with their principal place of business in New York) (collectively, the "Philips Defendants"), and John A. Donohoe, Jr. (former President and Chief Operating Officer of MedQuist, Inc.).

*2 The MedQuist Defendants request that the Court transfer this case to the United States District Court of New Jersey, Camden Division, pursuant to 28 U.S.C. § 1404(a). They argue it would be more convenient to the parties and the witnesses for this case to be litigated in New Jersey. In the alternative, they move the Court to dismiss or transfer this case for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a). Plaintiff opposes the MedQuist Defendants' motion, arguing that New Jersey would not be a more convenient forum for this litigation and that venue is proper in this District.

*Discussion*

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see generally Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (holding that the purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense") (quotations omitted). The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion. *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 654-55 (11th Cir.1993) (reviewing district court's transfer of venue for clear abuse of discretion). Section 1404(a) "requires the court to consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice." *Moore v. McKibbon Bros., Inc.,* 41 F.Supp.2d 1350, 1356 (N.D.Ga.1998). The presence of related proceedings in the transferee court is also a factor to be considered by the court, *see Martin v. South Carolina Bank,* 811 F.Supp. 679, 687 (M.D.Ga.1992), and some courts have indicated this factor may be more important than the three set out in Section 1404(a), *see, e.g., Mirasco v. American National Fire Insurance, Co.,* No. 1:00-cv-947-ODE, 2000 WL 34440850, *5 (N.D.Ga. July 5, 2000) ("The most persuasive reason for transferring this action is that a related action involving the same issues is pending in the [transferee court]."), and *Weber v. Basic Comfort Inc.,* 155 F.Supp.2d 283, 286 (E.D.Pa.2001) ("[The presence of a related case] is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite."). The moving party bears the burden of establishing that the balance of Section 1404(a) interests favors the transfer. *Id.* (citing *In re Ricoh Corp.,* 870 F.2d 570 (11th Cir.1989)); *Martin,* 811 F.Supp. at 687. FN1

   FN1. Although "[t]he federal courts traditionally have accorded a plaintiff's choice of forum considerable deference," *Ricoh Corp.,* 870 F.2d at 573, this deference is significantly lessened in class action cases, *Gould v. National Life Insurance Co.,* 990 F.Supp. 1354, 1358 (M.D.Ala.1998) ("Plaintiff's choice of forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situated ....") (citing *In Koster v. Lumbermens Mutual Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Plaintiff's choice of forum is also entitled to less deference where, as here, the facts underlying the cause of action occurred elsewhere. *See Gould,* 990 F.Supp. at 1358 ("[W]hen 'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.' ") (quoting *Garay v. BRK Elecs.,* 755 F.Supp. 1010, 1011 (M.D.Fla.1991)).

Having reviewed the record and the submissions of both parties, the Court finds the balance of factors under Section 1404(a) weighs substantially in favor

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of transfer. FN2 First, there are three class action lawsuits pending in the District of New Jersey which involve the same or substantially similar issues as this case: *South Broward Hosp. Dist. v. MedQuist Inc.,* No. CV04-750 (C.D. Cal., filed Oct. 4, 2004, transferred to D.N.J. Mar. 31, 2005); *Steiner v. MedQuist Inc.,* No. 04-CV-5487 (D.N.J., filed Nov. 18, 2004); and *Myers v. MedQuist Inc.,* No. 05-CV-4608 (D.N.J., filed Sept. 22, 2005). FN3 In *Myers,* the plaintiffs allege they have been systematically and wrongfully underpaid for medical transcription services as a result of a fraudulent scheme conceived and conducted by MedQuist and its officers and directors. As in this case, the putative class in *Myers* is defined as all current and former employees and/or independent contractors of the MedQuist Defendants who were paid on a "per line" basis for medical transcription services. The only difference between the putative classes in *Myers* and this case is the time period-in *Myers,* the putative class includes all workers paid by the MedQuist Defendants from January 1, 1999, to the present; the putative class in this case includes all workers paid by the MedQuist Defendants from January 1, 1998, to the present.

> FN2. Because the Court finds the case should be transferred to the District of New Jersey under Section 1404(a), it is not necessary for the Court to address whether the case should be dismissed or transferred for improper venue under Rule 12(b)(3) and Section 1406(a).
>
> FN3. A fourth related action pending in the District of New Jersey-*Kanter v. Barella,* No. 04-CV-5542 (D.N.J., filed Nov. 12, 2004)-was dismissed on September 21, 2005. *Kanter* was a derivative action in which the plaintiff alleged that MedQuist's officers and directors violated their fiduciary duties by causing or allowing the company to engage in fraudulent billing practices.

\*3 In *South Broward,* the putative class of MedQuist customers allege that MedQuist wrongfully overcharged them for transcription services by calculating the line counts in a manner that systematically and repeatedly inflated its line counts. This action originally was filed in the Central District of California, but was transferred to the District of New Jersey as a result of a motion to transfer filed by MedQuist. *Steiner* is a putative shareholders' class action in which the plaintiffs allege MedQuist fraudulently applied the line-count definition and that this billing practice rendered its financial statements and other public financial information false and misleading.

The claims in each of these three pending cases arise from an alleged fraudulent scheme conceived and enacted by MedQuist and its officers and directors to manipulate line counts in transcribed reports. Each was filed in or transferred to the District of New Jersey and assigned to the Honorable Jerome B. Simandle. These cases, particularly *Myers,* involve factual and legal issues which overlap substantially with the facts alleged and the issues presented in this case. The discovery processing and eventual adjudication of these cases in the same district will promote efficiency and mitigate against the risk of inconsistent or contradictory rulings with respect to discovery and other substantive matters. *See Martin,* 811 F.Supp. at 687 (holding that "although a plaintiff's choice of forum is entitled to deference, it is not a more important factor than the presence of related proceedings in the transferee court" and concluding "it would be a monumental waste of judicial resources for this Court to consider the same issues that are pending in the [transferee] court and inconsistent judgments might result from its retention of this case"); *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.,* 102 F.Supp.2d 518, 539 (D.N.J.2000) (holding that the presence of a related case in the transferee district supported transfer, even if the related case was not identical: "While it appears these cases are not candidates for consolidation, it appears transferring this litigation to the proposed forum may well prevent the needless loss of time, expense and resources of the parties") (citations omitted). Accordingly, the Court concludes that the presence of these related cases in the District of New Jersey argues persuasively in favor of transfer.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3095713 (N.D.Ga.)
**(Cite as: Slip Copy)**

Second, litigating this matter in New Jersey will be more convenient for the greater number of the parties and witnesses, especially those alleged to have had the most substantial and influential role in designing and implementing the scheme alleged by Plaintiffs. The MedQuist Defendants' headquarters and principal place of business is in New Jersey, and the Philips Defendants are Delaware corporations with their principal place of business in New York. Most of the current or former officers or employees of MedQuist named as Defendants in the initial Complaint or Amended Complaint either reside or work in New Jersey, or reside in nearby Philadelphia, Pennsylvania. (*See* Declaration of Neal Marder, attached to Defs.' Mot. to Transfer as Ex. 6, at ¶ 7.) The potential class members in this case are located throughout the United States, and there is no indication or evidence from Plaintiffs that a greater or even a substantial number of these class members will be found in Georgia or the Southeast. Although the class representative Plaintiffs are alleged to reside in Georgia and work for MedQuist at an office within this District, the participation of class representatives generally is minimal, and Plaintiffs have not argued this case is an exception. *See Job Haines Home for the Aged v. Young,* 936 F.Supp. 223, 231 (D.N.J.1996) (holding that the "convenience of the parties" element weighed in favor of transfer, even though the named plaintiffs resided in the transferor district, because the putative class was nationwide, the defendants were located in the transferee district, and there was no indication the class representative's participation would be more than minimal). Finally, it is undisputed that the alleged fraudulent scheme at issue in this case was devised, if at all, among the various officers and directors of the MedQuist Defendants working in the New Jersey headquarters, and that as a result the vast majority of key non-party witnesses in this matter reside or work in New Jersey or in nearby Philadelphia. (*See* Marder Decl. ¶ 6.) "[T]ransferring venue to one near these witnesses' homes and work responsibilities will benefit the witnesses by reducing the amount of time that they will be away from their families and jobs when appearing at trial." *Bell v. K Mart Corp.,* 848 F.Supp. 996, 999 (N.D.Ga.1994) (quotation omitted). FN4

FN4. Plaintiff's counsel are based in the Northern District of Georgia, and it is likely that a transfer to the District of New Jersey would impose some additional burden and expense on them. However, "[i]t is well established that the fact that counsel may be inconvenienced is [almost] always irrelevant to whether the motion for transfer should be granted." *Bell,* 848 F.Supp. at 999 (citation omitted) (second alteration in original).

*4 Finally, when considering the interest of justice, the Court "looks at the same factors that have been traditionally used in applying the doctrine of forum non conveniens." *Moore,* 41 F.Supp.2d at 1356-57 (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955)). Among the factors that the Court considers are (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) the possibility of view of premises, if view would be appropriate to the action; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). "To examine 'the relative ease of access to sources of proof,' and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (citations omitted).

Here, the crux and litigation focal point of Plaintiff's case is the alleged fraudulent scheme devised by MedQuist officers and directors employed at the company's New Jersey headquarters to underpay the putative class for medical transcription services. Defendants' alleged liability-creating conduct is alleged to have occurred in New Jersey. The documents and other sources of proof relevant to demonstrating the existence and operation of this alleged scheme likely will be found in New Jersey.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In short, New Jersey is the center of the litigation. Although proof of the implementation of the alleged fraudulent scheme and the alleged resulting damages suffered by the putative class members likely will be found in local MedQuist offices, where the alleged incorrect "per line" calculations were carried out, this fact does not make Georgia a more convenient venue for purposes of access to proof. First, the Court anticipates that a significant amount of the proof of the implementation of the alleged scheme will consist of payroll and other electronic data which the MedQuist Defendants represent is accessible from anywhere, including their New Jersey offices. Second, to the extent tangible sources of proof exist at local MedQuist offices, such as its customer service centers, these offices are located throughout the United States, and New Jersey contains two such offices compared to Georgia's one. Further, as discussed above, the majority of the potential witnesses for deposition and trial are located in or close to New Jersey. Thus, considerations of access to sources of proof and the cost of obtaining attendance of witnesses weigh heavily in favor of transferring this case to the District of New Jersey.

*Conclusion*

Based on the pleadings in this case and the evidence and arguments presented in the MedQuist Defendants' motion, the Court finds that, for the convenience of the parties and witnesses, this matter should be transferred to the District of New Jersey, Camden Division. The Court further finds this action could have been brought in the District of New Jersey originally. Accordingly,

*5 IT IS HEREBY ORDERED that Defendants' Motion to Dismiss or Transfer is GRANTED and the Clerk of Court is DIRECTED to transfer this case to the United States District Court of New Jersey, Camden Division.

SO ORDERED.

N.D.Ga.,2005.
Hoffman v. Medquist, Inc.
Slip Copy, 2005 WL 3095713 (N.D.Ga.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2756292 (Trial Motion, Memorandum and Affidavit) Defendants Medquist Inc.'s and Medquist Transcriptions, Ltd.'s Submission of Supplemental Authority in Support of Their Motion to Dismiss or Transfer Amended Class Action Complaint Pursuant to Fed. R. Civ. Proc. 12(B)(3) and 28 U.S.C. | 1406, or to T ransfer Pursuant to 28 U.S.C. | 140 (Sep. 30, 2005)
• 2005 WL 1555067 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to MedQuist Inc.'s and MedQuist Transcriptions, Ltd.'s Motion to Dismiss or Transfer Amended Class Action Complaint Pursuant to Fed.R.Civ.Proc. 12(B)(3) and 28 U.S.C. 1406, or to Transfer Pursuant to 28 U.S.C. 1404 (Jun. 13, 2005)
• 2005 WL 856286 (Trial Pleading) Amended Class Action Complaint For Fraud; Breach of Contract; Demand for Accounting; Quantum Meruit; Unjust Enrichment; Conversion; and Rico Act Violations (Feb. 28, 2005)
• 2005 WL 856287 (Trial Pleading) Amended Class Action Complaint FOR Fraud; Breach of Contract; Demand for Accounting; Quantum Meruit; Unjust Enrichment; Conversion; and Rico Act Violations (Feb. 28, 2005)
• 2004 WL 2789365 (Trial Pleading) Demand for Jury Trial (Nov. 29, 2004)
• 1:04cv03452 (Docket) (Nov. 29, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 7

Westlaw.

Not Reported in B.R. Page 1

Not Reported in B.R., 1999 WL 1033566 (Bankr.E.D.Pa.)

**(Cite as: 1999 WL 1033566 (Bankr.E.D.Pa.))**

▷
Only the Westlaw citation is currently available.

United States Bankruptcy Court, E.D. Pennsylvania.
In re: ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, Debtor
PHILADELPHIA HEALTH CARE TRUST
Plaintiff
v.
TENET HEALTH SYSTEM PHILADELPHIA, INC. and TENET HEALTHCARE CORP.
Defendants
No. 98-25773, 98-26774, 98-25777, 99-0932.

Nov. 10, 1999.
The Honorable M. Bruce McCullough, Pittsburgh.

Beverly Weiss Manne, Esq., Pittsburgh, for Debtor.

Michael A. Rosenthal, Esq., Dallas, TX, for Debtor.

Peter C. D'Apice, Esq., Gibson, Dunn, & Crutcher, LLP, Dallas, TX, General Counsel for Defendants.

Lawrence J. Tabas, Esq., Phila., Local Counsel for Defendants.

Robert B. Bodzin, Esq., Mesirov, Gelman, Jaffe, Phila., for Plaintiff.

Frederic Baker, Esq., Ass't. U.S. Trustee, Phila., for United States Trustee.

ORDER / MEMORANDUM

SCHOLL, Bankruptcy J.

*1 AND NOW, this 10th day of November, 1999, upon consideration of the Motion of PHILADELPHIA HEALTH CARE TRUST ("the Plaintiff") for Remand ("the Remand Motion") of the above-captioned Proceeding ("the Proceeding") and the Combined (I) Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412(d); and (II) Motion for Summary Judgment Pursuant to F.R.C.P. 56 and Bankruptcy Rule 7056 ("the Transfer/SJ Motion") of TENET HEALTHSYSTEM PHILADELPHIA, INC., and TENET HEALTHCARE CORP. ("the Defendants") in the Proceeding, upon consideration of the parties' various submission addressing same, it is hereby ORDERED as follows:

1. The Transfer/SJ Motion is GRANTED in part. The instant Proceeding and Motions not decided herein are TRANSFERRED to the Bankruptcy Court for the Western District of Pennsylvania ("the WD PA") for disposition.

2. Disposition of the Remand Motion is DEFERRED to the WD PA.

The weight of authority, including several decisions of this Court, provide that,
> where a bankruptcy court is simultaneously confronted with (1) a Motion, pursuant to 28 U.S.C. § 1412, to transfer or change the venue of an action which has been removed to it pursuant to 28 U.S.C. § 1452(a); and (2) a Motion to remand or otherwise abstain from hearing the change of venue action, pursuant to 28 U.S.C. § 1334(c), the action should be transferred to the "home" court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action. *See In re Gallucci,* 63 B.R. 93, 94 & n. 3 (Bankr.D.R.I.1986); *Seybolt v. Bio-Energy of Lincoln, Inc.,* 38 B.R. 123, 128 (Bankr.D.Mass.1974); *Colarusso v. Burger King Corp.,* 35 B.R. 365, 366- 68 (Bankr.E.D.Pa.1984) (per GOLDHABER, CH.J.); and *Stamm v. Rapco Foam, Inc.,* 21 B.R. 715, 723-25 (Bankr.W.D.Pa.1982) (per COSETTI, CH. J.).

*In re Convent Guardian Corp.,* 75 B.R. 346, 347 (Bankr.E.D.Pa.1987). *Accord, In re Santa Clara County Child Care Consortium,* 223 B.R. 40, 49 (Bankr.1st Cir.1998); *In re Wedlo, Inc.,* 212 B.R.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF    Document 26-3    Filed 12/07/2005    Page 9 of 20

Not Reported in B.R.                                                                                              Page 2
Not Reported in B.R., 1999 WL 1033566 (Bankr.E.D.Pa.)
**(Cite as: 1999 WL 1033566 (Bankr.E.D.Pa.))**

678, 679 (Bankr.M.D.Ala.1996); *In re Gross Metal Products,* 1997 WL 778756, at *2 (Bankr.E.D.Pa. Dec. 16, 1997); *In re III Enterprises, Inc. V,* 163 B.R. 453, 458 (Bankr.E.D.Pa.), *aff'd,* 169 B.R. 551 (E.D.Pa.1994); and *In re Aztec Industries, Inc.,* 84 B.R. 464, 467 (Bankr.N.D.Ohio 1987). But see *In re Bruno's, Inc.,* 227 B.R. 311 (Bankr.N.D.Ala.1998) (without citing or noting the foregoing authority, the "filing" court decides a motion to change venue).

Two authorities, *Santa Clara, supra,* 223 B.R. at 44-50; and *Aztec Industries, supra,* 84 B.R. at 467-49, hold that the "filing" court should decide "jurisdictional" issues. The Plaintiff argues, *inter alia,* that the bankruptcy courts lack "related to" jurisdiction over the Proceeding pursuant to 28 U.S.C. § 1334(b).

*In re Allegheny Health, Education & Research Foundation,* 233 B.R. 671, 679- 80 (Bankr.W.D.Pa.1999) ("*AHERF I* "), involved a proceeding in which the instant Defendants were plaintiffs, and the defendants in that proceeding argued that the bankruptcy court lacked "related to" jurisdiction over that claim. The WD PA stated as follows in rejecting that contention by the defendants in that proceeding:

*2 Defendants [in that proceeding] dispute the proposition that this Court has subject matter jurisdiction over plaintiffs' remaining six counts simply because the outcome of said counts could indirectly impact the instant debtors' bankruptcy estate via a contingent indemnification obligation, and point out in support of their position that the Third Circuit in *Pacor [v. Higgins,* 743 F.2d 984 (3d Cir.1984) ] rejected a finding of jurisdiction with respect to an action between nondebtor parties under somewhat similar circumstances. Unfortunately for defendants, this Court can, for the same reasons that are also expressed in *In re Wolverine Radio Co.,* 930 F.2d 1132, 1143 (6th Cir.1991), distinguish the action involving nondebtor parties in *Pacor* from the remaining counts in the instant adversary proceeding. In particular, the parties herein are "more intertwined" than were the parties in *Pacor* as evidenced by the fact that, unlike the debtor in *Pacor* (ie., Johns Manville Corporation), the instant debtors (a) have agreed and contractually bound themselves to "indemnify, defend[,] and hold harmless" plaintiffs, and (b) could be affected by the outcome of plaintiffs' remaining counts and, in particular, most likely would be bound by the principles of res judicata and collateral estoppel from subsequently challenging any findings or conclusions rendered in the instant litigation over plaintiffs' six remaining counts. See *Id.,;* see also *In re Dow Corning Corporation,* 86 F.3d 482, 491-94 (6th Cir.1996) (also citing *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 264 (3rd Cir.1991), for the proposition "that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction"); *Halper [v. Halper,]* 614 F.3d [830,] at 837-38 [ (3d Cir.1999) ] (also quoting from *Marcus Hook* to the effect that " '[a] key word in ...[the *Pacor* test] is conceivable. Certainly, or even likelihood, is not a requirement.'). Therefore, the Third Circuit's decision in *Pacor* does not dictate a decision in the instant adversary proceeding that this Court lacks subject matter jurisdiction over plaintiffs' six remaining counts.

We doubt that there is any significant distinction between the "jurisdictional" issues arising in *AHERF I* and the instant Proceeding. Without considering the issue of whether the Proceeding necessarily implicates the resolution of an issue of assumption of the Debtors' contract with the Plaintiff, as the Defendants argue, we conclude that the bankruptcy court has "related to" jurisdiction over the Proceeding.

We do note that, in the proceeding which gave rise to *AHERF I,* the WD PA ultimately entered a Memorandum and Order of Court of June 29, 1999, transferring venue of that proceeding to this court. We would certainly accept the WD PA's similar transfer to this Court, but the resolution of that issue should be in the hands of the WD PA. The Plaintiff may also wish to revisit the "related to" jurisdiction issue with that Court, since it was our intention, above all, to render a decision consistent with the *AHERF I* rulings.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R. Page 3

Not Reported in B.R., 1999 WL 1033566 (Bankr.E.D.Pa.)

**(Cite as: 1999 WL 1033566 (Bankr.E.D.Pa.))**

Not Reported in B.R., 1999 WL 1033566 (Bankr.E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 8

Westlaw.

Not Reported in F.Supp.2d                                                                                        Page 1

Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Only the Westlaw citation is currently available.
Judicial Panel on Multidistrict Litigation.
In re BRIDGESTONE/FIRESTONE, INC., ATX, ATX II and Wilderness Tires Products Liability Litigation
No. 1373.

Oct. 24, 2000.

BEFORE JOHN F. NANGLE, Chairman, LOUIS C. BECHTLE, FN*JOHN F. KEENAN, FN**WM. TERRELL HODGES, MOREY L. SEAR, BRUCE M. SELYA and JULIA SMITH GIBBONS, Judges of the Panel.

> FN* Although Judge Bechtle was not present at the hearing, he has, with the consent of all parties, participated in this decision.

> FN** Judge Keenan took no part in the decision of this matter.

TRANSFER ORDER

NANGLE, J.
*1 This litigation consists of 53 actions pending in 27 districts as follows: ten actions in the Southern District of Florida; six actions in the Middle District of Tennessee; four actions each in the Northern District of Illinois and the Southern District of Texas; three actions in the Middle District of Florida; two actions each in the Southern District of Illinois, the District of Massachusetts, the District of New Mexico, and the Southern District of Ohio; and one action each in the Central District of California, the Northern District of California, the Southern District of California, the District of District of Columbia, the Central District of Illinois, the Eastern District of Louisiana, the Middle District of Louisiana, the Western District of Louisiana, the District of Maryland, the Eastern District of Michigan, the Western District of Missouri, the District of New Jersey, the Western District of Oklahoma, the District of Rhode Island, the Eastern District of Texas, the Northern District of Texas, the Western District of Texas, and the Southern District of West Virginia. FN1 Before the Panel are three motions or cross-motions for transfer of these actions for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. The Section 1407 moving parties are arrayed as follows: 1) defendant Ford Motor Company (Ford), whose motion, as amended, seeks centralization of 47 actions in the Northern District of Illinois; 2) plaintiffs in one of the Southern District of Illinois actions, whose motion seeks centralization of six actions in the Southern District of Illinois; and 3) plaintiff in one Middle District of Tennessee action, whose motion initially sought centralization of four actions in that district, or alternatively, the Southern District of Illinois, but who now solely supports centralization in the latter district. FN2 All actions relate to alleged defects in certain tires manufactured by Bridgestone/Firestone, Inc. (Firestone), primarily in their use with certain vehicles manufactured by Ford.

> FN1. Ten additional actions on Schedule A, two of the actions in the Eastern District of Louisiana, and one action each in the Western District of Arkansas, the Central District of Illinois, the Northern District of Illinois, the Southern District of Illinois, the District of Maryland, the Southern District of Mississippi, the Eastern District of Oklahoma, and the Southern District of Texas, were not included in the Section 1407 motions in this docket, but are now included in this transfer order, because all parties to these ten actions have stated in writing their respective positions and had the opportunity to present oral argument at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF   Document 26-3   Filed 12/07/2005   Page 13 of 20

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

the Panel's October 17, 2000, hearing in this matter.

In addition, four actions that were subject to a Section 1407 motion have been remanded to their respective state court: *Pete Lennon, et al. v. Bridgestone/Firestone, Inc., et al.,* E.D. Pennsylvania, C.A. No. 2:00-4469; *Harry Dorian v. Bridgestone/Firestone, Inc., et al.,* E.D. Pennsylvania, C.A. No. 2:00-4470; *Ann Miller v. Bridgestone/Firestone, Inc., et al.,* E.D. Pennsylvania, C.A. No. 2:00-4575; and *David Michael Parham v. Bridgestone/Firestone, Inc., et al.,* D. South Carolina, C.A. No. 6:00-2737. Accordingly, the question of Section 1407 transfer with respect to these actions is moot at this time. Also, various parties have notified the Panel of the pendency of more than 90 additional, potentially related actions pending in federal district courts. These actions and any other newly filed actions that come to the Panel's attention will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 192 F.R.D. 459, 468-470 (2000).

FN2. Much of the differences among the number of actions subject to the various motions seems to be in large part attributable to the various movants' awareness or lack of awareness of the pendency of related actions.

Objections to transfer, generally, are raised with respect to transfer of particular actions: 1) plaintiffs in certain actions or potential tag-along actions who contend that actions removed by Firestone or Ford from state to federal court should be excluded from transfer because there is no federal jurisdiction and the actions should be remanded to state court; 2) plaintiffs in certain actions who contend that actions brought on behalf of persons injured or killed in accidents related to the defective tires should not be centralized or should be centralized separately from the other MDL-1373 actions; and 3) plaintiffs in the Western District of Texas action, which is the only action involving a different model of Firestone tire, who object to inclusion of their action in 1407 proceedings. Finally, plaintiffs in various actions have suggested the Middle District of Florida, the Southern District of Florida, the Central District of Illinois, the Eastern District of Louisiana, the District of New Mexico, the Middle District of Tennessee, or the Southern District of Texas as possible transferee forums for this litigation.

*2 On the basis of the papers filed and the hearing held, the Panel finds that, with one exception, the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Southern District of Indiana before Chief Judge Sarah Evans Barker will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. FN3 All actions involve allegations that Firestone and, in most instances, Ford are responsible for harm or risk of harm caused by defective tires, ranging in various degrees from economic or property damage to personal injury or wrongful death. Accordingly, each action raises similar questions including whether Firestone's ATX, ATX II, and Wilderness AT tires are defective; whether the August 9, 2000, recall as subsequently modified adequately addresses the problems with the defective tires; whether defendants had knowledge which they failed to disclose concerning the defects in the subject tires; and whether defendants failed to adequately warn or notify members of the public concerning the defective tires. Relevant discovery, including expert testimony, will overlap substantially in each action. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (particularly with respect to overlapping class certification requests), and conserve the resources of the parties, their counsel and the judiciary.

FN3. In light of the different type of tire involved in the Western District of Texas action, we are persuaded that this action should be excluded from Section 1407 proceedings at this time.

Various plaintiffs' principal objection to Section

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF    Document 26-3    Filed 12/07/2005    Page 14 of 20

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

1407 transfer at this time is rooted in their contention that the Panel's decision should carve out any action that is subject to a motion to remand to state court. We note, however, that jurisdictional and remand motions can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2nd Cir.1990); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F.Supp. 812, 813 (J.P.M.L.1973).

Other parties that either oppose inclusion of their respective action in Section 1407 proceedings or seek creation of two separate multidistrict dockets have argued, *inter alia,* that such an approach is necessary because 1) their action or type of action involves unique issues, parties, or legal theories; and/or 2) centralization of all actions would be unduly burdensome. We are not persuaded by these contentions. We point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer. Nor is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core. We observe that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation,* 407 F.Supp. 1403, 1404 (J.P.M.L.1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. Finally, to any parties who believe that the uniqueness of their particular situation or the type of their claims renders continued inclusion of their action in MDL-1373 unnecessary or inadvisable, we point out that whenever the transferee judge deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 192 F.R.D. 459, 470-72 (2000).

*3 Given the range of locations of parties and witnesses in this docket and the geographic dispersal of constituent actions, it is clear that no single district emerges as a nexus. Thus, we have searched for a transferee judge with the ability and temperament to steer this complex litigation on a steady and expeditious course. By centralizing this litigation in the Southern District of Indiana before Chief Judge Barker, we are confident that we are entrusting this important and challenging assignment to an able jurist.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions on the attached Schedule A be, and the same hereby are, transferred to the Southern District of Indiana and, with the consent of that court, assigned to the Honorable Sarah Evans Barker for coordinated or consolidated pretrial proceedings.

IT IS FURTHER ORDERED that transfer pursuant to 28 U.S.C. § 1407 of the action entitled *Carol Veytia, et al. v. Bridgestone/Firestone, Inc.,* W.D. Texas, C.A. No. 1:00-478, be, and the same hereby is, DENIED.

SCHEDULE A

*MDL-1373-In re Bridgestone/Firestone, Inc., ATX, ATX II and Wilderness Tires Products Liability Litigation*

Western District of Arkansas

*Cheryl H. McKinney, etc. v. Bridgestone/Firestone, Inc.,* C.A. No. 2:00-2164

Central District of California

*Lawrence Kaufman v. Bridgestone/Firestone, Inc., et al.,* C.A. No. 2:00-9592

Northern District of California

*Public Remedies, Inc. v. Bridgestone/Firestone, et al.,* C.A. No. 3:00-3183

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

*Southern District of California*

Daryl L. Ford v. Ford Motor Co., et al., C.A. No. 3:00-1766

*District of District of Columbia*

Center for Auto Safety v. Bridgestone/Firestone, et al., C.A. No. 1:00-2011

*Middle District of Florida*

Gabriel Carrillo, etc. v. Bridgestone/Firestone, Inc., et al., C.A. No. 2:00-350
Jorge Carrillo, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 2:00-351
Kate Sanders v. Bridgestone/Firestone, Inc., et al., C.A. No. 2:00-367

*Southern District of Florida*

David Jacobs v. Bridgestone/Firestone, Inc., et al., C.A. No. 0:00-7267
Randall Smithwick, III, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 0:00-7329
Leo Cruz, et al. v. Ford Motor Co., et al., C.A. No. 1:00-3180
Eduardo Salegui, et al. v. Ford Motor Co., et al., C.A. No. 1:00-3256
Jeffrey Margolis v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-3257
Rufino Rujano, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-3360
William Halkett, Jr., et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-3370
Robero Vives, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-3371
John Flanagan v. Bridgestone/Firestone, Inc., et al., C.A. No. 9:00-8819
Joanne Epstein v. Bridgestone/Firestone, Inc., et al., C.A. No. 9:00-8820

*Central District of Illinois*

*4 Esther Siewert-Sitzmore v. Bridgestone/Firestone, Inc., C.A. No. 1:00-1289
Dennis Mickunas v. Ford Motor Co., et al., C.A. No. 2:00-2228

*Northern District of Illinois*

John Zelenika, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-5013
Susan P. Grayson, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-5405
Martha K. Benford, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-5406
Rodolfo Trujillo, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-5407
Florence Bruemmer v. Bridgestone/Firestone, Inc., et al., C.A. No. 1:00-5408

*Southern District of Illinois*

Gary Gustafson, et al. v. Bridgestone/Firestone, Inc., C.A. No. 3:00-612
Jeana Wonnacot, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 3:00-678
Dawn Whorl v. Ford Motor Co., et al., C.A. No. 3:00-797

*Eastern District of Louisiana*

Donita Qualey, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 2:00-2599
Ethelyn Collins, et al. v. Bridgestone/Firestone, Inc., et al., C.A. No. 2:00-2822
Douglas Sylvester v. Bridgestone/Firestone, Inc., et al., C.A. No. 2:00-2834

*Middle District of Louisiana*

Kellerman Woodworks, LLC, et al. v.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

*Bridgestone/Firestone, Inc.*, C.A. No. 3:00-621

### Western District of Louisiana

*Charles T. Gray, et al. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 3:00-1877

### District of Massachusetts

*Thomas J. Kerner, et al. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-11686
*George Saccardo v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-11789

### District of Maryland

*Joan Spied v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-2653
*Patricia Marie Maguire, et al. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 8:00-2862

### Eastern District of Michigan

*George R. Burkes, Jr. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 2:00-73881

### Southern District of Mississippi

*Jennifer L. Burge v. Bridgestone/Firestone, Inc.*, C.A. No. 1:00-436

### Western District of Missouri

*Kevin Stafford v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 4:00-935

### District of New Jersey

*Barbara Felice, et al. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 3:00-4447

### District of New Mexico

*Eve Monson, etc. v. Bridgestone/Firestone, Inc.*, C.A. No. 1:00-1144
*David Sena, et al. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-1273

### Southern District of Ohio

*John Dovich, et al. v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-731
*Louis Rubenstein v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-750

### Eastern District of Oklahoma

*DeAndrea Johnson v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 6:00-531

### Western District of Oklahoma

*Pamela S. Jones v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 5:00-1254

### District of Rhode Island

*\*5 Eric E. Gasbarro v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 1:00-439

### Middle District of Tennessee

*James H. Powell v. Bridgestone/Firestone, Inc.*, C.A. No. 3:00-750
*Martin Brookes v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 3:00-756
*Jennifer L. Hakker v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 3:00-785
*Michael Louridas v. Bridgestone/Firestone, Inc., et al.*, C.A. No. 3:00-833

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF     Document 26-3     Filed 12/07/2005     Page 17 of 20

Not Reported in F.Supp.2d                                        Page 6

Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

*Marie Davison, et al. v. Ford Motor Co., et al.,*
C.A. No. 3:00-834
*Willie J. Hardy v. Bridgestone/Firestone, Inc., et al.,*
C.A. No. 3:00-846

*Eastern District of Texas*

*Connie Gibson v. Bridgestone/Firestone, Inc., et al.,*
C.A. No. 1:00-621

*Northern District of Texas*

*James C. Morris, et al. v. Ford Motor Co.,* C.A. No. 5:00-313

*Southern District of Texas*

*Michelle Stallone v. Bridgestone/Firestone, Inc., et al.,* C.A. No. 2:00-364
*Greyson Knapp v. Bridgestone/Firestone, Inc.,* C.A. No. 4:00-2718
*John Brick v. Bridgestone/Firestone, Inc., et al.,* C.A. No. 4:00-3050
*Carrie Lynn Spencer, et al. v. Bridgestone/Firestone, Inc., et al.,* C.A. No. 6:00-76
*Cindy G. Garza v. Bridgestone/Firestone, Inc., et al.,* C.A. No. 7:00-225

*Southern District of West Virginia*

*Kathe E. Deitzler, et al. v. Bridgestone Corp., et al.,* C.A. No. 3:00-722

Jud.Pan.Mult.Lit.,2000.
In re Bridgestone/Firestone, Inc.
Not Reported in F.Supp.2d, 2000 WL 33416573 (Jud.Pan.Mult.Lit.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A0055800000029070001631...     12/7/2005

# TAB 9

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 733534 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Only the Westlaw citation is currently available.
Judicial Panel on Multidistrict Litigation.
In re CALIFORNIA WHOLESALE
ELECTRICITY ANTITRUST LITIGATION
No. 1405.

June 8, 2001.

BEFORE WM. TERRELL HODGES, Chairman, LOUIS C. BECHTLE, JOHN F. KEENAN, MOREY L. SEAR, FN*BRUCE M. SELYA,* JULIA SMITH GIBBONS, and D. LOWELL JENSEN,* Judges of the Panel.

FN* Judges Sear, Selya and Jensen took no part in the decision of this matter.

TRANSFER ORDER

HODGES, J.
*1 This litigation consists of the four actions listed on the attached Schedule A and pending in two districts as follows: two actions each in the Northern and Southern Districts of California. FN1 All defendants, or affiliates thereof, move the Panel, pursuant to 28 U.S.C. § 1407, for centralization of the actions in a single district for coordinated or consolidated pretrial proceedings. Because movants believe that California's federal judges may have to recuse themselves under the provisions of 28 U.S.C. § 455, movants suggest that a non-California transferee forum is preferable. They offer the District of District of Columbia and the Southern District of Texas as possible choices. In the event the Panel nevertheless determines to order centralization in a California district, then movants suggest the Southern or Central District of California. All plaintiffs, joined by plaintiffs in an additional Southern District of California potential tag-along action, oppose a transfer decision at this time. In the event the Panel decides to rule now on centralization, then plaintiffs in three of the constituent actions support selection of the Northern District of California as transferee forum, and plaintiffs in the remaining constituent and potential tag-along actions favor the Southern District of California.

FN1. The Panel has also been notified of one additional potentially related action pending in the Southern District of California, *Sweetwater Authority, et al. v. Dynegy, Inc., et al.,* C.A. No. 3:01-387. In light of the Panel's disposition of this docket, this additional action will be treated as a potential tag-along action filed in the transferee district, thus requiring no further action on the part of the Panel. See Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

On the basis of the papers filed and the oral argument held, the Panel finds that the actions in this litigation involve common questions of fact and that centralization in the Southern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In this litigation multiple common defendants are sued in two different districts by plaintiffs seeking to recover damages on behalf of many of the same California electricity ratepayers. In all actions the defendants are charged with conspiring to drive up the wholesale price of electricity in California. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary.

Plaintiffs do not seriously dispute that the actions share sufficient questions of fact to satisfy the Section 1407 transfer criteria, but plaintiffs suggest that a decision in their favor on pending remand

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2001 WL 733534 (Jud.Pan.Mult.Lit.)
**(Cite as: Not Reported in F.Supp.2d)**

motions may obviate the need for transfer. We note, however, that such motions can be presented to and decided by the transferee judge. *See, e.g., In re Ivy,* 901 F.2d 7 (2nd Cir.1990); *In re Air Crash Disaster at Florida Everglades on December 29, 1972,* 368 F.Supp. 812, 813 (J.P.M.L.1973). Such an approach here has the additional advantage of eliminating the prospect of federal district courts in the same state reaching different conclusions on the merits of remand.

We are persuaded that this litigation has a strong California nexus and that the appropriate transferee forum for centralized pretrial proceedings is the Southern District of California. Movants' concern about recusal issues affecting the availability of a judge in that or any other California district (a concern which led them to suggest selection of a non-California transferee district) has already been addressed and resolved in the Southern California district, where the constituent MDL-1405 actions have recently been reassigned to a visiting judge, sitting pursuant to an intracircuit assignment.

*2 IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the attached Schedule A and pending in the Northern District of California are hereby transferred to the Southern District of California and, with the consent of that court, assigned to the Honorable Robert H. Whaley from the Eastern District of Washington, sitting in the Southern District of California pursuant to an intracircuit assignment under 28 U.S.C. § 292, for coordinated or consolidated pretrial proceedings with the actions pending in that district and listed on Schedule A.

SCHEDULE A

*MDL-1405-In re California Wholesale Electricity Antitrust Litigation*

*Northern District of California*
*The People of the State of California v. Dynegy Power Marketing, Inc., et al.,* C.A. No. 4:01-780
*Pier 23 Restaurant v. PG & E Energy Trading, et al.,* C.A. No. 4:01-838

*Southern District of California*
*Ruth Hendricks v. Dynegy Power Marketing, Inc., et al.,* C.A. No. 3:00-2524
*Pamela R. Gordon v. Reliant Energy, Inc., et al.,* C.A. No. 3:00-2525

Jud.Pan.Mult.Lit.,2001.
In re California Wholesale Electricity Antitrust Litigation
Not Reported in F.Supp.2d, 2001 WL 733534 (Jud.Pan.Mult.Lit.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.