# TAB 19

Not Reported in F.Supp.                                                                                           Page 1
Not Reported in F.Supp., 1998 WL 378376 (N.D.Miss.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Mississippi.
William H. NELSON and Billie Jo Nelson, Plaintiffs
v.
FIRST LENDERS INDEMNITY COMPANY, Robert CRITES and BANK ONE Defendants,
**No. 2:97CV239-B.**

May 11, 1998.

MEMORANDUM OPINION

BIGGERS.

*1 This cause comes before the court on the plaintiffs' motion to remand and defendant Bank One's motion to transfer. The court has duly considered the parties' motions, memoranda and exhibits.

This cause was removed on the grounds of 28 U.S.C. § 1334(b) ("district courts shall have original ... jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11") and 28 U.S.C. § 1452(a) (allowing removal of a cause of action under section 1334). The amended complaint alleges that defendant Robert Crites, as agent for defendant First Lender's Indemnity Company [F.L.I.C.], and F.L.I.C. executed a commercial promissory note in favor of the plaintiffs in the sum of $35,000 and defaulted. The plaintiffs seek actual damages in the sum of $35,863.00 FN1 plus interest against Crites and F.L.I.C., jointly and severally, for default and punitive damages against Crites and F.L.I.C. for fraud and/or misrepresentation. The amended complaint alleges that the note was to be secured by defendant Bank One, as trustee, and that Crites and F.L.I.C. failed to turn the plaintiffs' investment over to Bank One. The amended complaint seeks actual damages in the sum of $35,000 plus interest from Bank One, as trustee, for negligence and breach of fiduciary duty.

> FN1. This amount includes $35,000 in principal and accrued interest.

It is undisputed that F.L.I.C. is a debtor in a bankruptcy action pending in the United States Bankruptcy Court for the Central District of California, Cause No. Sa 97-16576-L-R. After the removal of this cause, the plaintiffs filed a stipulation dismissing F.L.I.C. without prejudice. FN2 The plaintiffs assert that their stipulation was filed upon learning of the pending bankruptcy action against F.L.I.C. and that their causes of action against defendants Crites and Bank One should proceed in state court. Bank One opposes the motion to remand and moves to transfer this cause to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."). Under 28 U.S.C. § 157(a), a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

> FN2. Since the claim against a debtor in a bankruptcy proceeding, alleged in the amended complaint, invoked subject matter jurisdiction, the removal was proper. *See Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 265 (5th Cir.1995) ("general rule that removal jurisdiction should be determined on the basis of the state court complaint at the time of removal"). The issue is whether the remaining claims should be remanded to state court or determined in the bankruptcy

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF    Document 26-6    Filed 12/07/2005    Page 3 of 14

Not Reported in F.Supp.                                                          Page 2
Not Reported in F.Supp., 1998 WL 378376 (N.D.Miss.)
**(Cite as: Not Reported in F.Supp.)**

court.

Bank One asserts that this action was filed in violation of the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a), and that the remaining claims constitute a core proceeding under section 157. Bank One contends that the claim against it is entirely based on the alleged acts of F.L.I.C. and that a judgment against F.L.I.C. would trigger an indemnification claim against the debtor's estate. The plaintiffs contend that they are not seeking from Bank One the amount due on the note but rather damages for failing to protect them in their capacity as noteholders. The court finds the plaintiffs' argument unpersuasive for purposes of ruling on the motion to transfer. It appears to the court that the claims against Crites, as F.L.I.C's agent, as well as the claim against Bank One should be transferred for referral to the appropriate bankruptcy court to determine whether it should hear and determine these claims. FN3 *See In re Wedlo, Inc.,* 212 B.R. 678 (Bankr.M.D.Ala.1996); *In re Convent Guardian Corp.,* 75 B.R. 346 (Bankr.E.D.Pa.1987).

> FN3. The notice of removal states that Bank One consents to entry of final orders or judgment by the bankruptcy court in the event the claim against it is deemed a non-core proceeding.

*2 For the foregoing reasons, the court finds that the motion to transfer should be granted and that this cause, including the motions to remand and to dismiss FN4, should be transferred to the United States District Court for the Central District of California FN5 for the purpose of referral to the bankruptcy court. An order will issue accordingly.

> FN4. Bank One has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

FN5. *See* 28 U.S.C. § 1409.
N.D.Miss.,1998.
Nelson v. First Lenders Indem. Co.
Not Reported in F.Supp., 1998 WL 378376

(N.D.Miss.)

Briefs and Other Related Documents (Back to top)

• 2:97cv00239 (Docket) (Nov. 24, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 20

Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1

Not Reported in F.Supp., 1996 WL 721195 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.
Maureen SCHOUMAN, Plaintiff,
v.
Michael SCHOUMAN and Lewis G. Mosburg, Jr., Trustee Defendants.
No. Civ. A. No. 96-11588-REK.

Dec. 10, 1996.

Duane P. Landreth, LaTanzi, Spaulding & Landreth, Orleans, MA, for plaintiff Maureen Schouman.
Joseph D'Elia, D'Elia & Cavanaugh, Orleans, MA, for defendant Michael Schouman.
Joseph D'Elia, D'Elia & Cavanaugh, Orleans, MA, Susan M. Beavers, Stenger & Stenger, Grand Rapids, MI, for defendant Lewis G. Mosburg, Jr.

Memorandum and Order

KEETON, District Judge.

*1 Pending before the court are the following motions:
(1) Plaintiff's Motion to Remand to Land Court for Lack of Subject Matter Jurisdiction (Docket No. 4, filed August 30, 1996); and
(2) Defendant's Motion for Transfer of Venue (Docket No. 8, filed October 28, 1996).

Plaintiff has filed a Memorandum in Support of Her Motion to Remand (Docket No. 12, filed October 29, 1996), and a Supplemental Memorandum in Support of Her Motion to Remand (Docket No. 18, filed November 22, 1996). Defendant has filed a Response to Plaintiff's Motion to Remand to Land Court for Lack of Subject Matter Jurisdiction (Docket No. 6, filed September 13, 1996), a Supplemental Response (Docket No. 11, filed October 28, 1996), and a Brief in Support of Motion to Transfer Venue (Docket No. 10, filed October 28, 1996).

I.

Michael and Maureen Schouman, brother and sister, are both residents of Michigan. In 1990, Michael and Maureen owned interests in a family property in Orleans, Massachusetts (hereinafter "the property") as tenants-in-common. On May 24, 1990, Michael, acting as President of Basic Energy and Affiliated Resources, Inc. ("BEAR"), borrowed $200,000 from his sister. At that time, Michael executed a Security Agreement on behalf of BEAR in favor of Maureen. The Security Agreement purported to grant Maureen a security interest in Michael's share of the property. At the time of execution, the Security Agreement did not contain certain essential terms, and was not recorded with the Barnstable Land Court Registry District (Plaintiff's Complaint, ¶¶ 9, 11).

On November 2, 1994, the Securities and Exchange Commission brought an action under the United States securities laws in the United States District Court for the Eastern District of Michigan (Civil Action No. 94-cv-74434) against several defendants, including BEAR (with Michael Schouman as its president) and Michael Schouman as an individual. The case is still pending before United States District Judge Horace W. Gilmore.

On December 20, 1994, Judge Gilmore approved an Agreed Order appointing Lewis G. Mosburg, Jr. as Conservator of BEAR. In April 1995, Judge Gilmore made an order of permanent injunction against Michael Schouman, requiring him to pay disgorgement and pre-judgment interest in the amount of $291,250.86. On November 9, 1995, Judge Gilmore ordered Michael Schouman to execute a quitclaim deed to the Orleans property to Lewis G. Mosburg, as Conservator for BEAR. Because Michael Schouman failed to comply with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                             Page 2

Not Reported in F.Supp., 1996 WL 721195 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

this order, Judge Gilmore found him in civil contempt on November 27, 1995, at which point Michael Schouman and his wife executed the quitclaim deed.

On January 16, 1996, Judge Gilmore issued an order authorizing Lewis G. Mosburg, as Conservator for BEAR, to establish a Nominee Trust to hold property in trust for the BEAR estate and ordered Michael Schouman to execute another quitclaim deed to the property to the Trustee, in a form that would be acceptable for filing with the Barnstable Land Court Registry District. Michael Schouman executed such a deed on January 24, 1996.

*2 On January 25, 1996, Maureen Schouman filed an objection with the United States District Court for the Eastern District of Michigan, asking Judge Gilmore to set aside his January 16, 1996 Order and to find that Maureen had a valid security interest in the property. On January 26, 1996, nearly six years after its execution, Maureen Schouman recorded the Security Agreement with the Barnstable Land Court Registry District. In March of this year, after briefing and oral argument, Judge Gilmore denied Maureen Schouman's request. Judge Gilmore specifically found that Michael Schouman owned a 50% interest in the property that he transferred to Lewis G. Mosburg, as Conservator for BEAR, when Michael and his wife executed the quitclaim deeds on November 27, 1995 and January 24, 1996. The court then set a schedule for the sale of the property by Lewis G. Mosburg, as Trustee, and Maureen Schouman as co-owners. In his order, Judge Gilmore found that "[t]he promissory note and security agreement executed by Michael Schouman in favor of Basic Energy & Affiliated Resources, Inc. on May 24, 1990 ... do not constitute legal or equitable liens on the Property" (Order Denying Petitioners Maureen Schouman, Donna Schouman and the Schouman Family's Request to Set Aside this Court's Order of January 16, 1996 and Establishing Ownership Interests in Cape Cod Property, C.A. No. 94-cv-74434, E.D. Mich. (March 28, 1996)). As both parties note in their submissions on the motion to remand, the court's statement that the Security Agreement was executed "in favor of Basic Energy & Affiliated Resources,

Inc." is apparently a typographical error, since the Security Agreement was executed in favor of Maureen Schouman. *See* Plaintiff's Complaint, Ex. D. In any case, this does not change the outcome of my decision.

On April 22, 1996, Judge Gilmore denied Maureen Schouman's motion to reform the court's order *nunc pro tunc*. Maureen Schouman's appeal of that ruling (filed May 8, 1996) is still pending before the Court of Appeals for the Sixth Circuit.

Less than a week before filing her appeal, Maureen Schouman commenced the current action in the Trial Court of the Commonwealth of Massachusetts, Land Court Department, naming her brother and Lewis G. Mosburg, as Trustee of the Nominee Trust, as defendants. In her complaint, Maureen Schouman alleged that the Security Agreement contained insufficient terms because of a "mutual mistake" by Michael and Maureen Schouman. In her request for relief, Maureen Schouman asked the Land Court to enter a judgment reforming the Security Agreement into a mortgage, to be effected retroactively to May 23, 1990, and to restrain and enjoin Lewis G. Mosburg, as Trustee of the Nominee Trust, "from transfer, sale, mortgage or hypothecation of the property pending a determination of this matter" (Plaintiff's Complaint, ¶ 14). Maureen Schouman further requested that the Land Court enter a judgment declaring that her mortgage, in light of the reformed Security Agreement, was senior to the interest in the property of Lewis G. Mosburg, as Trustee.

*3 Defendant Lewis G. Mosburg, Jr., as Trustee of Nominee Trust, removed the case to this court on August 2, 1996. Plaintiff now moves to remand the case to the Land Court, primarily on the ground that defendant Michael Schouman did not consent to the removal, as required under caselaw interpreting 28 U.S.C. § 1441. *See, e.g., Garside v. Osco Drug, Inc.*, 702 F. Supp. 19, 21 (D. Mass. 1988). Plaintiff also argues that there is no federal question presented by the case, or any other basis, that would give a federal district court subject matter jurisdiction over the action filed in state Land Court.

In response, defendant asserts a number of grounds

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1996 WL 721195 (D.Mass.)
(Cite as: Not Reported in F.Supp.)

upon which this court has original subject matter jurisdiction over the matter filed in the Land Court, and, in addition, asks this court to transfer the case to the United States District Court for the Eastern District of Michigan, where it may be consolidated with the case currently pending before Judge Gilmore.

II.

I conclude that I have jurisdiction to decide the motions before me. This conclusion is based upon the substantial federal question presented in plaintiff's complaint, and the significant, though unsettled, issues of federalism and comity presented by the facts of this case.

In Count I of her complaint, plaintiff asks the Land Court to enjoin Lewis G. Mosburg, Jr., as Trustee, from disposing of the property in any way until the Land Court determines whether reformation of the Security Agreement is warranted. In Count II, plaintiff asks the Land Court to enter a judgment declaring that Maureen Schouman's interest in the property is senior to that of the Trustee. Although framed in terms of state property law, both counts contain requests for relief that would directly interfere with the orders of a federal district court. I conclude, therefore, that plaintiff's complaint as filed with the Land Court presents federal questions that confer on this court the jurisdiction to decide whether to remand, or in the alternative, to transfer, this case.

Plaintiff argues in her Supplemental Memorandum in Support of Her Motion to Remand that the request before the Land Court to reform the Security Agreement to create a valid (and senior in interest) mortgage does not undermine Judge Gilmore's conclusion that plaintiff does not have a "legal or equitable lien [[[ ] on the property." Plaintiff argues that under Massachusetts law, liens and mortgages are different legal creatures, and thus plaintiff's action to reform the Security Agreement to create a mortgage is not prevented by, and is actually consistent with, Judge Gilmore's ruling.

Judge Gilmore's statement must be read in the context of the entire order, however. In his judgment, Judge Gilmore ordered that Maureen Schouman and Lewis G. Mosburg, Jr., as Trustee, each owned 50% of the property and directed the two parties, as co-owners, to proceed with the sale of the property. In direct contradiction to this, plaintiff asks the Massachusetts Land Court to enjoin the sale of the property and to declare that Maureen Schouman possesses an interest in the property that is senior to that of the Trustee. Because the demands contained in plaintiff's complaint call for relief that would contradict the findings and conclusions of Judge Gilmore, and would impede the enforcement of his order of March 28, 1996, I conclude that a question of federal law is presented in plaintiff's complaint. See *Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189, 194-95, 55 S. Ct. 386, 388-89 (1935) (whether a state court gives proper effect to the proceedings and order of a federal court is a federal question).

*4 This decision is not in conflict with the decision of the Court of Appeals for the First Circuit in *James v. Bellotti,* 733 F.2d 989 (1st Cir. 1984). In that case, the Court of Appeals held that, although the appellants were most likely involved in a strategy to defeat ongoing federal litigation of Indian land claims, because the appellants' claims in state court were based purely on state law, the case should be remanded to state court. *Id.* at 992-93. The court in *Bellotti* went on, however, to emphasize that the appellants' state court litigation would be circumscribed by the federal court's in rem jurisdiction over the land involved in the Indian land claims. Citing *Penn General Casualty,* 294 U.S. 189 at 195, 55 S. Ct. at 389, the opinion in *Bellotti* noted that once a federal court has obtained ongoing in rem jurisdiction in a case, a state court may not act to deprive the federal court of this jurisdiction. *Bellotti,* 733 F.2d at 993. As the court noted, "[t]his is merely one aspect of the more general rule that federal and state courts do not interfere with or attempt to restrain each other's proceedings." *Id.* Because such an interference is presented by Maureen Schouman's state court action, it is appropriate for the proper federal court to determine whether in rem jurisdiction over the property has been acquired, and if so, whether

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.     Page 4
Not Reported in F.Supp., 1996 WL 721195 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

action to prevent state court interference is warranted.

Nor is this court's jurisdiction over the decisions about whether to remand or transfer the case defeated by the fact that Michael Schouman, one of the defendants in the current action, has not assented to removal. Plaintiff is correct in noting that the general principle, established by precedents interpreting 28 U.S.C. § 1441, is that all defendants must consent in order to remove a case to federal court. *See, e.g., Garside v. Osco Drug, Inc.,* 702 F. Supp. 19, 21 (D. Mass. 1988); 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3731, at 504-508 (2d ed. 1985). Well-recognized exceptions to that rule, however, apply to nominal, formal and improperly joined defendants, whose failure to join removal will not defeat federal jurisdiction. *Id.* Consent of all defendants is also not required when the case involves "separate and independent" causes of action against different defendants, *see* 28 U.S.C. § 1441(c), and when an examination of a defendant's "real" interests reveals a misalignment of the parties. *See Still v. DeBuono,* 927 F. Supp. 125, 129-130 (S.D.N.Y. 1996), *aff'd on other grounds,* --- F.3d ---- (2d Cir. 1996). Where one defendant's interests are adverse to that of the other, and are in fact more closely aligned with that of the plaintiff, a court will not allow artful pleading to defeat the removal jurisdiction granted by Congress. *See Still,* 927 F. Supp. at 130 (state-official respondent was more properly realigned with the state-court petitioners, so that removal by private-party respondent, based on a federal question, was not frustrated); *Sersted v. Midland-Ross Corp.,* 471 F. Supp. 298 (E.D. Wis. 1979) (a court can "realign" parties so that removal in a diversity case is not defeated by the veto of a nonconsenting defendant).

*5 I conclude that the reasoning underlying these exceptions is applicable to this case. Although Michael Schouman is "necessary" as a defendant in Maureen Schouman's suit to reform the Security Agreement, I find that Michael's interest in the outcome of the present suit is more properly aligned with Maureen's interest, and their interests are completely different from those of Lewis G. Mosburg, as Trustee. Therefore, for the purpose of determining the adequacy of the removal petition at this time, I conclude that it is appropriate to realign Michael Schouman as a plaintiff and to hold that removal will not be defeated solely because of his failure to consent.

III.

Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." As explained by the defendant in his Brief in Support of Motion to Transfer Venue, all of the parties and potential witnesses in the present action are residents of Michigan. Plaintiff has not shown that any real inconvenience would result from the transfer of venue, *see Cianbro Corp. v. Curran-Lavoie,* 814 F.2d 7, 11 (1st Cir. 1987) (party objecting to transfer failed to show "any real inconvenience" from litigating in transferee district), nor is there any showing that proximity to the property is necessary to resolve plaintiff's claims. *Cf. Elbalah v. Republic Ins. Co.,* 879 F. Supp. 3, 5 (D.R.I. 1995) (ease of viewing property is one factor in considering whether to transfer case).

Most important in this case are interest-of-justice factors weighing in favor of transferring plaintiff's action. Judge Gilmore is familiar with the facts and issues in the case, and has made previous orders involving the same property and parties. The more appropriate decision maker, both specifically for the motion to remand and more generally for the disposition of plaintiff's claims, is thus Judge Gilmore. As the Court of Appeals for the First Circuit has noted, where consolidation of two pending cases is possible, the possibilities of duplicative litigation and a waste of judicial resources weigh in favor of transferring a concurrent action to the court in which the other action was first filed. *See Cianbro,* 814 F.2d at 11.

For these reasons, I conclude that it is appropriate to transfer plaintiff Maureen Schouman's entire case, including the pending motion to remand, to the United States District Court for the Eastern District of Michigan, where that court may choose

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 5
Not Reported in F.Supp., 1996 WL 721195 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

to consolidate this proceeding with C.A. No. 94-cv-74434.

ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion for Transfer of Venue (Docket No. 8) is GRANTED.

(2) Plaintiff's Motion to Remand to Land Court for Lack of Subject Matter Jurisdiction (Docket No. 4) is left pending, so that it may be decided in the court to which this civil action is transferred.

(3) The clerk is directed forthwith to enter on a separate document a Final Order as follows:
*6 For the reasons stated in the Memorandum and Order of December 10, 1996, it is ORDERED:
This civil action is transferred to the United States District Court for the Eastern District of Michigan, Southern Division.

Final Order

For the reasons stated in the Memorandum and Order of December 10, 1996, it is ORDERED:
This civil action is transferred to the United States District Court for the Eastern District of Michigan, Southern Division.
The clerk of this court is directed to deliver forthwith, to the clerk of the court to which this civil action is transferred, a certified copy of the record in this case.

D.Mass.,1996.
Schouman v. Schouman
Not Reported in F.Supp., 1996 WL 721195 (D.Mass.)

Briefs and Other Related Documents (Back to top)

• 1:96cv11588 (Docket) (Aug. 02, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 21

Westlaw.

Not Reported in F.Supp.2d    Page 1

Not Reported in F.Supp.2d, 2002 WL 31844906 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 1527
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents

United States District Court,E.D. Louisiana.
Carolyn STEWART
v.
THE MAY DEPT. STORE CO., et al
**No. Civ.A. 02-2772.**

Dec. 11, 2002.
Dec. 12, 2002.

BARBIER, J.

*1 Before the Court are the following motions: Defendant Saks Fifth Avenue's Motion to Transfer (Rec.Doc. 6); and plaintiff's Motion to Remand (Rec.Doc. 8). Defendant has filed an opposition to the Motion to Remand; no opposition (due December 10, 2002) has been filed to the Motion to Transfer.

The motions were originally set for oral argument on December 18, 2002; however, having reviewed the record, the memoranda of counsel, and applicable law, the Court finds that this matter may be disposed of on the briefs; accordingly, oral argument is cancelled.

BACKGROUND

Plaintiff Stewart alleges that she was the subject of discrimination and retaliation based upon her sex and race in her capacity as an employee of defendants May Department Stores ("May"), Saks and Company ("Saks"), Premier Salons, Inc. ("Premier"), and Supervisor Danny Dupre ("Dupre") (collectively "defendants"). Stewart is an African-American female residing in East Baton Rouge Parish, Louisiana. May and Saks are both foreign corporations with principal places of business in Orleans Parish, Louisiana. Premier is a foreign corporation with its principal place of business in East Baton Rouge Parish, Louisiana. Dupre resides in Livingston Parish, Louisiana.

Stewart was originally hired by Saks d/b/a Parisian Department Store ("the store") in July, 1999. In March, 2001, May bought the store and changed its name to Foley's, and Stewart became an employee of May. In February, 2002, Premier bought the store, and Stewart became an employee of Premier. Dupre was employed as a supervisor of Saks, then of May, and then of Premier. Stewart alleges that Dupre consistently subjected her to discrimination based upon her sex and race, and subsequently subjected her to retaliation after she filed a cause of action.

On February 4, 2002, Stewart first filed a lawsuit ("first lawsuit") alleging race discrimination in the United States District Court for the Middle District of Louisiana based upon a charge she allegedly filed with the Equal Employment Opportunity Commission ("EEOC") in February, 2001.

Stewart alleges that her employer retaliated against her on October 18, 2001 in attempting to fire her. On June 24, 2002, Stewart filed a Petition for Damages ("second lawsuit") in the Civil Court for Parish of Orleans making the same allegations of race discrimination as filed in the first lawsuit with the added claim of retaliation. Also on June 24, 2002, Stewart was granted leave to and did file a First Supplemental and Amended Complaint in the first lawsuit adding the alleged claim of retaliation. The second lawsuit was removed to this Court on September 9, 2002.

The Petition for Damages filed in the second law suit and the First Supplemental and Amended Complaint filed in the first lawsuit allege the exact same claims of discrimination and retaliation. However, the Petition for Damages in the second lawsuit alleges that defendants violated state law, namely LSA-R.S. 23:331 *et seq.*, and LSA-R.S. 51:2231 *et seq.* The First Supplemental Amended

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31844906 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 1527
**(Cite as: Not Reported in F.Supp.2d)**

Complaint filed in the first lawsuit alleges that defendants violated federal law, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII").

*2 On October 16, 2002, defendants filed with this court a Motion to Transfer the second lawsuit to the United States District Court for the Middle District of Louisiana where the first law suit is pending. On October 21, 2002, Stewart filed with this Court a Motion to Remand the second lawsuit to state court claiming that it contains no federal cause of action.

For the reasons which follow, the Court finds Saks' Motion to Transfer should be granted, and accordingly, it does not reach the issues raised in plaintiff's Motion to Remand. FN1

> FN1. While it is true that courts generally consider subject matter jurisdiction as a preliminary matter, as other federal district courts have recognized, federal courts need not decide a motion to remand a removed case before ruling on a motion to transfer to another district. *See, Gould v. National Life Ins. Co.,* 990 F.Supp. 1354 (M.D.Ala.1998). In fact, "an array of non-merits questions ... may [be] decide[d] in any order...." *Galvan v. Federal Prison Industries, Inc.,* 199 F.3d 461, 463 (D.C.Cir.1999) (citing *Ruhrgas A.G. v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 1567(1999)); *see also, Buchanan v. Manley,* 145 F.3d 386, 389 n. 5 (D.C.Cir.1998) (ruling on venue without having first conclusively established subject matter jurisdiction, noting that court may dismiss on non-merits grounds before finding subject matter jurisdiction) (citations omitted).
> Transfer prior to deciding a remand motion is particularly appropriate in this case where a related suit is already pending in the transferee district, the remand motion will not suffer any prejudice as a result of the transfer, and transfer at this juncture permits the court who would ultimately try the case to rule on the remand motion. *See, Gould,* 990 F.Supp. at 1358.

DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404 (2002). In determining whether transfer is indicated under this provision, courts consider the factors set forth by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 843 (1947). FN2 These factors include both " private interest" and "public interest" factors. The private interest factors are: [1] the "relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. 501, 67 S.Ct. at 843. The public interest factors to be considered are: [1] the administrative difficulties flowing from court congestion; [2] the " local interest in having localized controversies decided at home"; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 67 S.Ct. at 843. Courts also consider judicial economy-that is, whether a transfer would avoid duplicative litigation and prevent waste of time and money. *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964).

> FN2. The *Gilbert* case pre-dated the 1948 enactment of § 1404(a), but the factors set forth there (in the context of a discussion of a forum non conveniens dismissal) are instructive in considering 1404(a) motions. 5A Wright & Miller, § 1352 at 269, citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 31, 75 S.Ct. 544, 546 (1955).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31844906 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 1527
**(Cite as: Not Reported in F.Supp.2d)**

In addition to the foregoing general venue considerations, the Fifth Circuit has recently held that the "special venue factors [of Title VII] clearly indicate that Congress thought employment discrimination controversies should be litigated in judicial districts that had direct and immediate connection with the parties, the events and the evidence bearing on their controversy." *In re Horseshoe Entm't,* 305 F.3d 354, 359 (5th Cir.2002). FN3 In that case, the Fifth Circuit issued a writ of mandamus ordering the United States District Court for the Middle District of Louisiana to transfer litigation arising under Title VII to the United States District Court for the Western District of Louisiana based on the venue provisions of Title VII. *Id.* at 260. In making this determination, the Court observed that the Western District was where the alleged acts of discrimination took place, where the plaintiff and witnesses resided, where the defendant maintained an office, and where relevant employee records were located. *Id.* at 355-56. The Court went on to state that the plaintiff's choice of forum should not be given decisive weight. *Id.* at 359-60.

FN3. The venue provisions of Title VII are set forth in 42 U.S.C. § 2000e-5(f)(3) as follows:
Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title [42 USCS §§ 2000e et seq.]. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28 of the United States Code, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

*3 Applying the *Gilbert* factors and *Horseshoe* rationale to the case at bar, the Court concludes that this case should be transferred to the Middle District of Louisiana. The Middle District is where the store in which Stewart works is located, where the alleged acts of discrimination and retaliation took place, where most of the witnesses reside, and where Stewart resides. Thus, the private interest factors-access to sources of proof, the convenience of witnesses, and other issues that would make trial of this case easy, expeditious and inexpensive-all point to the Middle District as the better venue choice. Likewise, the public interest would best be served by the avoidance of duplicative litigation that would result from maintaining this suit in the Eastern District when a nearly identical suit, filed first, is pending in the Middle District. FN4 Finally, to the extent plaintiff's claim is federal in nature and subject matter jurisdiction is ultimately found to lie in federal court, such jurisdiction is premised on Title VII, and under *Horseshoe,* Title VII actions should be litigated in judicial districts that had direct and immediate connection with the parties, events and evidence bearing on their controversy.

FN4. While the "first to file" rule generally contemplates suits filed by two different plaintiffs, the rationale informing that rule is applicable to the case at bar.
The "first to file" rule is grounded in principles of comity and sound judicial administration. The federal courts long have recognized that the principle of comity requires federal district courts-courts of coordinate jurisdiction and equal rank-to exercise care to avoid interference with each other's affairs. The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. This concern

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00793-JJF     Document 26-6     Filed 12/07/2005     Page 14 of 14

Not Reported in F.Supp.2d                                          Page 4
Not Reported in F.Supp.2d, 2002 WL 31844906 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 1527
**(Cite as: Not Reported in F.Supp.2d)**

> applies where related cases are pending before two judges in the same district ... as well as where related cases have been filed in different districts.
>
> *Save Power v. Syntek Fin. Corp,* 121 F.3d 947 (5th Cir.1997) (internal quotations and citations omitted).

Accordingly, for the foregoing reasons, the Court finds that the convenience of parties and witnesses and the interest of justice require this matter to be transferred to the Middle District of Louisiana; therefore,

IT IS ORDERED that defendant Saks Fifth Avenue's Motion to Transfer (Rec.Doc. 6) should be and is hereby GRANTED, and the instant action, including the Motion to Remand (Rec.Doc. 8) is TRANSFERRED to the United States District Court for the Middle District of Louisiana.

E.D.La.,2002.
Stewart v. May Dept. Store Co.
Not Reported in F.Supp.2d, 2002 WL 31844906 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 1527

Briefs and Other Related Documents (Back to top)

• 2:02CV02772 (Docket) (Sep. 10, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.